**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:17-CV-80495- MARRA-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU
      Plaintiff,

vs.

OCWEN FINANCIAL CORPORATION,
OCWEN MORTGAGE SERVICING, INC., and
OCWEN LOAN SERVICING, LLC,
      Defendants.

_____/

**<u>Plaintiff's Opposition to Defendants' Motion to Dismiss</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.    The Bureau has authority to bring this action. ............................................................ 2

    A.    The Bureau's structure is constitutional. ......................................................... 2

        1.    For-cause removal is constitutional because it does not impede the President's ability to perform his constitutional duty. .......................................................... 3

        2.    The Bureau's single-director structure does not make it more difficult for the President to oversee the agency. ......................................................... 6

        3.    The Bureau's funding is not unconstitutional. ...................................................... 8

        4.    None of Defendants' arguments justifies dismissal of the Complaint. ................ 8

    B.    Defendants had fair notice that their conduct violates the CFPA and FDCPA. ........... 9

        1.    Defendants had fair notice that servicing loans using inaccurate or incomplete information is unfair. ......................................................... 9

        2.    Defendants had fair notice that they must have a reasonable basis for their representations to borrowers. ......................................................... 11

    C.    The CFPA authorizes the Bureau to bring unfairness actions. ................................... 13

    D.    The 2013 Consent Judgment does not preclude any claims. ..................................... 14

        1.    The express terms of the 2013 Consent Judgment do not release future claims against Defendants. ......................................................... 15

        2.    *Res judicata* does not apply to the Bureau's claims. ......................................... 16

II.    The Complaint states claims for relief. .............................................................................. 18

    A.    The Bureau adequately alleges that Defendants have engaged in unfair acts or practices (Counts I, VIII). ......................................................... 19

    B.    The Bureau adequately alleges that Defendants have engaged in deceptive acts and practices (Counts II and IX). ......................................................... 22

        1.    Rule 9(b) does not apply to the Bureau's deception claims. ............................... 22

        2.    The Bureau adequately alleges its deception claims. ........................................ 23

    C.    The Bureau adequately alleges that Defendants' foreclosure practices violate the CFPA and Regulation X (Counts III, IV, and XIII). ................................................. 25

    D.    The Bureau adequately alleges that Defendants' notice of error practices violate Regulation X (Count XI). ......................................................... 27

i

E.    The Bureau adequately alleges that Defendants have engaged in unfair conduct related to add-on products (Count V). ........................................................................ 28

F.    The Bureau adequately alleges that each defendant is liable for each count. ............. 29

G.    The Bureau adequately alleges that each defendant is liable for violations of RESPA (Counts X-XIII) and the FDCPA (Counts VIII and IX). ........................................... 31

III.    The Bureau's claims are not time barred. ........................................................................ 32

CONCLUSION ........................................................................................................................... 35

## TABLE OF AUTHORITIES

**Cases**

*Affiliated Hosp. Prods, Inc. v. Merdel Game Mfg.*, 513 F.2d 1183 (2d Cir. 1975) ......................17

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987)........................................................8

*Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA*, 388 F.3d 405 (3d Cir. 2004)................................8

*Anderson v. Dist. Bd of Trust. of Central Fl. Commty. Coll.*, 77 F.3d 364 (11th Cir. 1996).........19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................18

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) ...............................................35

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................18

*Bennett v. Nationstar*, No. 15-00165-KD-C, 2015 WL 5294321 (S.D. Ala. Sept. 8, 2015) .........32

*Bernstein v. Wells Fargo*, No. 1:15-CV-2520, 2016 WL 4546653 (N.D. Ga. May 13, 2016)......32

*Bowen v. Public Agencies Opposed to Social Sec. Entrapment*, 477 U.S. 41 (1986) ..................16

*BP Am. Prod. Co. v. Burton*, 549 U.S. 84 (2006) ..........................................................33

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) ....................................14

*CFPB v. D&D Mktg.*, No. 15-9692, 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016)...........9, 13, 14

*CFPB v. Frederick J. Hanna & Assocs.*, 114 F. Supp. 3d 1342 (N.D. Ga. 2015).......18, 22, 23, 33

*CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) ...............................................14, 22, 23

*CFPB v. Howard*, No. 8:17-cv-00161 (C.D. Cal. May 26, 2017) ...........................................22, 33

*CFPB v. ITT Educ. Servs, Inc.*, 219 F. Supp. 3d 878 (S.D. Ind. 2015) ..............................9, 14, 35

*CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082 (C.D. Cal. 2014)........................................7

*CFPB v. NDG Fin. Corp.*, No. 15-cv-5211, 2016 WL 7188792 (S.D.NY. Dec. 2, 2016)............30

*Couzens v. Donohue*, 854 F.3d 508 (8th Cir. 2017) .....................................................34

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................................18

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010).................2, 3, 5, 8

*FTC v. AMG Services, Inc.*, 29 F. Supp. 3d 1338 (D. Nev. 2014)..................................24

iii

*FTC v. CompuCredit Corp.*, No. 1:08-CV-1976-MMB-RGV, 2008 WL 8762850 (N.D. Ga. 2008) ......................................................................................................................34

*FTC v. Fed. Check Processing, Ind.*, No. 14-CV-122S, 2016 WL 5940485 (W.D.NY Oct. 13, 2016) ......................................................................................................................30

*FTC v. Freecom Commc'ns*, Inc., 401 F.3d 1192 (10th Cir. 2005)..........................................22, 23

*FTC v. IAB Mktg. Associates, LP*, 764 F.3d 1228 (11th Cir. 2009) ...............................................30

*FTC v. Innovative Mktg.*, 654 F. Supp. 2d 378 (D. Md. 2009).......................................................30

*FTC v. Nat'l Urological Grp.*, Inc., 645 F. Supp. 2d 1167 (N.D. Ga. 2008) ..................................29

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994)..........................................................12, 22

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009)...............................................................29, 30

*FTC v. Sterling Precious Metals, LLC*, No.12-80597, 2013 WL 595713 (S.D. Fla. Feb. 15, 2013) ............................................................................................................22, 23, 30

*FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247 (S.D. Fla. 2007).....................................24

*FTC v. Wyndham Worldwide Corp.*, 799 F. 3d 236 (3d Cir. 2015)..............................9, 10, 14, 26

*FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602 (D. N.J. 2014) ..............................13, 14

*Ga. Pac. Corp. v. OSHRC*, 25 F.3d 999 (11th Cir. 1994) ..........................................................10

*Gates v. Towery*, 456 F. Supp. 2d 953 (N.D. Ill. 2006) .................................................................17

*Hill v. White*, 321 F.3d 1334 (11th Cir. 2003) ...............................................................................18

*Humphrey's Ex'r v. U.S.*, 295 U.S. 602 (1935) .............................................................2, 3, 4, 5, 6

*Illinois v. Alta Colls., Inc.*, No. 14-C-3786, 2014 WL 4377579 (N.D. Ill. Sept. 4, 2014).........9, 14

*In re Methyl Tertiary Butyl ("MTBE") Prod. Liab. Litig.*, No. M21-88, 2015 WL 5051660 (S.D.N.Y. Aug. 26, 2015) ..................................................................................................17

*Jackson v. Genesys Credit Management*, No. 06-61500-CIV, 2007 WL 4181024 (S.D. Fla. Nov. 21, 2007) .............................................................................................................................23

*Jackson v. Seaboard Coast Line R.R. Co.*, 678 F. 2d 992 (11th Cir. 1982) ...................................26

*Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985).........................................................22

*Kaplan v. Lappin*, No. 10-80227, 2010 WL 2889219 (S.D. Fla. July 20, 2010)...........................18

*Khan v. OneWest Bank*, No. 16-8074, 2017 WL 1344535 (N.D. Ill. April 12, 2017)..................13

*Knight v. E.F. Hutton & Co., Inc.*, 750 F. Supp. 1109 (M.D. Fla. 1990) ......................................34

*La Grasta v. First Union Sec.*, Inc., 358 F.3d 840 (11th Cir. 2004)........................................27, 32

*Lage v. Ocwen*, 839 F.3d 1003 (11th Cir. 2016)..........................................................................27

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ..........................................23

*Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir.1992) ..............................................16

*Mason v. Colse, Scott & Kissane*, No. 07-80103-Civ, 2008 WL 2051359 (S.D. Fla. May 13, 2008) ..........................................................................................................................18, 28, 32

*McCarley v. KPMG Intern.*, 293 Fed. Appx 719 (11th Cir. 2008)................................................32

*Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130 (1982) ............................................................16

*Meyer v. Holley*, 537 U.S. 280 (2003) .........................................................................................30

*Mistretta v. United States*, 488 U.S. 361 (1989) ............................................................................7

*Morrison v. Olson*, 487 U.S. 654 (1988) ........................................................................2, 3, 5, 7

*Muzuco v. Re$ubmitit, LLC*, No. 11-62628-Civ, 2012 WL 3242013 (S.D. Fla. Aug. 7, 2012) ....30

*Myers v. United States*, 272 U.S. 52 (1926)....................................................................................3

*National Petroleum Refiners Ass'n v. FTC*, 482 F.2d 672 (D.C. Cir. 1973) ..................................4

*Neild v. Wolpoff & Abramson, LLP*, 453 F. Supp. 2d 918 (E.D. Va. 2006)................................22

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267 (1974)......................................14

*Norfolk S. Corp. v. Chevron, USA*, 371 F.3d 1285 (11th Cir. 2004) ...........................................18

*Omar v. Lindsay*, 334 F.3d 1246 (11th Cir. 2003)..................................................................32, 34

*Persaud v. Bank of America, N.A.*, No. 14-21819-CIV, 2014 WL 4260853 (S.D. Fla. Aug. 28, 2014) ..........................................................................................................................................33

*PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016)....................................................................7, 8

*Pollice v. Natl. Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) .................................................30

*Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287 (S.D. Fla. 2006) .................................................10

*Prophet v. Myers*, 645 F. Supp. 2d 614 (S.D. Tex. 2008) ...........................................................22

*Rachback v. Cogswell*, 547 F.2d 502 (10th Cir. 1976) ...................................................26

*Reynolds v. Roberts*, 202 F.3d 1303 (11th Cir. 2000) ...................................................15

*Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678 (11th Cir. 2011) ................................18

*Rouleau v. US Bank*, N.A., No. 14-cv-568-JL, 2015 WL 1757104 (D.N.H. Apr. 17, 2015) ........30

*Smith v. Goguen*, 415 U.S. 566 (1974) ...................................................10

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) ...................................................6

*Tallahassee Mem'l Reg. Med. Ctr. v. Bowen*, 815 F.2d 1435 (11th Cir. 1987) ........................9, 10

*Trionfo v. Bank of Am.*, No. JFM-15-925, 2015 WL 5165415 (D. Md. Sept. 2, 2015) ................27

*United States v. Batchelder*, 442 U.S. 114, 125 (1979) ...................................................26

*United States v. Cherokee Nation of Okla.*, 480 U.S. 700 (1987) ...................................................16

*United States ex rel. Air Control Techs. Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174 (9th Cir. 2013) ...................................................33

*U.S. Bank Nat. Ass'n v. Capparelli*, No. 13-80323-CIV, 2014 WL 2807648 (S.D. Fla. June 20, 2014) ...................................................30

*Vallies v. Sky Bank*, 591 F.3d 152 (3d Cir. 2009) ...................................................35

*Van Cleef & Arples Logistics, S.A. v. Festival Marketplace*, No.07-61837, 2008 WL 4753690 (S.D. Fla. Oct. 29, 2008) ...................................................30

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ........................19

*Wentzell v. Chase*, 627 F. App'x 314 (5th Cir. 2015) ...................................................27

*Wigod v. Wells Fargo Bank, NA*, 673 F.3d 547 (7th Cir. 2012) ...................................................13

*World's Finest Choc. Inc. v. World Candies, Inc.*, 409 F. Supp. 840 (N.D. Ill. 1976) ................17

*Your Baby Can, LLC v. Planet Kids, Inc.*, No. 10-81266, 2011 WL 197421 (S.D. Fla. Jan. 20, 2011) ...................................................9, 10, 19

**Statutes**

12 U.S.C. § 1818 ...................................................34

12 U.S.C. § 2605 ...................................................31

12 U.S.C. § 5302 ...................................................8

12 U.S.C. § 5481 .......................................................................................................4, 29

12 U.S.C. § 5491 .....................................................................................................2, 3, 6

12 U.S.C. § 5492 ...........................................................................................................5

12 U.S.C. § 5497 ...........................................................................................................8

12 U.S.C. § 5511 ...........................................................................................................4

12 U.S.C. § 5512 ...........................................................................................................5

12 U.S.C. § 5531 .............................................................................................4, 13, 14, 19

12 U.S.C. § 5536 ...........................................................................................................4

12 U.S.C. § 5563 .......................................................................................................4, 6

12 U.S.C. § 5564 ...............................................................................................4, 13, 33

12 U.S.C. § 5565 .........................................................................................................13

15 U.S.C. § 41 .........................................................................................................3, 6

15 U.S.C. § 42 ...........................................................................................................5

15 U.S.C. § 45 .....................................................................................................3, 4, 14

15 U.S.C. § 46 .......................................................................................................3, 4

15 U.S.C. § 57 ...........................................................................................................4

15 U.S.C. § 78 ...........................................................................................................4

