# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

## CASE NO. 9:17-CV-80495-MARRA-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU,

        Plaintiff,

v.

OCWEN FINANCIAL CORPORATION;
OCWEN MORTGAGE SERVICING, INC.;
and OCWEN LOAN SERVICING, LLC

        Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL COMPLETE RESPONSES TO ITS FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

**I.      Introduction**

In their opposition, Defendants do not contest that the limited discovery the Bureau seeks is relevant to liability, damages, and civil penalties, and offer no affidavit or supporting evidence to substantiate their purported burden. Further, they do not dispute that this is a large, complex case involving hundreds of thousands—if not millions—of potentially harmed borrowers, or that the Bureau seeks only a limited set of preexisting documents related to the claims in its complaint. Instead, Defendants spend the majority of their brief suggesting different discovery strategies the Bureau should pursue in lieu of obtaining these documents from Defendants. They suggest that the Bureau should take Defendants' representations about policies and procedures in their interrogatory answers at face value and not test the accuracy or completeness of the answers. They suggest that the Bureau should take Defendants up on their offer to act as a conduit to former employees. And they suggest that the Bureau should not waste its time taking discovery on the systemic breakdowns alleged in the complaint and be content with the incomplete information produced to date. Defendants' discovery suggestions, however, provide no basis to withhold relevant responsive information.

**II.     Argument**

> **A. Defendants have no valid objection to producing information they relied upon in their interrogatory answers.**

RFPs 19 and 42–45 request information that Defendants relied on—and therefore made relevant—in their interrogatory answers. RFP 19 requests the "existing policy" Defendants referenced in their answer to Interrogatory 4 of the Bureau's First Set of Requests. In their Opposition, Defendants argue that they should not have to produce the requested policy because it was in place before 2014—that is, before the period for which the Bureau seeks to establish liability, prove damages, and impose penalties. In their answer to Interrogatory 4, however, Defendants claim that they waived escrow shortages for certain borrowers prior to 2014, *pursuant to a policy in place at the time*, to explain that they would not have unlawfully collected amounts from these borrowers (as the Bureau has alleged) *after* January 1, 2014 (*i.e.*, during the period relevant to the Bureau's Complaint). Defendants thus made their pre-2014 policy relevant to their conduct during the period relevant to the Bureau's allegations. By any standard of relevancy, the Bureau is entitled to this information to test the accuracy of the assertions in

1

Defendants' answer to Interrogatory 4.[1] If no such policy exists, then Defendants should so state and amend their interrogatory answers in which they describe having taken specific actions under the policy.

RFPs 42–45 request all versions of remediation and lookback analyses ("Analyses") that Defendants referenced in their supplemental answers to Interrogatories 9–11. Defendants have only agreed to produce the most recent version, but not earlier versions, of the Analyses. In their Opposition, Defendants do not assert that the earlier versions of these Analyses are unavailable or substantiate any claim of undue burden. Nor do Defendants respond to, let alone dispute, the Bureau's argument that the earlier Analyses may contain information relevant to test the accuracy of Defendants' answers to Interrogatories 9–11, such as the existence of borrowers that were originally included in the lookback to be remediated but excluded from later versions of the Analyses. Instead, Defendants argue that the Bureau only needs the (yet-to-be-produced) most recent version of the Analyses, which will include the borrowers Defendants identified in their interrogatory answers and reflect the final decisions Defendants made as to which borrowers should or should not be remediated. Defendants previously identified over *10,000* potentially impacted borrowers, but then whittled the list down to a fraction of that number for their interrogatory answers. The earlier versions of the Analyses conducted by Defendants' vendor are necessary for the Bureau to understand the process by which Defendants arrived at the assertions they have made about remediation, and to test the accuracy of Defendants' interrogatory answers. This information is thus relevant and should be produced.

### B. Defendants have no valid objection to producing a supplemental list of former employees.

RFP 66 asks Defendants to update the list of former employees it previously provided to the Bureau for a two-year period. In their Opposition, Defendants do not argue that the requested supplemental information is unavailable or unduly burdensome to produce. They instead suggest that their production of high-level organizational charts is sufficient. But these organizational

---

[1] Information Defendants produced on August 2, 2018 indicates that their claim (that, because of the language in this policy, no borrowers discharged from bankruptcy prior to 2014 were collected on during the contested time period) might not be true. Defendants produced information identifying borrowers discharged from bankruptcy prior to 2014 from whom Defendants improperly collected shortages *during* the contested time period. At minimum, this contradicts their claim of an "existing policy" or shows that it was not followed.

2

charts are incomplete, do not indicate which individuals are former employees, and contain no contact information. Defendants also argue that the Bureau's request is overly broad because it seeks information for all of Defendants' former employees, including some former employees in departments, such as Human Resources, that are not relevant to the Bureau's allegations. The Bureau has offered to exclude the Human Resources and Mortgage Origination departments from the scope of its request, but Defendants have not agreed to this compromise.[2] Defendants also appear to suggest that they should act as the gatekeeper for the Bureau's contact with former employees. They offer no legal authority for this position, and should be required to provide the supplemental list of former employees requested in RFP 66.

### C. Defendants have no valid objection to producing a limited number of monthly reports relating to the errors in borrower loan data.

Defendants want to avoid producing less than 100 monthly reports requested in RFPs 52–54 and 63. These reports detail Defendants' failures to timely correct errors that they identified in the loan data used to service borrowers' loans. In their Opposition, Defendants do not dispute that the reports contain information relating to their failures to correct errors. They also do not dispute that the reports are readily available. Instead, Defendants offer three arguments that provide no legitimate basis for refusing to produce the requested reports.

