*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

John Burke and Joanna Burke
46 Kingwood Greens Dr
Kingwood, Texas 77339
Tel: 281 812 9591

FILED BY _Cob_ _____ D.C.

JAN 0 2 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA,
### WEST PALM BEACH DIVISION

### Civil Action No. 9:17-CV-80495

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) MOTION TO INTERVENE |
| Plaintiffs, | ) |
| vs. | ) |
| OCWEN FINANCIAL CORPORATION, a Florida corporation, | ) |
| OCWEN MORTGAGE SERVICING, INC., a U. S. Virgin Islands corporation, | |
| and OCWEN LOAN SERVICING, LLC, a Delaware limited liability company, | |
| Defendants. | |

1

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

# TABLE OF CONTENTS

MOTION TO INTERVENE ....................................................................................................... 3

THE APPLICANTS ARE KNOWN BY THE PARTIES ................................................................. 3

THE APPLICANTS MEET THE STANDARDS OF RULE 24.................................................... 4

THE APPLICANTS REPRESENT DISTRESSED HOMEOWNERS ............................................ 4

    TEXAS SUPREME TASK FORCE MEETING (EXTRACT) ................................................ 5

PAST SETTLEMENTS ARE INSUFFICIENT REMEDY ............................................................ 7

OCWEN IS GAMING THE SYSTEM - WITH HELP .............................................................. 10

    TEXAS SUPREME TASK FORCE MEETING (EXTRACT) ............................................ 10

    AN INTERVENTION FOR CONSTRUCTIVE CHANGE.................................................. 12

    THE CONSUMER FORECLOSURE TASK FORCE RECOMMENDATIONS ...................... 13

CFPB COMPLAINT SUMMARY ......................................................................................... 18

HOW MANY TIMES DO YOU FORGIVE OCWEN?............................................................ 19

THE APPLICANTS REACHED OUT TO CFPB .................................................................... 21

THE APPLICANTS REACHED OUT TO OCWEN................................................................. 22

LEGAL STANDARD ........................................................................................................... 22

PRIOR INTERVENOR APPLICATIONS ................................................................................ 25

THE APPLICANTS AS STAKEHOLDERS .............................................................................. 26

CONCLUSION & PRAYER.................................................................................................. 29

    CERTIFICATE OF SERVICE........................................................................................... 31

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

## MOTION TO INTERVENE

TO THE HONORABLE JUDGE OF SAID COURT:

Joanna Burke and John Burke ("Applicants"), hereby moves (the "Motion") pursuant to Fed. R. Civ. P. 24 to intervene in this action so it may be heard in connection with the law suit, filed by Plaintiff Consumer Financial Protection Bureau (the "CFPB").

The Applicants are retired residents of Kingwood, Texas. As homeowners and US citizens they have a vested and material interest in the outcome of this case.

The Applicants seek to intervene in this case to protect their interests in their homestead at 46 Kingwood Greens Dr., Kingwood, Texas, 77339, USA ("homestead") and that of similar homeowners nationwide.

## THE APPLICANTS ARE KNOWN BY THE PARTIES

The Applicants homestead is currently under wrongful order of foreclosure where *Ocwen Loan Servicing, LLC*, is the alleged mortgage servicer for the Bank in the Applicants case, namely Deutsche Bank National Trust Company.[1]

---

[1] DEUTSCHE BANK NAT'L TRUST CO., as Trustee of the Residential Asset Securitization Trust 2007-A8, Mortgage Pass-Through Certificates, Series 2007-H under the Pooling and Servicing Agreement dated June 1, 2007 v. JOANNA BURKE et al, Civil Action: 4:11-cv-01658, and appellate action; 18-20026, Fifth Circuit (2018).

3

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

The Applicants are currently Plaintiffs in a new case, recently removed to the Southern District Federal Court, Houston Division against Defendants, *Ocwen Loan Servicing, LLC.*[2]

Furthermore, the Applicants wrote to *CFPB* attorneys (named in this Florida case) prior to filing this case in Houston and based on this Florida filing. For disclosure, the Applicants also copied *CFPB* separately in a complaint letter to Chief Justice Carl Stewart, regarding the Fifth Circuits' recent 3-panel opinion, order and judgment of foreclosure.

## THE APPLICANTS MEET THE STANDARDS OF RULE 24

In relation to this motion, the Applicants can prove quantifiable monetary damages and imminent 'injury in fact'. They meet the necessary legal tests and burdens to become intervenors in this case.

