*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

John Burke and Joanna Burke
46 Kingwood Greens Dr
Kingwood, Texas 77339
Tel: 281 812 9591

FILED BY____ᴄᴏᴇ____ D.C.

JAN 0 2 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA,
WEST PALM BEACH DIVISION

### Civil Action No. 9:17-CV-80495

CONSUMER FINANCIAL
PROTECTION BUREAU,

    Plaintiffs,

 vs.

OCWEN FINANCIAL
CORPORATION,
a Florida corporation,

OCWEN MORTGAGE
SERVICING, INC.,
a U. S. Virgin Islands corporation,

and
OCWEN LOAN SERVICING,
LLC,
a Delaware limited liability
company,

   Defendants.

   )
   )
   )
   )
   )
   )
   )
   )

MEMORANDUM IN SUPPORT OF
PLAINTIFF-INTERVENOR
APPLICANTS MOTION TO
INTERVENE

1

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 3

BLAISDELL v. MNUCHIN ........................................................................................................... 4

    FINANCIAL FREEDOM (REVERSE MORTGAGES) ................................................................ 7

    CONSENT ORDER TO ONEWEST (APRIL 2011) .................................................................. 8

    THE ROBOSIGNING SCANDAL: ........................................................................................ 11

    ONE CONVICTION IS A TOKEN MESSAGE ....................................................................... 11

    PREDATORY LENDING EXECUTIVES ARE SIPPING MIMOSAS WITH WISPY FINES AND NO JAIL TIME 13

    SELF GOVERNMENT IS NOT POSSIBLE UNLESS THE CITIZENS ARE ALLOWED TO INTERVENE IN CASES ........................................................................................................................ 14

WHAT THE QWR IS GOING ON WITH ACCOUNTING? ............................................................ 15

    MORTGAGE SERVICER  FIVE YEAR TRANSFER HISTORY .................................................. 16

    TEXAS SUPREME TASK FORCE MEETING (EXTRACT) ....................................................... 17

    INDYMAC, STEVE MNUCHIN, OCWEN AND MORTGAGE SERVICING ................................ 20

THE CFPB REVEALS IT'S OWN CONFLICT OF INTEREST ........................................................... 21

SUMMARY FROM PRO SE HOMEOWNER APPLICANTS ............................................................ 22

CONCLUSION & PRAYER ........................................................................................................... 24

    CERTIFICATE OF SERVICE ................................................................................................ 26

# INTRODUCTION

Joanna Burke and John Burke ("Applicants"), hereby moves (the "Motion") pursuant to Fed. R. Civ. P. 24 to intervene in this action so it may be heard in connection with the law suit, filed by Plaintiff Consumer Financial Protection Bureau (the "CFPB").

What follows, is a historic look at the events from the financial collapse of 2008 as a direct result of the decisions and appointments within government and the banking industry that lead to this case.

It's an oversight of (i) why this case is in court, (ii) why the past cases between the parties and the settlements agreed made little impact to those it sought to provide relief (the consumers) and (iii) why the Applicants should be allowed to intervene, as "real" consumers with proven "injuries".

A voice for the people, the consumers and homeowners, who rely on (the "Plaintiffs") the watchdog agency (CFPB) to look after their interests and also (the "Defendants") where they (borrowers) make payments to a set of movable private debt collection companies, called "mortgage servicers", in this case Ocwen, to invite discussion and positive change, with the help of a much more informed, knowledgeable and experienced judiciary.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

## BLAISDELL v. MNUCHIN

As we currently witness the market crashing to its lowest point since the Great Depression, this can only paint a darker picture pertaining to any immediate future recovery.

After the financial collapse in 2008, instead of implementing a significant foreclosure moratorium to invite the economy to grow, for example, in *Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, a decision of the United States Supreme Court holding that Minnesota's suspension of creditors' remedies was not in violation of the United States Constitution, (and in its simplest economic form, allowed farmers to farm and the food to reach the people).

The government in 2008+ elected to protect financial institutions at the fatal cost of homeowners legal rights, their homestead and ultimately the economy (Blaisdell was decided during the depth of the Great Depression).

