**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:17-CV-80495- MARRA-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU,
Plaintiff,

vs.

OCWEN FINANCIAL CORPORATION,
OCWEN MORTGAGE SERVICING, INC., and
OCWEN LOAN SERVICING, LLC,
Defendants.

_______________________________________/

**PLAINTIFF CONSUMER FINANCIAL PROTECTION BUREAU'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM [DE 288]**

On October 25, 2017, Defendants filed a Motion for Leave to File Supplemental Memorandum in Support of their Motion to Dismiss. [DE 47.] Defendants described the two-page Supplemental Memorandum [DE 47-1], which they attached to the Motion, as an attempt "to clarify the position of the United States on the issue of" the constitutionality of the Bureau's structure. In fact, that Motion served merely as a means of providing this Court with a copy of the Brief of the United States as Amicus Curiae, which the United States filed in March 2017 in *PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018) (en banc). [DE 47-2.] In that amicus brief, the United States argued that, because the Bureau is headed by a single Director who is removable by the President only for cause, not at will, the Bureau's structure was unconstitutional. However, in its en banc opinion in *PHH*, the D.C. Circuit rejected the arguments presented in the

amicus brief, and upheld the constitutionality of the Bureau's structure.[1] This Court should do so as well.

**BACKGROUND**

On June 23, 2017, Defendants filed their Motion to Dismiss the complaint in this case, arguing, *inter alia*, that the Bureau's structure was unconstitutional.[2] [DE 31.] The

[1] In addition to the en banc D.C. Circuit's decision in *PHH*, ten decisions addressing the constitutionality of the Bureau's statutory structure have upheld the provision, while only two have held the provision invalid. *Compare*

- *CFPB v. Think Finance, LLC*, No. 17-cv-127-GF-BMM, 2018 WL 3707911 (D. Mont. Aug. 3, 2018) (upholding the constitutionality of the Bureau);
- *CFPB v. All American Check Cashing, Inc.*, No. 3:16-cv-356-WHB-JCG (S.D. Miss. March 21, 2018) (same), *interlocutory appeal granted*, No. 18-60302 (5th Cir. Apr. 24, 2018);
- *CFPB v. Nationwide Biweekly Admin., Inc.*, No. 15-cv-2106, 2017 WL 3948396 (N.D. Cal. Sept. 8, 2017) (same), *appeal docketed*, No. 18-15431 (9th Cir. Mar. 15, 2018);
- *CFPB v. TCF Nat'l Bank*, No. 17-CV-00166, 2017 WL 6211033 (D. Minn. Sept. 8, 2017) (same);
- *CFPB v. Seila Law, LLC*, No. 8:17-cv-01081, 2017 WL 6536586 (C.D. Cal. Aug. 25, 2017) (same), *stayed pending appeal*, No. 17-56324 (9th Cir. Sept. 13, 2017);
- *CFPB v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017) (same);
- *CFPB v. Future Income Payments, LLC*, 252 F. Supp. 3d 961 (C.D. Cal. 2017) (same), *vacated in relevant part as moot*, No. 17-55721 (9th Cir. Oct. 18, 2018);
- *CFPB v. CashCall, Inc.*, No. CV 15-7522, 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016) (same), *appeal docketed*, No. 18-55479 (9th Cir. Apr. 12, 2018);
- *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878 (S.D. Ind. 2015) (same); *and*
- *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082 (C.D. Cal. 2014) (same);

*with*

- *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729 (S.D.N.Y. 2018) (Bureau's structure is unconstitutional), *appeal docketed*, No. 18-2743 (2d Cir. Oct. 23, 2018) ; *and*
- *CFPB v. D&D Mktg.*, No. 2:15-cv-09692, 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016) (same).

Bureau opposed.[3] [DE 35.] This Court has yet to resolve that motion. Prior to filing their Motion to Dismiss, Defendants had urged this Court to seek the views of the Attorney General of the United States regarding the constitutionality of the Bureau's structure, DE 10, and on August 1, 2017, this Court granted that motion, inviting the Attorney General to address that issue on or before October 2, 2017. [DE 36.] The Attorney General did not accept this Court's invitation. So, on October 25, 2017, more than two months after their Motion to Dismiss had been fully briefed, Defendants filed their Motion for Leave to File a Supplemental Memorandum in Support of their Motion to Dismiss, to which they attached the Brief for the United States as Amicus Curiae, which had been filed in *PHH v. CFPB*, *supra*. [DE 47.] On March 28, 2019, this Court granted that motion [DE 284], and, pursuant to this Court's instruction, Defendants refiled their Supplemental Memorandum. [DE 288.]

**DISCUSSION**

In its en banc decision in *PHH v. CFPB*, the D.C. Circuit addressed and rejected each of the arguments made by the United States in its amicus brief. First, relying heavily on *Myers v. United States*, 272 U.S. 52 (1926),[4] the United States argued that "the general rule" is that the President must be able to remove all executive branch

---

[2] Defendants' Motion also raised a variety of nonconstitutional arguments as to why the Bureau's Complaint should be dismissed. The Bureau explained in its Opposition why those arguments are meritless. [DE 35.]

