# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

## Case No. 9:17-CV-80495- MARRA-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU
    Plaintiff,

vs.

OCWEN FINANCIAL CORPORATION,
OCWEN MORTGAGE SERVICING, INC., and
OCWEN LOAN SERVICING, LLC,
    Defendants.
_____/

## PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF BUREAU ATTORNEY CARA PETERSEN

Ocwen seeks to depose Cara Petersen, a high-ranking Bureau attorney who oversees this litigation. Ms. Petersen, now the Principal Deputy Director of Enforcement, has supervised this litigation since its inception and supervised the Bureau's earlier investigation into Ocwen's mortgage servicing practices. Deposing her as a fact witness is improper for two reasons.

First, deposing opposing counsel is strongly disfavored because of the risk of invading core privileges. Such a deposition is only allowed when it is the *only* practical method of obtaining relevant, non-privileged information. Ocwen cannot meet this standard. Ms. Petersen does not have any unique knowledge of the relevant facts in this case, although she has a wealth of knowledge about the Bureau's privileged litigation strategy. When asked, counsel for Ocwen could not identify any information that Ms. Petersen might possess that is unique to her and not privileged. Instead, counsel admitted that she planned to ask her "anything [she] can."

Second, independent of her role supervising trial counsel in this case, Ms. Petersen is a high-ranking Bureau official. Such "apex" depositions are disfavored because of the risk of repetitive, harassing depositions of senior officials. As the Principal Deputy Enforcement Director, Ms. Petersen has a direct role in supervising every current Bureau lawsuit. Allowing her deposition may expose her to being deposed in every one. Ocwen should not be allowed to take her deposition because it cannot show that: (1) she has unique, non-repetitive, first-hand knowledge of relevant facts; *and* (2) that other, less intrusive discovery, like other depositions, have been exhausted. Ms. Petersen does not have unique knowledge about this case nor has Ocwen even tried to obtain whatever information it thinks she has through less invasive means.

The Bureau seeks a protective order quashing the deposition of Ms. Petersen.[1] Deposing her, an executive who supervises the Bureau's trial counsel, entails a substantial risk of invading core litigation privileges without any showing that Ocwen can *only* obtain non-privileged factual information from Ms. Petersen. Ms. Petersen has supervised this litigation from the beginning. Anything she knows is either privileged or available through less intrusive means because everything she knows comes from facts developed by and about other persons. Moreover, she now supervises all Bureau enforcement actions.

---

[1] In the alternative, the Bureau seeks a protective order postponing Ms. Petersen's deposition unless and until Defendants can make the requisite showing that she is likely to have relevant and essential non-privileged information that cannot otherwise be obtained, and limiting questioning to such factual information, as explained below.

1

## BACKGROUND

On April 2, 2019, Defendants' noticed their intent to depose Cara Petersen, Principal Deputy Director of Enforcement of the Bureau, the senior-most Enforcement official of the Bureau directly involved in litigating this lawsuit. During the pendency of this case, Ms. Petersen has served as a supervisor in the Office of Enforcement, where her duties include supervising this lawsuit as a senior litigator, and more recently as the Principal Deputy Director of the Office of Enforcement. Ms. Petersen directly supervised the investigation into Ocwen's mortgage servicing errors, the decision to sue Ocwen, and the resulting litigation, participating in all major legal and strategic decisions. Indeed, Ms. Petersen's name is on the Complaint.

On April 4, 2019, the Parties held a meet-and-confer regarding Defendants' notices to depose Ms. Petersen and other current and former Bureau employees.[2] When asked what non-privileged information Defendants sought to discover from Ms. Petersen, Ocwen's counsel stated that, among other things, they intend to question Ms. Petersen regarding Ocwen's compliance with its settlement in *CFPB v. Ocwen Fin. Corp.,* No. 13-cv-2025 (D.D.C. 2013), a prior lawsuit by the Bureau, 49 states and District of Columbia, against Defendants, which applied the terms of the National Mortgage Settlement ("NMS") to Ocwen.[3] On April 26, 2019, during a second meet-and-confer, the Bureau objected to Ms. Petersen's deposition, asserting that she was involved almost exclusively in legal and strategic decisions, and did not likely possess any unique facts that were not protected as work product, deliberative, or attorney-client communications. The Bureau requested that Ocwen provide an example of a topic or question for Ms. Petersen that could elicit relevant non-privileged information. In response, Ocwen indicated that it was seeking to depose Ms. Petersen because she "may have knowledge of facts" that would be relevant to its defense. When pressed, however, Ocwen's counsel did not identify any such facts. Ocwen's counsel indicated instead that she planned to ask Ms. Petersen "anything [she] can."

