**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:17-CV-80495-MARRA-MATTHEWMAN**

CONSUMER FINANCIAL PROTECTION
BUREAU,

                    Plaintiff,

v.

OCWEN FINANCIAL CORPORATION;
OCWEN MORTGAGE SERVICING, INC.;
and OCWEN LOAN SERVICING, LLC

                    Defendants.

**BUREAU'S MEMORANDUM OF LAW IN OPPOSITION TO**
**OCWEN'S MOTION FOR DISCOVERY SANCTIONS RELATING TO PLAINTIFFS'**
**AT-ISSUE LOAN DISCLOSURES**

Ocwen's motion is untimely and without merit. The Bureau complied with the Court's June 6, 2019 Order. As the Court directed, the Bureau provided Ocwen with a detailed list of the loans at issue, specifying each loan at issue for each count in the Complaint and, where possible, each sub-count of counts alleging regulatory violations. The Bureau educated its 30(b)(6) witness to testify about the factual sources and reasons for categorizing, or "bucketing," the loans as it did, and the witness shared with Ocwen her memory aid identifying the specific sources used to identify the loans and the specific basis for inclusion of the loans within those sources. The Bureau told Ocwen, referencing a Bates-stamped document or source, why each loan is at issue.

Ocwen does not assert, nor could it, that the Bureau's witness was unprepared to answer any questions about the loans at issue. Ocwen also did not raise any issues with the bucketing information the Bureau provided either after receiving them and prior to the 30(b)(6) deposition, or during the 30(b)(6) deposition itself. Instead, Ocwen waited almost two months to file this frivolous motion, seeking as relief additional time to prepare expert witness reports and to strike nearly 600,000 borrowers from receiving relief. This motion came less than twenty-four hours after the Bureau filed its expert reports, including a damages report by Nobel Laureate Professor Daniel McFadden. It is now apparent why Ocwen did not seek Court intervention before and has rejected the Bureau's offers to clarify any remaining questions about the loans at issue: Ocwen is not seeking information about the loans at issue. It has more than the information it asked for. Rather, Ocwen seeks tactical advantages in the litigation unrelated to any supposed deficiency in the bucketing exercise. The motion should be denied.

## I.     BACKGROUND

The Court ordered the Bureau to "identify to Defendants in writing approximately how many loans match each of the major allegations in Plaintiffs' Complaint. In other words, all three Plaintiffs shall identify approximately how many loans fall into each 'bucket,' to the extent they are reasonably able to do so, as further discussed in the hearing."[1] Ocwen's counsel represented to the Court that there were "6 or 7 major allegations."[2] The Bureau provided the ordered information and much more. The Bureau provided Ocwen with exhibits that identified each loan at issue in the case—a total of more than 2 million loans in 14 buckets—corresponding to each

---

[1] Omnibus Order, June 6, 2019, DE 396 at 3 ("Order").
[2] June 5, 2019 Hearing Tr. ("Hearing"), DE 400 at 35:17-21.

count in the Complaint (the "Bucketing Exercise").[3] For Count 10 (the Regulation X escrow claims), the Bureau further categorized the loans by sub-count. The Bureau prepared its 30(b)(6) witness to testify to the evidentiary sources and factual basis for the inclusion of every loan at issue. And, finally, the Bureau provided a 22-page document distilling the loans into subcategories by the sources the Bureau used to identify the loans and describing the rationale for including the loans ("Bucketing Sources").[4] Bucketing Sources points Ocwen to the specific evidence in the record that indicates why the identified loans were subject to each of the servicing errors or failures at issue in the case—that is, to the "allegations" in each of the counts.

Although it represented that it requested the information about the loans identified in the Bucketing Exercise so that it could ask about them at its 30(b)(6) deposition of the Bureau, Ocwen chose not to ask questions about the extensive information provided by the Bureau indicating what loans are at issue and why. Instead, Ocwen completed its examination of the Bureau's designee on the loan bucketing after only a few questions, with time remaining.

In July, after the close of fact discovery, when Ocwen first raised the two main contentions in its motion,[5] the Bureau attempted to resolve both concerns without Court intervention.[6] First, Ocwen expressed confusion about what the "under review" designation for Counts 8 & 9 loans meant. The Bureau reiterated what its witness had explained at the 30(b)(6) deposition:[7] that the inclusion of certain loans corresponding to Counts 8 & 9, the FDCPA claims, was still "under review" because Ocwen failed to provide complete and accurate data. The loans at issue for Counts 8 & 9 are the subset of loans at issue for Counts 1 & 2 that were in default at the time Ocwen acquired their servicing rights. The Bureau could not determine whether some loans were in default at the time of acquisition—and therefore, whether the FDCPA applied—because Ocwen's response to the relevant discovery request[8] contained blank

---

[3] Ex. [1], June 13, 2019 email from J. Healey to S. Rose Smith. In response to Ocwen's email inquiries, the Bureau stated that it would provide lists of loans for all counts, not just the major allegations.

