**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:17-CV-80495-MARRA-MATTHEWMAN**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

OCWEN FINANCIAL CORPORATION; OCWEN MORTGAGE SERVICING, INC.; and OCWEN LOAN SERVICING, LLC,

Defendants.

**DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANTS' MOTION TO DISMISS (DE 452), BASED ON PLAINTIFF'S SUBSEQUENT NOTICE (DE 469) THAT DEFENDANTS' MOTION WAS CORRECT IN ARGUING THE AGENCY IS UNCONSTITUTIONAL, WITH INCORPORATED MEMORANDUM OF LAW**

Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc., and Ocwen Loan Servicing LLC (collectively "Ocwen" or "Defendants") respectfully move for reconsideration of the Court's Order Granting in Part and Denying in Part Ocwen's Motion to Dismiss (ECF No. 452, "MTD Order"). Specifically, Ocwen seeks reconsideration of the Court's finding that the Consumer Financial Protection Bureau ("CFPB" or the "Bureau") "is without constitutional defect," and consequentially that the case should not be dismissed. MTD Order at 10-11.

Reconsideration is merited on this issue because, after the Court issued the MTD Order, the Bureau notified the Court that it "has changed its position regarding an argument that was presented in its Opposition to Defendants' Motion to Dismiss" and now "will no longer defend the constitutionality of" its structure. ECF No. 469 at 1-2 (the "Notice"). The Notice goes on to attach the newly-filed brief of the CFPB, through the Solicitor General, which informed the Supreme Court in another case raising this legal issue that the Department of Justice and the Bureau itself have both reached the conclusion that the Bureau's structure is unconstitutional because the Bureau Director is impermissibly shielded from removal at will by the President. Notice at 2, *attaching* Brief for Respondent, *Seila Law LLC v. CFPB*, No. 19-7, at 7.

Based on the Bureau's Notice, as well as the Government's position stated to the Supreme Court, there can no longer be any dispute regarding the constitutionality of the CFPB Director's for-cause removal provision. The Bureau has officially abandoned the contrary position on which this Court rested its denial of Ocwen's arguments concerning the agency's unconstitutional structure. Thus, for the *now undisputed* reasons Ocwen previously argued (ECF No. 31 at 5-11; ECF No. 37 at 1-4), and as further set forth below, this case should be dismissed because the Bureau "lacks authority to bring this enforcement action." *Fed. Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993); *Ryder v. United States*, 515 U.S. 177, 182-184 (1995).

Since there is no debate that the Bureau is unconstitutional, this Court will need to address the terms on which this case must be dismissed—in other words, the proper remedy for that defect. The issue was not addressed in the MTD Order, so the question is presented *de novo* (and thus not subject to deferential reconsideration standards). In this case, the proper remedy is dismissal with prejudice. Only the Director can authorize the commencement of an enforcement action in federal court like this one. 12 U.S.C. § 5564. And the caselaw is settled that when a federal officer is without constitutional authority to act, her actions are void. *See Ryder*, 515

U.S. at 182-184 & n.3; *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 785 (S.D.N.Y. 2018). So, the filing of the Complaint—and the continued maintenance of this suit—are void acts and legal nullities that can only be addressed by the immediate termination of this case without leave to amend. The Bureau's expected response, that the unconstitutional limit on presidential removal power should simply be severed from the statute, is wrong for multiple reasons and stands as no impediment to dismissal.

**BACKGROUND**

Ocwen moved to dismiss the Complaint on a number of grounds, including on the basis that the structure of the CFPB is unconstitutional. *See* ECF No. 31 at 5-11 ("Motion to Dismiss"). The Bureau opposed Ocwen's Motion to Dismiss in all respects, and specifically argued that the Bureau Director's for-cause removal provision *was* constitutional. *See* ECF No. 35 at 3-7.

On September 5, 2019, the Court granted in part and denied in part Ocwen's Motion to Dismiss, and dismissed the entire Complaint without prejudice. *See* MTD Order. With respect to Ocwen's challenge of the constitutionality of the Bureau's structure, the Court agreed with the Bureau and held that "the CFPB is without constitutional defect." *Id.* at 10-11. In doing so, the Court relied on the rationales stated by the D.C. Circuit in *PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018), and the Ninth Circuit in *CFPB v. Seila Law LLC*, 923 F.3d 680 (9th Cir. 2019). MTD Order at 10-11. Because the Court determined that the CFPB was constitutional, it did not address Ocwen's arguments concerning the appropriate remedy or relief in the event the Bureau was unconstitutional. *Id.*; *see also* Mot. to Dismiss at 10-11; Reply Br. at 4 (ECF No. 37).

