**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:17-CV-80495-MARRA-MATTHEWMAN**

CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*,

Plaintiff,

v.

OCWEN FINANCIAL CORPORATION, OCWEN MORTGAGE SERVICING, INC., and OCWEN LOAN SERVICING, LLC,

Defendants.

**CASE NO. 9:17-CV-80496-MARRA/MATTHEWMAN**

OFFICE OF THE ATTORNEY GENERAL, THE STATE OF FLORIDA, Department of Legal Affairs,

and

OFFICE OF FINANCIAL REGULATION, THE STATE OF FLORIDA, Division of Consumer Finance,

Plaintiffs,

v.

OCWEN FINANCIAL CORPORATION, *et al.*,

Defendants.

**DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants, Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc., Ocwen Loan Servicing, LLC, and PHH Mortgage Corporation (collectively, "Ocwen" or "Defendants")[1] hereby move to dismiss Count V of Plaintiffs' Third Amended Complaint ("TAC") (DE 506) with prejudice on the grounds that—as this Court has previously held—Plaintiffs have failed to state a claim upon which relief can be granted under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

In Count V of the TAC, Plaintiff the Office of the Attorney General ("OAG")[2] repleads a FDUTPA claim based on allegations this Court has already found insufficient. The Court previously held that the same allegations concerning loan servicing and debt collection activity were not "trade or commerce" within the meaning of FDUTPA. OAG attempts to evade the Court's order by recasting its prior allegations through artful and conclusory pleading. This attempt fails because the Court has already dismissed those allegations *with prejudice*, and because the TAC's Count V FDUTPA claim is still based on conduct that is not "trade or commerce." Consistent with this Court's prior dismissal order, Count V of the TAC should be dismissed.

## BACKGROUND

Count V of Plaintiffs' TAC seeks to reassert a FDUTPA claim based on allegations from Plaintiffs' Second Amended Complaint (DE 88) ("SAC") about Ocwen's loan servicing and collection activity, which this Court has already found insufficient to state a claim. *See* Order Granting In Part and Denying In Part Defendants' Motion to Dismiss Florida Plaintiffs' Second

[1] Although the case caption in Plaintiffs' Third Amended Complaint includes PHH Mortgage Corporation as a Defendant, Ocwen contends that PHH Mortgage Corporation has not been made a proper party to this action, as Plaintiffs have neither sought leave to add a new defendant nor otherwise moved to amend the caption.

[2] While the TAC is filed by both the OAG and the Office of Financial Regulation, the State of Florida, Division of Consumer Finance ("OFR"), Count V is only asserted by the OAG.

Amended Complaint (DE 477) ("Order"), at 33-34. The SAC contained two counts asserting violations of FDUTPA: Counts V and VI. In Count V of the SAC, OAG alleged that Defendants willfully engaged in "unfair acts" including:

> a) the use of incorrect data or incomplete or missing documentation to service borrowers' loans; b) the imposition of force-placed insurance in excessive amounts of coverage; c) the imposition of force-placed insurance where the borrower had insurance; d) charging borrowers excessive property inspection fees; e) charging borrowers excessive BPO fees; f) back-dating time-sensitive letters to borrowers; g) failing to make escrow disbursements for insurance; h) failing to release liens in a timely fashion; i) failing to honor existing trial loan modification agreements; and j) using unlicensed vendors to conduct mortgage servicing functions.

SAC ¶¶ 200, 203. OAG further alleged in Count V that, in the course of servicing their loans, Ocwen made misrepresentations or omissions to borrowers regarding their various amounts due. *Id.* at ¶¶ 201-202.

In Count VI of the SAC, OAG alleged that Defendants willfully engaged in unfair and deceptive acts by, among other things, failing to send borrowers accurate periodic statements with complete account activity, and failing to explain to borrowers how their future payments would be applied. *Id.* at ¶¶ 212-219. OAG further alleged that Ocwen "knew or should have known" that its "system of record [REALServicing] contains inaccurate information about borrower payments and amounts due," which Ocwen relied upon in its communications with borrowers. *Id.* at ¶ 202.

