**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:17-CV-80495-MARRA**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

OCWEN FINANCIAL CORPORATION; OCWEN MORTGAGE SERVICING, INC.; and OCWEN LOAN SERVICING, LLC, and PHH MORTGAGE CORPORATION, a New Jersey corporation, as successor-in-interest to Ocwen Loan Servicing, LLC

Defendants.

**CASE NO. 9:17-CV-80496-MARRA**

OFFICE OF THE ATTORNEY GENERAL, THE STATE OF FLORIDA, Department of Legal Affairs,

and

OFFICE OF FINANCIAL REGULATION, THE STATE OF FLORIDA, Division of Consumer Finance,

Plaintiffs,

v.

OCWEN FINANCIAL CORPORATION, a Florida corporation, OCWEN MORTGAGE SERVICING, INC., a U.S. Virgin Islands corporation, OCWEN LOAN SERVICING, LLC, a Delaware limited liability company, and PHH MORTGAGE CORPORATION, a New Jersey corporation, as successor-in-interest to Ocwen Loan Servicing, LLC.

Defendants.

**THE ATTORNEY GENERAL'S RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

The Office of the Attorney General, State of Florida, Department of Legal Affairs (the "Attorney General") states an actionable claim under the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes ("FDUTPA") in Count V of the Third Amended Complaint (the "TAC"). Ocwen's[1] Partial Motion to Dismiss Plaintiffs' Third Amended Complaint and Incorporated Memorandum of Law [D.E. 562] (the "Motion") should be denied. Taking into careful consideration the rulings in this Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Florida Plaintiffs' Second Amended Complaint [D.E. 477] (the "Order"), Count V of the TAC does not seek to hold Ocwen liable under FDUTPA for "mere" servicing activities. The Attorney General understood the Order dismissing FDUTPA claims based on debt collection activity of mortgage loans or loan modification agreements, which the Court determined are not "trade or commerce" under FDUTPA. *See* Order at 33. Count V does not seek to hold Ocwen liable under FDUPTA for actions directed at consumers in the course of collecting a debt, such as making debt collection calls or failing to provide certain types of required notices. Count V does not seek to hold Ocwen liable under FDUTPA for conduct connected to legal proceedings aimed at enforcing rights, such as the creation or transmission of documents connected to a foreclosure lawsuit. Count V alleges that Ocwen knew of the insufficiencies of REALServicing, its proprietary system of record, but nevertheless maintained REALServicing in the stream of commerce, causing excessive costs and other harm to borrowers.

As alleged in the TAC, Ocwen developed REALServicing, which was ultimately spun off to affiliated vendor Altisource Portfolio Solutions ("Altisource"). TAC ¶ 44. REALServicing was never a prevalent system of record in the industry and, at all times relevant to this lawsuit, Ocwen was the only mortgage servicer that used REALServicing. TAC ¶ 53. Ocwen and Altisource

---

[1] As used herein, "Ocwen" refers to Defendants Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc, Ocwen Loan Servicing, LLC and PHH Mortgage Corporation, as successor-in-interest to Ocwen Loan Servicing, LLC.

shared the same chairman of the board, William Erbey, who had a substantial ownership in both companies. TAC ¶ 44. Ocwen sustained and relied upon REALServicing motivated by its own self-interest, and its business decision to use REALServicing is distinct from debt collection activities or actions taken to enforce legal rights. Ocwen's provision of REALServicing, a product offered exclusively by Ocwen, to consumers is an act appurtenant to mortgage servicing activities. Reviewing Count V of the TAC in the light most favorable to the Attorney General, Ocwen's implementation and use of REALServicing falls within trade or commerce and therefore supports survival past the pleading stage.[2]

**LEGAL STANDARD**

Rule 8(a) of the Federal Rules of Civil Procedure only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted only when the facts alleged fail to state a "plausible" claim for relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-57 (2007). A plaintiff does not need to allege specific facts; rather, his pleading need only "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe the facts in the light most favorable to the plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *see also Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). As discussed below, Count V of the TAC meets the requirements of Rule 8(a).