15 U.S.C. § 640 .........................................................................................................35

15 U.S.C. § 1607 .......................................................................................................35

15 U.S.C. § 1692 .............................................................................................19, 31, 34

15 U.S.C. § 6501 .........................................................................................................5

15 U.S.C. § 6502 .........................................................................................................5

28 U.S.C. § 2462 .......................................................................................................35

47 U.S.C. § 154 ...........................................................................................................5

**Rules & Regulations**

12 C.F.R. § 1024 ................................................................................................27, 31, 37

12 C.F.R. § 1081 ..................................................................................................................6

Fed. R. Civ. Proc. 8 ...........................................................................................................18

S.D. Fla. L.R. 7 ..................................................................................................................10

**Other Authorities**

Appropriations Clause, U.S. Const. art. I, § 8, cl. 1 ..........................................................8

CFPB Supervision and Examination Manual at UDAAP 5, <http://files.consumerfinance.gov/f/
    201210_cfpb_supervision-and-examination-manual-v2.pdf> ......................................23

Complaint, *CFPB v. Green Tree Servicing*, No. 15-2064 (D. Minn. Apr. 15, 2015) ...................10

Complaint, Stipulated Final Judgment & Order, *FTC v. EMC Mortg. Corp.*, Case No. 4:08-CV-
    338 (E.D. Tex. Sept. 8, 2008) ...............................................................................10, 12

Consent Judgment, *CFPB v. Ocwen Fin. Corp.*, No. 13-cv-2025 (D.C. Cir. 2013) ...............15, 16

Consent Order, *In the Matter of Encore Capital Grp.*, CFPB No. 2015-CFPB-0022 (Sept. 9,
    2015) ...........................................................................................................................11

Consent Order, *In the Matter of Portfolio Recovery Ass'n.*, CFPB No. 2015-CFPB-0023 (Sept. 9,
    2015) ...........................................................................................................................11

Consent Order, *FTC v. Asset Acceptance, LLC*, No. 8:12-CV-182 (M.D. Fla. Jan. 30, 2012) .....10

FTC Statutes, <https://www.ftc.gov/enforcement/statutes?title=&> ..............................................4

Marshall J. Breger & Gary J. Edles, *Established by Practice: The Theory and Operation of
    Independent Federal Agencies*, 52 ADMIN. L. REV. 1111 (2000) ..............................................6

Mortgage Servicing Transfer Bulletin, CFPB Bulletin 2013-01 (February 11, 2013),
    <http://files.consumerfinance.gov/f/201302_cfpb_bulletin-on-servicing-transfers.pdf> ...........11

Office of the Comptroller of the Currency Interpretive Letter, October 6, 1977, 1977 WL
    23261 ..........................................................................................................................35

Prohibition of Unfair, Deceptive, or Abusive Acts or Practices in the Collection of Consumer
    Debts, CFPB Bulletin 2013-07 (July 10, 2013), <http://files.consumerfinance.gov/f/201307_
    cfpb_bulletin_unfair-deceptive-abusive-practices.pdf> ...........................................................12

Plaintiff, the Consumer Financial Protection Bureau ("Bureau"), respectfully submits this opposition to the motion of Ocwen Financial Corporation, Ocwen Loan Servicing, LLC, and Ocwen Mortgage Corp. (collectively, "Ocwen" or "Defendants") to dismiss the Complaint, or alternatively, for a more definite statement.

## INTRODUCTION

What is most striking about Defendants' motion to dismiss is the recurring theme that they are not accountable for their conduct under federal law. They raise a number of arguments as to why the court must dismiss this action, but none withstands scrutiny. First, the Bureau's structure does not suffer from any constitutional infirmity. Second, Defendants had fair notice that their use of inaccurate and incomplete information, which caused harm to borrowers, could be considered unfair under the Consumer Financial Protection Act ("CFPA"). Rather than dispute this, Defendants mischaracterize the Bureau's unfairness claims and spend pages attacking this strawman. Third, there is nothing in the text of the CFPA, nor any other legal authority, that requires the Bureau to engage in a rulemaking or adjudication before bringing this action. Fourth, nothing in the 2013 Consent Judgment grants Defendants a blank check to violate federal law for the next three years. To the contrary, the actual terms in the Consent Judgment provide that the Bureau only released claims against Defendants for mortgage servicing practices that had taken place as of December 18, 2013, and expressly reserved the Bureau's authority over Defendants' future conduct.

Defendants also need not guess at the Bureau's claims—the Complaint comprehensively sets forth the allegations supporting the Bureau's claims. The Complaint begins with introductory allegations, including that Defendants are servicers and debt collectors and are jointly liable under common enterprise and principal-agent relationships. Section II contains allegations describing the three main causes of Defendants' inaccurate and incomplete information, the types of inaccurate and incomplete information that Defendants have used to service mortgages and collect upon debts, and the types of resulting harm to borrowers. Section III is organized into eight subsections, each of which contains detailed allegations of Defendants' servicing failures, including their use of inaccurate and incomplete information to service borrowers' loans, and how these failures have caused harm to borrowers. The Bureau references these allegations in each Count. They easily satisfy Rule 8(a)'s plausibility standard.

Defendants' arguments not only fail, they perfectly illustrate the reason why the Bureau was forced to file this action: Defendants would rather deflect and make excuses than acknowledge and correct their conduct. The Bureau cannot stand by and allow Defendants to continue to fail in performing the basic, fundamental functions of a mortgage servicer, such as properly accounting for borrowers' payments, managing escrow accounts, and disbursing insurance payments. As exemplified by the consumer narratives in the Bureau's Complaint, Defendants' failures in these and other areas have caused and continue to cause substantial harm to borrowers. As discussed further below, the Court should reject Defendants' most recent effort to evade accountability and deny their motion in its entirety.

## ARGUMENT

**I.      The Bureau has authority to bring this action.**

**A.      The Bureau's structure is constitutional.**

When Congress created the Bureau, it imposed a limited restriction on the President's ability to remove the Bureau's Director: the President may remove the Director only for cause–"inefficiency, neglect of duty, or malfeasance in office."[1] The Supreme Court has upheld this kind of "limited restriction[] on the President's removal power."[2] Nevertheless, Defendants ask this Court to break new ground and declare that, contrary to more than eighty years of precedent, Congress transgressed the separation of powers when it gave the Bureau's Director the same for-cause removal protection that the Supreme Court approved for FTC commissioners in *Humphrey's Executor*. Defendants' arguments overlook a crucial Supreme Court decision, *Morrison v. Olson*, 487 U.S. 654 (1988), which explains why a for-cause removal provision does not interfere with the President's obligation under Article II of the Constitution to "take care that the laws be faithfully executed." Nor is the Bureau unconstitutional merely because it, like most other financial regulatory agencies, is funded outside the annual appropriations process. And finally, even if this Court were to conclude that the Bureau's structure is unconstitutionally flawed, this Court should remedy that problem, not dismiss this case.

---

[1] 12 U.S.C. § 5491(c)(3).
[2] *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 495 (2010) (referring to *Humphrey's Ex'r v. United States,* 295 U.S. 602, 632 (1935)).

### 1.   For-cause removal is constitutional because it does not impede the President's ability to perform his constitutional duty.

Congress may restrict the President's power to remove an official so long as it does not "impede the President's ability to perform his constitutional duty" to faithfully execute the laws.[3] Congress does not impede this ability when it establishes for-cause removal protection for the head of an agency with functions like the Bureau's. In *Humphrey's Executor*, the Supreme Court approved for-cause removal protection for FTC commissioners that is identical to that afforded the Bureau's Director.[4] As *Morrison* later explained, *Humphrey's Executor* reflected the Court's "judgment" that, in light of the FTC's functions, "it was not essential to the President's proper execution of his Article II powers that [the agency] be headed up by individuals who were removable at will."[5] This is because the ability to remove an official for cause gives the President "ample authority to assure that the [official] is competently performing his or her statutory responsibilities."[6] Here too, the Bureau's Director is not "unanswerable to the President,"[7] because the removal restrictions and official functions established by the CFPA are not materially different from those established by the Federal Trade Commission Act ("FTC Act").[8]

First, the for-cause removal provision that applies to the Bureau's Director is identical to the for-cause removal provision in the FTC Act that applies to FTC commissioners.[9] Second, the Bureau's functions are remarkably similar to those of the FTC when *Humphrey's Executor* was decided. At that time, the FTC had the power to prohibit "unfair methods of competition in commerce" by "persons, partnerships, or corporations, except banks and [certain common

---

[3] *Morrison v. Olson*, 487 U.S. 654, 691 (1988).

[4] *Humphrey's Ex'r,* 295 U.S. at 620-21, 632.

[5] *Morrison,* 487 U.S. at 691.

[6] *Id.* at 692.

[7] Defs. Mot. to Dismiss and Incorp. Mem. of Law ("Mot.") (Doc. 31) at 7.

[8] Citing *Myers v. United States*, 272 U.S. 52, 134 (1926), Defendants contend that the President must have the authority to remove all executive officials "without delay." Mot. at 7. If Defendants mean that *Myers* holds that the President's removal authority is without limit, this "holding" was a dictum and "disapproved" in *Humphrey's Executor*, 295 U.S. at 626. Defendants also cite *Free Enterprise*, and contend it requires that the President have "full control" over those who exercise executive power. Mot. at 9. But what the Court actually held was that the President did not have full control over members of the Oversight Board because he was separated from them by *two* layers of for-cause removal. *Free Enter. Fund*, 561 U.S. at 496. It remedied that problem by severing one layer.

[9] *Compare* 15 U.S.C. § 41 (1934) ("Any Commissioner may be removed by the President for inefficiency, neglect of duty, or malfeasance in office."), *with* 12 U.S.C. § 5491(c)(3) ("The President may remove the Director for inefficiency, neglect of duty, or malfeasance in office").

carriers]."[10] To carry out that power, the FTC had "wide powers of investigation"[11] into the practices of any corporation engaged in commerce.[12] If the FTC believed that a person was engaged in an unfair method of competition, it could bring an administrative cease-and-desist proceeding and enforce any resulting order in court.[13] The FTC could also gather information regarding corporate practices and report that information to Congress.[14] The FTC exercised its broad authority over virtually the entire economy.[15]

The Bureau performs similar functions relating to the entities over which it exercises authority. The Bureau enforces the "Federal consumer financial laws,"[16] and, like the FTC, may prohibit "unfair" (as well as deceptive and abusive) acts or practices–but only against "covered persons" or "service providers" who engage in those practices in connection with consumer financial products or services.[17] The Bureau may initiate administrative proceedings or actions in court to enforce the laws within its authority.[18] And it may collect and publish information relevant to markets for consumer financial products and services; conduct financial education programs; collect consumer complaints; and issue rules to implement consumer financial laws.[19]

Defendants mistakenly contend that the scope of the Bureau's authority is somehow unique because it enforces 19 consumer financial laws.[20] But they fail to note that the FTC enforces or administers 71 different laws, including many of the same laws that the Bureau enforces.[21] Defendants complain that the Bureau can engage in rulemaking.[22] But so can the FTC and many other independent regulatory agencies.[23] Defendants also note that the Bureau can

---

[10] 15 U.S.C. § 45 (1934).

[11] *Humphrey's Ex'r*, 295 U.S. at 621.

[12] 15 U.S.C. § 46(a) (1934).

[13] *Id*. at § 45.

[14] *Id.* at § 46(f).

[15] *See id.* at § 45.

[16] 12 U.S.C. §§ 5481(14), 5511.

[17] *Id.* §§ 5531(a), 5536(a).

[18] *Id.* §§ 5563, 5564.

[19] *Id.* § 5511(c).

[20] *See* Mot. at 5-6.

[21] *Compare* 12 U.S.C. § 5481 (12) (listing the enumerated consumer laws enforced by the Bureau), *with* https://www.ftc.gov/enforcement/statutes?title=&  (listing the laws enforced or administered by the FTC) (last visited July 20, 2017).

[22] Mot. at 5.

[23] *See*, *e.g.*, 15 U.S.C. §§ 46(g), 57a (authorizing FTC to engage in rulemaking); 15 U.S.C. § 78w (same for the Securities and Exchange Commission). Although Defendants focus on rulemaking,

4

conduct investigations and bring enforcement actions. In *Morrison*, the Court recognized that rulemaking and recovery of civil penalties are entirely appropriate functions for independent agencies.[24] And in *Free Enterprise*, the Court held that the Oversight Board—even with its authority to issue rules and seek penalties as "the regulator of first resort and the primary law enforcement authority for a vital sector of our economy"—did not violate the separation of powers so long as the Board was separated from the President "by only a single level of good-cause tenure."[25] Although the Court in *Humphrey's Executor* referred to the FTC's duties as quasi-legislative and quasi-judicial, the Court in *Morrison* recognized that "the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree."[26]

Defendants contend that other features of the Bureau are "extraordinary," but all are features common to most independent agencies, particularly the FTC.[27] In particular, Defendants find it significant that, if a statute gives both the Bureau and another agency rulemaking authority, then only the Bureau may exercise that authority.[28] But most statutes authorize only one agency to issue implementing rules.[29] And although Defendants complain that the President is excluded from the Bureau's rulemaking process,[30] they do not provide any example of any rule issued by an independent agency in which the President somehow participated.