Defendants first state that they have already produced the information that addresses the Bureau's requests.[3] They have not. As Defendants note, they have produced reports that identified borrower loan data that was *supposed* to be corrected and the type of error. But RFPs 52–53 and 63 request the *audits* of that error-correction process that show Defendants failed to properly correct those errors. RFP 54 similarly requests reports identifying loans that were being serviced but still needed to be assessed for mistakes through the loan verification process.[4] Here too, Defendants point the Court to other documents they have already produced or agreed to

---

[2] While Defendants have not agreed to this proposal, the parties will continue to confer to determine if a compromise is possible.

[3] Opp'n at 3.

[4] These backlogs of loans would not show up on the reports Defendants previously produced. *See e.g.*, Doc. 179.1 at Ex. 1.07 (discussing that while Defendants had reports to track loans going *through* the verification process (what Defendants previously produced to the Bureau), they needed to create the reports identifying loans that had *not yet gone through* the process (what RFP 54 requests)).

3

produce, but do not and cannot actually assert that these documents contain the same information the Bureau is requesting in RFPs 52–54 and 63.

Defendants also argue that the Bureau's requests for a limited number of reports are disproportionate in light of the information they have produced. Defendants then detail some of the information purportedly[5] contained in these documents. But, again, what they do not tell the Court is that the documents the Bureau has requested contain different information from what Defendants have already produced or have agreed to produce. In particular, where the Bureau previously requested reports that tracked certain errors or corrections, the Bureau is now requesting audits that identify when Defendants failed to correct those errors and reports that identify backlogs of loans that did not timely enter the loan verification process.

Finally, Defendants argue that the requested reports are not comprehensive and thus of limited relevance in identifying actual borrower harm or actual violations. Defendants also suggest that the Bureau should seek this information through other targeted discovery or by Defendants pulling a sample of loans. These arguments are not persuasive. Defendants' contention about the probative value of potentially incomplete reports does not suggest that those reports are irrelevant. And Defendants' suggestions of other ways the Bureau should seek to achieve what they believe to be the purposes of the Bureau's discovery requests likewise do not support withholding the requested documents.

The requested reports contain direct evidence in support of the Bureau's allegations that: Defendants serviced loans based on inaccurate records; Defendants failed to properly or timely correct the errors in borrower loan data; Defendants had knowledge of this misconduct; and Defendants failed to correct this misconduct. This evidence is relevant to establishing liability and to the issue of knowledge and other statutory factors the district court may consider in determining an appropriate civil penalty.

---

[5] Contrary to Defendants' assertions at page 3 of their Opposition, the loan verification reports Defendants produced at OCW-CFPB-001-00083857–OCW-CFPB-001-00085322 do not identify the number of loans processed per week between September 2014 and September 2017.

4

### III. Conclusion

For these foregoing reasons, the Bureau respectfully asks this Court to enter an Order compelling Defendants to produce the information requested in RFPs 19, 42–45, 52–54, 63, and 66.

Dated: October 12, 2018                    Respectfully submitted,


                                             Attorneys for Plaintiff,
                                             BUREAU OF CONSUMER FINANCIAL PROTECTION

JOHN C. WELLS
Deputy Enforcement Director

JAMES T. SUGARMAN
Assistant Litigation Deputy

/s/ Amanda Roberson
Amanda Roberson
E-mail: amanda.roberson@cfpb.gov
Phone: 202-435-9447

| | |
|---|---|
| Jean Healey | jean.healeydippold@cfpb.gov |
| Jan Singelmann | jan.singelmann@cfpb.gov |
| Atur Desai | atur.desai@cfpb.gov |
| Tianna Baez | tianna.baez@cfpb.gov |
| Erin Mary Kelly | erin.kelly@cfpb.gov |
| James Savage | james.savage@cfpb.gov |
| Stephanie Brenowitz | stephanie.brenowitz@cfpb.gov |
| Greg Nodler | greg.nodler@cfpb.gov |
| Michael Posner | michael.posner@cfpb.gov |
| Jack Douglas Wilson | doug.wilson@cfpb.gov |

1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was served on October 12, 2018 via CM/ECF on all counsel or parties of record listed below:

**Attorneys for Defendants**

Bridget Ann Berry
BerryB@gtlaw.com
Andrew Stuart Wein
weina@gtlaw.com
GREENBERG TRAURIG, P.A.
777 South Flagler Dr., Suite 300
West Palm Beach, FL 33401
Telephone: 561-650-7900
Facsimile: 561-655-6222

Sabrina Rose-Smith
SRoseSmith@goodwinlaw.com
Catalina Azuero
CAzuero@goodwinlaw.com
Michelle Treadwell Briggs
MBriggs@goodwinlaw.com
Molly Madden
MMadden@goodwinlaw.com
Thomas Hefferon
THefferon@goodwinlaw.com
GOODWIN PROCTER, LLP
901 New York Ave., NW
Washington, D.C. 20001
Telephone: 202-346-4000
Facsimile: 202-346-4444

Matthew Previn
mprevin@buckleysandler.com
BUCKLEYSANDLER, LLP
1133 Ave. of the Americas, Suite 3100
New York, NY 10036
Telephone: 212-600-2310
Facsimile: 212-600-2405

      /s/ Amanda Roberson
      Amanda Roberson