## THE APPLICANTS REPRESENT DISTRESSED HOMEOWNERS

The Applicants can provide direct facts, evidence and an experienced viewpoint to this case. There is no need for expensive and time consuming subpoenas, motions, discovery requests or expert witnesses, *e.g.*

---

[2] See *Joanna Burke  v  Ocwen Loan Servicing, LLC*, Case 4:18-cv-4544, District Court, Southern District of Texas, Houston Division

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

Applicants will assume the parties and the court are familiar with "Supreme Court Task Force(s)".  In the Supreme Court of Texas, foreclosure mill attorneys like Tommy Bastian of Barrett, Daffin, Frappin, Turner and Engel ("BDFTE") are invited to sit on such a Task Force and propose changes to the laws and make House Bill recommendations to "expedite foreclosures". [3]

### TEXAS SUPREME TASK FORCE MEETING (EXTRACT)

MR. BARRETT: "Judge, I think that's a very good point. This is Mike Barrett, and I know we've had this difficulty. There really isn't such a document, and maybe, Larry, you might explain mortgage servicing rights because the servicer usually acquired their position in the file through the purchase of MSRs.

**Translation:** **Mortgage Servicer Rights = Unsecured Debt[4]**

There is an organized market in MSRs that really makes up maybe as much as 40 to 50 percent of any mortgage company's assets, and they acquired this -- **their status of being a servicer through the purchase of an MSR most of the time, or they did it themselves, they created their own loan.**

---

[3] See *Joanna Burke  v  Hopkins Law, PLLC*, Case 4:18-cv-4543, District Court, Southern District of Texas, Houston Division, EXHIBIT # 2018-SUPREME-COURT-FORECLOSURE-TASK-FORCE – Barrett (deceased) and Bastian of BDFTE listed on Task Force titled ORDER CREATING TASK FORCE ON JUDICIAL FORECLOSURE RULES
[4] See FDIC: https://www.fdic.gov/buying/historical/mortgage-servicing-assets.html

> **So finding a document that says, "I am the owner and holder,**
> **and I hereby grant to the servicer the right to foreclose in my**
> **name" is an impossibility in 90 percent of the cases."**
>
> - Michael Barrett, (deceased) of BDFTE (Foreclosure Mill)

The Applicants view this proposed intervenor application in a similar light. After all, the CFPB is named the "Consumer" Financial Protection Board, so why not allow affected consumers to offer their testimony and intimate knowledge of Ocwen and mortgage servicing in relation to home foreclosures, "dual tracking" and similar – when they have a direct interest in the parties and the case?

> "For many borrowers, dealing with mortgage servicers has meant
> unwelcome surprises and constantly getting the runaround. In too
> many cases, it has led to unnecessary foreclosures," said CFPB
> Director Richard Cordray. "Our rules ensure fair treatment for all
> borrowers and establish strong protections for those struggling to
> save their homes."
>
> *e.g.* "**Maintain Accurate and Accessible Documents and**
> **Information**: Servicers must store borrower information in a way
> that allows it to be easily accessible. Servicers must also have
> policies and procedures in place to ensure that they can provide

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

timely and accurate information to borrowers, investors, and in any
foreclosure proceeding, the courts."[5] - CFPB

Respectfully, it would show willingness and transparency in the interests of
the public forum to include those the CFPB and the mortgage servicers claim they
wish to champion during this high-profile court case.

## PAST SETTLEMENTS ARE INSUFFICIENT REMEDY

In this Florida case, styled the *Consumer Financial Protection Bureau v.
OCWEN Financial Corporation, Inc. et al* (9:17-cv-80495-KAM),   details the
incessant injury, past, present and future, which Ocwen, as a mortgage servicer has
caused and will continue to cause, as a result of the financial collapse ten years ago.
Ocwens willful negligence and failure to comply with orders and agreements has not
only impacted customers in Florida, but customers nationwide  (This, despite prior
agreements after settlement to comply).

With all due respect to the government, the DOJ, CFPB and other agencies,
despite their valiant efforts to-date in corralling the banking and mortgage industries
by  initiating  law  suits  similar  to  this  one,  the  people  on  the  front  line,  the
homeowners, are truly not seeing the financial or legal benefits of these settlements,

---

[5] See CFPB (2013): https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-
protection-bureau-rules-establish-strong-protections-for-homeowners-facing-foreclosure/

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

or the orders of compliance which have been continuously breached by Ocwen and openly dishonored.

Any settlement funds (including, for example, a recent private class action case against Ocwen resulting in a $17.5 million settlement[6]), when allocated to victims (*e.g.* former homeowners) are in amounts which are too miniscule in value to even come close to the emotional or monetary damages necessary. Many of these homeowners are also unaware of the settlements.