The short moratoriums were just that, too short. HAMP and other government-driven solutions failed as they were manipulated by the banking industry responsible for implementation and used as a weapon rather than relief against homeowners.

> Fifth Circuit (Texas): In an oral hearing a Judge questions a lawyer,
>
> asking why payments are returned by lenders to customers without

> reason, as she has read in briefs and motions where this accusation
> was leveled -"I've seen at least 50 of these claims…" *Diaz v*
> *Deutsche Bank* Case No. 15-41372 (19.12 mins into oral argument
> recording). – Foreclosure: Affirmed.

On top of this, mortgage lending criteria was severely tightened, thus the number of loan applications in 2017 compared to the 2004 high (and when pooling loans were a driving force), shows a grim picture. A 70% decrease.[1]

Conversely, mortgage servicers like Ocwen are booming again, with recent catastrophic natural disasters affecting Texas, Florida and North Carolina in short order:

> There were 66,401 properties with foreclosure filings in October, a
> jump of 21% from the previous month. "We saw an initial
> foreclosure moratorium in those markets, to give people relief who
> had been affected by the hurricanes, but now lenders are playing
> catch-up and actually filing some of those deferred foreclosures,"
> said Attom Senior Vice President Daren Blomquist.[2] "The effects

---

[1] See Mortgage Market Activity Trends Report by CFPB web:
https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/bcfp_hmda_2017-mortgage-market-activity-trends_report.pdf
[2] See National Mortgage News: https://www.nationalmortgagenews.com/list/12-housing-markets-where-foreclosures-are-spiking

have masked that there are more widespread increases in foreclosure activity," he added.

Government decisions and appointments will ensure 2019 will make history again. It will not be cited in the history books as a successful recovery from the financial recession of 2008. Rather, it will be known as the time in which the US sacrificed consumers in the hopes of keeping the banking industry lush and federal sovereignty intact. It achieved that part, during the decade in-between, however, it has ultimately come at the cost of US economy once again. Without aiding the people, the citizens, the farmers, this government has unilaterally failed and on track for "*Make Depression Great Again II*".

Shockingly, government has recently turned to the "Foreclosure King" Steve Mnuchin (formerly IndyMac/OneWest) as US Treasurer and Joseph Otting, former CEO of OneWest (now CIT) to the OCC.

It begs the questions, why is government, and in particular, the part of government that controls mortgages and lending, led by Mnuchin? Mnuchin, based on financial disclosures, is receiving over $1,000,000 in payments from companies where the directors of these companies lead back to Short Sale and Distressed Property Foreclosure businesses, as well as Ocwen, which his Government and departments (CFPB) are suing right now in this very case - a conflict of interest.

6

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

What about his colleague, Joseph Otting, Comptroller of the Currency and just days ago appointed as Acting Director of FHFA[3]?  Why is he leading the OCC? This was the individual who would write to the OCC in his role as CEO at OneWest Bank (now CIT) asking for documentation from the FDIC to help expedite foreclosures due to "lost paperwork". His resume is not one consumers and homeowners wish to read:-

### FINANCIAL FREEDOM (REVERSE MORTGAGES)

The government had alleged Financial Freedom Senior Funding, a division of OneWest, where Otting was CEO, bilked taxpayers by wrongfully foreclosing on borrowers and then sticking the government with excess insurance payments on federally insured reverse mortgages.

Documents obtained from the Department of Housing and Urban Development, (HUD) show Financial Freedom foreclosed on

---

[3] See: Statement of FHFA Director Melvin L. Watt on Designation of Comptroller of the Currency Joseph Otting as Acting Director of FHFA web: https://www.fhfa.gov/Media/PublicAffairs/Pages/Statement-of-FHFA-Director-Melvin-L-Watt-on-Designation-of-Comptroller-of-the-Currency-Joseph-Otting-as-Acting-Director-of-FHFA.aspx and re: FHFA Announces $1.9 Billion Settlement With Deutsche Bank web: https://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-Announces-$1-9-Billion-Settlement-With-Deutsche-Bank.aspx and re: John Thain, chair and chief executive officer of CIT Group, left, speaks alongside Joseph Otting of OneWest, during a public meeting in Los Angeles, Calif., on Feb. 26, 2015, held by the Federal Reserve Board and the Office of the Comptroller of the Currency to collect information relating to the merger of CIT Bank into OneWest Bank.web: https://theintercept.com/2018/09/29/joseph-otting-occ-onewest-bank-merger-cit/

16,000 homes between the spring of 2009, when it was acquired by OneWest, and the end of 2015, when Otting was fired.