[3] In both their Motion to Dismiss, and in their Reply in further support of that motion, Defendants relied on the panel decision in *PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016). [DE 31, DE 37.] However, the D.C. Circuit had already vacated the *PHH* decision well before Defendants filed their Motion to Dismiss, when that court accepted the case for rehearing en banc. No. 15-1177 (D.C. Cir. Feb. 16, 2017).

[4] The Bureau does not take a position on whether existing Supreme Court precedent was correctly decided, or whether the President has independent authority to determine whether the Bureau's structure is constitutional.

officials at will. [DE 288 at 13-16.] But as the D.C. Circuit explained, there is no such "general rule." Instead, "[t]he Supreme Court [has] treated *Myers* as holding only 'that congressional participation in the removal of executive officers is unconstitutional.'" *PHH*, 881 F.3d at 88, quoting *Bowsher v. Synar*, 478 U.S. 714, 725 (1986). That is, Congress cannot condition the removal of an executive officer on the Senate's advice and consent. To the extent that there is a general rule, it is that "the Constitution admits of modest removal constraints where 'the character of the office' supports making it somewhat 'free of executive or political control.'" *PHH*, 881 F.3d at 88, quoting *Morrison v. Olson*, 487 U.S. 654, 687, 691 n.30 (1988). The for-cause removal provision that applies to the Bureau's Director is such a modest constraint because it does not "impair[] the President's ability to assure the faithful execution of the law." *PHH*, 881 F.3d at 90, citing *Morrison v. Olson*, 487 U.S. at 691-92, and *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 495-96 (2010).

Next, the United States argued that, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court created an exception to its "general rule" (*i.e.*, that for-cause removal provisions are unconstitutional) that applies only to multi-member regulatory commissions. [DE 288 at 16-20.] According to the United States, this exception was appropriate because multi-member commissions "facilitate deliberative group decision-making, and that goal too was thought to be furthered by removal restrictions." [DE 288 at 19.] But as the D.C. Circuit explained, in *Humphrey's Executor*, the Court's only discussion of the multi-member structure of the FTC "arose in course of the Court's statutory holding, not in its constitutional analysis." *PHH*, 881 F.3d at 98. (Before the Court could address the constitutionality of the for-cause removal provision, it first had to answer a statutory question – whether the FTC Act actually required for-

cause removal.) When it comes to the constitutional question, the Supreme Court has held that "'the most reliable factor' in deciding whether a removal restriction comported with the President's constitutional authority [is] 'the nature of the function that Congress vested' in the agency." *PHH*, 881 F.3d at 86, quoting *Wiener v. United States*, 357 U.S. 349, 353 (1958). And "the CFPB's function is remarkably similar to the FTC, a consumer protection agency that has operated for more than a century with the identical for-cause protection, approved by a unanimous Supreme Court." *PHH*, 881 F.3d at 94.

The United States argued that the Court upheld the constitutionality of for-cause removal in *Humphrey's Executor* only because the FTC was a "quasi-legislative, quasi-judicial administrative body," and that *Humphrey's Executor* should not apply to the Bureau because it is headed by a single Director, thus rendering the Bureau "quintessentially executive," not quasi-legislative or quasi-judicial. [DE 288 at 20-22.] But the D.C. Circuit explained that, as used in *Humphrey's Executor*, the terms "quasi-legislative" and "quasi-judicial" "refer to the functions and powers of the agency, not its singular or plural head." *Id.* at 99, citing *Humphrey's Executor*, 295 U.S. at 629.[5] And again, the Bureau's functions overall are "remarkably similar" to the functions performed by the FTC. *PHH*, 881 F.3d at 94. Moreover, a government official does not become "quintessentially executive" merely because that official is not part of a multi-

[5] The Court in *Humphrey's Executor* considered the FTC to be "quasi-legislative" because it conducted investigations and prepared reports "for the information of Congress," and to be "quasi-judicial" because it presided over administrative adjudications. *Humphrey's Executor*, 295 U.S. at 628; *see also* 15 U.S.C. §§ 45, 46 (1934). The Bureau performs those same functions. *See* 12 U.S.C. §§ 5496, 5563. Moreover, although in 1935 the Court referred to the FTC's functions as quasi-legislative and quasi-judicial, the Court more recently recognized that "at the present time [those functions would] be considered 'executive,' at least to some degree." *Morrison v. Olson*, 487 U.S. at 689 n.28.

member body. "The fact that district judges sit alone, for example, makes them no less judicial." *PHH*, 881 F.3d at 99.[6]

The United States argued that any interference with the President's executive power at the FTC is mitigated by the FTC's multi-member structure, which is more likely to result in the adoption of compromise positions, and by the staggered terms of FTC commissioners, which means that a President is generally assured to have an opportunity to appoint some of its members.[7] [DE 288 at 14-16.] But as the D.C. Circuit explained, "Congress's choice – whether an agency should be led by an individual or a group – is not constitutionally scripted and has not played any role in the Court's removal-power doctrine." *PHH*, 881 F.3d at 97. Instead, the real question is whether officials are sufficiently accountable to the President, and "[a]s a practical matter … the line of accountability at the CFPB is at least as clear to the observing public as at multi-headed independent agencies and the President's control over the CFPB Director is at least as direct." *Id.*; *see also Free Enterprise Fund*, 561 U.S. at 497 ("The diffusion of