---

[2] Ocwen also noticed depositions of Theresa Ridder, Enforcement investigator, and Suzanne Heneghan, a Bureau examiner in the Office of Supervision, on the same day as Ms. Petersen. Ocwen later noticed depositions for examiner Diane Grabowski, former Bureau examiners Ali Naraghi and Cassandra Jackson, and a Rule 30(b)(6) deposition of the Bureau. Ms. Petersen's deposition is set for June 12, 2019. Ocwen originally noticed it for June 3, 2019, before it would have conducted any other deposition save Ms. Ridder's.

[3] *CFPB v. Ocwen Fin. Corp.,* No. 13-cv-02025 (D.D.C. Feb. 26, 2014) (consent order entered February 26, 2014, covering conduct through December 18, 2013).

## ARGUMENT

I. **Ocwen cannot meet the high burden necessary to depose opposing counsel.**

Depositions of opposing counsel are disfavored because they "inherently constitute an invitation to harass the attorney and parties, and to disrupt and delay the case," and courts require a showing that they are "the only practical means available of obtaining the information."[4] The burden to depose Ms. Petersen is high, and Ocwen cannot show "that the information sought (1) is relevant; (2) its need outweighs the dangers of deposing a party's attorney; and (3) the information sought will not invade the realm of the attorney's work product or interfere with the attorney-client privilege."[5]

Courts in this district have firmly rejected similar attempts to depose opposing counsel. In *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.,* for example, the court precluded the defendant from deposing the plaintiff's chief executives and its general counsel who represented plaintiff in the litigation and served as one of its managing directors.[6] The court found that defendant failed to show the officials had any unique information, and had made no effort to obtain information through less intrusive means–the defendant had not deposed a single individual, even though plaintiff proffered several other knowledgeable witnesses.[7] Moreover, the court concluded that the defendant failed to show that its questions to counsel would not invade privileged communications or protected work product.[8]

Here, Ocwen has made even less of a showing than defendants in *Sun Capital*—indeed, when asked, they made no showing to the plaintiffs at all. Ocwen cannot demonstrate that deposing Ms. Petersen is the only practical means of obtaining relevant and crucial information, because Ocwen refuses to articulate what they seek beyond a bare reference to Ocwen's compliance with the NMS Settlement. The relevant facts are those that the Bureau has learned from Ocwen's own records and employees. Ocwen cannot now argue that Ms. Petersen is in unique possession of

---

[4] *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 528 (S.D. Fla. 2015) (citation omitted).
[5] *Id.* (citing *Klayman v. Freedom's Watch, Inc.*, No. 07–22433–CIV, 2007 WL 4414803, at *4 (S.D. Fla. Dec. 14, 2007)).
[6] *Sun Capital*, at 525-29 (without prejudice to renewal if need established).
[7] *Id.* (citing *Stelor Productions, Inc. v. Google, Inc.,* No. 05–80387–CIV, 2008 WL 4218107, at *4 (S.D. Fla. Sept. 15, 2008)) (even though Google's top executives allegedly had direct, unique, and personal knowledge of facts at issue, plaintiff must seek information from other sources first).
[8] *Id.*

any facts relevant to this case. Nor has Ocwen attempted other, less intrusive means of obtaining whatever they now seek: Ocwen noticed Ms. Petersen's deposition before taking a single deposition, setting it to occur before all but one of their depositions, including its Rule 30(b)(6) deposition of the Bureau, foreclosing even the possibility of obtaining information in a less invasive manner.[9]

Nor can Ocwen establish that its questioning of Ms. Petersen would not invade privileged communications or protected attorney work product. Ms. Petersen has no first-hand or non-duplicative information about Ocwen's conduct. Any knowledge she does have is inextricably linked to privileged attorney-client communications, deliberations, or protected work product, and there are numerous other individuals who have more and better knowledge, including the NMS monitor himself.[10] Similarly, Ms. Petersen has no first-hand knowledge of any facts concerning the Bureau's two 2014 exams of Ocwen, and any factual information she does possess is privileged because it was conveyed to her in the context of attorney-client communications and the deliberative process.

## II.  Ocwen cannot meet the high burden necessary to allow a deposition of a senior official.

The Court should also quash Ms. Petersen's deposition because she is a high-ranking government official. A party seeking to conduct a so-called "apex deposition" of a high-ranking official must demonstrate that: (1) her testimony is necessary to obtain relevant information not otherwise available; (2) she has first-hand information that cannot reasonably be obtained from other sources; (3) the testimony is essential to the case at hand; (4) the deposition would not significantly interfere with the ability to perform her government duties; and (5) the evidence sought is not available through less burdensome means or alternative sources."[11]

The case law in this district on such apex depositions is well settled. In *Buckler v. Israel*, the court granted a protective order precluding the deposition of a former Broward County sheriff

---

[9] *See Sun Capital,* 310 F.R.D at 526 (noting that defendant had failed to show less burdensome means were attempted).