[4] Ex. [2], Bucketing Sources – Memory Aid, Exhibit 67 to Ocwen's 30(b)(6) of the Bureau.

[5] Ocwen did not raise, however, its request for additional expert disclosure time in any of the letters and meet-and-confers, raising it for the first time in this motion.

[6] *See* Ex. [3], July 22, 2019 letter from A. Desai to S. Rose Smith (again explaining to Ocwen what the "under review" terminology meant and that the Bureau had already provided the underlying factual basis for the inclusion of each at-issue loan); Ex. [4], July 29, 2019 letter from A. Desai to S. Rose Smith (offering to subdivide the loans bucketed under Counts 1/8 and 2/9).

[7] Ex. [5], June 26, 2019 30(b)(6) Dep. Tr. ("30(b)(6) Tr.") at 610:18-611:20.

[8] Bureau's Fifth Set of Requests for Production No.1(u).

values regarding the delinquency status of those loans at the time of boarding. Also, Ocwen only provided the court-ordered loan numbers and proxy method that might allow the Bureau to determine whether such loans were in default shortly before the loan bucketing exercise was completed.

Second, Ocwen complains about the Bureau's organization of loans by count rather than "allegation," suggesting the Bureau did not provide sufficient detail. The Court ordered the Bureau to provide Ocwen the number of loans in each bucket by "major allegation."[9] The Bureau did so, and went further, by providing Ocwen with the loans corresponding to each of 14 individual counts in the Complaint. The Bureau also distilled the loans into subcategories of allegations by source, based on Ocwen's own descriptions.[10] The Bureau provided all of the information it possessed about each loan, including the precise records identifying each loan, the source of the underlying facts and the rationale for including the loans in each bucket.[11] Also, the Bureau offered to provide the same information organized differently, as Ocwen requested.[12] Ocwen said that it would file its motion on this issue regardless.

## II.    ARGUMENT

### A.    Ocwen's Motion is Untimely.

As a threshold matter, Ocwen's motion is untimely. Under Local Rule 26.1(g)(1), Ocwen should have filed its motion within 30 days of learning of the purported deficiency in the Bureau's June 21, 2019 production. Ocwen does not even attempt to explain why it delayed filing this motion until the day after the Bureau's expert reports were filed, 56 days after the Bureau's June 21, 2019 production of the loan bucketing exercise and 51 days after Ocwen's 30(b)(6) deposition of the Bureau. Because Ocwen's motion is past the 30-day deadline for

---

[9] Order, DE 396 at 3.

[10] For example, the Bureau broke down Count 1 into 38 subcategories, such as loans and borrowers identified by Ocwen in connection with "erroneous insurance charges," "insurance policies that were cancelled due to Ocwen's untimely disbursement," "incorrect reinstatement quotes," "incorrect maturity dates," over-charges, under-charges, erroneous late fees, inaccurate escrow amounts, and incorrect payment applications, among others. *See* Ex. [3], Bucketing Sources, at 1-5.

[11] Ex. [3], July 22, 2019 letter at 2; Ex. [4], July 29, 2019 letter at 2 n.2.

[12] Ex. [4], July 29, 2019 letter (offering to "reassemble the at issue loans previously identified as relevant for Counts I/VIII and II/IX by the bullets you identified …").

discovery motions, and Ocwen does not even assert that it had good cause to file an untimely motion, the Court should deny the motion without addressing the merits or holding argument.[13]

**B.      The Bureau Complied with the Court's June 6, 2019 Order.**

The Bureau complied with the Court's June 6, 2019 Order. Ocwen's contention that it did not rests entirely on two narrow claims: (1) the Bureau's designation of approximately 600,000 loans as "under review" for Counts 8 & 9 as of the time of the Bucketing Exercise was improper, and (2) the Bureau's bucketing of loans at issue by Count rather than by "allegation" violated the Court's Order.[14] Neither of these claims has merit; indeed, they are frivolous.

*First*, the Bureau has repeatedly explained to Ocwen that the loans at issue for FDCPA Counts 8 & 9 were designated in the Bucketing Exercise as "under review" because Ocwen had produced incomplete loan data for those loans, which prevented the Bureau from determining how to properly categorize them.[15] For Ocwen to complain of a lack of certainty in the Bureau's identification of loans, when that lack of certainty is the direct result of its own data and discovery failures, is absurd. Moreover, the Bureau never represented that any loans at issue for Counts 1 and 2 remained "under review." The Bureau provided a complete list for those counts. Ocwen's apparent misunderstanding of this does not provide a basis to exclude the loans under Counts 1 and 2 from relief.