Since the MTD Order was entered, the Bureau has informed this Court and others, Congress, and the Supreme Court that it now agrees with Ocwen: the CFPB Director's for-cause removal provision is unconstitutional. In particular, two weeks after the MTD Order, the Bureau filed a notice to inform the Court that the Bureau "has changed its position" with respect to the argument made in Defendants' Motion to Dismiss that the case should be dismissed because the Bureau is unconstitutionally structured. Notice at 1. According to the Notice, the Bureau's Director "has now determined that she agrees . . . that the CFPA's for-cause removal provision impermissibly infringes on the President's constitutional obligation to take care that the laws be faithfully executed." Notice at 2. "Accordingly, the Bureau will no longer defend the constitutionality of that position" in this case. *Id.*

The Notice is consistent with the Bureau's letters to Congress and the Solicitor General's brief to the Supreme Court—each of which was sent or filed after the MTD Order was issued. On September 17, 2019, CFPB Director Kraninger sent two letters to Congress—one to Senate Majority Leader Mitch McConnell, and one to House Speaker Nancy Pelosi—informing them that she now believes "the for-cause provision of the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5491(c)(3) is unconstitutional." Sept. 17, 2019 Ltrs. to Mitch McConnell and Nancy Pelosi (attached as Exs. A & B). Director Kraninger further informed congressional leadership that "[she] has directed the Bureau to refrain from defending the for-cause removal provision in the lower courts," including in its action against Ocwen pending before this Court. Exs. A-B at 2 & n.1.

On the same day, the Solicitor General filed a Respondent's brief on behalf of the Bureau in *Seila Law LLC v. CFPB*, No. 19-7. Br. for the Respondent (Sept. 17, 2019) (attached as Ex. C). Rather than oppose certiorari, the Solicitor General informed the Supreme Court that the Bureau and Justice Department both agree that the for-case removal provision is unconstitutional, and urged the Supreme Court to grant Seila Law LLC's petition for certiorari and "hold that the removal restriction in 12 U.S.C. § 5491(c)(3) impermissibly infringes the separation of powers fundamental to our constitutional structure." Ex. C, at 7-16. As the Solicitor General explained, the Bureau and the Justice Department now agree that both *PHH* and *Seila Law LLC* were wrongly decided, in part, because they misinterpreted *Humphrey's Executor's* "narrow exception" to the general rule that "the President's executive power necessarily includes 'the exclusive power of removal.'" *Id.*

**ARGUMENT**

Given these events and the Parties' agreement that the structure of the Bureau violates, at least, Article II of the Constitution, *see* Mot. to Dismiss at 6-9 & Notice at 1-2, Ocwen respectfully seeks reconsideration of the MTD Order to the extent it denied Ocwen's Motion to Dismiss on the grounds the Bureau's structure was without constitutional defect. Ocwen asks that the Court grant its motion for reconsideration, and dismiss the case with prejudice

A motion for reconsideration may be brought pursuant to Rule 59(e) or Rule 60(b). *See Williams v. Cruise Ships Catering & Serv. Int'l, N.V.*, 320 F. Supp. 2d 1347, 1357 (S.D. Fla. 2004). "[A] court's previous rulings may [otherwise] be reconsidered as long as the case remains within the jurisdiction of the district court." *Aldana v. Del Monte Fresh Produce N.A.,*

*Inc.*, 578 F.3d 1283, 1288–89 (11th Cir. 2009) (citation omitted); *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*, No. 01-2236-CIV, 2003 WL 25729928, at *3 (S.D. Fla. Aug. 14, 2003) (citing *Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995)) (motion to dismiss order was interlocutory in nature, thus court had discretion to reconsider it at any time).[1]