In ruling on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint With Prejudice (DE 96) ("Motion to Dismiss"), this Court held that the SAC's Count V could *only* proceed "insofar as the FDUTPA claim is based upon the force-placement of insurance in excess of what was required by mortgage terms or charging excessive property inspection fees or BPO

fees." Order at 33. The Court granted Defendants' Motion to Dismiss Count V to the extent the claim was based on "debt collection activity of mortgage loans or loan modification agreements," because such conduct is not "trade or commerce" within the meaning of FDUTPA, and OAG therefore failed to state a claim upon which relief could be granted. *Id.* at 33. Likewise, the Court dismissed Count VI with prejudice, finding that all of the conduct alleged in the SAC's Count VI was "limited to debt collection and the invoicing and application of payments," which "falls outside of the meaning of 'trade or commerce.'" *Id.* at 34.

Nevertheless, OAG's repackaged Count V merely reasserts the bulk of the prior FDUTPA allegations already dismissed by this Court *with prejudice*.[3] OAG attempts to circumvent the Court's dismissal order by reframing the previously alleged loan servicing errors as being caused by Ocwen's use of its loan servicing platform, REALServicing—this elevates form over substance and fails to bring Ocwen's loan servicing conduct within the realm of "trade or commerce." *See, e.g.,* TAC ¶ 107. Specifically, OAG alleges in Count V of the TAC that Ocwen's "business decision to use and maintain use of REALServicing as [its servicing] system of record" and its "reliance on REALServicing" caused "the unfair or deceptive acts" of "miscalculation of payments due," and "misinformation and miscommunications" to borrowers regarding loan terms and amounts due. TAC ¶¶ 228-233. OAG's attempt to artfully replead claims already dismissed by this Court fails, and the Court should again dismiss Count V.

**<u>LEGAL STANDARD</u>**

A complaint, or any cause of action alleged therein, must be dismissed if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A complaint that contains mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"

[3] The TAC also asserts FDUTPA claims in Counts VI and VII based on the force-placed insurance and property inspection fee allegations of former Count V of the SAC that the Court did not dismiss. Ocwen does not move to dismiss Counts VI or VII.

does not state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the Court must dismiss a cause of action when, "on the basis of a dispositive issue of law, *no construction* of the factual allegations will support the cause of action." *See Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (emphasis added). Dismissal of a claim "with prejudice" is a "final[] dispos[ition] of a party's claim," and a plaintiff may not re-plead it. *B&D Nutritional Ingredients v. Unique Bio Ingredients*, 2017 U.S. Dist. LEXIS 220972, at *4 (S.D. Fla. Mar. 17, 2017); *see also Bacon v. Stiefel Labs., Inc.*, 2011 U.S. Dist. LEXIS 160627, at *2-4 (S.D. Fla. Dec. 13, 2011) (Plaintiffs are not entitled to "relitigate" claims that have been dismissed with prejudice, which operate as a final "judgment on the merits.") (citing *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1470 (11th Cir. 1986)).

## ARGUMENT

OAG's Count V FDUTPA claim is based on the same alleged conduct which was already dismissed by the Court in Counts V and VI of Plaintiffs' SAC. FDUTPA prohibits "unfair or deceptive acts or practices *in the conduct of any trade or commerce*," where "trade or commerce" means "the advertising, soliciting, providing, offering, or distributing . . . of any good or service, . . . or thing of value." FLA. STAT. §§ 501.203(8), 501.204(1) (emphasis added). To bring an FDUTPA claim, OAG must first meet the statutory "trade or commerce" requirement. As set forth herein, because the TAC's Count V merely repackages allegations this Court has already found are not "trade or commerce," it once again fails to meet this threshold requirement and must be dismissed.

### I. COUNT V IMPROPERLY REASSERTS ALLEGATIONS DISMISSED WITH PREJUDICE.

In dismissing the SAC's Count VI claim *with prejudice*, this Court barred Plaintiffs from reasserting a FDUTPA claim based on *any* of the same conduct. Order at 34. Count V of the

TAC is an improper attempt to evade the Court's order because the allegations in Count V allege the same conduct that was dismissed *with prejudice* in the SAC.[4] *See* Appendix A, comparing allegations in the TAC with allegations in the SAC. OAG's attempts to reassert claims that have been dismissed with prejudice are thinly veiled—Count V of the TAC still alleges Ocwen provided borrowers inaccurate and incomplete loan information—clear loan collection and invoicing activity dismissed by this Court. For example, OAG alleged in the SAC that Ocwen "fail[ed] to send accurate periodic statements with the current amount due," Order at 31 (citing SAC ¶¶ 212-213), and now reasserts in Count V of the TAC that Ocwen made "miscommunications about monthly payments due" (TAC ¶ 229) resulting in the "billing of inaccurate and incorrect amounts." TAC ¶ 230. OAG's minor wordsmithing does not change that these allegations concerning inaccurate borrower statements are the same.[5] Count V in the TAC merely reasserts these allegations, even though the Court dismissed them *with prejudice*, explaining that "granting leave to amend on these matters would be futile." Order at 34.