[2] Ocwen's only challenge to the TAC is that the allegations contained in Count V were previously pled and do not fall within trade or commerce as defined under FDUTPA. Ocwen presents no other basis for dismissal, including the pleading standards for deception and/or unfairness under FDUTPA, which are nonetheless met.

## ARGUMENT

Ocwen's Motion presents a single question for this Court to determine as a matter of law: does Ocwen's maintenance and delivery of a proprietary, allegedly deficient system of record that harms consumer borrowers, amount to an act in trade or commerce; or is such conduct merely a component of obtaining a legal interest in a mortgage note from a third party and the resulting efforts to enforce the terms of that mortgage? *See Benjamin v. CitiMortgage, Inc*., Case No. 12-62291, 2013 WL 1891284, at * 5 (S.D. Fla. May 6, 2013). The answer is that Ocwen's use and maintenance of REALServicing in the stream of commerce, and its delivery of services to consumers based upon information created and processed through the deficient platform, clearly represent activities that fall within trade or commerce. Moreover, Ocwen knowingly maintained, relied on and subjected consumers to REALServicing for its own benefit and to the detriment of consumers, This conduct is distinguishable from holdings in *Benjamin* and its progeny, which hold that that the mere servicing of a mortgage, which represents the enforcement of legal rights, falls outside of "trade or commerce" as that term is contemplated under FDUTPA. *See id*. at * 5. *Benjamin* and its progeny do not stand for the proposition that a mortgage servicer is immune from any liability under FDUTPA simply by virtue of being a loan servicer. In fact, courts, including this one, have held that where conduct goes beyond mere debt collection, liability under FDUTPA may exist. *See, e.g*., *Martorella v. Deutsche Bank Nat. Trust Co*., 931 F. Supp. 2d 1218, 1224 (S.D. Fla. 2013). In Count V of the TAC, the Attorney General has isolated claims related to Ocwen's deficient system of record and clearly alleges that Ocwen's maintenance, use and delivery of information derived from this proprietary platform, and the continued use of such platform even though it was rife with inaccuracies while simultaneously growing its loan servicing portfolio, were activities that fall outside of actual servicing activity. *See* Count V, including incorporated Paragraphs. While the results of Ocwen's decision to create and use a substandard

system of record resulted in bad servicing, such bad servicing is not the factual underpinning of Count V. Rather, Count V attempts to hold Ocwen responsible to the enforcing authority of FDUPTA[3] for making causing harm to consumer borrowers, including excessive payments, due to Ocwen's independent actions that placed REALServicing into the stream of commerce. Accordingly, the acts and practices alleged in Count V fall within trade or commerce and can be subject to an enforcement action under FDUTPA. Count V of the TAC should survive.

## I. Count V Does Not Assert Claims that the Court Dismissed with Prejudice

Ocwen ignores that the Attorney General has refined its allegations related to Ocwen's system of record, adding numerous factual paragraphs and clarifying how Ocwen's decisions to maintain, rely on, and deliver information created by REALServicing are activities that fall within trade or commerce.[4] *See* Count V, including incorporated Paragraphs. The Order prohibits the Attorney General from bringing FDUTPA claims based upon "debt collection activity of mortgage loans or loan modification agreements". Order at 33. Count V is based upon neither. The Court did not prescribe the claims that could be brought; it identified the claims that would be barred going forward. The Order does not state that any claims regarding Ocwen's proprietary system of record are dismissed with prejudice. Thus, Ocwen's arguments directed at this Court's dismissal with prejudice are unavailing. *See* Motion at 4-6.

Moreover, the Court did not dismiss Count V of the Second Amended Complaint (related to Ocwen's various acts and practices in the course of servicing loans) with prejudice, as opposed to prior Count VI (related to communications by Ocwen directed at borrowers), which was

[3] Pursuant to Section 501.203(2), Florida Statutes, the Attorney General is the "enforcing authority" under FDUTPA.