It is also hardly extraordinary that the Director may hire, and delegate tasks to, Bureau employees.[31] This is a routine authority for agency heads.[32] And Defendants are simply wrong when they contend that the Bureau's Director can rule on appeals of administrative proceedings

---

in *National Petroleum Refiners Ass'n v. FTC*, 482 F.2d 672, 685 (D.C. Cir. 1973), the court observed that, based solely on its power to engage in administrative adjudication, the FTC could "exert[] a powerfully regulatory effect on those business practices subject to its supervision."

[24] *Morrison*, 487 U.S. at 692, n.31.

[25] *Free Enter. Fund*, 561 U.S. at 508-09.

[26] *Morrison*, 487 U.S. at 689, n. 27.

[27] *See* Mot. at 5-6.

[28] 12 U.S.C. § 5512(b)(4)(A); *see* Mot. at 5-6.

[29] *See*, *e.g.*, Children's Online Privacy Protection Act, 15 U.S.C. §§ 6501 *et seq.* (only the FTC issues implementing rules, *id.* at § 6502(b)).

[30] *See* Mot. at 5.

[31] *See* Mot. at 6 (citing 12 U.S.C. § 5492(b)).

[32] *See*, *e.g.*, 15 U.S.C. § 42 (authorizing the FTC to hire "attorneys, special experts, examiners, clerks, and other employees as it may from time to time find necessary"); 47 U.S.C. § 154(f)(1) (authorizing the FCC "to appoint such officers, engineers, accountants, attorneys, inspectors, examiners, and other employees as are necessary in the exercise of its functions").

without any oversight,[33] since any party to an administrative proceeding may seek review in a court of appeals of any order issued by the Bureau's Director.[34] Finally, Defendants complain that, "[u]nlike other officials, high and low, each of whom serves at the pleasure of the nationally-elected President, the President may terminate the Director only 'for inefficiency, neglect of duty, or malfeasance [in] office.'"[35] In fact, there are more than a dozen other agencies that perform executive functions and are headed by officials who may be removed only for inefficiency, neglect of duty, or malfeasance in office.[36]

> ## 2.   The Bureau's single-director structure does not make it more difficult for the President to oversee the agency.

The for-cause removal provision in the CFPA is not unconstitutional merely because the Bureau is headed by a single Director instead of a multi-member commission. Defendants note that, in *Humphrey's Executor*, the Court mentioned that FTC Commissioners serve staggered terms.[37] But the Court made that observation and discussed the structure of the FTC only in that portion of its decision in which it addressed whether the removal provision of the FTC Act was intended "to limit the executive power of removal to the causes enumerated[.]"[38] The Court never mentioned the FTC's multi-member structure when it assessed the constitutionality of the for-cause removal provision, nor did it even suggest that structure mattered.[39] If, at the time of *Humphrey's Executor*, or subsequently, the Court believed that the number of officials who lead an agency made a difference to the constitutionality of a removal limitation, it surely would have said so. Even the two judges who in the D.C. Circuit's now-vacated panel decision held that the

---

[33] *See* Mot. at 6 (citing 12 C.F.R. § 1081.405).

[34] 12 U.S.C. § 5563(b)(4).

[35] Mot. at 6.

[36] *See* Marshall J. Breger & Gary J. Edles, *Established by Practice: The Theory and Operation of Independent Federal Agencies*, 52 ADMIN. L. REV. 1111, 1236-94 (2000) (listing independent agencies and indicating which ones are headed by officials who are removable only for cause). So the features of the Bureau that Defendants finds extraordinary are, in fact, not unusual at all. Defendants also claim that "[w]hen the Director's term expires, he continues on until his replacement arrives." *See* Mot. at 6 (citing 12 U.S.C. § 5491(c)(2)). Although the Director may hold over beyond his five-year term, during any hold-over period, the President may remove the Director at will. *See*, *e.g.*, *Swan v. Clinton*, 100 F.3d 973, 986-87 (D.C. Cir. 1996).

[37] Mot. at 8. Defendants complain that, because the Director serves a five-year term, a President during a four-year term might not get to nominate a Director. Because the five FTC commissioners serve staggered seven-year terms, 15 U.S.C. § 41, the President is more likely to get to nominate a Director than he is to nominate a controlling majority of the FTC.

[38] *Humphrey's Ex'r*, 295 U.S. at 624, 626.

[39] *Id.* at 626-32.

Bureau was unconstitutional acknowledged that, as between the single-Director Bureau and a multimember commission, there was "no meaningful difference in responsiveness and accountability to the President."[40] If anything, the Bureau's single-Director leadership only increases the President's power to easily identify the official responsible for any problems.[41]

Defendants mistakenly claim that there is "no historical precedent" for Congress to apply a for-cause removal provision to an agency headed by a single individual, and argue that this is relevant to the constitutional analysis.[42] Congress has created three other independent agencies headed by a single individual who is removable only for cause: the Office of the Special Counsel (1978), the Social Security Administration (1994), and the Federal Housing Finance Agency (2008). And even if the Bureau were unique, "[o]ur constitutional principles of separated powers are not violated . . . by mere anomaly or innovation."[43]

Defendants again cite the vacated panel opinion in *PHH v. CFPB* to tout multi-member commissions as better able to make decisions that are not "extreme, idiosyncratic, or otherwise off the rails."[44] It may be that a multi-member commission would reach decisions more to Defendants' liking, but that has nothing to do with separation of powers. The issue is whether the President has sufficient control over executive officials, not whether fellow commissioners have an impact on one another. *Morrison* holds that, so long as an official may be removed at least for cause, the President "retains ample authority to assure that the [official] is competently performing his or her statutory responsibilities,"[45] and this remains true regardless of how Congress has decided, within the scope of its proper constitutional authority, to establish and structure the leadership of an independent administrative agency.[46]

---

[40] *PHH Corp. v. CFPB*, 839 F.3d 1, 32 (D.C. Cir. 2016), *vacated, reh'g en banc granted*, No. 15-1177 (D.C. Cir. Feb. 16, 2017).
[41] *See CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1088 (C.D. Cal. 2014).
[42] *See* Mot. at 7.
[43] *Mistretta v. United States*, 488 U.S. 361, 385 (1989).
[44] *See* Mot. at 8.
[45] *Morrison*, 487 U.S. at 692.
[46] Defendants cite the Office of Management and Budget's budget proposal, which criticizes the Bureau, and contend that this shows the President has no power to influence the Bureau. Mot. at 9. In fact, this report shows that the President can have an impact on the Bureau not only through for-cause removal, but also through his power to propose legislative changes.

### 3.    The Bureau's funding is not unconstitutional.

There was nothing unconstitutional about Congress's decision to fund the Bureau outside of the annual appropriations process–the same manner in which most other financial regulatory agencies are funded.[47] Defendants cite the Constitution's Appropriations Clause, U.S. Const. art. I, § 8, cl. 1, but nothing in that clause, or anywhere else in the Constitution, requires agencies to be funded through annual appropriations. Thus, "Congress may . . . decide not to finance a federal entity with appropriations," but rather through some other funding mechanism.[48] Further, nothing about the Bureau's funding makes it less accountable to Congress or restricts Congress's "power of the purse,"[49] because as the panel recognized in *PHH v. CFPB*, Congress is free to alter the source of the Bureau's funding at any time.[50]

### 4.    None of Defendants' arguments justifies dismissal of the Complaint.

As explained above, there is nothing unconstitutional about either the for-cause removal provision in the CFPA or the Bureau's funding. But if this Court were to disagree, dismissal would not be an appropriate remedy. When confronted with a constitutional flaw in a statute, a court should "limit the solution to the problem."[51] Dismissal of the Bureau's Complaint does not do that. Instead, the appropriate remedy is to sever any provision that the Court concludes is unconstitutional—so long as Congress would have preferred the law with the offending provisions severed instead of no law at all.[52] Defendants are wrong that Congress would have preferred no law at all. "[W]hen Congress has explicitly provided for severance by including a severability clause in the statute . . . [this] creates a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision."[53] The Dodd-Frank Act includes a severability clause that applies to the CFPA.[54]

---

[47] The CFPA authorizes the Bureau to draw from the earnings of the Federal Reserve System an amount not to exceed 12 percent of the expenses of the Federal Reserve System. 12 U.S.C. § 5497(a).

[48] *Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA*, 388 F.3d 405, 409 (3d Cir. 2004).

[49] *See* Mot. at 10.

[50] *PHH Corp.*, 839 F.3d at 36, n.16. Defendants note that, pursuant to 12 U.S.C. § 5497(a)(2)(C), the House and Senate Appropriations Committees may not review the amounts spent by the Bureau. But this provision does not restrict other committees or action by either the full House or the Senate.

[51] *Free Enter.*, 561 U.S. at 508.

[52] *Id.* at 509.

[53] *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987).

[54] 12 U.S.C. § 5302.

If this Court were to sever any provision that it concludes is unconstitutional, dismissal would be neither necessary nor appropriate. After those provisions had been severed, the Bureau would be headed by a director who was removable by the President at will, and would no longer be funded outside the annual appropriations process. If the President and Congress believed that Defendants should be free to continue to engage in the sorts of practices challenged in the Complaint, the President could instruct the Director to dismiss the Complaint, and if the Director refused, remove the Director, and Congress could preclude the Bureau from spending funds to prosecute the case. This would provide Defendants with all the relief to which they would be entitled.

**B.      Defendants had fair notice that their conduct violates the CFPA and FDCPA.**

      **1.      Defendants had fair notice that servicing loans using inaccurate or incomplete information is unfair.**

In Counts I and VIII, the Bureau alleges that Defendants engaged in unfair conduct by servicing loans using inaccurate and incomplete information in violation of the CFPA and Fair Debt Collection Practices Act ("FDCPA").[55]

Defendants do not argue that the CFPA's prohibition on unfair acts and practices is unconstitutionally vague, nor could they. Courts have uniformly rejected such challenges to the prohibition on unfair conduct in the CFPA and the FTC Act.[56] As the court in *CFPB v. ITT Educational Services Inc.* explained, the "contention that the term 'unfair . . . act or practice' is unconstitutionally vague falters in the face of a century's worth of legislative and judicial guidance establishing and refining the term's meaning."[57]

Defendants instead raise an as-applied challenge to the Bureau's unfairness claims. But they do not argue that they lacked fair notice that servicing loans using inaccurate or incomplete

---

[55] Compl. ¶¶ 226-30, 270-74; s*ee also infra* Section II-A.

[56] *See*, *e.g.*, *CFPB v. D&D Mktg.*, No. 15-9692, 2016 WL 8849698, at *6 -7 (C.D. Cal. Nov. 17, 2016) (unfair and abusive standards not void for vagueness); *CFPB v. ITT Educ. Servs, Inc*., 219 F. Supp. 3d 878, 904 (S.D. Ind. 2015) (same); *Illinois v. Alta Colls., Inc.*, No. 14-C-3786, 2014 WL 4377579, at *4 (N.D. Ill. Sept. 4, 2014) (unfair, deceptive, and abusive standards are not unconstitutionally vague); *FTC v. Wyndham Worldwide Corp*., 799 F.3d 236, 255 (3d Cir. 2015) (unfairness under the FTC Act is not unconstitutionally vague).

[57] *ITT*, 219 F. Supp. 3d at 904; *see also D&D Mkgt.*, 2016 WL 8849698, at *6; *Alta Colls.,* 2014 WL 4377579, at *4.

information is unfair.[58] Rather, Defendants mischaracterize the Bureau's claims as alleging that it is unfair to use a deficient system of record.[59] Using this strawman, Defendants then argue that the Court should dismiss Counts I and VIII because: (1) there are no standards for assessing how accurate or complete a servicing system must be; and (2) they did not have fair notice that a deficient system of record could be an unfair act or practice.[60] Neither argument is applicable to the actual allegations in the Bureau's complaint: that servicing loans based on inaccurate and incomplete information is an unfair act or practice. The Court should therefore reject Defendants' fair notice arguments out of hand.[61]

Defendants' fair notice arguments also fail in light of numerous publicly-accessible materials warning that Defendants' conduct could be considered unfair.[62] In repeated enforcement actions, the FTC[63] and Bureau[64] have alleged that mortgage servicers and debt

---

[58] Defendants have waived such arguments. *See* S.D. Fla. L.R. 7.1(c); *Your Baby Can, LLC v. Planet Kids, Inc.*, No. 10-81266, 2011 WL 197421, at *n. 1 (S.D. Fla. Jan. 20, 2011) (citing *Tallahassee Mem'l Reg. Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446, n. 16 (11th Cir. 1987).

[59] *See* Mot. at 12-13 (describing unfairness claims as: "operating a less-than-perfect loan servicing platform[;]" "having a computer system that is not perfect[;]" "system is not sufficiently accurate[;]" and "system [that] is 'unfair' to consumers is advocacy, not a legal claim").

[60] *Id*. at 13-14. Defendants cite inapposite cases in support of their strawman argument. *See* Mot. at 13-15 (citing *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1313 (S.D. Fla. 2006) (challenge to state wage and hour statute); *Ga. Pac. Corp. v. OSHRC*, 25 F.3d 999, 1005 (11th Cir. 1994) (challenge to term "obstructs forward view" in regulation under OSHA); *Smith v. Goguen*, 415 U.S. 566, 572-73 (1974) (challenge to flag misuse statute that implicated the First Amendment)).