> "California Court of Appeal: State required to return $331 million
> to mortgage settlement fund"[7]
>
> – but the State still refuses, in a fight costing the taxpayer money
> which was allocated to foreclosed homes and their families

---

[6] Class Action Settlement against Ocwen: In the proposed Settlement each **claimant** would receive approximately **$39** (USD). By contrast, the **lawyers** in the class action will receive in excess of **$5.2 million US dollars**.
https://www.ocwentcpasettlement.com/Content/Documents/Motion%20for%20Final%20Approv al%20of%20Settlement.pdf Lawyers quoted; "Reaching settlement terms was no easy feat. Counsel battled with Ocwen to obtain the evidence they needed to prove Ocwen systematically violated the TCPA. Ocwen litigated just about every possible issue, even when it was clear from ongoing accounts of Class Members that Ocwen continued to violate the TCPA. Plaintiffs moved to enjoin Ocwen's behavior, and after taking testimony surrounding Ocwen's consent practices, the Court agreed that Plaintiffs would be entitled to injunctive relief. This was the turning point in the case. After nearly three years of hard-fought litigation, Ocwen finally agreed to resolve the litigation.
[7] See Lexology: https://www.lexology.com/library/detail.aspx?g=f9e0f398-ea41-4c8e-bd0e- 5da48814ca7e

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

> – "Gov. Brown urged to return $331 million meant for homeowners."[8]

It has been well documented, homeowners, families and third parties (*e.g.* renters) have been displaced, victimized and are still physically, emotionally and financially distressed. Alarmingly, the increase of dilatory actions by these banks, mortgage servicers and foreclosure institutions has resulted in a spate of "zombie foreclosures".

Homeowners not only lost their homes, but as the banks and servicers "have no legal requirement" to tell them they cancelled the foreclosure prior to the auction date, many have become targeted and stalked. Victims of abandoned bank properties are increasingly <u>threatened with jail</u> if they do not repair and maintain the homes they thought they had lost to foreclosure.

The banks and/or mortgage servicers were not "walking away", they aggressively wanted to foreclose to claim all the deductions, insurance and other financial relief available before discarding the home and returned the resulting carnage to the unsuspecting homeowners, the community and economy at large.

---

[8] See The OCR – "The Brown administration has hired the law firm Remcho, Johansen & Purcell to defend it. Taxpayers have paid the firm more than $220,000 to date, Brown's finance department said." - https://www.ocregister.com/2015/07/06/gov-brown-urged-to-return-331-million-meant-for-homeowners/

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

For those homes that the banks and mortgage servicers felt were financially lucrative "flips", they would sell the properties at foreclosure for absurdly low prices to themselves.  This is where the greed becomes scandalous and where Ocwen is a controlling operator as detailed herein.

## OCWEN IS GAMING THE SYSTEM - WITH HELP

Mergers and acquisitions (since the financial collapse of 2008) in the financial industry has spawned into a dubious monopoly of key corporations.

For example, Ocwen, despite its decade-long public censures throughout the nation, has recently acquired PHH Corp., substantially increasing its foothold in the lucrative mortgage servicing vertical.

### TEXAS SUPREME TASK FORCE MEETING (EXTRACT)

MR. BASTIAN:  Well, part of that in Florida, their foreclosure statute says only the owner and holder of the note can bring the foreclosure, and MERS wasn't the owner and holder of the note, and yet everybody was pleading them as the owner and holder of note. All they were was the mortgagee of record in the land title records, and it got everybody confused, and like anything new, it just created problems.

MR. BARRETT:  Well, MERS was at great --greatly at fault for creating all of those impressions. They may be supposed to be

10

merely a registrant, but they haven't acted as a registrant. They have acted as a for-profit business, and they have gone out and tried to get into the default servicing business. At one point in time they considered themselves a huge competitor for doing foreclosure business, and they actually went out and marketed their services to bring foreclosures.

MR. BAGGETT: They've quit doing all that, right?

MR. BARRETT: Well, I don't know whether they have or not.

MR. BAGGETT: Okay.

MR. BARRETT: It's a big company. You might ask one and they say "We quit," and you ask three others, they say, "Oh, no, we still like your business." They're competitors, Mike.

Notably, the Court of Appeals for the District of Columbia Circuit upheld the CFPB's constitutionality but vacated the $100+ million fine against PHH.

This acquisition was hastily approved, despite the known failure of Ocwen in every possible act of compliance, including providing agreed financial statements to government agencies, which they blatantly refused to do.

Under the terms of the agreement, Ocwen will acquire all of PHH's outstanding shares for approximately $360 million in cash.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

On a combined basis, the company will service 1.9 million loans with an unpaid principal balance of $328 billion and originate over $3 billion of residential mortgages annually, based on Dec. 31, 2017 figures.

With immediate effect, Ocwen has been given a controlling market interest – a monopoly. *"Keep doing what you're doing is the message to Ocwen"*.  This does not bode well for consumers and homeowners.

### AN INTERVENTION FOR CONSTRUCTIVE CHANGE

The Applicants seek to become Intervenors in this law suit to (1) make a "material" impact on this Florida case, (2) help save their own homestead from wrongful foreclosure and (3) help homeowners in "distress" nationwide.

As unfortunate as it is, the Applicants are seasoned foreclosure veterans and victims of this scandal, which has opened their eyes and ears to the *"hidden secrets of the foreclosure industry"*, facts which are "personally known" by the Applicants.