Though its share of the reverse mortgage market was just 17 percent, it was responsible for 39 percent of reverse mortgage foreclosures.

CIT fired Otting shortly after purchasing the company from a private equity fund run by Steve Mnuchin, US treasury secretary. It paid Otting a reported $12 million in severance.

### CONSENT ORDER TO ONEWEST (APRIL 2011)

**The Office of Thrift Supervision (OTS) :** In connection with certain foreclosures of loans in its residential mortgage servicing portfolio, the Association (OneWest Bank, FSB) engaged in the following unsafe or unsound practices:

(a) filed or caused to be filed in state and federal courts numerous affidavits executed by its employees or employees of third-party service providers making various assertions, such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the

relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records;

(b) filed or caused to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, specifically that were not signed or affirmed in the presence of a notary;

(c) litigated foreclosure and bankruptcy proceedings and initiated non-judicial foreclosure proceedings without always ensuring that the promissory note and mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time;

(d) failed to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes;

(e) failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; and

(f) failed sufficiently to oversee outside counsel and other third-party providers.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

Historically, this is what happened: On December 31, 2008, the FDIC signed a letter of intent to sell, for approximately $13.9 billion, the banking operations of IndyMac (the Applicants original lender) to a thrift holding company owned by a consortium of private equity investors led by *Steven T. Mnuchin* of Dune Capital Management LP. [4]

The investor group includes Dune Capital, J.C. Flowers & Co., Stone Point Capital, Silar MCF-I LLC (an affiliate of Silar Advisors, LP) and investment groups controlled by George Soros, John Paulson and Michael Dell. The thrift holding company will capitalize IndyMac with approximately $1.3 billion in cash.

In summary, these are detrimental and catastrophic government appointments for homeowner and consumers. There is a blatant conflict of interest.

---

[4] See **Mnuchin spent 17 years at Goldman Sachs**, left in 2002, and two years later, he founded hedge fund **Dune Capital Management** with two fellow **Goldman Sachs alums**, Daniel Neidich and Chip Seelig  web:  https://www.forbes.com/sites/katevinton/2016/12/16/why-is-a-defunct-hedge-fund-listed-as-trumps-treasury-secretarys-main-job/#5b615e1b104e
 and **FHFA**: The sale of NPLs reduces the number of delinquent loans in the Enterprises' portfolios and transfers credit risk to the private sector.  Which leads into the FHFA Non-Performing Loans Report Dec 2017 which shows **Goldman Sachs #1 buyer  (22%) of these loans** (see Page 16) https://www.fhfa.gov/AboutUs/Reports/ReportDocuments/December2017_NPL_Sales_Report.pdf

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

## THE ROBOSIGNING SCANDAL:
## ONE CONVICTION IS A TOKEN MESSAGE

One solitary woman, namely Lorraine Brown, CEO of DocX went to jail after the financial scandal and collapse in 2008, with headlines around the country stating "DocX Shutdown as Part of $35M 'Robosigning' Fraud Settlement" and the DOJ pens "Former Executive at Florida-Based Lender Processing Services Inc. Sentenced to Five Years in Prison for Role in Mortgage-Related Document Fraud Scheme. Over 1 Million Documents Prepared and Filed with Forged and False Signatures, Fraudulent Notarizations".[5]

Consumers assumed this conviction for fraud would ensure relief  for their own fraudulent mortgages and loans. Robo-signing, where minimum wage temporary staff had been hired en-masse by mortgage servicers, lenders, foreclosure mills and others to defraud the homeowners. Where photocopiers worked overtime, rubber stamps were designed, and legal documentation forged to present to courts in order to obtain illegal, expedited foreclosures.