---

[6] The United States attempted to distinguish *Morrison v. Olson* by arguing that, even though the Court upheld for-cause protection for the single independent counsel who performed purely executive functions, the independent counsel was an inferior officer, whereas the Bureau's Director is a principal officer. [DE 288 at 22 n.3.] But as the D.C. Circuit explained, the President's obligation to take care that the laws be faithfully executed applies regardless of whether the laws are executed by principal or inferior officers: "[t]he question whether a removal restriction unconstitutionally constrains presidential power thus does not track whether the shielded official is a principal or inferior officer." *PHH*, 881 F.3d at 96 n.2.

[7] The United States also argued that any interference with executive power in *Morrison v. Olson* was mitigated "by the independent counsel's limited authority." [DE 288 at 24.] But as the D.C. Circuit explained, because the independent counsel could enforce the entire criminal code, and could bring actions against high-ranking executive officials, the Court emphasized the independent counsel's limited authority to "distinguish her from, for example, an independent Attorney General." *PHH*, 881 F.3d at 102. Indeed, "the CFPB's authority is more cabined than … the independent counsel's." *Id.*

power carries with it a diffusion of accountability"). This is because, if the President is troubled by action or inaction (*e.g.*, "inefficiency" or "neglect of duty") at a multi-member agency, the President may not know who is to blame, whereas at the Bureau, with its single Director, the President always knows who is responsible. *PHH*, 881 F.3d at 98. The D.C. Circuit also rejected the United States' argument regarding staggered terms: "The Constitution has never been read to guarantee that every President will be able to appoint all, or even a majority of, the leaders of every independent agency."[8]

Finally, the United States argued that "single-headed independent agencies are a relatively novel innovation" and that "'the lack of historical precedent … is [p]erhaps the most telling indication of [a] severe constitutional problem.'" [DE 288 at 24], quoting *Free Enterprise Fund*, 561 U.S. at 505. The D.C. Circuit rejected both premises. First, the court held that "[n]ovelty 'is not necessarily fatal.'" *PHH*, 881 F.3d at 102, quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 549 (2012). Rather, "[o]ther constitutional principles beyond novelty must establish why a specific regime is problematic"—and none do here. *PHH*, 881 F.3d at 103. Second, the court disagreed that the Bureau's structure was novel, and it related the history of agencies led by a single head dating back to the late eighteenth century. *PHH*, 881 F.3d at 103-105. Further, the Bureau is not novel in terms of the relevant issues: the functions it performs, and the extent to which it is accountable to the President. The Bureau performs functions that are "remarkably similar" to those performed by the FTC, but more limited. *PHH*, 881 F.3d at 94; *see also id.* at 102 (the Bureau's authority is "more

---

[8] Moreover, as the court explained in *CFPB v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530, at *17 (M.D. Pa. Aug. 4, 2017), because the five FTC Commissioners serve staggered terms of seven years, 15 U.S.C. § 41, the President is more likely to have an opportunity to appoint the Bureau's Director in a single term than he is to appoint a controlling majority of the FTC.

cabined" than that of the FTC). And, as explained above, when it comes to accountability, the Bureau's Director is at least as accountable to the President as are the members of multi-member agencies. *Id.* at 97-98. Thus, although no two administrative agencies are exactly alike, in terms of what counts relative to Defendants' constitutional challenge, there is nothing novel about the Bureau's structure.

Finally, the United States and Defendants do disagree on one point. In their Motion to Dismiss, Defendants argue that, if this Court were to hold the Bureau's structure unconstitutional, severance of the removal provision from the Bureau's enabling act would not be appropriate despite the presence of an applicable severability provision. *See* DE 37 at 4. However, the United States argued that the removal provision is severable, and that severance is the appropriate remedy. [DE 288 at 27-29.]

Dated: April 8, 2019

Respectfully submitted,

Attorneys for Plaintiff
CONSUMER FINANCIAL PROTECTION BUREAU

JOHN C. WELLS
Deputy Enforcement Director

JAMES T. SUGARMAN
Assistant Litigation Deputy

*/s/ Jean M. Healey*
Jean M. Healey
Phone: 202-437-7514
E-mail: Jean.healeydippold@cfpb.gov

| | |
|---|---|
| Jan Singelmann | jan.singelmann@cfpb.gov |
| Atur Desai | atur.desai@cfpb.gov |
| Tianna Baez | tianna.baez@cfpb.gov |
| Amanda Roberson | amanda.roberson@cfpb.gov |
| Stephanie Brenowitz | stephanie.brenowitz@cfpb.gov |
| Erin Mary Kelly | erin.kelly@cfpb.gov |
| James Savage | james.savage@cfpb.gov |

| | |
|---|---|
| Greg Nodler | greg.nodler@cfpb.gov |
| Michael Posner | michael.posner@cfpb.gov |
| Jack Douglas Wilson | doug.wilson@cfpb.gov |