[10] The Bureau also disputes the relevance of the NMS lawsuit, as explained in the Bureau's opposition to the Defendant's Motion to Dismiss (DE 35).

[11] *Buckler v. Israel*, No. 13-62074-CLV, 2014 WL 7777678, at *1 (S.D. Fla. Nov. 13, 2014) ("Although no per se rule prohibits the depositions of high ranking government officials, courts have recognized that they should not be called to testify or be deposed about their reasons for taking official action, absent extraordinary circumstances.") (citation omitted).

because plaintiffs failed to develop a record that he had first-hand knowledge of essential information which was not otherwise available through less burdensome means.[12] In *Tillman v. Advanced Public Safety, Inc.,* the court granted a protective order precluding the deposition of a corporate officer who served as vice-president, general counsel, and compliance officer because the plaintiff failed to establish the witness had first-hand, non-duplicative knowledge of the relevant facts and all other means had been exhausted.[13] The court noted that even if the official had made the contested decision, he could not be the only source of such information, and the plaintiff had refused to seek the information through less intrusive means.[14]

A heightened showing of need is required to depose a senior Bureau official such as Ms. Petersen, or she would be subject to potential deposition each time the Bureau files an enforcement lawsuit. Ocwen cannot show that Ms. Petersen has first-hand, non-duplicative knowledge that is not privileged. Nor has Ocwen even attempted to use less burdensome means to discover whatever non-privileged information it speculates Ms. Petersen possesses. Indeed, Defendants already set depositions of five current and former Bureau staff members who present a less intrusive avenue of obtaining information, yet Defendants did not choose to schedule their depositions prior to Ms. Petersen's.[15] Accordingly, Ocwen should be precluded from deposing Ms. Petersen.

## CONCLUSION

For the foregoing reasons, the Bureau requests that the Court issue a protective order precluding the deposition of Ms. Petersen or, in the alternative, postponing Ms. Petersen's deposition until Defendants can show that she is likely to have first-hand, non-privileged information that is essential and not otherwise available, and limiting their questioning to such purely factual information.[16]

---

[12] *Id.* at *2.
[13] *Tillman v. Advanced Pub. Safety, Inc.*, No. 15-CV-81782, 2017 WL 679980, at *3 (S.D. Fla. Feb. 16, 2017) (also barring a deposition of the general counsel: "If the Court allowed a deposition of Kirkland under such circumstances, then every general counsel could possibly be subject to similar harassing and unnecessary depositions which invade the attorney-client privilege.").
[14] *Id.* at *4.
[15] To be sure, without knowing what Defendants seek to inquire about, the Bureau can makes no representation about the witnesses' knowledge or recollection, nor does the Bureau waive any of its objections that Defendants' questions call for information which is privileged, protected, or irrelevant.
[16] If the Court determines Defendants have shown that Ms. Petersen has first-hand non-privileged information that is not otherwise available, the Bureau would then provide the Court with a proposed protective order specifying those factual areas to which Defendants must limit their questioning.

Dated: May 17, 2019

Respectfully submitted,

Attorneys for Plaintiff,
BUREAU OF CONSUMER FINANCIAL PROTECTION

JOHN C. WELLS
Deputy Enforcement Director

JAMES T. SUGARMAN
Assistant Litigation Deputy

/s/ Stephanie Brenowitz
Stephanie Brenowitz
E-mail: stephanie.brenowitz@cfpb.gov
Phone: 202-435-9005

| | |
|---|---|
| Jean Healey | jean.healeydippold@cfpb.gov |
| Jan Singelmann | jan.singelmann@cfpb.gov |
| Atur Desai | atur.desai@cfpb.gov |
| Tianna Baez | tianna.baez@cfpb.gov |
| Shirley Chiu | shirley.chiu@cfpb.gov |
| Erin Mary Kelly | erin.kelly@cfpb.gov |
| Greg Nodler | greg.nodler@cfpb.gov |
| Michael Posner | michael.posner@cfpb.gov |
| Amanda Roberson | amanda.robertson@cfpb.gov |
| James Savage | james.savage@cfpb.gov |
| Jack Douglas Wilson | doug.wilson@cfpb.gov |

1700 G Street NW
Washington, DC 20552