*Second*, the Bureau did precisely what Ocwen asked for and the Court ordered. Ocwen's counsel stated that "it would be sufficient for me if in writing by June 21st you would identify as much as you know now—I recognize that that is not everything—which of the loans fall into which of the complaint category, buckets, so that I can then ask the witness why they are in that bucket."[16] The Bureau agreed and did so, by categorizing every at-issue loan by every count in the Complaint, and by distilling these loans further into subcategories by source.[17] Ocwen claims it "still cannot determine as to any single loan whether the Bureau intends to argue that Ocwen

---

[13] *Barnes v. Frameless Shower Doors & Enclosures, Inc.*, 2015 WL 3541529 at *3, (S.D. Fla. June 4, 2015) (denying motion on basis of failure to show reasonable cause for 84-day delay); *Manno v. Healthcare Revenue Recovery Group*, 2012 WL 1409532 at *1 (S.D. Fla. Apr. 23, 2012) (denying discovery motion filed 3 days after 30-day deadline).
[14] Def. Mot. at 2.
[15] The loans as issue in the FDCPA claims are a subset of the loans at issue in the broader unfairness and deceptive claims (Counts 1 & 2). Loans at issue for Counts 8 & 9 (unfairness and deceptive claims under the FDCPA) only apply to loans that were delinquent when acquired.
[16] Hearing, DE 400 at 54:4-10 (emphasis added).
[17] *See* Ex. [2], Bucketing Sources at 1-10.

4

used an incorrect monthly payment amount, an incorrect interest rate, or that Ocwen's data included the wrong insurance coverage amount, and so on."[18] This is just not accurate. The documents the Bureau provided indicate precisely this information. Further, Ocwen failed to ask any questions about what specific error was associated with a given loan—the exact issue Ocwen is complaining about in its Motion for Sanctions.[19] And when the Bureau offered to reorganize the loans at issue in exactly the format that Ocwen now tells the Court it wants them reorganized, Ocwen rejected the offer.[20] Because the Bureau has already provided everything that Ocwen is entitled to, and more, the motion should be denied.

      **C.**     **The Requested Relief Is Improper and Unrelated to the Alleged Errors.**

The relief Ocwen requests is wildly out of proportion to the deficiencies it alleges, and is *entirely unrelated* to the alleged errors. Any supposed dispute over the loans listed in the buckets for Counts 8 & 9 is no justification for excluding nearly 600,000 borrowers from relief under Counts 1 & 2, which were not "under review," as Ocwen knows. Moreover, extending expert discovery, which Ocwen raises for the first time in this motion, is entirely unrelated to the alleged deficiencies in the Bucketing Exercise. Ocwen has received more than the information it requested about which loans are at issue for each allegation through the Bucketing Exercise, and any alleged deficiency has nothing to do with the Bureau's expert reports, which provide opinions about damages for certain borrower populations and allegations. The fact that Ocwen waited to file this motion until receiving the expert report belies the asserted purpose of the motion. If any relief were proper—and it is not—it would only be that which is tied to the alleged errors, not to exclude borrowers from relief and provide Ocwen additional time in expert discovery now that it has seen the Bureau's affirmative reports.[21]

**III.**    **CONCLUSION**

For the reasons stated in this opposition, the Court should deny Defendants' Motion.

---

[18] Def. Mot. at 4.
[19] Ex. [5], 30(b)(6) Tr. at 647:12-648:18.
[20] Def. Mot. at 4.
[21] *See* Ex. [6], Aug. 15, 2019 Expert Report of Professor Daniel McFadden ██████████████████████████████████████████████████████████████████).

Dated: August 26, 2019 Respectfully submitted,

Attorneys for Plaintiff,
BUREAU OF CONSUMER FINANCIAL PROTECTION

JOHN C. WELLS
Deputy Enforcement Director

JAMES T. SUGARMAN
Assistant Litigation Deputy

*/s/ Stephanie Brenowitz*
Stephanie Brenowitz
E-mail: stephanie.brenowitz@cfpb.gov
Phone: 202-435-9005

| | |
|---|---|
| Shirley Chiu | shirley.chiu@cfpg.gov |
| Atur Desai | atur.desai@cfpb.gov |
| Jean M. Healey | jean.healeydippold@cfpb.gov |
| Tianna Baez | tianna.baez@cfpb.gov |
| Stephanie Brenowitz | stephanie.brenowitz@cfpb.gov |
| Erin Mary Kelly | erin.kelly@cfpb.gov |
| Greg Nodler | greg.nodler@cfpb.gov |
| Michael Posner | michael.posner@cfpb.gov |
| Amanda Roberson | amanda.roberson@cfpb.gov |
| James Savage | james.savage@cfpb.gov |
| Jack Douglas Wilson | doug.wilson@cfpb.gov |

1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722