**I. The Court Should Hold That The CFPB Director's For-Cause Removal Provision Is Unconstitutional.**

Reconsideration and reversal of the finding (MTD Order at 10-11) that the CFPB is constitutionally structured is warranted. Both Parties now agree that the Bureau is unconstitutionally structured because the tenure-protection granted to the Director violates Article II. *See* Mot. to Dismiss at 6-9; Notice at 1-2. The Bureau's rationale for its change in position is expounded in the Solicitor General's brief on behalf of the CFPB in response to Defendant Seila Law LLC's petition for certiorari in *Seila Law LLC v. CFPB*, No. 19-7. *See* Ex. C. According to the Bureau, "the President's executive power necessarily includes 'the exclusive power of removal.'" *Id.* at 8 (quoting *Myers v. United States*, 272 U.S. 52, 122 (1926)). *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), which long ago considered the constitutionality of the multi-member FTC board, recognizes only "a narrow exception to [this] general rule." Ex. C at 9-11. Because the CFPB is a single-headed agency, it lacks the critical structural attributes that can constitutionally justify "independent" status. *Id.* at 11-16. Thus, the CFPB has asked the Supreme Court to grant Seila Law LLC's petition for certiorari, overturn the Ninth Circuit's (*Seila Law LLC*) and D.C. Circuit's (*PHH*) rulings, and "hold that the removal restriction in 12 U.S.C. § 5491(c)(3) impermissibly infringes the separation of powers fundamental to our constitutional structure" and therefore renders the CFPB unconstitutional. *Id.* at 15-16. The CFPB also asked the Supreme Court to consider overruling *Humphrey's Executor* to the extent the Court believes it would require upholding the removal restriction. *Id.* at 16 n.2.

In rejecting Ocwen's constitutional challenge, this Court relied almost exclusively on three cases—*Humphrey's Executor*, *Seila Law*, and *PHH*. MTD Order at 10-11. The CFPB now

---

[1] Given the Bureau's change in position since the MTD Order was entered and admission that the Bureau is not constitutional, this motion need not be considered a motion for reconsideration to be properly heard and for a remedy to be provided. *See, e.g., A.R. v. Dudek*, 2014 WL 11531370, at *3 (S.D. Fla. Nov. 13, 2014) (considering defendants' renewed motion to dismiss based on changes in administrative rules that allegedly mooted plaintiff's claims). Indeed, the Notice acknowledges this Court may "revisit its earlier decision." Notice at 2.

agrees with Ocwen that none of them save the Bureau's constitutional defect, and the CFPB is urging the Supreme Court to overrule, at least, two of the three.

All Parties agree Ocwen's Motion to Dismiss was correct in arguing that the limitations on the removal of the Director, contained in 12 U.S.C. § 5491(c)(3), unconstitutionally restrict the President's powers and duty to faithfully execute the laws under Article II of the Constitution. Ocwen, therefore, requests that the Court reconsider the MTD Order and grant the Motion to Dismiss, holding that the Bureau is unconstitutional.[2]

## II. Dismissal With Prejudice Is Required.

Given there is no longer a dispute that the tenure protection given the Bureau Director renders the CFPB's structure unconstitutional, the Court needs to address the terms on which Ocwen's Motion to Dismiss should be granted. The Court should dismiss the lawsuit with prejudice because the Director is an unconstitutional officer.

### A. The Remedy for a Structural Violation of the Constitution Is Dismissal.

As the Supreme Court has directed as recently as last year, when a party makes a timely challenge of an agency's structure based on the constitutional validity of a director or officer, that party "is entitled to relief." *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018) (citing *Ryder*, 515 U.S. at 182-183). Otherwise, litigants like Ocwen would be deprived of any "incentives to raise" the challenge in the first place. *Id.* at 2055 n.5. And, of course, if the party is aggrieved by the acts of an unconstitutional officer, fundamental principles of fairness demand that the party be relieved of the burdens imposed by or resulting from the acts a federal agent who has no power or authority.