[4] Recognizing that Plaintiffs relied on "shotgun pleading" by "incorporat[ing] all 146 paragraphs of [the SAC's] allegations" into each count of the SAC, this Court's Order dismissed with prejudice a FDUTPA claim based on "debt collection and the invoicing and application of payments," which is the same conduct the Court did not allow to proceed in Count V of the SAC. Order at 14, 33-34. Even though allegations related to the force-placement of insurance and excessive property inspection fees or BPO fees were permitted to proceed in former Count V, the remaining allegations in former Count V fall squarely within the conduct that this Court dismissed with prejudice, because they describe conduct that is "limited to debt collection and the invoicing and application of payments." *Id.* at 34.

[5] Moreover, as discussed in Section II *infra*, both sets of allegations fall squarely within the category of conduct that this Court described as "the invoicing or application of payments" on a loan, and which the Court held cannot support a FDUTPA claim. Order at 31, 34. The remainder of the allegations in Count V of the TAC describe "miscalculation of payments" and miscommunications about "errors related to the terms of the loans" (TAC ¶ 229), which is the same conduct that this Court dismissed as mere debt collection, invoicing, and payment processing activities in the SAC. Order at 34, *see also* SAC ¶¶ 212-218.

Dismissal "with prejudice" means "in a way that finally disposes of a party's claim and bars *any* future action on that claim." *B&D Nutritional Ingredients*, 2017 U.S. Dist. LEXIS 220972, at *4 (citing With Prejudice, Black's Law Dictionary (10th ed. 2014) (emphasis added)); *see also 800 Adept, Inc. v. Murex Secs., Ltd.*, 2006 U.S. Dist. LEXIS 103982, at *5 (M.D. Fla. Feb. 7, 2006) ("[D]ismissal with prejudice means that Defendants cannot be made to defend against this claim again."). Accordingly, OAG's reassertion of the claim comprising Count V of the TAC is improper because it defies this Court's Order, which did not grant OAG leave to replead its former Count VI claim.[6] For this reason, Count V must be dismissed. *See*, *e.g.*, *Rohn v. Palm Beach Cty. Sch. Bd.*, 2013 U.S. Dist. LEXIS 57948, at *5 (S.D. Fla. Apr. 22, 2013) ("The Court previously dismissed with prejudice the state law negligence claim and Plaintiff was not granted leave to re-plead this claim. Thus, the claim is once again dismissed with prejudice.").

## II. COUNT V STILL ONLY ALLEGES CONDUCT THAT IS NOT "TRADE OR COMMERCE."

Even if former Count VI had not been dismissed with prejudice and Plaintiffs had been granted leave to replead that claim (and they have not), OAG's allegations in Count V of the TAC substantively cannot support a FDUTPA claim because they are the same loan servicing and debt collection allegations this Court has already held are not "trade or commerce."

[6] *See also Greer v. Ivey*, 2016 U.S. Dist. LEXIS 195773, at *6 (M.D. Fla. July 18, 2016) (finding that "Plaintiffs [have] endeavor[ed] to directly defy the [court's] Order" where they "purport[ed] to reassert allegations . . . previously dismissed with prejudice."); *B & E Gibson Enters. v. Darngavil Enters. LLC*, 2013 U.S. Dist. LEXIS 67793, at *7 (M.D. Fla. May 13, 2013) (striking counts of amended complaint because "Plaintiff did not have leave to replead these Counts because they were dismissed with prejudice").

### A. All of the Conduct Underlying Count V Is Debt Collection Activity and the Invoicing and Application of Payments, Which Is Not "Trade or Commerce."