[4] Count V of the Second Amended Complaint alleged FDUTPA liability for, *inter alia*, Ocwen's "use of incorrect data or incomplete or missing documentation to service borrowers' loans". *See* Order at 30 (citing Second Amended Complaint ¶ 200); *see also* Motion at Appendix A.

dismissed with prejudice. *See id*. Ocwen cited similarly unconvincing cases that stand for the proposition that the claims related to Ocwen's system of record are improperly re-pled. *See id*. at 11. Ocwen misguidedly relies on cases directed at attempts to re-plead around jurisdictional challenges. *See Korman v. Iglesias*, Case No. 18-21028, 2018 WL 4410226, at * 5 (S.D. Fla. June 28, 2016) (reframing copyright claim as FDUTPA claim in an attempt to avoid prior dismissal based on preemption); *Helman v. Urden Law Offices*, 85 F. Supp. 3d 1319 (S.D. Fla. 2014) (dismissing claims preempted by bankruptcy action). The Attorney General does not attempt to avoid the Court's rulings. Quite to the contrary, the Attorney General is guided by the Court's decision in alleging facts that bring Ocwen's a) maintenance of, b) reliance on, and c) delivery of information created by its system of record within the ambit of trade or commerce.[5]

## II. Ocwen's Use, Maintenance, and Delivery of Information Created by its Deficient, Proprietary System of Record are Actionable under FDUTPA

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 501.204(1). The text of the statute suggests that the term "trade or commerce" should be applied broadly given that trade or commerce is expressly defined as, "the advertising, soliciting, *providing*, *offering*, or distributing, whether by sale, rental, or *otherwise*, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value,

---

[5] Ocwen cites *Moragon v. Ocwen Loan Servicing, LLC*, 2018 WL 3761036 (M.D. Fla. June 22, 2018) to apparently argue that the Attorney General has failed to state a prima facie case under FDUTPA because the TAC does not demonstrate how a deficient system of record falls within trade or commerce. *See* Motion at 7, 10. In *Moragon*, the complaint simply asserted, in a conclusory fashion, that Ocwen was engaged in trade or commerce. *Id*. at * 11. The TAC devotes an entire Count, with incorporated Paragraphs, to Ocwen's business use and maintenance of REALServicing as its system of record, and describes, at length, the deficiencies of REALServicing and how these acts constitute trade or commerce. *See, e.g.*, TAC ¶ 107 ("The business decision to use REALServicing resulted in direct provision of services to borrowers, including but not limited to the communication and collection of inaccurate payments, that does not simply flow from a lender's pursuit of legal remedies"); *see also* TAC ¶¶ 108 - 148. Reading the TAC in the light most favorable to Plaintiffs, Count V should survive.

wherever situated." Fla. Stat. § 501.203(8) (emphasis added). Under FDUTPA, the term "thing of value" includes "*any moneys*, donation, membership, credential, certificate, prize, award, *benefit*, license, interest, professional opportunity, or chance of winning." Fla. Stat. § 501.203(9) (emphasis added). Additionally, FDUTPA clearly states that "the provisions of [FDUTPA] shall be construed liberally . . . [t]o protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices . . . ." Fla. Stat. § 501.202. FDUTPA should be construed liberally: "[b]ecause the FDUTPA is a consumer and business protection statute that is remedial in nature, this Court is inclined to align with the courts that construe the FDUTPA liberally in favor of consumers." *U.S. Bank N.A. v. Capparelli,* No. 13-cv-80323, 2014 WL 2807648, * 4 (S.D. Fla. June 20, 2014) (Marra, J.) (citing *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005)). Count V is actionable under FDUTPA because a) mortgage servicing activities are narrowly defined; b) Ocwen's alleged actions are appurtenant to mortgage servicing activities; and 3) the case law excluding mortgage servicing activities from trade or commerce does not apply.