[61] Defendants argue that the Bureau's deception claims in Counts II and IX must be dismissed for the same reasons. Mot. at 17. For the reasons set forth in this Section, these arguments fail.

[62] *Wyndham*, 799 F.3d at 257 (holding that the FTC's prior complaints and consent decrees provided fair notice to defendants, in light of case law requiring only a "sufficient, publicly accessible statement") (citations omitted).

[63] *See, e.g.*, Compl. ¶¶ 12, 16, 17, 24-36, 41-46, *FTC v. EMC Mortg. Co.*, No. 4:08-CV-338 (E.D. Tex. Sept. 8, 2008), *available at* https://www.ftc.gov/enforcement/cases-proceedings/062-3031/emc-mortgage-co (last visited July 20, 2017) (mortgage servicer who failed to pay "attention to the integrity of consumers' loan information" and "neglected to obtain timely and accurate information on consumers' loans," allegedly engaged in unlawful collection and servicing practices in violation of the FTC Act and FDCPA); Compl. ¶¶ 54-55, *FTC v. Asset Acceptance, LLC*, No. 8:12-CV-182 (M.D. Fla. Jan. 30, 2012), available at https://www.ftc.gov/enforcement/cases-proceedings/052-3133/asset-acceptance-llc (last visited July 20, 2017) (alleging that debt collector violated the FTC Act because it was collecting debts without a reasonable basis where it knew or had reason to believe its records contained inaccurate information).

collectors are liable under the CFPA and FDCPA for their use of inaccurate records. In addition, in February 2013, the Bureau issued a bulletin warning servicers of potential risks of violating federal consumer financial law in connection with transfers of servicing.[65] The Bulletin also advised servicers that acquire servicing rights to ensure that they: "convey[] accurate information to consumers";  perform "due diligence . . . to ensure that the servicing platform[s] . . . accurately reflect all account-level information"; and conduct "post-transfer audits . . . to confirm that all data were properly transferred . . . [and] correct[] any identified errors."[66] Defendants thus cannot argue that they lacked fair notice for what should already have been obvious: a servicer cannot rely on inaccurate and incomplete information to service loans and collect debt, particularly where it causes harm to borrowers. The Court should reject Defendants' astonishing and unsupported claims to the contrary.

> **2.  Defendants had fair notice that they must have a reasonable basis for their representations to borrowers.**

In Counts II and IX, the Bureau alleges that Defendants engaged in deceptive conduct in violation of the CFPA and FDCPA by, among other things, making representations to borrowers about amounts due that were not substantiated when Defendants had reason to know that they were relying upon inaccurate or incomplete information.[67] Defendants argue that these claims fail as a matter of law because there is no duty to substantiate under the CFPA, FDCPA, or any existing regulation prior to collecting debts or servicing loans.[68] This argument is contrary to well-established requirements and should be rejected.

---

[64] *See, e.g.,* Consent Order ¶¶ 45-47, 78-81, 103-05, *In the Matter of Encore Capital Grp.*, CFPB No. 2015-CFPB-0022 (Sept. 9, 2015) and Consent Order ¶¶ 63-66, 94-96, *In the Matter of Portfolio Recovery Ass'n.,* CFPB No. 2015-CFPB-0023 (Sept. 9, 2015), both available at https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-action-against-the-two-largest-debt-buyers-for-using-deceptive-tactics-to-collect-bad-debts/ (last visited July 20, 2017) (same, but for debt buyers under the CFPA); Compl. ¶ 76-79, *CFPB v. Green Tree Servicing*, No. 15-2064 (D. Minn. Apr. 15, 2015), available at https://www.consumerfinance.gov/about-us/newsroom/cfpb-and-federal-trade-commission-take-action-against-green-tree-servicing-for-mistreating-borrowers-trying-to-save-their-homes/ (last visited July 20, 2017) (same, but for mortgage servicer under the CFPA and FTC Act).
[65] CFPB, CFPB Bulletin 2013-01: Mortgage Servicing Transfers, at 4 (February 11, 2013), available at http://files.consumerfinance.gov/f/201302_cfpb_bulletin_on_servicing-transfers.pdf, (last visited July 20, 2017).
[66] *Id.*
[67] Compl. ¶¶ 231-34, 275-78, *see also infra* Section II-B.
[68] Mot. at 28-29.

The deception standard under the FTC Act requires that a person have a reasonable basis for their representations.[69] The FTC specifically applied this requirement to mortgage servicers in *FTC v. EMC Mortgage Corp.*,[70] in which the FTC alleged in its Complaint that the defendant "lacked a reasonable basis for its representations to borrowers, because it failed to obtain accurate and complete information about the consumer's loan account *before* making the representation."[71] Like the Bureau's Complaint, the FTC's Complaint alleged that the defendant in *EMC* had "indications that the loan data obtained from prior servicers and loaded onto its servicing system was likely inaccurate or unverified, [but] nonetheless used that data to make representations to borrowers about their loans."[72] Since *EMC*, the FTC and Bureau have filed several enforcement actions, all of which are publicly accessible on the FTC's or Bureau's websites, affirming that servicers and debt collectors must: (1) have a reasonable basis for their representations to borrowers before communicating such representations to borrowers; and (2) cannot make representations where there is reason to know that the underlying information is inaccurate or incomplete.[73] Further, in a July 10, 2013 Bulletin, the Bureau described potential debt collection acts or practices that could be considered deceptive under the CFPA, and specifically warned that implied representations about a consumer's debt should be supported and that "[e]nsuring that claims are supported before they are made will minimize the risk of omitting material information and/or making false statements that could mislead consumers."[74]

---

[69] *See FTC v. Pantron I Corp.*, 33 F.3d 1088, 1096 (9th Cir. 1994) (claims misleading because "advertiser lacked a reasonable basis for asserting that the message was true") (citation omitted).

[70] Compl. ¶ ¶ 33-36, 41-43, *EMC Mortg. Corp.*, No. 4:08-CV-338 (E.D. Tex. Sep. 8, 2008), available at https://www.ftc.gov/enforcement/cases-proceedings/062-3031/emc-mortgage-co, (last visited July 20, 2017) (alleging that this conduct was deceptive under the FTC Act and referenced defendants' "deceptive means to collect or attempt to collect a debt" in its FDCPA counts). The defendant eventually agreed to pay $28 million in redress to harmed borrowers to resolve allegations in the FTC's Complaint. Stipulated Final Judgment and Order, No. 4:08-CV-338 (E.D. Tex. Sep. 9, 2008), available at above link.

[71] *Id.*¶ 16 (emphasis added).

[72] *Id.*

[73] *See supra* notes 63 and 64.

[74] CFPB, CFPB Bulletin 2013-07: Prohibition of Unfair, Deceptive, or Abusive Acts or Practices in the Collection of Consumer Debts, at 3 (July 10, 2013), available at: http://files.consumerfinance.gov/f/201307_cfpb_bulletin_unfair-deceptive-abusive-practices.pdf, (last visited July 20, 2017). Defendants ignore the publicly-available materials providing them with notice, and attempt to distract the Court by arguing that the Bureau must first engage in

In sum, Defendants had ample notice that their conduct could be prohibited under the CFPA (Count II) and FDCPA (Count IX).[75] The Court should reject its arguments to the contrary.

### C.    The CFPA authorizes the Bureau to bring unfairness actions.

The CFPA authorizes the Bureau to bring unfairness actions in federal court. Subtitle E of the CFPA authorizes the Bureau to, among other things, commence a civil action or administrative proceeding against any person that violates Federal consumer financial law.[76] Section 5531(a) of subtitle C provides that "the Bureau may take any action authorized under subtitle E to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice . . . ."

Despite this clear statutory mandate, Defendants argue that the CFPA requires the Bureau to first "declare" an act or practice unfair through a rulemaking or administrative proceeding before commencing an action in federal court.[77] Nothing in the text of the CFPA supports this argument. Section 1031(c), upon which Defendants rely, defines unfairness.[78] And in decades of FTC actions and recent Bureau actions, no court has ever held that the FTC or Bureau is required to "declare" an act or practice unfair through a rulemaking or administrative adjudication before

---

rulemaking before enforcing the CFPA or FDCPA. Mot. at 28. As more fully discussed *infra* in Section I-C, the Bureau is not required to engage in rulemaking prior to enforcing these statutes.
[75] Defendants make unsupported arguments that it lacked fair notice for Counts III and IV. *See* Mot. at 33-34. For the reasons set forth in Section I-B, these arguments fail. Further, courts have found that allegations similar to those in Count III (foreclosing on borrowers performing on loan modification agreements) meet the Rule 12(b)(6) standard for state law unfairness and deception claims. *See, e.g., Khan v. OneWest Bank*, No. 16-8074, 2017 WL 1344535, at *8 (N.D. Ill. April 12, 2017) (allowing state unfairness and deception claims where borrower alleged that Ocwen tricked her into making timely payments under a loan modification agreement but then treated her as if she was in default); *Wigod v. Wells Fargo Bank, NA*, 673 F.3d 547, 575-576 (7th Cir. 2012) (allowing state unfairness and deception claims where borrower alleged that servicer failed to honor her trial modification agreement and provide her with a permanent modification, even though she made all required trial payments). As to Count IV, even Defendants' head of Loss Mitigation understood that such conduct would result in "a UDAP every single time." Compl. ¶ 199.
[76] 12 U.S.C. §§ 5564(a), 5565(a).
[77] Mot. at 15 (citing 12 U.S.C. § 5531(c)). Defendants argue that the deception claims at Counts II and IX fail for the same reason. *See* Mot. at 17. 12 U.S.C. § 5531(c), however, only relates to unfairness, not deception. For this and other reasons set forth below, Defendants' arguments about the deception claims in Counts II and IX also fail.
[78] 12 U.S.C. § 5531(c).

commencing an enforcement action.[79] In fact, they have held the opposite: the Bureau need not engage in rulemaking or administrative adjudication before filing suit in federal court.[80]

Further, Defendants misconstrue the "declare" language in the CFPA, which was modeled after the FTC Act.[81] Much like the FTC in *Wyndham,* the Bureau is not "declaring" conduct unfair through its lawsuit; rather, it is asking for the "ordinary judicial interpretation of a civil statute."[82] Thus, the operative due process question is whether the defendants has "fair notice that its conduct could fall within the meaning of the statute[,]" not whether they had notice of the Bureau's interpretation of unfairness.[83] Nonetheless, as discussed *supra* in Section I-B, Defendants had fair notice that their use of inaccurate and incomplete information to service mortgage loans and collect debts could fall within the meaning of and be considered unfair and deceptive under the CFPA and FDCPA. The Court should reject Defendants' attempt to rewrite the CFPA to require a rulemaking or adjudication before bringing an enforcement action.

### D.    The 2013 Consent Judgment does not preclude any claims.

Defendants seek immunity from federal law by arguing that the Bureau, along with 49 states and D.C., in entering into a 2013 Consent Judgment with the Defendants ("Consent Judgment"), relinquished its authority to bring certain claims, and under the principles of *res judicata* and waiver, is precluded from bringing such claims.[84] This argument is contrary to the express language of the Consent Judgment and well-established case law relating to *res judicata* and the waiver of sovereign authority.

---

[79] *See*, *e.g.*, *D&D Mktg.,* 2016 WL 8849698, at * 7 (holding that the Bureau need not first engage in rulemaking before bringing unfairness and abusive claims); *FTC v. Wyndham*, 10 F. Supp. 3d 602, 617-21 (D.N.J. 2014), *aff'd* 799 F.3d 236 (3d Cir. 2015) (holding that FTC did not first need to engage in rulemaking before bringing unfairness action in court). The decisions Defendants cite do not relate to the term "unfairness" or otherwise limit the Bureau's authority to commence unfairness actions. *See* Mot. at 14-15 (citing *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 295 (1974) (holding that the NRLB is *not* required to proceed by rulemaking, as opposed to adjudication, in determining whether particular buyers are "managerial employees"); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158-59 (2012) (holding that agency cannot announce a new interpretation of a *regulation* in an administrative proceeding)).

[80] *D&D Mktg.,* 2016 WL 8849698, at * 7; *Wyndham*, 10 F. Supp. 3d at 617-21.

[81] *Compare* 15 U.S.C. § 45(n) *with* 12 U.S.C. § 5531(c); *see CFPB v. Gordon*, 819 F.3d 1179, 1193, n. 7 (9th Cir. 2016); *D&D Mktg.*, 2016 WL 8849698, at * 6-7; *ITT*, 219 F. Supp. 3d at 903-04; *Alta Colls., Inc.*, 2014 WL 4377579, at *4.

[82] *Wyndham*, 799 F.3d at 253-54.

[83] *Id.* at 253-54.

[84] Mot. at 17-23.

14

### 1. The express terms of the 2013 Consent Judgment do not release future claims against Defendants.

The Consent Judgment did not release Defendants from liability for any counts in the Bureau's Complaint. In interpreting a consent judgment, the Court must look to the four corners of the document.[85] Here, there are three sections of the CFPB Release ("Release"), attached as Exhibit E to the Consent Judgment, that are determinative.