### TEXAS SUPREME TASK FORCE MEETING (EXTRACT)

MR. REDDING: Well, the other problem --Judge, this is Tim Redding. The other problem that I see-- and, Tommy, you and I talk about it regularly -- that <u>we have a bunch of servicers that are corporations or trusts attempting to foreclose on behalf of other trusts using a power of attorney</u>, and I don't think that's really proper. I mean, <u>we all</u>

**kind of turn a blind eye to it** but think that's an issue that's out there
that somebody could use to potentially attack a foreclosure.

Below, Applicants have crafted a recommendation proposal as part of any
discussions (if approved) as this case moves forward:-

### THE CONSUMER FORECLOSURE TASK FORCE RECOMMENDATIONS

The Applicants would propose that CFPB, as part of this case along with
Applicants, seek disclosure of the following by mortgage servicers and Ocwen to
help transparency and remove any veils of corporate secrecy;

- **Ocwen Loans**; Identify and disclose which mortgage loans
  are delinquent, currently in foreclosure and being litigated in
  courts nationwide – owned by Ocwen. At the same time,
  ascertain  from Ocwen, a non-member of MERS, if these
  mortgage loans and respective deeds have been locally,
  recorded.

- **Engagement Letters**; Identify and disclose debt collection
  attorneys and foreclosure mills that have *active* engagement
  letters. Objections are anticipated and will include: "This is
  privity of contract", but when the government and banking
  industry created MERS and also started pooling mortgages

into trusts, it creates transfers of authority on a regular basis to mortgage servicers. Disclosure should be mandatory, it's a homestead that's being traded, not stocks and futures on Wall Street.

- **Independent Debt Collectors**; Identify attorneys that are independent (*e.g.* debt collectors / junk buyers) and have "assumed" current cases, with emphasis on those who failed to disclose they are independent, have bought the rights to the debt and that they are not "engaged" with any party to the action directly.

- **Commissions**; Identify any kickbacks, commissions or payments due or received for the above, including how it is calculated. Similar to the insurance industry *e.g.* Texas Insurance Code § 4005.004 Disclosure Of Compensation.

- **Compliance;** At this time, the laws are unconvincing and need to be amended and updated to provide clarity: Attorneys engaged in pursuing foreclosure are debt collectors, when the debts were delinquent at the time of purchase. Debt collectors are required to hold a surety bond and be insured per each State (in Texas that is the case but reconfirmation is requested).

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

- **The Distressed Loan Register**; The Government, via the FDIC, or individual State Agencies, start and maintain an online database, a register, with open Government policy of public access, (with registration and SSN confirmation, similar to checking your loan status with Fannie or Freddie) identifying when a loan is a junk debt, a Bank loan or "owned" by a Mortgage Servicer.

  The register should clearly identify which loans are written off and bought by independent debt collection agencies and foreclosure mills. In other words, define which loans are secured and which are unsecured debts.

  Mandate banks, lenders and mortgage servicers to provide the FDIC and/or the individual State Mortgage and Lending Agencies with monthly or quarterly movements (annual is too infrequent based on activity levels historically).

- **The Servicers RealServicing Platform;** When Ocwen bought PHH, they did so as an urgent need, not want. If they wished to retain this lucrative position in the mortgage servicing industry they required a new software system. Their

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

proprietary   software,   an   internal   platform   called *RealServicing* has been barred by State(s) like Mass.[9] Now they claim to be reborn again, relying on PHH's own internal servicing software, which it claims will resolve all issues. That is rather questionable. In prior settlements, it was agreed an independent auditor would be overseeing *RealServicing* (see Mass. Settlement terms). A detailed enterprise migration and integration plan will be pivotal to the success of this massive undertaking and should be monitored closely and with independent oversight.

---

[9] See $1 million fine and order here; https://www.mass.gov/consent-order/ocwen-loan-servicing-llc  See: 5. (b) REALSERVICING RESTRICTION.  Ocwen shall not board any new loans onto the REALServicing platform at any time.  This restriction does not apply to loans that are (i) already serviced on the REALServicing platform, including those that are subsequently modified or those that are subsequently converted to an arrangement whereby Ocwen acts as sub-servicer, or (ii) required to be repurchased by Homeward Residential, Inc. or Ocwen.
c. NEW ORIGINATIONS.  Ocwen may originate through broker, retail, or wholesale, or acquire through correspondent lender relationships, new residential mortgage loans, including, but not limited to, traditional mortgage loans, and reverse mortgages so long as they will not be boarded, even temporarily, to the REALServicing platform.  Any such loans must, instead, be sub-serviced by an unaffiliated, licensed and/or exempt entity, although Ocwen may only retain the associated MSRs in accordance with paragraph (a) above.
d. NEW SERVICING PLATFORM.  Ocwen shall develop a detailed Plan of Action and Milestones (POAM) for the transfer of all residential mortgages currently administered on the REALServicing platform to other servicing platform(s) that will enable Ocwen to comply with applicable mortgage servicing standards for its residential mortgage portfolios.  The POAM shall include a timeline for accomplishing each milestone in the POAM in order to complete the transfer within a commercially reasonable time.  The proposed POAM shall be submitted to the Division. Ocwen shall provide quarterly updates on the POAM until the transfer of all residential mortgages has been completed.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