---

[5] See Department of Justice Press Release web : https://www.justice.gov/opa/pr/former-executive-florida-based-lender-processing-services-inc-sentenced-five-years-prison

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

Alas, no, the cost of this fraud impacted the core of the fed, the banking industry and the economy. There was no provision for such compensation, and these "Institutions" could not fail.

The years that followed relied on collusion of the banking industry, government and the judicial system, who unfortunately had to assume the role of executioners, to ensure that they did not have to pay consumers for these bad loans.

> Despite overwhelming votes for the inclusion of SB830, Abbott alarmingly vetoes the proposed Texas legislature that would restrict **mortgage servicers** racking up unaccountable and unconstitutional fees and interest.

> "Senate Bill 830 imposes burdensome new regulatory and paperwork requirements on those who offer seller-financed mortgages. This sort of regulation could increase the price and reduce the availability of these mortgages." – Greg Abbott, Governor, TX, June 2017.

Rather they endorsed the banks and debt collectors to take citizens homes and when needed, amended acts and legislation necessary to do so.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

## PREDATORY LENDING EXECUTIVES ARE SIPPING MIMOSAS WITH WISPY FINES AND NO JAIL TIME

Conversely, the CEO of IndyMac, Mike Perry, paid a nominal $1 million dollar fine[6] with no jail time. Mike Perry, a CPA, earned as much as $34 million p.a. in bonuses alone to package fraudulent loans – *e.g.* predatory loans, inflating house and commercial property prices, returning checks to customers with the intent to default them into foreclosure, fabricating and approving fraudulent mortgage applications, including the Applicants, and the list goes on.

In the FDIC as Receiver of IndyMac Bank, F.S.B. v. Van Dellen, et al - judgment by jury awarded $168 million against 3 former IndyMac executives, and came with a summing up message;

**"It Was Greed."** A Message to Bankers from the FDIC v. Van Dellen Jury

If you read the Center for Responsible Lending (CRL) report; "Indymac: What Went Wrong?" dated June 30, 2008 it includes;

"I would reject a loan and the insanity would begin," one former IndyMac underwriter told CRL. "It would go to upper management and the next thing you know it's going to closing. . . . I'm like, **'What the Sam Hill? There's nothing in there to support this loan.'** "

---

[6] See FDIC ; https://www.fdic.gov/about/freedom/plsa/ca_indymacperry.pdf

The Department of Justice ("DOJ") is not so forgiving to "regular" mortgage brokers who engage in similar acts, they receive hefty jail time and massive fines. The DOJ website is filled with these convictions, but alas, that cannot be said for those responsible and accountable for the 2008 recession and banking industry collapse.

### SELF GOVERNMENT IS NOT POSSIBLE UNLESS THE CITIZENS ARE ALLOWED TO INTERVENE IN CASES

The citizens are more educated today and with the advent of the internet, they now have access to tools which allow them access to documentation and information never before possible, or at least, more difficult to obtain.

Contrary to common belief and as written in motions throughout the nation, penned by judges and researched by the clerks of the court,  not all citizens are "conspiracy theorists" writing illegible and highly charged motions, making unfounded statements.

No, many are simply frustrated by the fact they feel abandoned and that the judiciary is a daunting, complex and unforgiving arena, on top of which has a cost of entry which is just too high for the common person to afford, especially in the given circumstances. Those who can and do pay, are seldom rewarded in foreclosure related litigation. In summary, in todays' format, the law courts are neither approachable, impartial or affordable.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : internal Ref: #RESTORETX*

## WHAT THE QWR IS GOING ON WITH ACCOUNTING?

For the purposes of this Application, the Applicants will wish to raise an issue with obtaining information from Ocwen, pertaining to regular accounting and confirmation of the fact they actually are "*authorized*" mortgage servicers in the Applicants own mortgage, as claimed by Ocwen.

Legislation and laws were implemented by the CFPB to request information from mortgage services. Sounds simple? Apparently, it's not. In the Applicants own case, they cannot even obtain a record of payments made or confirmation that Ocwen is the authorized servicer.