The remedy for a "structural" violation of the Constitution is dismissal of the action. *Ryder*, 515 U.S. at 184 n.3 (noting that Supreme Court previously affirmed dismissal of a lawsuit where it found the bankruptcy judge was unconstitutionally appointed); *RD Legal Funding, LLC*, 332 F. Supp. 3d at 785 ("[T]he Court finds that the CFPB 'lacks authority to bring this enforcement action because its composition violates the Constitution's separation of powers,'

[2] Reconsideration is also merited in light of the Fifth Circuit's recent en banc decision in *Collins v. Mnuchin*, No. 17-20364, 2019 WL 4233612 (5th Cir. Sept. 6, 2019). The Fifth Circuit's holdings concerning the constitutionality of the Federal Housing Finance Agency ("FHFA") are consistent with the Bureau's and Solicitor General's positions concerning the CFPB's removal restriction. As the 16-judge en banc Fifth Circuit determined, FHFA's implementing statute (the Housing and Recovery Act, or "HERA") is unconstitutional because the for-cause removal provision, "in combination with other FHFA features," infringes on Article II. *Id.* at *22-25.

and thus the CFPB's claims are dismissed.") (quoting *Fed. Election Comm'n*, 6 F.3d at 822).[3] Where, as here, the agency's director is appointed or cannot be removed such that the agency's formal structure violates the Constitution's separation of powers, the agency "lacks authority to bring [an] enforcement action." *Fed. Election Comm'n*, 6 F.3d at 822; *see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 513 (2010) (challenger entitled to relief to "ensure" the statute is "enforced only by a constitutional agency accountable to the Executive"). That rule applies with special and undeniable force here because the governing statute expressly grants the power to bring (or settle or suspend) this lawsuit to one person and only one person—the Director. 12 U.S.C. § 5564. Dismissal of a challenged lawsuit is appropriate even without a showing of prejudice to the party-challenger because "[s]tructural errors are not subject to prejudicial-error review." *Bandimere v. SEC*, 844 F.3d 1168, 1181 n.31 (10th Cir. 2016) (citing *Rivera v. Illinois*, 556 U.S. 148, 161 (2009)); *Landry v. FDIC*, 204 F.3d 1125, 1130-32 (D.C. Cir. 2000) (citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 239 (1995)).

There is no dispute here that Ocwen's challenge to the Director's constitutionality at the motion to dismiss stage was "timely" for purposes of controlling Supreme Court authority, which requires an effective remedy for timely challenges. *See Lucia*, 138 S. Ct. at 2055 (citing *Ryder*, 515 U.S. at 182-183); *Sw. Gen., Inc.*, 796 F.3d at 83. The effective remedy is clear: the enforcement action must be dismissed. *See Ryder*, 515 U.S. at 184 n.3; *RD Legal Funding, LLC*, 332 F. Supp. 3d at 785; *see also Fed. Election Comm'n*, 6 F.3d at 828 (holding there is "no theory that would permit us to declare the Commission's structure unconstitutional without providing relief to the appellants"); *Collins*, 2019 WL 4233612, at *54 (Willet, J., dissenting in relevant part) (when challenging "the action of an unconstitutionally-insulated officer, that action must be set aside").

**B. <u>Dismissal Should Be with Prejudice Because Only Congress Can Rewrite the CFPB's Implementing Statute (Title X of the Dodd-Frank Act).</u>**

The CFPB contended in its Notice that dismissal was not the appropriate remedy even though Ocwen moved to dismiss this lawsuit based on the defect and the agency agrees Ocwen

---

[3] *See also Bowsher v. Synar*, 478 U.S. 714, 734-36 (1986) (affirming order setting aside agency action because Comptroller General was unconstitutionally-insulated from Presidential removal); *Collins*, 2019 WL 4233612, at *55 (Willett, J, joined by six other Fifth Circuit judges, dissenting in relevant part) (the "action of an unconstitutionally-insulated officer . . . must be set aside"); *Sw. Gen., Inc. v. NLRB*, 796 F.3d 67, 79-81 (D.C. Cir. 2015) (vacating NLRB order due to "structural" violation).

was correct. Rather, the Bureau demands that this Court should give Ocwen *no remedy*, but instead the Court should rewrite the statute to remove the offending limit through "severance." *See* Notice at 1-2.[4] The CFPB argues that severance is appropriate pursuant to 12 U.S.C. § 5302, which generally states that if any provision of the 2,300-page Dodd-Frank Act is unconstitutional, that shall not affect the Act or "the application of [the Act] to any person or circumstance." Notice at 2. As one of Dodd-Frank's principal architects said of a materially identical clause: "This is just boilerplate severability." 134 Cong. Rec. 12,280 (1988) (statement of Rep. Frank). The section the Bureau relies on says "nothing specific about Title X" of the Act, much less the CFPB's independence, the for-cause removal, "the massive transfer power [to the President] inherent in deleting section 5491(c)(3)," or "whether Congress would have endorsed subjecting the CFPB to the politics of Presidential control." *PHH Corp. v. CFPB*, 881 F.3d 75, 162-63 (D.C. Cir. 2018) (Henderson, J. dissenting).