All of the conduct underlying OAG's Count V claim is the debt collection activity that this Court correctly held is not "trade or commerce," consistent with a long line of authority.[7] *See* Order at 33-34. In Count V, OAG simply reasserts allegations from Counts V and VI of the SAC regarding the same loan servicing conduct that this Court has already determined cannot support a FDUTPA claim. *See* Appendix A. Indeed, as explained in Section I, *supra*, Count V recites swaths of allegations that were pled in Counts V and VI of the SAC. And the Court correctly held that the conduct alleged therein was not "trade or commerce." Order at 33-34. Thus, even if the Court had not dismissed OAG's prior Count VI with prejudice, Count V of the TAC must be dismissed because its allegations substantively cannot support a FDUTPA claim.[8] As with Counts V and VI of the SAC, OAG's Count V FDUTPA claim is predicated on classic loan collection activity, which includes payment processing and communicating amounts due to

---

[7] *See, e.g., Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1322 (S.D. Fla. Sept. 10, 2012) ("debt collection activities do not fall within FDUTPA."); *Genao v. CitiMortgage, Inc.*, 2017 WL 10775439, at *4 (S.D. Fla. Feb. 10, 2017), *report and recommendation adopted*, 2017 WL 10775411 (S.D. Fla. Mar. 1, 2017) ("Servicing and loan collection activity is not 'trade or commerce'"); *Mesa v. Boston Portfolio Advisors, Inc.*, 2015 U.S. Dist. LEXIS 92549, at *10 (S.D. Fla. July 16, 2015) ("[D]ebt collection activities are not 'trade or commerce'"); *Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284, at *5 (S.D. Fla. May 6, 2013) (mortgage enforcement activities are not "trade or commerce"); *Nardolilli v. Bank of Am. Corp.*, 2013 U.S. Dist. LEXIS 201844, at *8-9 (S.D. Fla. Dec. 5, 2013) ("[T]he servicing of a mortgage do not fall within the purview of 'trade or commerce.'").

[8] Additionally, Count V should be dismissed because OAG does not actually allege any facts that would show even a *prima facie* case that the "trade or commerce" requirement applies to Ocwen. OAG merely parrots the statute's definition of the term and asserts that Ocwen "provided services" as used in the definition. TAC ¶ 227. This failure to plead facts that the alleged FDUTPA violations occurred in "trade or commerce" by Ocwen, alone, is grounds for dismissal. *See Moragon v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 135789, at *33 (M.D. Fla. June 22, 2018) *adopted and dismissed by* 2018 U.S. Dist. LEXIS 135780 (M.D. Fla. July 12, 2018) (recommending dismissal of FDUTPA claim where "[plaintiff] simply asserts—in conclusory fashion—that Ocwen can be considered to have been engaging in trade or commerce.").

borrowers through billing.[9] *See, e.g., Clark v. HSBC Bank USA, Nat'l Ass'n*, 664 F. App'x 810, 813 (11th Cir. 2016) (unpublished opinion) (mortgage servicing includes the receipt and processing of payments, "informing [borrowers] of [their mortgage] default[s]," and "taking [borrowers'] loan modification application[s] into consideration"); *Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1349 (S.D. Fla. 2016) (loan servicing activity includes use of "information about the receipt of periodic payments or the amounts of such payments."); *Mortgage Servicing*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "mortgage servicing" as "[t]he administration of a mortgage loan, including the collection of payments"). Because "loan collection activities, even if . . . improper" (Order at 32 (internal citation omitted)), do not give rise to a FDUTPA claim, OAG does not bring its Count V allegations within the scope of "trade or commerce" merely by alleging, for example, that Ocwen sought to collect "*mis*calculat[ed]" payments from borrowers. TAC ¶ 229 (emphasis added). *See, e.g., Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362, 1373-74 (S.D. Fla. 2017) ("An attempt to collect a debt by exercising one's legal remedies does not constitute [trade or commerce under FDUTPA] even where the plaintiff alleges the defendants attempted to collect amounts exceeding what was owed."). Likewise, a loan servicer's correspondence with borrowers to collect on their loans – even where that communication reflects inaccurate information – does not fall under the umbrella of "trade or commerce." *See*, *e.g.*, *Williams*, 890 F. Supp. 2d at 1322 (Because defendant was "engaged in

---

[9] *See* TAC ¶¶ 225-236 (Count V allegations). OAG also incorporates by reference into Count V allegations about Ocwen's loan servicing conduct that are precisely the types of allegations this Court held are not "trade or commerce" in dismissing former Count VI with prejudice. Order at 34. These include allegations regarding use of inaccurate loan terms, interest rates, late fees, foreclosure data, loan modification, loss mitigation and other loan information (TAC ¶¶ 110, 114, 117-118, 136-139, 141-142, 144); errors in calculating escrow, insurance, payoff, reinstatement and other amounts due (TAC ¶¶ 136-138, 142-143); attempts to collect inaccurate amounts (TAC ¶¶ 138, 141); payment processing errors (TAC ¶ 140); and sending inaccurate monthly periodic and billing statements (TAC ¶¶ 137, 145).