### A. Mortgage servicing activities are narrowly defined

Ocwen cites various cases to demonstrate the types of activities that fall within the definition of mortgage servicing or debt collection, and therefore outside of trade or commerce. Motion at 8-9 (citing *Clark v. HSBC Bank USA, N.A*., 664 F. App'x 810, 813 (11th Cir. 2016) (declining to hold owner of security deed, who was not the servicer, responsible under Regulation X of RESPA, and including receipt and processing of payments, informing borrowers of defaults, and considering loan modification application as mortgage servicing activities); *Hudgins*, 192 F. Supp. 3d at 1349 (defining servicing as receipt of periodic payments pursuant to the terms of the loan, the provision of information related to the receipt of periodic payments or amounts of such payments, and the making of payments as required pursuant to the terms of the loan); *Cornette v.*

*I.C. System, Inc*., 180 F. Supp. 3d 1362, 1374 (S.D. Fla. 2017) (denying summary judgment for medical patient challenging collection charge and citing cases noting that an attempt to collect a debt by exercising one's legal remedies does not constitute trade or commerce);*Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d. 1319, 1322 (S.D. Fla. 2012) (finding that debt collection phone calls did not give rise to FDUTPA claims); *Economakis v. Butler & Hosch, P.A.*, Case No. 13-832, 2014 WL 820623, at * 3 (M.D. Fla. Mar. 3, 2014) (dismissing FDUTPA claim predicated on a reinstatement letter sent to enforce legal rights)). None of these cases support dismissal of Count V.

The Attorney General has alleged that Ocwen placed REALServicing into the stream of commerce, which resulted in the delivery of inaccurate information to consumer borrowers, upon which borrowers depended on to their detriment. While these actions may have resulted in bad servicing conduct, such bad servicing conduct is not challenged through Count V. Ocwen misleads the Court by contending that Count V of the TAC is predicated on "classic loan collection activity, which includes payment processing and communicating amounts due to borrowers through billing." Motion at 7-8. In Count V, the Attorney General relies on the following *effects* of Ocwen's utilization of REALServicing – even when Ocwen knew that the system was not capable of generating accurate information: inaccurate loan terms, inaccurate interest rates, improper late fees, improper data, improper information regarding loan modification and loss mitigation, errors in calculating escrow amounts, inaccurate insurance payment amounts, inaccurate payoff quotes, inaccurate reinstatement amounts, payment processing errors, and improper information in periodic and billing statements. While Ocwen's servicing deficiencies support the Attorney General's claims brought under RESPA and the Homeowner Protection Act brought in Counts I-IV of the TAC, Count V does not seek to hold Ocwen liable for servicing errors under FDUTPA. Rather, Count V attempts to hold Ocwen liable for knowingly maintaining and relying on

REALServicing to its own benefit and to the detriment of consumers, subjecting borrower consumers to a platform riddled with widespread inaccuracies and resulting in inaccurate payments, increased costs and miscommunications to borrowers. The allegations in Count V demonstrate actions that go farther than the simple collection of debts. Ocwen did more; it put a system of record into the stream of commerce that would not have negatively affected consumers but for Ocwen's actions.

Count V does not seek liability for mortgage servicing activities as those activities are defined under RESPA and interpreted under case law. Because the Attorney General has alleged activity beyond mere mortgage servicing activities, the Motion should be dismissed.

**B. Ocwen is engaged in conduct "appurtenant" to mortgage servicing**

As this Court noted, courts have held that a putative mortgage servicer is engaged in "trade or commerce" to the extent it offers or provides services or products that are beyond the scope of mere debt collection or the pursuit of legal or contractual remedies. *See, e.g.*, Order at 30. Ocwen's Motion miscasts Count V as alleging servicing activities as the basis for violating FDUTPA. Ocwen ignores that the activity alleged in Count V is *appurtenant* to mortgage servicing and does not represent mortgage servicing activities. *See Alhassid v. Bank of Am.*, 60 F. Supp. 3d 1302, 1324 (S.D. Fla. 2014) (finding that while certain activities may be appurtenant to the pursuit of mortgage servicing rights activities, such "activities can be construed as the separate offer or *provision of services* within the meaning of FDUTPA.") (Emphasis added). This Court has previously demonstrated its unwillingness to categorically hold that a mortgage servicer has absolute immunity from liability pursuant to FDUTPA. *See Martorella*, 931 F. Supp. 2d at 1224. The conduct alleged by the Attorney General, which caused direct and actual harm to borrowers, is removed from narrow debt collection allegations and, therefore, is more akin to the actionable conduct analyzed by this Court in *Zaskey, Alhassid,* and *Martorella*. *See* Order at 33 (citing *Bank*