First, Section B sets forth the terms of the release: "[T]he CFPB fully and finally releases the Released Parties from all potential liability that has been or might have been asserted by the CFPB relating to the mortgage servicing practices described in the complaint (the "Mortgage Servicing Practices") that have taken place as of 11:59 p.m., Eastern Standard Time, on December 18, 2013."[86] By its express terms, the release is limited to conduct that occurred on or before December 18, 2013 ("Released Conduct"), not, as Defendants argue, to the conduct after that date that is the subject of the Bureau's complaint. Section B's use of "liability that has been or might have been asserted" confirms that the release does not cover future conduct.[87]

Second, Section C sets forth the Bureau's express reservation of rights: "Notwithstanding any other term of this Release, the CFPB specifically reserves and does not release any liability for conduct other than conduct related to the Mortgage Servicing Practices asserted or that might have been asserted in the complaint."[88] By the express terms, the Bureau "specifically" reserves its rights as to all conduct other than the Released Conduct.

Third, Section E provides: "Nothing in this Release shall limit the CFPB's authority with respect to Released Parties, except to the extent the CFPB has herein expressly released claims."[89] Section E thus affirms the Bureau's continued authority, which includes the authority to bring an action such as this one that does not relate to the Released Conduct.

Defendants' silence on the actual language in Sections B, C, and E of the Release is deafening.[90] Unable to find support in the actual language of the Release, Defendants resort to arguing that the relief provisions of the Consent Judgment, namely the "Servicing Standards"

---

[85] *See Reynolds v. Roberts*, 202 F.3d 1303, 1312 (11th Cir. 2000) ("the rules we use to interpret a consent decree are the same ones we use to interpret a contract").
[86] Consent Judgment at E-3 ¶ B, *CFPB v. Ocwen Fin. Corp.*, No. 13-cv-2025 (D.C. Cir. 2013).
[87] *Id.*
[88] *Id.* ¶ C.
[89] *Id.* ¶ E.
[90] Defendants have waived any arguments relating to the Release. *See supra* note 58.

15

that were required as an additional layer of protection for borrowers (in addition to federal and state law)[91] and tested by an independent monitor ("Monitor Testing"), somehow preclude the Bureau from bringing this action.[92] But Defendants do not and cannot point to any language in the Consent Judgment or Release that makes the remedies available for testing failures the *exclusive* remedy for any future violations of federal consumer financial law.[93] Instead, Defendants argue that the Bureau implicitly waived its right to bring this action by agreeing to the servicing standards and Monitor Testing.[94] This implied waiver argument is contrary to the Supreme Court's "often-repeated admonition" that contracts should be construed, if possible, to avoid foreclosing exercise of sovereign authority[95] for "[s]uch a waiver of sovereign authority will not be implied, but instead must be "'surrendered in unmistakable terms.'"[96] Here, the express, unambiguous terms of the Release make clear that the Court should reject Defendants' claim that the Consent Judgment precludes the enforcement of federal law against them.

> ### 2.     *Res judicata* does not apply to the Bureau's claims.

Having failed to find any support for their arguments in the actual language of the Consent Judgment and Release, Defendants argue that the Bureau's claims are barred under the doctrine of *res judicata*. Defendants cannot establish that the Bureau's claims in this action could have been asserted in the prior action, and accordingly, *res judicata* does not apply.[97]

The Eleventh Circuit has held that claims that could have been brought in an early litigation include claims that were "in existence at the time the original complaint is filed or claims *actually* asserted by supplemental pleadings *or otherwise* in the earlier action," but not "claims which arise after the original pleading is filed in the earlier litigation."[98] As discussed above, the Consent Judgment was limited to claims the Bureau asserted or could have asserted

---

[91] Even if the alleged conduct violates the Consent Judgment and Federal consumer financial laws, the Bureau has discretion as to which source of law it enforces. *See infra* note 150.

[92] Mot. at 17-20.

[93] The Consent Judgment only discusses actions to enforce the Consent Judgment and relief that the parties may seek in such actions. Consent Judgment at D-13 to D-15 ¶ I, *CFPB v. Ocwen Fin. Corp.*, No. 13-cv-2025 (D.C. Cir. 2013).

[94] Mot. at 22-23.

[95] *Bowen v. Public Agencies Opposed to Social Sec. Entrapment*, 477 U.S. 41, 52-53 (1986).

[96] *United States* v. *Cherokee Nation of Okla.*, 480 U.S. 700, 707 (1987) (citing *Bowen*, 477 U.S. at 52); *see also Merrion* v. *Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982).

[97] *See Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir.1992) (citation omitted).

[98] *Id.* (emphasis added).

16

relating to servicing conduct that occurred on or before December 18, 2013.[99] In this action, the servicing claims that Defendants claim are barred by *res judicata* relate to conduct that has taken place "since January 2014."[100] Further, some of these claims are based on regulations ***that were not even in effect until January 10, 2014***.[101] Thus, the Bureau's claims in this litigation were not–***and could not have been***–in existence at the time of the Consent Judgment. Even Defendants do not dispute this.

Instead, Defendants cite to factually distinguishable cases in which courts applied *res judicata* where the relief sought in a subsequent action was expressly limited by a prior consent order,[102] or to preclude parties in trademark actions from re-litigating trademark infringement issues that were agreed to in a prior settlement.[103] Nothing in these decisions supports Defendants' unpersuasive arguments that: (1) the Consent Judgment and Release limit the Bureau's ability to remedy federal law violations to the Monitor Testing; and (2) the Bureau's claims in this action are the same as the claims in the Consent Judgment.[104] To the contrary, Defendants' case law bolsters the Bureau's position that the express terms of the Consent Judgment and Release apply and are determinative.

---

[99] Defendants' unfair and deceptive conduct relating to add-on products do not relate to the "Mortgage Servicing Practices" subject to the Consent Order and Release. Defendants implicitly acknowledge this by not arguing that the Bureau's add-on claims (Counts V and VI) are subject to or precluded under the Consent Judgment.

[100] *See* Compl. ¶¶ 227 (Count I), 236 (Count III), 240 (Count IV), 258, 260-261 (Count VII), 271 (Count VIII), 285, 287 (Count X), 294, and (Count XIII), 298, 303-307.

[101] *Id.* at ¶¶ 258, 260-261 (Count VII – Reg. Z) and 298, 303-307 (Count XIII – Reg. X).

[102] *Gates v. Towery*, 456 F. Supp. 2d 953, 963-65 (N.D. Ill. 2006) (holding that the plaintiff's due process claim for ***injunctive relief*** was barred under *res judicata* because of prior consent decree's express limitation to equitable relief; claim for damages was not barred); *In re Methyl Tertiary Butyl ("MTBE") Prod. Liab. Litig.*, No. M21-88, 2015 WL 5051660, at *2-3 (S.D.N.Y Aug. 26, 2015) (holding that where the plaintiff had already ***expressly released claims*** for ***continuing*** nuisance actions, it could not bring a continuing nuisance action relating to the same ongoing groundwater contamination).

[103] *World's Finest Choc. Inc. v. World Candies, Inc.*, 409 F. Supp. 840, 844-45 (N.D. Ill. 1976) (holding that defendant was barred under *res judicata* from using plaintiff's trademark where prior consent judgment between the parties enjoined defendant from using plaintiff's trademark); *Affiliated Hosp. Prods, Inc. v. Merdel Game Mfg.*, 513 F.2d 1183, 1185-88 (2d Cir. 1975) (rejecting plaintiff's request to rescind the settlement agreement and holding plaintiff to express limitations on use of defendant's trademark that plaintiff had agreed to in settlement agreement).

[104] Mot. at 21-22.

17

Finally, the Bureau's express reservation in Section C of the Release forecloses the application of *res judicata* to the Bureau's claims in this action.[105] Contrary to the distinguishable cases Defendants rely upon, as detailed above, the Bureau has: (1) expressly released only those mortgage servicing claims that have taken place as of December 18, 2013; (2) expressly reserved all other remaining claims after December 18, 2013; and (3) expressly reserved the Bureau's authority, except as to the released claims. In sum, there is no basis for this Court to preclude any of the Bureau's claims under the doctrine of *res judicata*.

## II.      The Complaint states claims for relief.

Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"[106] In ruling on a motion to dismiss, the "court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff."[107] A claim should only be dismissed under Rule 12(b)(6) where the facts alleged fail to allege a "plausible" claim for relief.[108] A claim is plausible if the plaintiff alleges facts that "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[109] This is a "liberal pleading requirement . . . that does not require a plaintiff to plead with particularity every element of a cause of action."[110] All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests.[111]

As an initial matter, Defendants argue that the Court should dismiss the Complaint in its entirety because, they claim, the Bureau's incorporation by reference of paragraphs 1-220 into each of its Counts constitutes an impermissible "shotgun" pleading.[112] This argument fails because, as the Eleventh Circuit has explained, a complaint is only an impermissible shotgun

---

[105] *See*, *e.g.*, *Norfolk S. Corp. v. Chevron, USA*, 371 F.3d 1285, 1289 (11th Cir. 2004) (holding that "parties may avoid part of the *res judicata* effect of a consent-based dismissal simply by making an 'express reservation' of the right to sue on a particular claim in the future").

[106] FED. R. CIV. PROC. 8(a)(2).

[107] *Mason v. Colse, Scott & Kissane*, No. 07-80103-Civ, 2008 WL 2051359, at *1 (S.D. Fla. May 13, 2008) (citing *Erickson v. Pardus*, 551 U.S. 89, 94  (2007); *see also CFPB v. Frederick J. Hanna & Assocs.*, 114 F. Supp. 3d 1342, 1348 (N.D. Ga. 2015) (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)).

[108] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007).

[109] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[110] *Kaplan v. Lappin*, No. 10-80227, 2010 WL 2889219, at *1 (S.D. Fla. July 20, 2010) (citing *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2011)).

[111] *Mason,* 2008 WL 2051359, at *1 (citations omitted).

[112] Mot. at 23-24.

18

pleading if it incorporates each preceding ***count***, not each preceding ***paragraph***.[113] Further, even if this was an improper shotgun pleading, which it is not, the only remedy would be a more definite statement, pursuant to Rule 12(e), not dismissal.[114] As discussed further below, the Bureau's Complaint contains detailed, organized allegations in support of each claim, and is sufficiently definite to enable Defendants to know with what they are charged and to respond to the allegations. That is all that Rule 8(a) requires.

### A. The Bureau adequately alleges that Defendants have engaged in unfair acts or practices (Counts I, VIII).

The Bureau adequately alleges that Defendants' servicing of loans based on inaccurate and incomplete information constitutes an unfair act or practice under the CFPA and FDCPA. An unfair practice is one that: (1) "causes or is likely to cause substantial injury to consumers"; (2) that "is not reasonably avoidable by consumers"; and (3) "is not outweighed by countervailing benefits to consumers or to competition."[115]

Defendants do not dispute the adequacy of the allegations concerning the second and third elements of the Bureau's unfairness claims; they only challenge the adequacy of the allegations that their conduct caused or is likely to cause substantial injury.[116] Specifically, Defendants argue that the Bureau has not provided "any factual particulars to support the notion that [Defendants'] data systems and processes have been the *cause* of any consumer injury[.]"[117] Defendants also argue that the Bureau has only offered "hedged conjecture" that their conduct causes or is likely to cause substantial injury to consumers.[118] Neither argument has merit.

As with its fair notice challenge, Defendants attack the Bureau's unfairness allegations by mischaracterizing the Bureau's unfairness claims. The Bureau is not, as Defendants contend, alleging that Defendants' deficient system of record is unfair. Rather, the Bureau alleges that Defendants have engaged in unfair conduct by servicing loans using inaccurate and incomplete

---

[113] *Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313, 1324 (11th Cir. 2015).

[114] *See Your Baby Can, LLC,* 2011 WL 197421, at *1 (citing *Anderson v. District Board of Trustees of Central Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996)).

[115] 12 U.S.C. § 5531(c)(1); 15 U.S.C. § 1692f.

[116] Mot. at 16-17.

[117] *Id.* at 16.

[118] *Id.*

information, as clearly described in Count I and Count VIII, which are captioned: "Ocwen's Use of Inaccurate and Incomplete Information to Service Loans is Unfair."[119]

Turning to the actual unfairness claims, the Bureau alleges, in extensive detail, that Defendants' use of inaccurate and incomplete loan information caused or is likely to cause substantial injury to consumers. Section II-A through C, at paragraphs 35-68 of the Complaint, first describe the main causes of Defendants' inaccurate and incomplete information: their loading of inaccurate and incomplete loan information onto their system or record; their use of a deficient system of record resulting in errors in borrowers' accounts; and their reliance on manual data entry and insufficient control reports. Subsections II-A through C also provide examples of Defendant's use of inaccurate or incomplete loan information, including loan terms and loss mitigation-related information, to service loans.[120] In Section II-D, the Bureau then alleges that Defendants:

- Serviced loans based on, and communicated to borrowers, inaccurate and incomplete information, including information relating to borrowers' loan terms, amounts received from and owed by borrowers, escrow amounts, insurance amounts, and/or loss mitigation and foreclosure information, as more fully set forth in Section III;[121] and

- That Defendants' use of inaccurate and incomplete information causes or is likely to cause substantial harm to borrowers,[122] including by collecting or attempting to collect inaccurate amounts from borrowers, failing to timely pay borrowers' insurance policies, providing borrowers loan modifications with inaccurate terms, and initiating wrongful foreclosures.[123]

In Section III, the Bureau also alleges that Defendants' servicing failures, including their use of inaccurate and incomplete information to service borrowers' loans, have caused harm to

---

[119] Compl. ¶¶ 227-228 (Count I), 271-272 (Count VIII); *see also* Complaint, Section II, captioned: "OCWEN HAS SERVICED LOANS BASED ON INACCURATE AND INCOMPLETE BORROWER LOAN INFORMATION."