- **The Crime Called MERS**; MERS of course is government and banking/investor owned, and it is a separate issue and not directly a party in this law suit. However, it warrants a statement here as it materially affects Ocwen and loan servicing compliance in day-to-day work.  MERS will require a complete change. As a decade of evidence and carnage in the courts confirms, there is no internal and external compliance or audit controls (you cannot possibly rely on oversight and instruction by the Comptroller (OCC) when it's headed by Joseph Otting).

The financial services risk and regulatory practices apparently does not apply to MERS. As a result, it's a candy store for debt collecting attorneys, foreclosure mills, mortgage servicers and banks to craft and present any missing document as required, as witnessed in courts nationwide (including the Applicants own mortgage case). Never, in the history of banking, IRS and audit compliance has any one person, apart from a person of authority who is committed to financial fraud, had so much control with no oversight. It's truly a watershed, an unmatched crime against the people of the United States of America.

The Financial Crisis Inquiry Commission ("FCIC") issued its final report on the causes of the financial collapse of 2008. According to the FCIC: **"We conclude this financial crisis was avoidable.** The crisis was the result of human action and inaction, not of Mother Nature or computer models gone haywire. The prime example is the Federal Reserve's pivotal failure to stem the flow of toxic mortgages, which it could have done by setting prudent mortgage-lending standards. **We conclude there was a systemic breakdown in accountability and ethics.** <u>Lenders made loans that they knew borrowers could not afford</u> and that could cause massive losses to investors in mortgage securities. The integrity of our financial markets and the public's trust in those markets are essential to the economic well-being of our nation."

## CFPB COMPLAINT SUMMARY

"The Consumer Financial Protection Bureau ("Bureau") brings this action against Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc., and Ocwen Loan Servicing, LLC (collectively "Ocwen" or "Defendants") under Sections 1054 and 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5564 and 5565. Ocwen is one of the largest mortgage servicers in the United States. The Company specializes in servicing the loans of

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

distressed borrowers. **It committed numerous violations of Federal consumer financial laws that have harmed borrowers.** Among other things, Ocwen has improperly calculated loan balances, misapplied borrower payments, failed to correctly process escrow and insurance payments, and failed to properly investigate and make corrections in response to consumer complaints. **Ocwen has compounded these failures by illegally foreclosing upon borrowers' loans and selling loan servicing rights to servicers without fully disclosing or correcting errors in borrowers' loan files."**

## HOW MANY TIMES DO YOU FORGIVE OCWEN?

This is not the first rodeo for *CFPB v Ocwen*. On Dec 19, 2013, the California Attorney General, Kamala D. Harris announced a $2.1 Billion Mortgage Settlement with Ocwen Financial Corporation and Ocwen Loan Servicing, LLC (Ocwen) over mortgage servicing misconduct.

This agreement is with a total of 49 states (including Texas) with $2 billion used to cover loan modifications and principal reductions for the people who lost their homes between Jan. 1, 2009 and Dec. 21, 2012, and those people whose loans were serviced by OCWEN.

*"OCWEN took advantage of borrowers at every stage of the process",* said Richard Cordray, Director of the federal Consumer Financial Protection Bureau.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

The Plaintiffs current law suit in Texas against Ocwen details the egregious behavior of Ocwen in settlements and class actions nationwide.[10]

> "Reaching settlement terms was no easy feat. Counsel battled with Ocwen to obtain the evidence they needed to prove Ocwen systematically violated the TCPA. Ocwen litigated just about every possible issue, even when it was clear from ongoing accounts of Class Members that Ocwen continued to violate the TCPA. Plaintiffs moved to enjoin Ocwen's behavior, and after taking testimony surrounding Ocwen's consent practices, the Court agreed that Plaintiffs would be entitled to injunctive relief. This was the turning point in the case. After nearly three years of hard-fought litigation, Ocwen finally agreed to resolve the litigation." – Attorneys for Plaintiffs, see Class Action Settlement Case: 1:14-cv-08461 Doc. 316, Snyder et al, v Ocwen et al, (Ill. 2018)

Furthermore, the Chief Compliance Officer (CCO), Michael Hollerich, with a resume which includes accounting firm PwC, is based in Addison, Texas.[11] Co-incidentally or not, this is where you'll find the largest foreclosure mill in the State,

---

[10] See *Joanna Burke v Ocwen Loan Servicing, LLC*, Case 4:18-cv-4544, District Court, Southern District of Texas, Houston Division
[11] Ocwen Financial is leasing 137,992 square feet in Addison, about 78,413 square feet in Lewisville until 2015 and 36,382 square feet in Houston.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

namely BDFTE.  He's the CFPB's go-to executive when Orders and fines are released.[12] His statement is; "Our motto is to delight the customer," Hollerich says[13]. "We believe that anyone experiencing a financial hardship is more likely to remain in their home if Ocwen is their loan servicer."