Whilst attorneys "*representing*" Ocwen claim the QWR is deficient, the Applicants maintain it is valid. This has still to be determined in Court.

The QWR is an area where it appears on the face that it should be simple to obtain validation of payments made to account and should not be barred from discovery when it involves the homestead.

> See CFPB; "The qualified written request must be related to the servicing of the loan. See id. § 2605(e)(1)(A).
>
> "Servicing" includes "any scheduled periodic payments from a borrower" or the "making of... payments of principal and interest...." Id. § 2605(i)(3).

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

And what about the provision which prohibits a debt collector from

"misrepresenting the character, extent, or amount of consumer

debt..." TEX. FIN. CODE. § 392.304(a)(8)?

In the opening complaint, "Background" section of this law suit, CFPB states;

"Ocwen has compounded these failures by illegally foreclosing upon borrowers'

loans and selling loan servicing rights to servicers without fully disclosing or

correcting errors in borrowers' loan files."   The Applicants agree. As stated, the

failures include simple requests, *e.g.* consumers cannot even obtain basic loan

information.

### MORTGAGE SERVICER  FIVE YEAR TRANSFER HISTORY

A mortgage is a lengthy term commitment, usually over a 15-30 year period.

Common sense states that if you are a lender, a mortgage servicer and a foreclosure

specialist, you're going to want to have accounting from the start of the loan until

the current date.

A question for the CFPB and Ocwen would help in the Applicants litigation

and this law suit:

Does the CFPB need to amend RESPA to make it even more "plain English"

than it already is for courts to allow homeowners to get basic accounting and

ownership validation from mortgage servicers and/or lenders?

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

If, as in this case, a former servicer transfers the "file" to a new servicer – and this file includes all historical accounting data, it begs the question:

How can a mortgage servicer legally avoid this request? In the Applicants case, the alleged servicer Ocwen shows nothing as far as payments from the borrower, relying on its statement opening date of 2010, rather than 2007, when the disputed mortgage loan commenced.  (This should not be confused with complete loan accounting records, which are to be kept for a <u>minimum of ten years</u>).[7]

In order to validate the debt, the legal responsibility must fall on the servicer, to prove the servicer sale and/or transfer(s) occurred. In Texas this was discussed over a decade ago, so they surely know it's a requirement;

### TEXAS SUPREME TASK FORCE MEETING (EXTRACT)

MS. NEELEY: I was going to make an observation. Under RESPA you have to be a federally related lender, and some of these tax lien financiers are below the one million threshold, and so they are not necessarily subject to RESPA, and under RESPA you've got to give the disclosure of the transfer of servicing rights that was added in by Henry B. Gonzalez a number of years ago, but I don't recall, and I don't know if any of you guys remember, a record retention requirement as to how long that servicing right disclosure is actually

---

[7] See Section 5.02 (c) of Servicing Agreement web:
https://www.fdic.gov/buying/historical/structured/indymac-venture-llc/indymac-servicing-agreement.pdf

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

retained by the lender such that that document would be available to -- I don't think it's retained.

MR. BASTIAN: **It's five years.**

MS. NEELEY: Yeah. So you don't have that necessarily when you're getting ready to foreclose to establish that as one of the pieces of evidence. So the verification process I think works and then the debtor is going to know, "I wasn't making payments to that servicer. I'm going to contest this, because that's not really the right party," I think.

MR. BARRETT: Good point.

As correctly stated by Ms. Neeley, it is not the responsibility of the customer to prove the accounting and payments to account by the borrower along with any debits, fees and charges applied for the duration of the disputed debt by the lender *e.g.* the history of the loan.

> For example, see the 7[th] Districts interpretation; "**RESPA does not require any magic language** before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear."[8]

---

[8] See Catalan v. GMAC Mortgage Corp., 09-2182 - U.S. Seventh Circuit

18

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

That said, Texas courts have inexplicably denied RESPA relief requests (via QWR's usually) time and time again, including aged accounting to be provided by mortgage servicers.