As an initial matter, even if rewriting the statute through a severability analysis is one possible remedy, it cannot be the only remedy because it does not provide Ocwen with any relief. Ocwen's Motion to Dismiss based on unconstitutionality is due to be granted because all agree the CFPB is unconstitutional. *Supra* at 4-5. Purporting to fix that defect going forward would not actually give Ocwen any relief on that motion. But as both *Ryder* (and related cases) and Rule 12 state, Ocwen is entitled to relief on a successful motion. *See supra* at 5-6. Here, the only effective relief for having been sued pursuant to the order of an unconstitutional officer is to completely undo that unconstitutional act, which can only be done by dismissing this case with prejudice. *See Ryder*, 515 U.S. at 184 n.3 (noting that Supreme Court affirmed dismissal of a lawsuit where it found the bankruptcy judge was unconstitutionally appointed).

Editing the law through "severance" would be inappropriate in any event. Under these circumstances, only Congress can render judgment as to how it wants the Bureau to be structured now that the Bureau agrees it is in need of a makeover. As the Supreme Court has noted, "the ultimate determination of severability will rarely turn on the presence or absence of" a boilerplate severability clause. *United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968); *Dorchy v. Kansas*, 264 U.S. 286, 290 (1924) (a severability clause is "not an inexorable command"). Rather, using principles of severability to save a statute or statutory action turns on whether the

---

[4] Remarkably, the CFPB nowhere even suggests which words, punctuation, and other changes the Court would need to craft to make this federal statute constitutional.

changed statute: (1) "will function in a *manner* consistent with the intent of Congress," *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (emphasis in original); and (2) would result in legislation that Congress "would not have enacted," *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1482 (2018).[5] Severance is not available where, as here, "it is evident that the Legislature would not have enacted those provisions . . . independently of that which is [invalid]." *Free Enter. Fund*, 561 U.S. at 509; *Bowsher*, 478 U.S. 714 at 734-36 ("[S]triking the removal provision[] would lead to a statute that Congress would probably have refused to adopt."); *see also Murphy*, 138 S. Ct. at 1482 (courts "'cannot rewrite a statute and give it an effect altogether different from that sought by the measure viewed as a whole'") (quoting *R.R. Ret. Bd. v. Alton R. Co.,* 295 U.S. 330, 362 (1935)).

Here, both the legislative history and the statute itself defeat any argument that the unconstitutional problem can be cured by this Court's striking of the tenure provision. It is indisputable that Congress envisioned an insular and "completely independent" CFPB *in all respects*, "with an independently appointed director, an independent budget, and an autonomous rulemaking authority." 156 Cong. Rec. H5233, at H5239 (2010) (Rep. Maloney); *id.* at H5253 (Rep. Pelosi) (Dodd-Frank established CFPB as a "new independent agency"); S. Rep. No. 111-176 at 206 (2010) ("Title X would establish the [CFPB] as an autonomous entity within the Federal Reserve."); 12 U.S.C. § 5491(a) (CFPB is an "independent bureau"); *see also PHH*, 881 F.3d at 162-63 (Henderson, J. dissenting) (concluding that Congress and then-Professor Warren intended CFPB to be "removed from political winds and presidential will"). It strains credulity well beyond the breaking point that Congress would have retained all indicia and protections of agency independence, except to allow the Director to be fired at will or whim by the President. Undoubtedly, Congress would *not* have surrendered all the powers it would otherwise have over the CFPB and its Director, including appropriations and oversight, had it known the President would retain ultimate authority over the Director. *See* Members of Cong. Supporting Reh'g En Banc Br., *PHH Corp. v. CFPB*, No. 15-1177, 2016 WL 6994388, at *2, *5 (D.C. Cir. Nov. 29, 2016) (severance of the CFPA's removal provision would "fundamentally alter[] the CFPB and hamper[] its ability to function as Congress intended"); *PHH*, 881 F.3d at 162-63 (Henderson, J. dissenting) (severance of just the removal clause "would yield a mutant CFPB responsive to the

---

[5] *See also Hill v. Wallace*, 259 U.S. 44, 71 (1922) (a severability clause "does not give the court power to amend" a statute).