debt collection activities" when it made collection phone calls, plaintiff's allegations "do not give rise to a FDUTPA claim," "no matter how unfair or deceptive" the phone calls allegedly were).[10] Accordingly, the allegations in Count V —like those dismissed in the SAC—that Ocwen "miscommunicat[ed]" with and "misinform[ed]" borrowers about loan terms and amounts due cannot support a FDUTPA claim. TAC ¶ 229. OAG still fails to allege that Ocwen engaged in any conduct that is not "debt collection activity" or the "invoicing or application of payments," and Count V of the TAC must be dismissed.

**B. OAG's Efforts to Reframe Previously Dismissed Claims Are Ineffective.**

Recognizing that the Court has already held that the servicing and debt collection conduct it wants to challenge is not "trade or commerce," OAG now attempts to reframe these same loan servicing allegations as being caused by Ocwen's use of REALServicing. While OAG attempts to add filler to its allegations in the TAC about Ocwen's decision to use REALServicing, OAG has in fact already alleged that Ocwen's improper servicing conduct was caused by its reliance on REALServicing, including in its previously asserted FDUTPA claim, which has already been rejected by the Court.[11] For example, whereas OAG alleged in the SAC that "the Ocwen

---

[10] *See also Economakis v. Butler & Hosch, P.A.*, 2014 WL 820623, at *2 (M.D. Fla. Mar. 3, 2014) (debt collection letters that "fraudulently misrepresented that certain attorney's fees and court costs had been incurred and were due" were not "trade or commerce"); *State of Fla., Office of Att'y Gen. v. Shapiro & Fishman, LLP*, 59 So. 3d 353, 355–56 (Fla. 4th DCA 2011) (use of fabricated, false, or misleading documents in processing foreclosure cases was not "trade or commerce").

[11] *See* SAC ¶ 202.b (Ocwen "knew or should have known" that its "system of record contains inaccurate information" including about "reinstatement amounts, suspense balances, default fees dues, and delinquency statuses," which Ocwen relied upon in communicating with borrowers). *See also, e.g.,* SAC ¶ 50 (Defendants "know that REALServicing is not an adequate system of record . . . [but] still maintain REALServicing as their system of record."); SAC ¶ 110 ("[D]eficiencies with REALServicing lie at the root of various problems" with Ocwen's "calculation" of "payoff and reinstatement quotes"); SAC ¶ 111 (Ocwen has "failed to send the required escrow statements to borrowers because of REALServicing system deficiencies"); SAC ¶ 131 ("[D]ue to inaccurate data found in REALServicing," Ocwen failed to send accurate

Defendants have made material misrepresentations" about "loan reinstatement amounts" (SAC ¶ 201) and that Ocwen "knew . . . [its] system of record contains inaccurate information about . . . reinstatement amounts" (SAC ¶ 202.b), OAG now alleges in Count V of the TAC that "[t]he Ocwen Defendants' reliance on REALServicing . . . resulted in . . . miscommunications about . . . reinstatement amounts." TAC ¶ 229. Essentially, OAG attempts to artfully plead its way around the "trade or commerce" requirement by alleging that its challenge in Count V is not merely contesting Ocwen's debt collection activities, but is also a challenge to Ocwen's "business decision to insist upon utilization of the REALServicing platform" in Ocwen's loan servicing activities. TAC ¶ 107. This distinction is illusory. There is no authority for the idea that a "business decision" to use a servicing platform somehow transforms the alleged servicing errors into "trade or commerce." Any "business decision" could only be in the conduct of "trade or commerce" if said business actually engaged in "trade or commerce," and "mortgage enforcement generally . . . does not involve the loan servicer 'advertising, soliciting, providing, offering, or distributing' anything to borrowers." Order at 30 (citing *Rodriguez v. Ocwen Fin. Corp.*, 2017 WL 3593972, at *6 (S.D. Fla. Aug. 21, 2017)). Any decision by Ocwen to utilize a particular loan servicing platform—even one with alleged "known deficiencies" (TAC ¶ 229)—is conduct Ocwen undertakes (and must undertake) as a servicer of mortgages. *See Moragon*, 2018 U.S. Dist. LEXIS at *33 (rejecting plaintiff's amended FDUTPA claim where plaintiff could not explain "why the activities of Ocwen—a loan servicer—fall within the definition of 'trade or commerce.'"). Accordingly, however OAG attempts to reframe its challenge, the claims in Count V fall squarely outside of the scope of "trade or commerce" because they still