*of Am., N.A. v. Zaskey*, 2016 WL 2897410 (S.D. Fla. May 18, 2016) (denying motion to dismiss counterclaim for FDUTPA liability where mortgage servicer allegedly obtained lender-placed insurance in claimants' name); *Alhassid*, 60 F. Supp. 3d at 1324 (denying motion to dismiss and determining that charging property inspection fees were appurtenant to the pursuit of mortgage servicing rights but could be construed as a separate offer or provision of services within the meaning of FDUTPA); *Martorella*, 931 F. Supp. 2d at 1224 (denying motion to dismiss and finding that provision of insurance falls squarely within FDUTPA's definition of trade or commerce).

Ocwen's use, maintenance of, and delivery of information to consumers created by REALServicing, the conduct alleged in Count V, does not amount to the receipt or making of payments. Instead, Count V relies on factual allegations to state a cause of action under FDUTPA where Ocwen provided services and information to borrowers that caused consumers direct harm as a result of Ocwen's independent decision to use its own deficient system of record, with full knowledge of its shortcomings and failures. Count V specifically alleges, for example:

- In the course of providing services that directly impacted consumers, including affecting the amount of money consumers paid in connection with their mortgage loans, the Ocwen Defendants made the business decision to use and maintain use of REALServicing as their system of record. TAC ¶ 228;
- The Ocwen Defendants' reliance on REALServicing, and its failure to implement an adequate framework to address known deficiencies in REALServicing resulted in miscalculation of payments due by borrowers and miscommunications about terms and payments due by borrowers, including errors related to the terms of the loans including interest rates, balloon payments, whether a loan had an adjustable rate, and maturity dates as set forth in Paragraphs 110, 117-118, and 137-143, for example… TAC ¶ 229;
- Ocwen's business decision to rely on REALServicing and failure to fix its known deficiencies while simultaneously growing its portfolio has caused or is likely to cause substantial injury to consumers, such as miscalculation of charges due, collection and billing of inaccurate and incorrect amounts, imposition of inappropriate fees and charges, inaccurate negative credit reporting, and other consequences. TAC ¶ 230;
- Ocwen's business decision to rely on REALServicing and failure to fix its known deficiencies while simultaneously growing its portfolio has caused or is likely to

> cause miscommunications to borrowers, including misrepresenting to borrowers outstanding loan balances, monthly payments due, escrow amounts due, loan reinstatement amounts, and insurance amounts due... TAC ¶ 231; and

Further, regulators reported widespread conflicts of interest between Ocwen and Altisource (the affiliated vendor with which Ocwen contracted for REALServicing). TAC ¶ 38 (incorporated into Count V by ¶ 225). Widespread issues with REALServicing created inaccurate information, which was delivered to and relied upon by borrowers. Information generated by REALServicing's deficiencies and Ocwen's delivery of mis-information created by REALServicing is appurtenant to mortgage servicing, but does not consist of mere mortgage servicing; therefore, such activities fall within trade or commerce.