[120] *See*, *e.g.*, *id.* ¶¶ 46 (alleging that the verification process revealed errors in loan terms, interest rates, maturity dates and other loan terms the Defendants have been using to service loans) and 63 (alleging that errors resulted in Defendants' sending 1,800 borrowers permanent loan modification agreements that contained incorrect terms such as interest rates and maturity dates).

[121] *Id.* ¶ 71.

[122] *Id.* ¶¶ 69-72.

[123] *Id.* ¶ 71.

borrowers in at least eight different ways described in each separate subsection. For example, in Section III-A ("Ocwen has mishandled borrowers' payments"), the Bureau alleges that Defendants failed to accurately credit and apply borrower payments, and failed to correct billing and payment errors, all of which led to Defendants using inaccurate and incomplete information relating to amounts received from and owed by borrowers when servicing loans.[124] The Bureau also alleges that Defendants' reliance on this inaccurate and incomplete information has resulted in Defendants causing substantial harm to borrowers, including by imposing improper late fees, reporting incorrect negative credit information about borrowers, and wrongly threatening borrowers with foreclosure.[125] The Bureau repeats this pattern of allegations in Subsections B (escrow), C (hazard insurance), D (purchase mortgage insurance), and H (foreclosure) in alleging that Defendants relied upon inaccurate and incomplete information relating to escrow amounts, insurance amounts, and foreclosure, which resulted in substantial harm to borrowers.

In each unfairness Count (Counts I and VIII), the Bureau incorporates by reference the allegations from Paragraphs 1-220, such as those described above, and then summarizes the relevant allegations in each Count:

- Paragraphs 227 (Count I) and 271 (Count VIII) summarize the allegations in Section II: that Defendants serviced loans based on inaccurate and incomplete information because: (i) they input inaccurate and incomplete information into its system of record; (ii) their deficient system of record generated additional inaccuracies; and (iii) manual processes failed to identify and correct errors;

- Subparts (a) through (e) of paragraphs 227 (Count I) and 271 (Count VIII) summarize the types of inaccuracies in the loan information, such as inaccurate loan terms, escrow amounts, and foreclosure information; and

- Paragraphs 228 (Count I) and 272 (Count VIII) describe the types of resulting substantial injuries, such as misapplying borrower payments, collecting and billing inaccurate amounts, and conducting unlawful foreclosure sales caused by Defendants' servicing of loans based on inaccurate and incomplete information.

In sum, the detailed allegations in Sections II and III, and Counts I and VIII, adequately allege that Defendants engaged in unfair conduct in violation of the CFPA and FDCPA.

---

[124] *Id.* ¶¶ 74, 82, 84-86, 89, 90.
[125] *Id.* ¶ 92.

**B.      The Bureau adequately alleges that Defendants have engaged in deceptive acts and practices (Counts II and IX).**

**1.      Rule 9(b) does not apply to the Bureau's deception claims.**

Rule 9(b)'s heightened pleading standard does not apply to the Bureau's deception claims. In *FTC v. Sterling Precious Metals, LLC*, this Court held that Rule 9(b) does not apply to deceptions claims brought under the FTC Act.[126] The Court found the rationale from the Tenth Circuit in *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192 (10th Cir. 2005) persuasive: "A § 5 [deception] claim [under the FTC Act] simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b) . . . . Unlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation."[127] The same rationale applies to deception claims under the CFPA, which even Defendants acknowledge "mirror" the standard for deception claims under the FTC Act.[128]

For this same reason, the court in *CFPB v. Frederick J. Hanna & Assoc., P.C.* refused to apply Rule 9(b) to the Bureau's deception claims under the CFPA and the FDCPA.[129] The *Hanna* court first noted that deception claims under the CFPA and FDCPA are analyzed in the same manner as deception claims under the FTC Act.[130] The court then quoted the same language from *Freecom* that this Court quoted in *Sterling Precious Metals* to distinguish deception claims under the FTC Act from common law fraud claims.[131] In ruling that Rule 9(b) did not apply to the Bureau's claims, the court explained that imposing a heightened pleading

---

[126] *FTC v. Sterling Precious Metals, LLC*, No. 12-80597-CIV, 2013 WL 595713, at *3 (S.D. Fla. Feb. 15, 2013).
[127] *Id.* (quoting *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, n. 7 (10th Cir. 2005) (internal quotations omitted)).
[128] Mot. at 26; *see also Gordon*, 819 F.3d at 1192-93 (citing the elements for an FTC deception claim in *Pantron I Corp.*, 33 F.3d at 1095, for elements of CFPA deception claim).
[129] *Hanna*, 114 F. Supp. 3d at 1371-72.
[130] *Id.* at 1371; *see also Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174-75 (11th Cir. 1985) (analogizing claims under the FDCPA to claims under the FTC Act).
[131] *Hanna*, 114 F. Supp. 3d at 1371 (quoting *Freecom*, 401 F.3d at 1204, n. 7.); *see also Prophet v. Myers*, 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008) (quoting *Neild v. Wolpoff & Abramson, LLP*, 453 F.Supp.2d 918, 923 (E.D. Va. 2006) ("[E]stablishing a violation of [the FDCPA] is a substantially different matter than establishing common law fraud . . . . [A] plaintiff . . . need not prove actual reliance on a false representation . . . [nor] establish actual damages[.]")); *cf.* Order Denying Defendants Motion to Dismiss at 10-11, *CFPB v. Howard*, No. 8:17-cv-00161 (C.D. Cal. May 26, 2017) (refusing to apply Rule 9(b) to substantial assistance claim under the Telemarketing Sales Rule because it "does not sound in fraud"). A copy of *Howard* is attached at Exhibit A.

22

standard is "not only inconsistent with some of the policy reasons for applying Rule 9(b) in the first place, but is also inconsistent with the remedial nature of consumer protection statutes."[132]

Defendants ignore *Hanna* and *Freecom*, and instead cite to an unpublished decision, *Jackson v. Genesys Credit Management*, to argue that Rule 9(b) applies to misleading debt collection communications under the FDCPA.[133] The court in *Jackson* made no such broad pronouncement. The court only applied Rule 9(b) in that instance because the plaintiff ***expressly alleged*** that the defendant had engaged in fraud.[134]

The Court should reject Defendants' argument and reliance upon *Jackson*. Instead, consistent with this Court's decision in *Sterling Precious Metals*, as well as the decisions in *Freecom* and *Hanna*, the Court should hold that Rule 9(b) does not apply to the Bureau's deception claims under the CFPA and FDCPA.

### 2.    The Bureau adequately alleges its deception claims.

The Bureau adequately alleges that Defendants made deceptive representations in violation of the CFPA and the FDCPA. Under the CFPA, an act or practice is deceptive if: (1) there is a representation; (2) it is likely to mislead a consumer acting reasonably under the circumstances; and (3) the misleading act or practice is material.[135] The standard is the same under the FDCPA, except the second element is assessed from the perspective of the least sophisticated consumer.[136]

Defendants argue that the Bureau's allegations are deficient because they purportedly do not identify the representations at issue or provide sufficient detail that the alleged representations were material or likely to mislead.[137] This is untrue. The Bureau's Complaint

---

[132] *Hanna*, 114 F. Supp. 3d at 1373.

[133] Mot. at 26 (citing *Jackson v. Genesys Credit Management*, No. 06-61500-CIV, 2007 WL 4181024, at *1-3 (S.D. Fla. Nov. 21, 2007).

[134] *Jackson*, 2007 WL 4181024, at *1-3.

[135] *See* CFPB Supervision and Examination Manual at UDAAP 5 (p. 178 of 924), available at http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf (last visited July 20, 2017); *Gordon*, 819 F.3d at 1192-93, n.7.

[136] *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193-1194 (11th Cir. 2010); *Hanna*, 114 F. Supp. 3d at 1368.

[137] Mot. at 27. Defendants also argue that the allegations fail to provide sufficient detail about the maker, content, misleading nature, or impact of the alleged deceptive representations, and that the Bureau has not identified which or how many consumers received deceptive representations. *Id*. Defendants provide no legal authority, however, that requires such detail under Rule 8's plausibility standard. As set forth above, the Bureau meets this standard.

contains extensive allegations identifying the types of deceptive representations that Defendants have made, why they were misleading, and, though it is obvious, how they are material.

Sections III-A, B, and C of the Complaint describe Defendants' failures in the areas of handling borrowers' payments, escrow, and insurance that form the basis for the deception claims in Counts II and IX. In each section, the Bureau includes allegations that:

- Identify the federal consumer laws that the Bureau alleges Defendants violated, including the CFPA's and FDCPA's prohibition on deceptive conduct;[138]

- Describe the numerous ways in which Defendants have made errors in borrowers' accounts;[139]

- Describe how these errors resulted in Defendants communicating inaccurate information to borrowers;[140] and

- Allege that these deceptive representations were material and likely to mislead borrowers acting reasonably under the circumstances.[141]

Each section concludes by describing the harm to borrowers and includes representative examples of borrower narratives about the types of deceptive representations Defendants have made and the harm they have caused (*i.e.*, why the representations are material).[142] For example, one borrower complained that Defendants sent him an inaccurate payoff quote—which Defendants later admitted—that caused the borrower's pending property sale to fall through.[143] This borrower's experience with Defendants illustrates the obvious: deceptive representations to borrowers about their loan balance, delinquency status, unpaid fees, reinstatement amount, payoff amount, or other amounts due are material.[144]

In each deception Count (Counts II and IX), the Bureau incorporates by reference the allegations from Paragraphs 1-220, such as those described above. The Bureau then summarizes the relevant allegations in the next three paragraphs in each deception Count: Paragraphs 232

---

[138] *See* Compl. ¶¶ 80 (borrower payments), 104 (escrow), 131 (insurance).
[139] *Id.* ¶¶ 81-90 (borrower payments), 105-119 (escrow), 132-139 (insurance).
[140] *Id.* ¶¶ 91 (borrower payments), 120 (escrow), 140 (insurance).
[141] *Id.*
[142] *Id.* ¶¶ 92-99 (borrower payments), 121-128 (escrow), 141-143 (insurance).
[143] *Id.* ¶ 99.
[144] *See FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1266 (S.D. Fla. 2007) ("A representation is material if it is of a kind usually relied upon by a reasonably prudent person.") (citing cases); *FTC v. AMG Services, Inc.*, 29 F. Supp. 3d 1338, 1351-52 (D. Nev. 2014 ) (lenders' deceptive representations about loan terms are material).

(Count II) and 276 (Count IX) identify the specific types of representations Defendants made to borrowers: "that their loans have certain unpaid balances; monthly payments; delinquency statuses; unpaid fees; reinstatement amounts; escrow amounts due; payoff amounts due; insurance amounts due; and/or other amounts due." These are the representations that are referenced in Sections III-A, B, and C. Paragraphs 233 and 277 then allege that these representations were false, misleading, or not substantiated.

In sum, the detailed allegations in Section III, along with the allegations set forth in Counts II and IX, adequately allege that Defendants engaged in deceptive acts and practices in violation of the CFPA and FDCPA.

### C.     The Bureau adequately alleges that Defendants' foreclosure practices violate the CFPA and Regulation X (Counts III, IV, and XIII).

The Bureau adequately alleges that Defendants engaged in unlawful foreclosure practices in violation of the CFPA and Regulation X in Counts III, IV, and XIII. Defendants make various arguments as to why these claims must be dismissed. None have merit.

First, the Bureau has adequately pled Count III, which alleges that Defendants breached contracts with borrowers by foreclosing on their loans even though the borrowers were performing on loss mitigation agreements.[145] Defendants feign confusion about what this means and argue that these allegations are somehow not sufficient.[146] Count III clearly alleges it is unfair to foreclose on a borrower when he or she is performing on an agreement for loss mitigation, such as when Defendants have breached a loan modification contract and foreclosed on a borrower.[147] The allegations in Section II-H of the Complaint, which are incorporated by reference into Count III, make this clear, and include allegations that Defendants foreclosed on borrowers who were making trial payments according to the terms of a loan modification agreement and on borrowers who should have been subject to a foreclosure hold because they had a loan modification or other loss mitigation agreement.[148] These allegations more than meet

---

[145] Compl. ¶¶ 236-37.
[146] Mot. at 34.
[147] Defendants claim they lack specific information as to what "loss mitigation options" mean, but praise themselves for modifying borrowers' loans, Mot. at 1. Defendants also claim that the 2013 Consent Judgment addressed the very loss mitigation options that are the subject of the Complaint and state of Count III: "This allegation is completely covered by Servicing Standards IV.B.1, IV.B.2, and IV.B.11 (no referral to foreclosure while a loan or trial modification is pending), and Metric 1 (testing for such errors)." *Id*. at 20.
[148] Compl. ¶¶ 192, 200.

Rule 8(a)'s plausibility standard. Defendants' reliance on potential factual defense to these claims, such as a purported lack of borrower harm, is premature and not a basis for dismissing the claim.