Here is what the Hollerich, the Chief Compliance Officer statement actually translates to, per CFPB's complaint;    "Ocwen has failed borrowers. Since April 2015, Ocwen has received more than 580,000 complaints and written notices of error from more than 300,000 different borrowers."  P.s. The Applicants can be added to that list.

## THE APPLICANTS REACHED OUT TO CFPB

Applicants contacted Plaintiffs' counsel on November 9, 2018, for advice and guidance. The Applicants were preparing to submit to Texas State Court and wrote to several attorneys for the CFPB, as listed in this Florida case.  One of the attorneys, Ms. Jean M. Healey, Senior Litigation Counsel responded on November 23rd, stating, in part:

---

[12] See Mass. "For purposes of the Consent Order, the designated representatives for the Division will be in the Enforcement and Investigations Unit.  The designated representative of Ocwen will be Michael Hollerich, michael.hollerich@ocwen.com." web; https://www.mass.gov/consent-order/ocwen-loan-servicing-llc
[13] See the prepared statement in the PR article; "Why Compliance is All About Culture at Ocwen" https://profilemagazine.com/2018/why-compliance-is-all-about-culture-at-ocwen-financial-corporation/

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

"While the Bureau cannot provide legal representation or individual legal advice as part of the lawsuit we filed against Ocwen, the Bureau's website also contains information about resources available to consumers."

With this in mind, Applicants have elected to respectfully submit this intervenor application directly and without further communication with the CFPB, as is Applicants right per the law and to expedite the motion.

## THE APPLICANTS REACHED OUT TO OCWEN

The Applicants have written directly to Ocwen several times in recent months,[14] only for silence in return (Ocwens Motto is rather empty). The Applicants do not anticipate any change in that position and hence it would be prudent to assume they will be opposed to this motion, for reasons set forth herein.

## LEGAL STANDARD

Pursuant to Rule 24 a nonparty may intervene as of right where the nonparty "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24 (a)(2). The

---

[14] See *Joanna Burke  v  Ocwen Loan Servicing, LLC*, Case 4:18-cv-4544, District Court, Southern District of Texas, Houston Division

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

non-conclusory allegations set forth in a motion to intervene are accepted as true. An applicant may intervene as of right when the applicant :

(1) makes a timely motion; **The original CFPB complaint, Doc. 1 was filed, April 20, 2017. The current latest recorded filing is dated, Dec 3, 2018, Doc. 209, an Order pertaining to discovery requests. The parties are still gathering information. The case has yet to reach trial, there is no final order. This intervention would not be prejudicial to the parties as it will not disrupt a final judgment. This motion is timely.**

(2) has an interest relating to the property or transaction that is the subject of the action; **See *Joanna Burke  v  Ocwen Loan Servicing, LLC*, Case 4:18-cv-4544, District Court, Southern District of Texas, Houston Division.**

(3) is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; **Ocwens refusal to comply directly to the Burkes' Qualified Written Request (QWR)[15] or via its unauthorized and unbonded attorneys-at-law,[16] defined by Texas law as debt collectors, will cause injury which will**

---

[15] Whilst attorneys "representing" Ocwen claim the QWR is deficient, the Applicants maintain it is valid. This is discussed in the Motion herein.

[16] See *Joanna Burke  v  Hopkins Law, PLLC, et al*, Case 4:18-cv-4543, District Court, Southern District of Texas, Houston Division

**prevent Applicants from defending the impending foreclosure order and sale. The accounting debt claimed by Ocwen is so egregious (a $615,000 loan now stated to be a debt of nearly $1.2million dollars according to Ocwen) that there will be unjust enrichment as a result of Ocwens failure to provide detailed answers to the Applicants requests, including material matters such as accounting and proof of transfer of the loan servicing from prior mortgage servicing companies to Ocwen Loan Servicing, LLC.**

(4) where the applicant's interests are not adequately represented by the existing parties. **Applicants can confirm applicants interests are not adequately represented, as detailed herein and in the Memorandum.**

An alternative to "intervention as of right" is "permissive intervention," whereby a court may permit an applicant to intervene if he makes a timely motion, he has a claim or defense, and that claim or defense shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b).

In addition, an intervenor must satisfy Article III standing requirements.