> **This is a rare case** in the Court did not affirm dismissal of the borrower's claims against a home lender. As a result, it is worth reading."[9] – Stephen W. Sather, Austin , Texas referencing Fifth Circuit Opinion.

From a homeowners perspective, this shows bias to lenders and mortgage servicers. If you are a lender. Mortgage servicer and/or sub servicer, and you've lost the documents and can't prove accounting, the courts should not be gatekeepers and executioners, as seen in Texas courts, opining "aged debts" including payments to account by the homeowners can be ignored. It's nonsensical.

This attempt to avoid collateral damage to banks and mortgage servicers foreclosure action due to their failure to keep proper accounting records is indefensible when homesteads are at risk.

**TEXAS SUPREME TASK FORCE MEETING (EXTRACT)**

---

[9] Referencing Case: Barzelis v. Flagstar Bank, F.S.B., No. 14-10782 (5th Cir. 2015) Sather; State Bar of Texas: Bar Card Number: 17657520 TX License Date: 11/07/1986 website reference: https://stevesathersbankruptcynews.blogspot.com/2015/06/fifth-circuit-report-april-may-2015.html

MR. BARRETT: "Barrett Burke, for example, is an entirely paperless outfit. We don't keep paper. - Barrett of BDFTE, Foreclosure Mill, Addison, Texas.

### INDYMAC, STEVE MNUCHIN, OCWEN AND MORTGAGE SERVICING

In the Applicants case, the "mortgage servicing" contracts and agreements started shortly after the Bank failed and *Steve Mnuchin* (Dune, IMB HoldCo, IndyMac Venture and OneWest Group and Bank) purchased the *mortgage servicing* rights of IndyMac (after the appointed FDIC receiver, Terry Rouch[10], had advised him he could not retain the brand IndyMac despite his protestations, hence all the companies names in the agreements as he reluctantly rebranded to OneWest Bank).

In the Applicants case; OneWest Bank (Mnuchin & Otting) and Ocwen are merely "junk buyers of debt" and equivalent to Texas based debt collectors like Expert Global Solutions (EGS), who purchase unsecured debt for cents on the dollar and were subject to the largest fine by FTC in 2013.[11]

In other words, if the mortgage loan debt, which is referred to as the mortgage servicing rights (MSR), were capitalized for the purposes of sale by IndyMac's

---

[10] See https://www.linkedin.com/in/terry-rouch-a6797634 and https://www.linkedin.com/pulse/pinnacle-failure-legacy-indymac-bank-terry-rouch?articleId=6227922570914590720#comments-6227922570914590720&trk=prof-post

[11] See FTC: World's Largest Debt Collection Operation Settles FTC Charges, Will Pay $3.2 Million Penalty   web: https://www.ftc.gov/news-events/press-releases/2013/07/worlds-largest-debt-collection-operation-settles-ftc-charges-will

Intervenor : Applicant Burke, Texas : CFPB : Cowen : Internal Ref: 4RESTORETX

receiver (the FDIC) to OneWest Bank, they were in effect purchasing an "unsecured" debt. OneWest Bank, led by former Goldman Sachs Mnuchin, is in the business to make serious money. Mnuchin (via Dune et al) came in as a wholesale junk buyer of debt, and did so for 24 cents on the dollar. The FDIC as receiver, severed the debt (the MSR) from the security (the Note). Deutsche Bank, despite their law suit against FDIC, were just another "third-tier" creditor that lost 100% of its investment (in IndyMac Bank), as standard for any third-tier creditor when the bank became insolvent. The "paper" note they hold is worthless. That's what the record supports.

### THE CFPB REVEALS IT'S OWN CONFLICT OF INTEREST

The CFPB very recently made an alarming move.   The CFPB wrote an Amicus Brief for the pending Obduskey Supreme Court case[12] and in support of debt collecting foreclosure lawyers.