President—and hence to majoritarian politics and lobbying—*but nowise accountable to the Congress*"); *RD Legal Funding LLC*, 332 F. Supp. 3d at 785 (holding the Director's removal provision cannot be severed without inflating the President's power at the expense of Congress and transforming the CFPB into something Congress never would have created).[6]

Legislative history is clear that in creating the CFPB, Congress valued independence as the primary hallmark of the Bureau, and wished to create a completely "autonomous" Bureau that was free from control by both the President and by any future Congress. *E.g.,* 156 Cong. Rec. at H5239 (Rep. Maloney); *id.* at H5253 (Rep. Pelosi); S. Rep. No. 111-176 at 206; *PHH*, 881 F.3d at 162-63 (Henderson, J. dissenting) (listing numerous other examples from Dodd-Frank's legislative history showing CFPB valued independence from both the Executive and the Legislature). The Court should not lose sight of the fact that the provisions here are part of the Dodd-Frank Act, the sweeping financial reform law passed in the wake of the late 2000s financial crisis. Congress perceived that Act to be a cure to what caused or contributed to that crisis, and believed a new, totally independent agency was called for. The CFPB's suggestion, eight years later, that a Bureau independent of Congress yet dependent on the President would have been Congress's plan back in those times is simply not credible. *See Alaska Airlines*, 480 U.S. at 685 ("Some delegations of power to the Executive or an independent agency may have been so controversial or so broad that Congress would have been unwilling to make the delegation without a strong oversight mechanism.").

In any event, even if the Bureau were correct (it is not) that the tenure provision can be severed without disrupting the intent of Congress, severing the provision would only address the constitutionality of the Bureau from here on out. Severance cannot retroactively cure the unconstitutional authorization of this enforcement action. *See Norton v. Shelby Cty.*, 118 U.S. 425, 442 (1886) ("An unconstitutional act is not a law; . . . it imposes no duties; . . . it is, in legal contemplation, as inoperative as though it had never been passed."); *Fed. Election Comm'n*, 6 F.3d at 822 (unconstitutional officer "lacks authority to bring [an] enforcement action"). Nor can it remedy Ocwen's past injuries caused by an enforcement action initiated and prosecuted by an

---

[6] Indeed, if the Court were to sever the Director's tenure protection and do nothing more, the effect would be to grant the President, retroactively, more power than even he or she had prior to the creation of the CFPB—when many of the federal consumer protection statutes transferred to CFPB control had been administered exclusively by the five-member Federal Trade Commission over whom the President has no at-will removal authority. *See* 156 Cong. Rec. at H5257 (Rep. Blumenauer).

unconstitutional agency, which can only be redressed by dismissing this action with prejudice. *See Lucia*, 138 S. Ct. at 2055 (citing *Ryder*, 515 U.S. at 182-183).

Now that the Bureau concedes its independent structure is unconstitutional, only Congress can fix what Congress has done. This case should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, and the reasons stated in Ocwen's Motion to Dismiss briefing, the Court should grant Ocwen's motion for reconsideration and dismiss the case with prejudice.

Dated: October 3, 2019

Respectfully submitted,

*/s/ Catalina E. Azuero*

Bridget Ann Berry
**GREENBERG TRAURIG, P.A.**
777 South Flagler Drive, Suite 300 East
West Palm Beach, FL 33401
Tel.: 561.650.7900
BerryB@gtlaw.com

Thomas M. Hefferon (*pro hac vice*)
Sabrina M. Rose-Smith (*pro hac vice*)
Matthew L. Riffee (*pro hac vice*)
**GOODWIN PROCTER LLP**
901 New York Ave., NW
Washington, DC 20001
Tel.: 202.346.4000
thefferon@goodwinlaw.com
srosesmith@goodwinlaw.com
mriffee@goodwinlaw.com

Catalina E. Azuero
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
cazuero@goodwinlaw.com

*Attorneys for Defendants Ocwen Financial Corp., Ocwen Mortgage Servicing, Inc., and Ocwen Loan Servicing, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on October 3, 2019 via CM/ECF to all counsel of record.

*/s/ Catalina Azuero*
Catalina Azuero