---

statements); SAC ¶ 132 (Ocwen's "reliance on the erroneous information contained in REALServicing" led to sending "periodic statements containing inaccurate information."). *See also* SAC ¶¶ 44-49, 51-53, 93, 123, 136 (alleging purported REALServicing deficiencies).

implicate mere mortgage loan servicing and collection. OAG does not satisfy FDUTPA's "trade or commerce" requirement by simply repackaging its same tried allegations under a new label. *See Korman v. Iglesias*, 2018 U.S. Dist. LEXIS 109297, at *12-13 (S.D. Fla. June 28, 2018) (granting defendant's motion to dismiss plaintiff's FDUTPA claim where "Plaintiff has merely repackaged her copyright infringement claim," "restat[ing] the same factual allegations," because "pleadings must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'") (citing *Twombly*, 550 U.S. at 555); *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1329 (S.D. Fla. Dec. 17, 2014) (refusing to rely on "plaintiffs' characterizations" and "[a]rtful pleading") (citing *Roberts v. United States*, 242 F.3d 1065, 1068 (Fed. Cir. 2001) ("The 'nature of a pleading' is determined by its 'substance, not its label.'")).

This district has rejected similar attempts by plaintiffs at reframing defendants' actions in order to get around FDUTPA's "trade or commerce" requirement. *See, e.g., Williams*, 890 F. Supp. 2d at 1322 (dismissing FDUTPA claim based on allegations that Nationstar made collection phone calls to plaintiff because Nationstar was not engaged in "trade or commerce"). In *Williams*, the court observed that "[b]ecause Nationwide's debt collection activities do not fall within FDUTPA, Plaintiff next tries to redefine Nationwide's actions" by claiming that "Nationwide was not engaged in collecting on a debt when it called her," but "merely was placing harassing phone calls." *Id.* The *Williams* court, however, found this argument to be belied by allegations in the plaintiff's amended complaint that "Nationwide called Plaintiff 'for the purpose of collecting an alleged debt.'" *Id.* The court also rejected the plaintiff's attempts "to liken Nationwide's activities to unsolicited business advertisements sent to an unwilling recipient's fax machine, citing two Florida trial court decisions"—the court found that whereas

the defendants in those opinions "were engaged in advertisement, which is explicitly within the definition of trade or commerce under FDUTPA[,] . . . Nationwide's debt collection activities still were not trade or commerce as to Plaintiff." *Id.* Like the court in *Williams*, this Court should not be distracted by Plaintiffs' implication that Ocwen was not engaged in debt collection activities when it decided to use REALServicing as its loan servicing system of record, or when its use of REALServicing allegedly led to miscalculations and miscommunications in servicing borrowers' loans. Not only is that implication nonsensical, the Court need look no further than Plaintiffs' own complaint for a concession that Ocwen's use of REALServicing was part and parcel of its debt collection activities. *See, e.g.*, TAC ¶ 138 (Through "its reliance on REALServicing, Ocwen has collected or attempted to collect inaccurate [debts] from borrowers"). OAG's "business decision" and "reliance" challenges are nothing more than renewed attacks on Ocwen's loan servicing activities, which this Court has already held are not "trade or commerce." OAG's Count V claim must therefore be dismissed – once again – because it still does not allege unfair or deceptive acts in the conduct of "trade or commerce."

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court dismiss Count V of the Third Amended Complaint with prejudice.