### C. Ocwen misconstrues the mortgage servicer exclusion from the "trade or commerce" requirement of FDUTPA

Ocwen relies on cases standing for the proposition that actions taken to recover amounts owed on a mortgage or loan in default, *i.e*., debt collection, involve enforcement of legal or contractual rights and therefore fall outside of trade or commerce under FDUTPA. Motion at 7, n. 7 (citing *Williams*, 890 F. Supp. 2d. at 1321 (excluding debt collection calls from trade or commerce); *Genao v. CitiMortgage*, *Inc*., Case No. 16-23111, 2017 WL 10775439, at * 4-5 (S.D. Fla. Feb. 10, 2017) (in a *pro se* action brought by consumers, excluding from trade or commerce debt collection activities in the course of a foreclosure lawsuit); *Benjamin*, 2013 WL 1891284, at * 5 (reviewing allegations related to communications regarding ownership of the note and holding that servicer obtaining interest in mortgage note and proceeding to enforce mortgage terms is not trade or commerce); *State of Fla., Office of Att'y Gen. v. Shapiro & Fishman, LLP*, 59 So. 3d 353, 355–56 (Fla. 4th DCA 2011) (upholding quash of investigative subpoena on basis that law firm's processing of foreclosure cases is merely the pursuit of legal or contractual remedies not in trade or commerce); *Mesa v. Boston Portfolio Advisors, Inc.*, Case No. 15-21087, 2015 WL 4380759, at * 4 (S.D. Fla. July 16, 2015) (reviewing allegation that borrower did not receive information

about the alleged debt and excepting student loan debt collection activities from trade or commerce); *Nardolilli v. Bank of Am. Corp.*, Case No. 12-81312, 2013 WL 12154541, at * 3-4 (S.D. Fla. Dec. 5, 2013) (excluding from trade or commerce conclusory claims against the Mortgage Electronic Registration Systems, Inc. as an alleged "mortgage servicer", citing rulings in *Benjamin* and *Trent*)).[6] Ocwen attempts to ascribe a broad holding to these cases, which would absolve any servicer from liability under FDUTPA excepting two narrow circumstances. However, the case law does not provide carve outs for when servicers may be liable under FDUTPA. A careful review of the case law demonstrates that servicing activities – such as the limited activities of collecting and distributing payments – represent the exercise of contractual or legal remedies, often derived from a third party.

In support of the statement that mortgage servicing activity falls outside of trade or commerce, many cases rely on *Benjamin,* where this Court considered whether the servicer's alleged failure to acknowledge, respond or provide a complete and adequate response to a borrower – required in the course of servicing a mortgage loan – violated FDUPTA. *Benjamin*, 2013 WL 1891284 at * 1. The borrowers in *Benjamin* claimed that the servicer's debt collection activities constituted unfair or deceptive acts under FDUTPA. *Id*. at * 4. The Court went on to note that a loan servicer does not advertise, solicit, provide, offer or distribute anything directly to the plaintiff because the servicer "merely obtained an interest in the mortgage note from a third party lender and proceeded to take efforts to enforce the terms of that mortgage." *Id*. at * 4-5 (citing *Trent*, 618 F. Supp. 2d at 1365); *see also Economakis*, 2014 WL 820623 at * 3 (citing cases that stand for the proposition that merely exercising contractual or legal remedies is not trade or commerce).

---

[6] *Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 n.12 (M.D. Fla. 2007) (holding foreclosure actions and pre-suit communications are not trade or commerce)). Though Ocwen does not cite *Trent* in its Motion, *Trent* is relied upon heavily by *Benjamin* and its progeny.

The allegations in Count V depart from those made by the claimants in *Benjamin*, *Trent* and *Economakis* in two crucial ways. First, Ocwen introduced an additional service that goes beyond the mere collection of debt when it subjected borrowers to its flawed, proprietary system of record, REALServicing. Deficiencies in REALServicing created and caused inaccurate information, which was ultimately delivered to borrowers. *See*, *e.g.*, TAC ¶ 117 (noting the need for over 870,000 corrections in REALServicing between September 2014 and April 2016, including inaccuracies in loan maturity dates and interest rates). Knowing of the widespread failures in REALServicing, including those set forth in Paragraphs 107 – 159 of the TAC, Ocwen maintained REALServicing in the stream of commerce, which benefitted Ocwen and its executives at the expense of consumers who reasonably relied on representations made by Ocwen based on information derived from REALServicing. Second, by introducing REALServicing into its business practice, Ocwen went beyond "merely obtain[ing] an interest in a mortgage note from a third party lender." *See Benjamin*, 2013 WL 1891284 at * 4.[7] Ocwen was motivated by profit to use its proprietary system of record, which was ineffective and rife with inaccuracies, to the borrowers' detriment. Accordingly, Ocwen cannot rely on cases such as *Benjamin* and its progeny to shield itself from liability for using REALServicing in commerce.