Second, Defendants move to dismiss Counts III and IV, which concern unfair and deceptive foreclosure practices under the CFPA, on the grounds that Regulation X (specifically Section 41) precludes such Counts. Regulation X, which is promulgated under the Real Estate Settlement Procedures Act ("RESPA"), does not conflict with Defendants' obligations to comply with the CFPA or any other Federal consumer financial law. Defendants do not assert that any conflict exists or cite to any legal support or statutory exemption to support their sweeping assertion. In fact, case law supports the opposite conclusion: subsequent regulatory requirements do not preclude liability under the independent and pre-existing statutory prohibitions on unfair and deceptive conduct.[149] Further, the Bureau has the discretion to choose which statute it enforces.[150] Defendants' arguments thus fail.

Finally, the Bureau has also adequately pled Count XIII, which alleges that Defendants engaged in various violations of the foreclosure protections in Section 41(g) of Regulation X, 12 C.F.R. § 1024.41(g).[151] Defendants argue that the allegations in Count XIII are defective because the Bureau did not allege that: (1) violations occurred with respect to a borrower's first completed loss mitigation application; and (2) Defendants did not receive the complete loss mitigation applications "when at least 37 days were left before the sale was at that point *scheduled.*"[152] First, whether a loss mitigation application is duplicative and thus not subject to Section 41's protections is an affirmative and factual defense only available once a servicer has shown that it previously complied with *all* of Section 41's requirements for the first complete loss mitigation application for a borrower.[153] Second, Section 41(g) requires—as the Bureau has pled—that a servicer may not foreclose on a loan "[i]f a borrower submits a complete loss

---

[149] *See Wyndham*, 799 F.3d at 247 (finding that subsequent federal statutes did not deprive the FTC of the ability to bring an unfairness claim).
[150] *Cf. U.S. v. Batchelder,* 442 U.S. 114, 125 (1979) (the government may choose to prosecute and proceed under various statutes, including after considering differing statutory penalties).
[151] Compl. ¶¶ 297-308.
[152] Mot. at 32-33.
[153] 12 C.F.R. § 1024.41(i). *Cf. Jackson v. Seaboard Coast Line R.R. Co.*, 678 F. 2d 992, 1013 (11th Cir. 1982) citing *Rachback v. Cogswell*, 547 F.2d 502, 505 (10th Cir. 1976) (holding exemption to TILA must be pled as an affirmative defense) (remaining citations omitted).

mitigation application . . . more than 37 days before a foreclosure sale." These protections apply even if the sale is later rescheduled (or scheduled).[154] The argument that Defendants may have received complete applications less than 37 days before the foreclosure sale, which may have been later postponed, is also a factual defense. As to both arguments, the Bureau does not need to include allegations that negate such defenses in its Complaint.[155] In support of their defenses, Defendants cite cases involving complete applications that servicers received before Section 41's effective date (January 10, 2014), *see Wentzell v. Chase*[156] and *Trionfo v. Bank of Am., N.A*[157], or within 37 days of the foreclosure sale, *see Lage v. Ocwen*.[158] Unlike these cases, Count XIII's allegations relate to complete applications that Defendants received after January 10, 2014 and more than 37 days before a foreclosure sale. Here, the Bureau has adequately alleged that Defendants' foreclosure practices violate Regulation X and is not required to allege facts that negate Defendants' factual and affirmative defenses.

> **D.    The Bureau adequately alleges that Defendants' notice of error practices violate Regulation X (Count XI).**

The Bureau adequately alleges that Defendants' notice of error ("NOE") practices violate Regulation X. Defendants argue, incorrectly, that that Bureau has failed to allege sufficient facts to support its NOE claim.[159] Section III-G of the Complaint, which is incorporated by reference in Count XI, does not "parrot conclusory allegations" about Defendants' deficient policies and

---

[154] 12 C.F.R. § 1024 supp. I § 41(b)(3)(2) cmt. 2 (Section 41's protections that have been determined to apply to a borrower pursuant to § 1024.41(b)(3) remain in effect thereafter, even if a foreclosure sale is later scheduled or rescheduled.)

[155] *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (plaintiffs are not required to make allegations that negate affirmative defenses in their complaint).

[156] *Wentzell v. JPMorgan Chase Bank, Nat'l Ass'n*, 627 F. App'x 314 (5th Cir. 2015) (borrower alleged *state law* violations based on a 2013 foreclosure).

[157] *Trionfo v. Bank of Am.,* No. JFM-15-925, 2015 WL 5165415, at *4 (D. Md. Sept. 2, 2015) (rejecting RESPA claims and finding borrower's March 2014 loss mitigation application was a duplicative request because borrowers had previously filed a loss mitigation application before January 10, 2014). Section 41(i), by its plain terms, permits a servicer to avoid the requirements of Section 41 only if it has previously received a "complete loss mitigation application" and has "compl[ied] with the requirements" of Section 41 with respect to that application. 12 C.F.R. § 1024.41(i). Neither of those elements is true with respect to loss mitigation applications received before the January 10, 2014 effective date of the rule.

[158] *Lage v. Ocwen Loan Servicing*, 839 F.3d, 1003, 1010 (11th Cir. 2016) (upholding dismissal after summary judgment motion, because Defendants received a complete application a day before the foreclosure sale, even though the sale was rescheduled for a later date).

[159] Mot. at 35.

procedures.[160] Rather, in that section the Bureau alleges that deficiencies in Defendants'
complaint and NOE policies and procedures resulted in Defendants failing to conduct reasonable
investigations and/or, where appropriate, make corrections of errors in borrowers' complaints
and NOEs, and thereby violated Regulation X. After describing specific deficiencies in
Defendants' complaint handling and NOE policies and procedures,[161] the Bureau alleges that
these deficiencies have resulted in Defendants' failure to conduct reasonable investigations and
make appropriate corrections because personnel: (1) rely on inaccurate data in Defendants'
system of record to investigate complaints and NOEs; (2) fail to consider documented systemic
errors in complaint and NOE investigations; and (3) in responding to borrowers, for some
complaints and NOES, simply parrot back information contained in their system of record
without addressing the error presented by the borrower.[162] Further, the Bureau presents numerous
consumer narratives demonstrating Defendants' failures to properly investigate consumer
complaints and NOEs and correct errors,[163] including a representative consumer narrative in
paragraph 176 that illustrates Defendants' NOE violations.

The Court should also reject Defendants' attempts—again citing no authority—to impose
a new pleading standard requiring the Bureau to allege which specific complaints were in fact
"written" and which otherwise meet the other technical requirements of a NOE. This is not the
law. The Bureau does not need to identify specific NOEs in its Complaint to plead violations of
RESPA. The Complaint alleges facts sufficient to put Defendants on notice as to the claims
being asserted against them and the grounds for those claims.[164] That is all Rule 8(a) requires.

### E.   The Bureau adequately alleges that Defendants have engaged in unfair conduct related to add-on products (Count V).

The Bureau adequately alleges that Defendants engaged in unfair conduct by enrolling
borrowers into ancillary add-on products without their consent. Defendants argue that the Bureau
has failed to allege sufficient facts to support this claim.[165] But the Bureau plainly alleges that
Defendants have billed and collected payments from borrowers for add-on products, even where
the borrower did not enroll in the product. Specifically, paragraph 152 of the Complaint alleges

---

[160] *Id.*
[161] Compl. ¶¶ 167-72.
[162] *Id.* ¶ 173.
[163] *Id.* ¶¶ 97, 98, 99, 124, 125, 126, 142, 143, 162, 211, and 212.
[164] *See Mason*, 2008 WL 2051359, at *1.
[165] Mot. at 29-30.

that Defendants have stated that the add-on vendor may enroll a borrower into the add-on product even if the borrower does not respond to the add-on vendor's solicitation—i.e., without their consent. Defendants' arguments should be rejected.[166] The Bureau adequately alleges claims against each defendant.

**F.      The Bureau adequately alleges that each defendant is liable for each count.**

Defendants complain that the Bureau engaged in improper group pleading.[167] This argument has no merit. The Bureau alleges that each Ocwen defendant is liable for each count. Specifically, after describing the functions of, and the nature of, the relationship between each defendant, the Complaint alleges that:

- Each defendant is a "covered person" as defined by 12 U.S.C. § 5481(6)(A);[168]

- Each defendant engaged in servicing activities, including the acquisition and collection of mortgage debts that are in default;[169]

- Defendants jointly operate as a common enterprise, whereby an act of one entity constitutes an act by each, and Ocwen Financial Corporation ("OFC"), Ocwen Mortgage Servicing, Inc. ("OMS"), and Ocwen Loan Servicing, LLC ("OLS") are each jointly and severally liable for the acts and practices alleged in the Complaint;[170] and

- OFC and OMS are OLS's principals, and as such, are each liable for the acts of their agent, OLS.[171]

Defendants claim, however, that the Complaint fails to provide sufficient notice about which defendant is liable for which count.[172] This is not so. The Bureau alleges that Defendants,

---

[166] Defendants make a cursory argument that they cannot be liable because their add-on vendor, and not Defendants, was responsible for enrolling borrowers into add-on products. Mot. at 30. The Bureau seeks to hold Defendants liable for their own role in marketing the products and processing payments where they knew or should have known that their vendor was not obtaining borrowers' consent to enroll in the add-on products. Moreover, it is well settled that a principal (Defendants) can be liable for the acts of its agent (add-on vendor). *See, e.g., FTC v. Stefanchik*, 559 F.3d 924, 930-31 (9th Cir. 2009).

[167] Mot. at 24-25.

[168] Compl. ¶¶ 19-21. The Bureau also alleges that OFC and OMS are "related persons" and "service providers" under the CFPA. *Id.*

[169] *Id.* ¶¶ 13, 16, 17.

[170] *Id.* ¶ 22.

[171] *Id.* ¶ 23.

[172] Mot. at 24-25.

defined collectively as "Ocwen,"[173] each engaged in the conduct underlying each Count individually and under common enterprise[174] and principal-agent theories,[175] allegations that Defendants did not challenge.[176] Thus, each defendant is on notice of the claims against it.[177]

---

[173] Compl. ¶ 13.

[174] Defendants have not raised any defenses to this theory, but the Bureau notes that courts have routinely found defendants who operate as a common enterprise jointly liable for violations of consumer protection statutes. *See, e.g., FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1182 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009) (applying common enterprise principles to the FTC Act) (citations omitted); *CFPB v. NDG Fin. Corp.*, No. 15-cv-5211, 2016 WL 7188792, at *16 (S.D.N.Y. Dec. 2, 2016) (applying common enterprise principles to the CFPA claims) (citation omitted); *FTC v. Fed. Check Processing, Ind.*, No. 14-CV-122S, 2016 WL 5940485, at *2 (W.D.N.Y. Oct. 13, 2016) (finding that defendants operated as a common enterprise in violating the FTC Act and the FDCPA).

[175] The Supreme Court has made clear that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules" unless Congress has "expressed a contrary intent." *Meyer v. Holley*, 537 U.S. 280, 285-87 (2003). Thus, courts have consistently found principals liable under consumer protection laws for the acts of their agents. *See, e.g., Stefanchik*, 559 F.3d at 930-31 ("Under the FTC Act, a principal is liable for the misrepresentations of his agent"); *FTC v. IAB Mktg. Associates*, LP., 746 F.3d 1228, 1233 (11th Cir. 2009) (entity and individuals may be held liable under the FTC Act for the conduct of their third-party agent telemarketers); *Pollice v. Natl. Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000) (applying vicarious liability to the FDCPA); *Muzuco v. Re$ubmitit, LLC*, No. 11-62628-Civ, 2012 WL 3242013, at *5 (S.D. Fla. Aug. 7, 2012) (same); *Rouleau v. US Bank, N.A.*, No. 14-cv-568-JL, 2015 WL 1757104, at *6-8 (D.N.H. Apr. 17, 2015) (applying vicarious liability to RESPA).

[176] Defendants have waived arguments about the Bureau's common enterprise and principal-agent allegations by failing to raise them. *See supra* note 58.

[177] *See Van Cleef & Arples Logistic*s, *S.A. v. Festival Marketplace*, No.07-61837, 2008 WL 4753690, at *4 (S.D. Fla. Oct. 29, 2008) (Marra, J.) (where each count alleged Defendants, "logic dictates that when composing a responsive pleading to the Amended Complaint, each Defendant should assume that the allegations in the Amended Complaint are directed at each Defendant"); *see also Sterling Precious Metals*, 2013 WL 595713, at *4 (Marra, J.) ("[T]he allegations pertaining to the Defendants as a whole provide[s] the context that allows [the] Court to understand and weigh the significance of the claims specifically relating to [each Defendant.]") (quoting *FTC v. Innovative Mktg*., 654 F. Supp. 2d 378, 388, n. 3 (D. Md. 2009) (internal quotations omitted)). Defendants' reliance on *US Bank Nat. Ass'n v. Capparelli*, No. 13-80323-CIV, 2014 WL 2807648, at *3 (S.D. Fla. June 20, 2014) (Marra, J.) is misplaced. Unlike the plaintiff's "naked and baseless assertions" in *US Bank Ass'n*, the Complaint at ¶¶ 10-23 alleges numerous facts related to Defendants' individual and joint liability for all alleged acts and practices.