To show standing, a litigant must establish that

"(1) [he] has suffered an 'injury in fact' that is

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

(a) concrete and particularized **It is,** see **above and Memorandum.**

(b) actual or imminent, not conjectural or hypothetical; **It is, see above and Memorandum.**

(2) the injury is fairly traceable to the challenged action of the defendant; **It is, see above and Memorandum.**

(3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." **It will, see above and Memorandum .**

## PRIOR INTERVENOR APPLICATIONS

There has been quite a few independent applications. The pro se applications have usually failed, as they applied after the entry of judgment *e.g.* in the District of Delaware case; CONSUMER FINANCIAL PROTECTION BUREAU v. OCWEN FINANCIAL CORPORATION (1:13-cv-02025) Christopher Stoller was denied along with Sonia Becker.

Where this is not an issue, in similar CFPB law suits, intervenors have enjoyed a level-playing field and their applications have been approved *e.g.* in the District of Delaware case; CONSUMER FINANCIAL PROTECTION BUREAU v. THE NATIONAL COLLEGIATE MASTER  STUDENT TRUST, et al. (No. 17-1323 (MN)) several parties were successful, despite objections.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

"Before the Court are eight motions to intervene in the current litigation between the Consumer Financial Protection Bureau ("CFPB") and fifteen Delaware statutory trusts, called the National Collegiate Student Loan Trusts ( collectively "the Trusts").

**Ruling:** For the reasons discussed below, the Court **grants** each of the motions to intervene **and places no limitation on the intervenors' participation in this litigation.**"

## THE APPLICANTS AS STAKEHOLDERS

Constructive critique and earthy opinions by stakeholders elicit feedback to encourage positive change.

Without direct conversations and interaction with live consumers, this case will be regarded merely as another political charade where Ocwen will be "fined" in an agreed settlement (*e.g.* on agreement that the $100 million PHH fine was temporarily deferred as an accounting accrual while the takeover was finalized) and the status quo will continue.

This will result in little or none of the monetary award ever being disbursed to affected and displaced victims. If this court allows and accepts an ineffectual settlement, the judiciary will, by its actions, enforce a nationwide doctrine where

26

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

homeowners will continue to be wrongfully foreclosed and evicted. Respectfully, this should be untenable in the eyes of this honorable court.

> "It is not what a lawyer tells me I may do; but what humanity, reason, and justice tell me I ought to do."
>
> ~Edmund Burke, Second Speech on Conciliation, 1775

Government Agencies, banks, mortgage servicers and the judicial system all require customers to remain solvent. If you keep discounting and injuring them, then stakeholders will become antagonists.

However, disharmony should not prevail in this case, when there is an opportunity to encourage honesty and demand truth in lending and full compliance in any acts by Ocwen (mortgage servicers), when dealing with "consumers", *e.g.* citizens of the United States of America.

Approving the Intervenor Application will mean the court obtains the views and the help of the Applicants, who are consumers, homeowners and can be a representative voice of the people that are currently in a similar situation.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

"I can't speak for the other firms, but I can assure you that there has

not been submission of fraudulent documents." [17]

~ David J. Stern, disbarred Foreclosure Mill lawyer, Florida

Count III of the Florida Bar Complaint:[18]

**The assignment contained a false representation as to the date it**

**was executed** since the witnessing notary's term **could not have**

**been in existence on September 18, 2007**, the date Cheryl Samons

executed the assignment. 49. The notary's term of four years ran

from March 25, 2008 until March 24, 2012. The purported date of

the execution of the assignment was on September 7, 2007. 50.

On or about September 8, 2009, a corrected assignment of mortgage

prepared by David J. Stern, Esq. was filed in the public records in

Citrus County, Florida on behalf of MERS, as to the same property

referenced above. (Attached hereto and incorporated here as **The**

**Florida Bar Exhibit C** is a copy of the corrected assignment of

mortgage.)

---

[17] See NYT article https://www.nytimes.com/2010/10/16/business/16legal.html and Mother
Jones with cited cases;
https://www.motherjones.com/politics/2010/08/david-j-stern-djsp-foreclosure-fannie-freddie/
[18] See Florida Bar v David James Stern, Supreme Court of Florida (2013) The Florida Bar File
Nos. 2010-51,725(17I); 2011-50,154(17I); 2011-50,213(17I); 2011-50,216(17I); 2011-
50,511(17I); 2011-50,695(17I); 2011-50,850(17I); 2011-50,949(17I); 2011-51,192(17I); 2011-
51,322(17I); 2011-51,329(17I); 2011-51,369(17I); 2011-51,433(17I); 2011-51,497(17I); 2011-
51,696(17I); 2011-51,868(17I); 2012-50,144(17I).

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

**The corrected assignment was respondent's attempt to conceal**

**and correct the prior fraudulent assignment filed in the Citrus**

**County public records on July 29, 2008.**

Furthermore, the Applicants would enjoin, for the most part, with the Plaintiffs' opinions and could ensure that, if successful, the proposed order or settlement terms are improved, so that the affected consumers and homeowners will properly benefit from the judgment, including any monetary damages and orders, as directed by this honorable court.