In its amicus brief, the CFPB points to FDCPA Section 1692a(6) which defines the term "debt collector" to include, for purposes of Section 1692f(6), someone whose business is principally the "enforcement of security interests."  Section 1692f(6) provides that

---

[12] See Obduskey v. McCarthy & Holthus LLP, et al. web;
https://www.supremecourt.gov/DocketPDF/17/17-1307/72054/20181114152356604_17-1307bsacUnitedStates.pdf - argument set for January 7, 2019

it is an unfair or unconscionable collection practice to take or threaten to take nonjudicial action to effect dispossession of property under specified circumstances. The CFPB argues that it follows from this 'limited-purpose definition of debt collector" that, except for purposes of Section 1692f(6), enforcing a security interest, is not, by itself debt collection and to read the provision differently would render the "limited-purpose definition…superfluous."

This begs the question; why is CFPB called the "consumer" agency - yet supporting debt collecting foreclosure lawyers? This presents further argument why the Application for the Applicants Motion to Intervene as co-Plaintiffs should be approved, and so that justice may be served.

## SUMMARY FROM PRO SE HOMEOWNER APPLICANTS

There are very confusing signals and messages from government agencies like CFPB, who appear disorganized themselves. This agency has been known as the CFPB since opening its doors in 2011, but its former acting director, Mick Mulvaney, believed it should instead be called the Bureau of Consumer Financial Protection, or BCFP.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

However, the new name has not resonated and the bureau's new director, Kathy Kraninger, has now officially stated: "To be clear, I care much more about what we do than what we are called," in an email to staff recently. Let's hope it isn't just a puff of profile-raising for the freshly charged incumbent and not going to haunt Kraninger, like the CCO of Ocwen *e.g.* "Our motto is to delight the customer," Hollerich says. "We believe that anyone experiencing a financial hardship is more likely to remain in their home if Ocwen is their loan servicer."

These law suits are very subjective, and the consumers and homeowners are not being included as stakeholders nor allowed to have a voice. Here is an opportunity for these parties to effect positive change by listening, engaging and working together for the common good of the people.

Certainly, none of the parties are going to be on  this years' Christmas card list or rolodex labeled 'friend' in the current adversarial position, but that is what mediation and arbitration is all about – hopefully leading to agreeable and effective settlements - and regaining trust from  those injured people that CFPB and Ocwen claim to represent, based on how they perform, change and engage with consumers in a new and constructive way on a daily basis.

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

Don't talk around the people, talk to the people.   An approval of the Applicants motion to intervene would be a prodigious start.

## CONCLUSION & PRAYER

The Applicants respectfully requests that this Court grant the Applicants motion to intervene as of right pursuant to Rule 24(a) or alternatively with permission pursuant to Rule 24(b ).

RESPECTFULLY submitted this 27th day of December, 2018.

_____

Joanna Burke / State of Texas
Pro Se

_____

John Burke / State of Texas
Pro Se

46 Kingwood Greens Dr
Kingwood, Texas 77339
Phone Number: (281) 812-9591
Fax: (866) 705-0576
Email: kajongwe@gmail.com

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

## CERTIFICATE OF SERVICE

We, Joanna Burke and John Burke hereby certify that on December 27, 2018, we
posted the attached document via USPS Priority Mail to the US District Court;

Clerk of Court
United States District Court
Southern District of Florida
West Palm Beach Division
**Paul G. Rogers Federal Building and U.S. Courthouse**
**701 Clematis Street, Room 202**
**West Palm Beach, FL 33401**

And also served copies to the following parties, by USPS Priority Mail:

## CFPB (Plaintiffs)

Anthony Alexis,
Enforcement Director

Cara Petersen,
Deputy Enforcement Director for Litigation

Gabriel O'Malley,
Assistant Litigation Deputy

**Jean Healey**
Senior Litigation Counsel
Email: jean.healey@cfpb.gov
Email: Jean.healeydippold@cfpb.gov

Jan Singelmann
E-mail: jan.singelmann@cfpb.gov

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

Atur Desai
E-mail: atur.desai@cfpb.gov

Tianna Elise Baez
Email: tianna.baez@cfpb.gov

Stephanie C. Brenowitz
Email: stephanie.brenowitz@cfpb.gov

Lawrence DeMille-Wagman
Email: lawrence.wagman@cfpb.gov

Erin Mary Kelly
Email: erin.kelly@cfpb.gov

Gregory Ryan Nodler
Email: Greg.Nodler@CFPB.gov

Michael Posner
Email: michael.posner@cfpb.gov

Jack Douglas Wilson
Email: doug.wilson@cfpb.gov

James Joseph Savage
james.savage@cfpb.gov

Amanda Christine Roberson
amanda.roberson@cfpb.gov

**Mailing Address:**
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

**OCWEN (Defendants)**

Bridget Ann Berry

BerryB@gtlaw.com


Andrew Stuart Wein

weina@gtlaw.com

**Mailing Address:**
Greenberg Traurig
Phillips Point - East Tower
777 S Flagler Drive
Suite 300E
West Palm Beach, FL 33401

**Thomas M. Hefferon** (pro hac vice)
thefferon@goodwinlaw.com

Sabrina M. Rose-Smith (pro hac vice)
srosesmith@goodwinlaw.com

Catalina Azuero
CAzuero@goodwinlaw.com

Michelle Treadwell Briggs
MBriggs@goodwinlaw.com

Molly Madden
MMadden@goodwinlaw.com

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

**Mailing Address:**
GOODWIN PROCTER LLP
901 New York Ave., NW
Washington, DC 20001


**Matthew Previn**
mprevin@buckleysandler.com

**Mailing Address:**
BUCKLEYSANDLER, LLP
1133 Ave. of the Americas, Suite 3100
New York, NY 10036


*Attorneys for Defendants Ocwen Financial Corp.,*
*Ocwen Mortgage Servicing, Inc., and Ocwen*



**Interested Party**

**Douglas C Dreier**
ddreier@gibsondunn.com

**Mailing Address:**

Gibson, Dunn & Crutcher LLP
 1499 Massachusetts Ave NW
 Apt 608
 Washington, DC 20005



**Interested Party**


**Jeffrey S. Rosenberg**
jsrosenberg@gibsondunn.com

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

Eugene Scalia
escalia@gibsondunn.com


Patrick F. Stokes
pstokes@gibsondunn.com


**Mailing Address:**
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

*Attorneys for Altisource Solutions, Inc.*




**Interested Party**

Predrag Patrick Jovanov

**Mailing Address:**
405 NE 23rd Avenue
Apt. 1
Pompano Beach, FL 33062

*Pro Se*




**Interested Party**

Robert Sepulveda


**Mailing Address:**

*Intervenor : Applicant Burke, Texas : CFPB v Ocwen : Internal Ref: #RESTORETX*

122 SW 37th Ave
Cape Coral, FL 33991

*Pro Se*


**Mediator**

David H. Lichter

**Mailing Address:**
2999 Northeast 191 Street
Suite 330
Aventura, FL 33180

*Mediator*

# PRIORITY
## ★ MAIL ★

 **DATE OF DELIVERY SPECIFIED***

 **USPS TRACKING™ INCLUDED***

 **INSURANCE INCLUDED***

 **PICKUP AVAILABLE**

\* Domestic only

**WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.**

This envelope is made from post-consumer waste. Please recycle - again.



EP14F

 

usps.com  9405 5036 9930 0371 7957 95 0067 0000 0053 3401
$6.70
US POSTAGE
Flat Rate Env

12/28/2018     Mailed from 77339     062S0000001301

## PRIORITY MAIL 2-DAY™

JOANNA BURKE                                Expected Delivery Date: 12/31/1
46 KINGWOOD GREENS DR
KINGWOOD TX 77339-5339                                    0006

**Carrier -- Leave if No Response**     | C028 |

UNITED STATES DISTRICT COURT
SOUTH DISTRICT OF FLORIDA

SHIP  PAUL G ROGERS
TO:   FEDERAL BUILDING AND US COURTHOUSE
      701 CLEMATIS ST
      RM 202
      WEST PALM BCH FL 33401-5113

### USPS TRACKING #



9405 5036 9930 0371 7957 95

Electronic Rate Approved #038555749

# PRIORITY®
# ★ MAIL ★

## FLAT RATE ENVELOPE
ONE RATE ★ ANY WEIGHT*



P S 00001000014

EP14F July 2013
OD: 12.5 x 9.5