Dated: December 6, 2019

Respectfully submitted,

/s/ Andrew S. Wein

Andrew S. Wein
Bridget Ann Berry
**GREENBERG TRAURIG, P.A.**
777 South Flagler Drive, Suite 300 East
West Palm Beach, FL 33401
Tel.: 561.650.7900
weina@gtlaw.com
berryb@gtlaw.com

Thomas M. Hefferon (*pro hac vice*)
Sabrina M. Rose-Smith (*pro hac vice*)
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
Tel.: 202.346.4000
thefferon@goodwinlaw.com
srosesmith@goodwinlaw.com

Laura A. Stoll (*pro hac vice*)
**GOODWIN PROCTER LLP**
601 S. Figueroa Street
Los Angeles, CA 90017
Tel.: 213.426.2500
lstoll@goodwinlaw.com

Catalina E. Azuero (Florida Bar No. 821411)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
cazuero@goodwinlaw.com

*Attorneys for Defendants Ocwen Financial Corp., Ocwen Mortgage Servicing, Inc., Ocwen Loan Servicing, LLC, and PHH Mortgage Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on December 6, 2019 via ECF on all counsel or parties of record listed below:

Jennifer Hayes Pinder
Email: Jennifer.Pinder@myfloridalegal.com

Sasha Funk Granai
Email: Sasha.Granai@myfloridalegal.com

Victoria Butler
Email: Victoria.Butler@myfloridalegal.com

Scott R. Fransen
Email: Scott.Fransen@flofr.com

Miriam S. Wilkinson
Email: Miriam.Wilkinson@flofr.com

Anthony Cammarata
Email: Anthony.Cammarata@flofr.com

Jean Healey
Email: jean.healey@cfpb.gov

Atur Desai
E-mail: atur.desai@cfpb.gov

Tianna Baez
E-mail: tianna.baez@cfpb.gov

Amanda Roberson
E-mail: amanda.roberson@cfpb.gov

Stephanie Brenowitz
E-mail: stephanie.brenowitz@cfpb.gov

Erin Mary Kelly
E-mail: erin.kelly@cfpb.gov

James Savage
E-mail: james.savage@cfpb.gov

Greg Nodler
E-mail: greg.nodler@cfpb.gov

Michael Posner
E-mail: michael.posner@cfpb.gov

Jack Douglas Wilson
E-mail: doug.wilson@cfpb.gov

Shirley T. Chiu
E-mail: shirley.chiu@cfpb.gov

Blaine Winship
E-mail: blaine.winship@myfloridalegal.com

Joaquin Alvarez
E-Mail: Joaquin.alvarez@flofr.com

/s/ Andrew S. Wein
ANDREW S. WEIN

# APPENDIX A – COMPARISON OF ALLEGATIONS OF CONDUCT UNDERLYING FDUTPA CLAIMS IN THE TAC AND SAC

| Unfair or Deceptive Conduct Alleged in Count V of the TAC | TAC ¶ | Unfair or Deceptive Conduct Alleged in Counts V and VI of the SAC That Was Dismissed | SAC ¶ |
|---|---|---|---|
| "miscalculation of payments due by borrowers" | 229 | "the use of incorrect data or incomplete or missing documentation to service borrowers' loans"; "fail[ing] to accurately detail on periodic statements the current amounts due by borrowers"; "fail[ing] to account to borrowers all account activity since the prior periodic statement" | 200, 213, 215 |
| "miscommunications about terms and payments due by borrowers, including errors related to the terms of the loans including interest rates, balloon payments, whether a loan had an adjustable rate, and maturity dates" | 229 | "ma[king] material misrepresentations or omissions to borrowers"; "regularly sen[ding] borrowers inaccurate periodic statements"; "fail[ing] to accurately detail on periodic statements the current amounts due by borrowers"; "fail[ing] to explain how borrowers' future payments will be applied" | 201, 212-214 |
| "misinformation and miscommunications about monthly payments due from borrowers, payoff amounts and reinstatement amounts . . . as well as errors related to escrow accounts" | 229 | "the use of incorrect data or incomplete or missing documentation to service borrowers' loans"; "ma[king] material misrepresentations or omissions to borrowers"; "regularly sen[ding] borrowers inaccurate periodic statements"; "fail[ing] to accurately detail on periodic statements the current amounts due by borrowers"; "fail[ing] to explain how borrowers' future payments will be applied"; "fail[ing] to account to borrowers all account activity since the prior periodic statement" | 200-201, 212- 215 |
| "miscommunications to borrowers, including misrepresenting to borrowers outstanding loan balances, monthly payments due, escrow amounts due, loan reinstatement amounts, and insurance amounts due" | 231 | "misrepresenting to borrowers outstanding loan balances"; "misrepresenting to borrowers monthly payments due"; "misrepresenting to borrowers escrow amounts due"; "misrepresenting to borrowers loan reinstatement amounts"; "misrepresenting to borrowers insurance amounts due"; "regularly sen[ding] borrowers inaccurate periodic statements" | 201, 212 |