Ocwen's utilization and maintenance of REALServicing, and its delivery of misinformation to consumers derived from REALServicing, do not constitute mere servicing

[7] In *Benjamin*, the Court also noted that Florida's Supreme Court states that "deception occurs if there is a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id*. at * 4 (citing *Zlotnick v. Premier Sales Group, Inc*., 480 F.3d 1281, 1284 (11th Cir.2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc*., 842 So.2d 773, 777 (Fla.2003)); *see also State, Office of Att'y Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc*., 869 So.2d 592 (Fla. 1st DCA 2004). The Attorney General has asserted a cognizable claim for deception. The Attorney General has also stated a case for unfairness through its allegations that Ocwen provided, offered, and/or distributed a service to consumers, and consumers reasonably relied on what was being provided to their detriment.

activities. Accordingly, the Attorney General has asserted an actionable FDUTPA claim and Count V should be permitted to proceed.

## CONCLUSION

For each an all of the above-state reasons, the Attorney General respectfully requests that this Court deny Defendants' Partial Motion to Dismiss Plaintiffs' Third Amended Complaint as to Count V.

Dated: January 3, 2020

Respectfully Submitted,

Office of the Attorney General
The State of Florida
Department of Legal Affairs
Ashley Moody
Attorney General

**By: *<u>/s/ Sasha Funk Granai</u>***

Sasha Funk Granai
Assistant Chief-Assistant Attorney General
Fla. Bar No.: 96648
Email: *Sasha.Granai@myfloridalegal.com*

Victoria Butler
Director, Consumer Protection Division
Fla. Bar No.: 861250
Email: *Victoria.Butler@myfloridalegal.com*

Jennifer Hayes Pinder
Senior Assistant Attorney General
Fla. Bar No.: 17325
Email: *Jennifer.Pinder@myfloridalegal.com*

3507 East Frontage Road, Suite 325
Tampa, FL 33607
Phone: 813-287-7950
Fax: 813-281-5515

Office of Financial Regulations
The State of Florida
Division of Consumer Finance

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2020, a true and correct copy of the foregoing was served via ECF on all counsel or parties of record listed below:

Thomas M. Hefferon, Esq.
Goodwin Procter LLP
Email: thefferon@goodwinlaw.com

Sabrina M. Rose-Smith, Esq.
Goodwin Procter LLP
Email: srosesmith@goodwinlaw.com

Catalina E Azuero, Esq.
Goodwin Procter LLP
Email: CAzuero@goodwinlaw.com

Laura S. Craven, Esq.
Goodwin Procter LLP
Email: LCraven@goodwinlaw.com

Amanda B. Protess, Esq.
Goodwin Procter LLP
Email: aprotess@goodwinlaw.com

Laura Stoll, Esq.
Goodwin Procter LLP
Email: lstoll@goodwinlaw.com

Mathew S. Sheldon, Esq.
Goodwin Procter LLP
Email: msheldon@goodwinlaw.com

Matthew L. Riffee
Goodwin Procter LLP
MRiffee@goodwinlaw.com

Tierney E. Smith
Goodwin Procter LLP
Email: TierneySmith@goodwinlaw.com

W. Kyle Tayman
Goodwin Procter, LLP
Email: KTayman@goodwinlaw.com

Andrew Stuart Wein, Esq.
Greenberg Traurig, PA
Email: weina@gtlaw.com

Bridget Ann Berry, Esq.
Greenberg Traurig, P.A.
Email: BerryB@gtlaw.com, darschs@gtlaw.com, thomsonj@gtlaw.com, whitfieldd@gtlaw.com, and WPBLitDock@GTLAW.com

Matthew P. Previn, Esq.
Buckley LLP
Email: mprevin@buckleysandler.com

Attorneys for Defendants Ocwen Financial, Corporation, Ocwen Mortgage Servicing, Inc. Loan Servicing, LLC, and PHH Mortgage Corporation.

**By: *<u>/s/ Sasha Funk Granai</u>***
Sasha Funk Granai
Assistant Chief-Assistant Attorney General