**G.    The Bureau adequately alleges that each defendant is liable for violations of RESPA (Counts X-XIII) and the FDCPA (Counts VIII and IX).**

The Bureau pleads sufficient facts to support its RESPA and FDCPA claims against each Ocwen defendant. Defendants concede that OLS, as a servicer, is subject to RESPA, but deny OFC's and OMS's liability based on the argument that they are not servicers and cannot be liable "solely due to their affiliation with OLS."[178] Defendants also argue that the Complaint fails to distinguish among the three defendants and allege that each defendant is a debt collector in its FDCPA allegations. Finally, Defendants claim, without any legal support, that the Bureau must identify the specific accounts for which the Defendants are debt collectors under the FDCPA.[179] Each argument fails.

First, the Complaint adequately alleges that each defendant is both a servicer subject to RESPA and a debt collector subject to the FDCPA. Under RESPA, a servicer is an entity receiving any scheduled payments from borrowers.[180] A servicer who attempts to collect on mortgage debts owed or due on a loan that was in default at the time it was obtained is also debt collector under the FDCPA.[181] The Complaint alleges facts sufficient to conclude that that each Ocwen entity is a servicer and individually liable for violations of RESPA, as each defendant, OFC, OMS, and OLS: "engage[s] in servicing activities" by, among other things, "processing borrower payments … [and] acquir[ing] and collect[ing] upon borrowers' mortgage debts that are in default."[182] The Bureau also alleges that each defendant is individually liable for violations of the FDCPA because each defendant services mortgages that were in default at the time the Defendants acquired the rights to service the loans.[183] Defendants' claims to the contrary are simply denials of the Bureau's allegations, and thus inappropriate for resolution on a Rule 12(b)(6) motion.

Second, as detailed above, the Bureau also alleges that OFC and OMS are liable for the RESPA and FDCPA counts under two alternative theories of joint liability—common enterprise

---

[178] Mot. at 34-35.
[179] *Id.* at 31.
[180] 12 C.F.R. § 1024.2(b) (definitions of "Servicer" and "Servicing").
[181] 15 U.S.C. § 1692a(6).
[182] Compl. ¶ 13.
[183] *Id.* ¶¶ 13, 264-69, 271, 276.

31

and principal-agent liability.[184] Defendants fail to challenge these alternative theories in their motion to dismiss, and thus have waived the right to raise any such arguments in their reply.[185] Instead, Defendants argue that OFC and OMS cannot be liable under RESPA "solely due to their affiliation with OLS."[186] But that is not what the Bureau has alleged.[187] As explained above, the Bureau alleges facts sufficient to conclude that each Defendant is liable for each and every one of the Complaint's fourteen counts, including the RESPA and FDCPA Counts, both individually and jointly.

Finally, Defendants assert that "[t]he Complaint never identifies any [defaulted] accounts or describes them in any way."[188] But Defendants offer no legal authority to again impose such a heightened pleading requirement. The Complaint alleges that Defendants are "debt collectors" under the FDCPA, including alleging that Defendants acquire the servicing rights to some mortgages that are in default at the time of transfer and proceed to collect on those mortgages.[189] These and the other above factual allegations are sufficient to put Defendants on notice as to the claims being asserted against them and the grounds for those claims.[190] That is all that Rule 8(a) requires. Thus, the Court should reject Defendants' arguments.

### III.   The Bureau's claims are not time barred.

The Bureau's claims are not subject to dismissal as a matter of law on statute of limitations grounds. The statute of limitations is an affirmative defense that plaintiffs are not required to negate in their complaint.[191] Thus, courts will only dismiss a claim under Rule 12(b)(6) if  it "is apparent from the face of the complaint that the claim is time barred."[192]

---

[184] *See supra* Section II.F.
[185] *See supra* note 58.
[186] Mot. at 34-35.
[187] The three cases Defendants cite to are factually distinguishable because either the plaintiff did not allege the dismissed party was a servicer or it was clear the dismissed party was not a servicer. Mot. at 34-35 (*citing McCarley v. KPMG Intern.*, 293 Fed. App'x 719, 722 (11th Cir. 2008); *Bernstein v. Wells Fargo*, No.1:15-CV-2520, 2016 WL 4546653, at *4, n. 3 (N.D. Ga. May 13, 2016; *Bennett v. Nationstar*, No. 15-00165-KD-C, 2015 WL 5294321, at *11 (S.D. Ala. Sept. 8, 2015)).
[188] Mot. at 31.
[189] Compl. ¶¶ 268-69.
[190] *See Mason,* 2008 WL 2051359, at *1.
[191] *La Grasta*, 358 F.3d at 845.
[192] *Id.* (quoting *Omar v. Lindsay*, 334 F.3d 1246, 1251 (11th Cir. 2003) (internal quotations omitted).

Defendants cannot make this showing. The Court should therefore decline to rule on this issue at this stage of the litigation.

First, Defendants cannot show from the face of the Complaint that Counts V, VI, VII, VIII, and IX are time barred. The Complaint unquestionably alleges that the conduct in these counts is ongoing or occurred within the limitations period. For that reason, Defendants only seek to dismiss those *parts* of these counts that it contends occurred outside the relevant limitations period.[193] Courts have declined to dismiss claims where, as here, the Complaint alleges that the conduct is ongoing or occurred within the relevant limitations period.[194] This Court should do so as well.

Second, Defendants cannot establish that it is clear from the face of the Complaint that Count VI, which alleges that Defendants engaged in deceptive marketing, is time barred. As an initial matter, Defendants have an increased burden when asserting limitation arguments against the government.[195] The CFPA's three-year statute of limitations, which begins to run **"after the date of discovery of the violation to which an action relates**[,]" applies to this claim.[196] Defendants rely on the fact that the Complaint alleges that this conduct ended in 2013 to argue this claim is time barred.[197] But the relevant question is when the Bureau *discovered* the violations alleged in the Complaint so as to start the three-year limitations period. The Bureau filed its Complaint on April 20, 2017 and the parties entered into tolling agreements extending the limitations period by approximately four months.[198] Therefore, Defendants' must demonstrate, based on the allegations in the Complaint itself, that the Bureau discovered

---

[193] Mot. at 29-32.

[194] *See United States ex rel. Air Control Techs. Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (vacating district court's dismissal of claims as time barred where conduct continued to occur within limitations period); *Hanna,* 114 F. Supp. 3d at 1380-81 (because some of the conduct was within limitations period, court refused to rule on defendant's statute of limitations defense at the motion-to-dismiss stage); *CFPB v. Howard*, at *13 (same) (attached at Exhibit A). *See also Persaud v. Bank of Am., N.A.*, No. 14-21819-CIV, 2014 WL 4260853, at *11 (S.D. Fla. Aug. 28, 2014) (court refused to dismiss on limitation grounds where plaintiff alleged defendant *continued* to improperly charge borrower for insurance).

[195] *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 95 (2006) ("[S]tatutes of limitations are construed narrowly against the government.").

[196] 12 U.S.C. § 5564(g)(1) (emphasis added).

[197] Mot. at 29.

[198] The parties entered into agreements tolling the statute of limitations for the period beginning on December 23, 2016 through April 20, 2017. Copies of the agreements are attached as Ex. A.

Defendants' violations on or before January 2014.[199] Defendants cannot do so. Furthermore, because statute of limitations questions under the CFPA turn on factual inquiry into when the Bureau discovered the conduct at issue, dismissal of Count VI at this stage is inappropriate.[200]

Finally, Defendants misunderstand the applicable limitations period for the Bureau's FDCPA (Counts VIII and IX) and Truth-in-Lending Act ("TILA") claims (Count VII). Defendants incorrectly argue that the Bureau's FDCPA claims are subject to the one-year statute of limitations in Section 813 of the FDCPA, 15 U.S.C. § 1692k.[201] That section of the FDCPA sets forth only the limitations period for private actions; it is captioned "Civil liability" and refers to liability "to such person" and damage "sustained by such person" or in a "class action."[202] Bureau actions to enforce the FDCPA by contrast, are governed by Section 814, which is captioned "Administrative enforcement" and states that compliance "shall be enforced under . . . subtitle E of the [CFPA] . . . with respect to any person subject to this subchapter."[203] The section further provides that "[f]or the purpose of the exercise by any agency referred to [in this section] of its powers under any Act referred to [in this section], a violation of any requirement imposed under this subchapter shall be deemed to be a violation of a requirement imposed under that Act."[204] In other words, in a Bureau action to enforce the FDCPA, a violation of the FDCPA shall be "deemed" a violation of the CFPA.[205] Under Section 1054(g) of the CFPA, the Bureau enforces an enumerated consumer financial law in accordance with that provision of the underlying law, here the FDCPA. Thus, any limit on the Bureau must come from the FDCPA, not the CFPA. But the FDCPA does not impose any limitations period on the Bureau's enforcement actions. The only limitations period that applies to the Bureau is the five-year

---

[199] *Couzens v. Donohue*, 854 F.3d 508, 516 (8th Cir. 2017) ("[T] possible statute of limitations defense is not grounds for Rule 12(b)(6) dismissal "unless the complaint itself establishes the defense").

[200] *See Lindsey*, 334 F.3d at 1251-52; *Knight v. E.F. Hutton & Co., Inc*., 750 F. Supp. 1109, 1112 (M.D. Fla. 1990) (whether plaintiff should have discovered conduct more than two years before bringing suit is a fact question not appropriate for resolution on a motion to dismiss).

[201] Mot. at 31-32.

[202] 15 U.S.C. § 1692k(a)(1), (2).

[203] 15 U.S.C. § 1692l(b)(6).

[204] 15 U.S.C. § 1692l(c).

[205] *Cf. FTC v. CompuCredit Corp*., No. 1:08-CV-1976-BBM-RGV, 2008 WL 8762850, at *10 (N.D. Ga. 2008) (a violation of the FDCPA is "deemed" a violation of the FTC Act, and therefore three-year statute of limitations under FTC Act applied to claims).

limitations period 28 U.S.C. § 2462 imposes on the federal government for actions seeking civil fines, penalties, or forfeitures.

Defendants also incorrectly argue that the Bureau's claims under TILA are time-barred under 15 U.S.C. § 1640(e).[206] The limitations period in Section 1640(e) applies "to any action brought under this section"—*i.e.*, Section 1640. The authority of the Bureau and other agencies to enforce TILA is set out in a separate section of TILA, 15 U.S.C. § 1607(a)(6). And that Section does not contain any limitations period. Thus, the text of TILA makes clear that, contrary to Defendants' contention, the one-year limitations period for private actions in Section 1640 does not apply to public enforcement actions brought under Section 1607.[207] Like the FDCPA, the Bureau's TILA claims are only subject to the general five-year limitations period in 28 U.S.C. § 2462.

The Court, however, does not even need to rule on what the limitations period is for the Bureau's FDCPA and TILA claims. Defendants cannot meet their burden of showing that, from the face of the Complaint, all of the conduct is time barred. The Court should therefore decline to rule on this issue at this stage of the litigation.

## <u>CONCLUSION</u>

For the foregoing reasons, the Bureau respectfully requests that the Court deny Defendants' motion to dismiss or, in the alternative, for a more definite statement.[208] The Bureau also requests that the Court deny Defendants' request for 45 minutes of oral argument per side. Defendants persist in demanding special treatment; none is warranted.

---

[206] Mot. at 30.

[207] *See, e.g.*, *Vallies v. Sky Bank*, 591 F.3d 152, 156 (3d Cir. 2009) (Section 1607 pertains to administrative enforcement and Section 1640 pertains to private enforcement); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 222 (4th Cir. 1978) (same); *see also* Office of the Comptroller of the Currency Interpretive Letter at *1, October 6, 1977, 1977 WL 23261 ("[A]lthough individual borrowers are restricted in bringing suit under Section 130 by a one-year statute of limitations the Comptroller is not restricted by any statute of limitations under either the Truth in Lending Act or 12 U.S.C. § 1818(b)."). Defendants rely on the only case to have held otherwise, *ITT*, 219 F. Supp. 3d at 922-23. The Bureau respectfully maintains that the court in *ITT* reached the incorrect decision, which in any case is not binding on this Court.

[208] If the Court believes additional information is required in the Complaint, the Bureau seeks leave to amend the Complaint.

Dated: July 20, 2017                    Respectfully submitted,

                                        Attorneys for Plaintiff
                                        Consumer Financial Protection Bureau

                                        ANTHONY ALEXIS
                                        Enforcement Director

                                        GABRIEL O'MALLEY
                                        Acting Deputy Enforcement Director for
                                        Litigation

                                        RICHA DASGUPTA
                                        Acting Assistant Litigation Deputy

                                        */s/* Jean M. Healey
                                        Jean M. Healey
                                        E-mail: jean.healey@cfpb.gov
                                        Phone: 202-435-7514
                                        Facsimile: (202) 435-7722
                                        1700 G Street NW
                                        Washington, DC 20552

                                        Jan Singelmann
                                        E-mail: jan.singelmann@cfpb.gov
                                        Phone: 202-435-9670
                                        Facsimile: (202) 435-7722
                                        1700 G Street NW
                                        Washington, DC 20552

                                        Atur Desai
                                        E-mail: atur.desai@cfpb.gov
                                        Phone: 202-435-7978
                                        Facsimile: (202) 435-7722
                                        1700 G Street NW
                                        Washington, DC 20552

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that true and correct copies of this Opposition were served on July 20, 2017, on all counsel or parties of record on the following Service List via CM/ECF.

*/s/* Jean M. Healey_____
Jean M. Healey