This would give homeowners as stakeholders much overdue relief that they will not be subject to unlawful evictions and loss of the homestead to wrongful foreclosure in the future (as well as the accounting and other grievances listed in this law suit).

## CONCLUSION & PRAYER

The Applicants respectfully requests that this Court grant the Applicants motion to intervene as of right pursuant to Rule 24(a) or alternatively with permission pursuant to Rule 24(b ).

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

RESPECTFULLY submitted this 27th day of December, 2018.


_____
Joanna Burke / State of Texas
Pro Se




_____
John Burke / State of Texas
Pro Se


46 Kingwood Greens Dr
Kingwood, Texas 77339
Phone Number: (281) 812-9591
Fax: (866) 705-0576
Email: kajongwe@gmail.com

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

## CERTIFICATE OF SERVICE

We, Joanna Burke and John Burke hereby certify that on December 27, 2018, we
posted the attached document via USPS Priority Mail to the US District Court;

Clerk of Court
United States District Court
Southern District of Florida
West Palm Beach Division
**Paul G. Rogers Federal Building and U.S. Courthouse**
**701 Clematis Street, Room 202**
**West Palm Beach, FL 33401**

And also served copies to the following parties, by USPS Priority Mail:

**CFPB (Plaintiffs)**

Anthony Alexis,
Enforcement Director

Cara Petersen,
Deputy Enforcement Director for Litigation

Gabriel O'Malley,
Assistant Litigation Deputy

**Jean Healey**
Senior Litigation Counsel
Email: jean.healey@cfpb.gov
Email: Jean.healeydippold@cfpb.gov

Jan Singelmann
E-mail: jan.singelmann@cfpb.gov

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

Atur Desai
E-mail: atur.desai@cfpb.gov

Tianna Elise Baez
Email: tianna.baez@cfpb.gov

Stephanie C. Brenowitz
Email: stephanie.brenowitz@cfpb.gov

Lawrence DeMille-Wagman
Email: lawrence.wagman@cfpb.gov

Erin Mary Kelly
Email: erin.kelly@cfpb.gov

Gregory Ryan Nodler
Email: Greg.Nodler@CFPB.gov

Michael Posner
Email: michael.posner@cfpb.gov

Jack Douglas Wilson
Email: doug.wilson@cfpb.gov

James Joseph Savage
james.savage@cfpb.gov

Amanda Christine Roberson
amanda.roberson@cfpb.gov


**Mailing Address:**
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552


*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

**OCWEN (Defendants)**

Bridget Ann Berry

BerryB@gtlaw.com


Andrew Stuart Wein

weina@gtlaw.com

**Mailing Address:**
Greenberg Traurig
Phillips Point - East Tower
777 S Flagler Drive
Suite 300E
West Palm Beach, FL 33401

**Thomas M. Hefferon** (pro hac vice)
thefferon@goodwinlaw.com

Sabrina M. Rose-Smith (pro hac vice)
srosesmith@goodwinlaw.com

Catalina Azuero
CAzuero@goodwinlaw.com

Michelle Treadwell Briggs
MBriggs@goodwinlaw.com

Molly Madden
MMadden@goodwinlaw.com

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

**Mailing Address:**
GOODWIN PROCTER LLP
901 New York Ave., NW
Washington, DC 20001


**Matthew Previn**
mprevin@buckleysandler.com

**Mailing Address:**
BUCKLEYSANDLER, LLP
1133 Ave. of the Americas, Suite 3100
New York, NY 10036


*Attorneys for Defendants Ocwen Financial Corp.,*
*Ocwen Mortgage Servicing, Inc., and Ocwen*



**Interested Party**

**Douglas C Dreier**
ddreier@gibsondunn.com

**Mailing Address:**

Gibson, Dunn & Crutcher LLP
 1499 Massachusetts Ave NW
 Apt 608
 Washington, DC 20005



**Interested Party**

**Jeffrey S. Rosenberg**
jsrosenberg@gibsondunn.com

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

Eugene Scalia
escalia@gibsondunn.com


Patrick F. Stokes
pstokes@gibsondunn.com


**Mailing Address:**
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

*Attorneys for Altisource Solutions, Inc.*




**Interested Party**

Predrag Patrick Jovanov

**Mailing Address:**
405 NE 23rd Avenue
Apt. 1
Pompano Beach, FL 33062

*Pro Se*




**Interested Party**

Robert Sepulveda

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTOP5TX*

**Mailing Address:**
122 SW 37th Ave
Cape Coral, FL 33991

*Pro Se*


**Mediator**

David H. Lichter

**Mailing Address:**
2999 Northeast 191 Street
Suite 330
Aventura, FL 33180

*Mediator*