**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:17-CV-80495-MARRA-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU,
Plaintiff,

v.

OCWEN FINANCIAL CORPORATION, OCWEN MORTGAGE SERVICING, INC., and OCWEN LOAN SERVICING, LLC,

Defendants.

Case No. 9:17-CIV-80496-MARRA/MATTHEWMAN

OFFICE OF THE ATTORNEY GENERAL, THE STATE OF FLORIDA, Department of Legal Affairs,

and

OFFICE OF FINANCIAL REGULATION, THE STATE OF FLORIDA, Division of Consumer Finance,

Plaintiffs,

v.

OCWEN FINANCIAL CORPORATION, *et al*.

Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

## INTRODUCTION

Defendants, Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc., Ocwen Loan Servicing, LLC, and PHH Mortgage Corporation (collectively, "Ocwen" or "Defendants") hereby submit their Reply in Support of Their Partial Motion to Dismiss Plaintiffs' Third Amended Complaint ("TAC") (DE 506). *See* DE 562 ("Motion" or "Mot."); DE 574 ("Opposition" or "Opp.").

Nothing in Plaintiffs' Opposition changes the fact that the TAC's Count V claim is merely a transparent attempt to circumvent this Court's prior dismissal order by reasserting allegations that were already dismissed *with prejudice*. *See* DE 477 ("Order"), at 34. In its Motion, Ocwen showed that Plaintiff the Office of the Attorney General ("OAG" or "Plaintiff")[1] failed to state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") because Count V is based on the same loan servicing allegations that this Court and numerous other courts have already held are not "trade or commerce."[2] Plaintiffs' Opposition establishes nothing to the contrary. Plaintiff makes no meaningful attempt to rebut Ocwen's showing that Count V reasserts the same allegations that this Court dismissed with prejudice in the Second Amended Complaint ("SAC"). Further, OAG fails to conjure any authority for its argument that, by artfully reframing its prior loan servicing allegations, OAG can bring its Count V allegations within the scope of

[1] While the TAC is filed by both OAG and the Office of Financial Regulation, the State of Florida, Division of Consumer Finance ("OFR"), Count V is only asserted by OAG.

[2] FDUTPA prohibits "unfair or deceptive acts or practices *in the conduct of any trade or commerce*," where "trade or commerce" means "the advertising, soliciting, providing, offering, or distributing . . . of any good or service, . . . or thing of value." Fla. Stat. §§ 501.203(8), 501.204(1) (emphasis added). To bring a FDUTPA claim, OAG must first meet the statutory "trade or commerce" requirement. As Ocwen's Motion showed, OAG has not met this statutory requirement because the loan servicing conduct alleged in Count V does not involve the "advertising, soliciting, providing, offering, or distributing . . . of any good or service . . .," and instead is merely a function of borrowers' existing mortgage loan agreements.

"trade or commerce." This absence of authority is unsurprising because OAG's interpretation would render the "trade or commerce" requirement of FDUTPA meaningless by allowing every plaintiff to simply allege a series of loan servicing failures and claim they were caused by inadequate loan servicing processes or platforms. No matter how OAG tries to characterize the TAC's allegations, Count V is still based on ordinary loan servicing and debt collection activity, does not involve providing goods or services unauthorized by borrowers' mortgage agreements, and thus is not "trade or commerce" within the meaning of FDUTPA. Accordingly, Count V of the TAC should be dismissed with prejudice.

## ARGUMENT

### I. AS OCWEN'S MOTION SHOWED, COUNT V IMPROPERLY REASSERTS ALLEGATIONS DISMISSED WITH PREJUDICE.

Ocwen's Motion demonstrated that Count V realleges the same conduct that was already dismissed *with prejudice* in the SAC.[3] Mot. at 4-6; Appendix A. The Opposition does not (and cannot) change this fatal defect in OAG's claim. Instead, OAG swiftly glosses over the direct comparisons Ocwen makes between the dismissed allegations of the SAC and the substantively identical TAC allegations, and conclusorily asserts that Count V is not based on debt collection activity. Opp. at 5. The Opposition's baseless conclusion is demonstrably false and inconsistent with this Court's prior Order. Count V of the TAC recites swaths of allegations from the SAC that were dismissed with prejudice because they described conduct "limited to debt collection and the invoicing or application of payments."[4] Order at 34 (dismissing with prejudice Count VI of the

---

[3] For example, Count V of the TAC alleges that Ocwen miscalculated payments due by borrowers and miscommunicated about terms and monthly payments due by borrowers, including interest rates, balloon payments, adjustable rates, maturity dates, payoff amounts, reinstatement amounts, and escrow accounts. *See* TAC ¶ 229.

[4] *E.g., compare* SAC ¶ 213 (Ocwen "failed to accurately detail on periodic statements the current amounts due") *with* TAC ¶¶ 229-230 (Ocwen made "miscommunications about monthly payments

SAC); *see also* Appendix A. OAG's conclusory and self-serving categorization of its Count V claim as "based upon neither" debt collection activity of mortgage loans or loan modification agreements (Opp. at 5) does nothing to change that the allegations in Count V are, in fact, the same allegations about Ocwen's failure to provide borrowers accurate and complete loan information that this Court already dismissed with prejudice. Nor does OAG's statement that "[t]he Order does not state that any claims regarding Ocwen's proprietary system of record are dismissed with prejudice" have any import. Opp. at 5. The Court held that "all of the conduct alleged in Count VI . . . falls outside of the meaning of 'trade or commerce,' as there was no 'advertising, soliciting, providing, offering, or distributing . . . of any good or service . . .'" and dismissed that claim, in its entirety, with prejudice. Order at 34 (citation omitted). Accordingly, as Ocwen's Motion showed, where the Court already dismissed allegations about Ocwen's failure to service loans using accurate loan information *with prejudice*, OAG's reassertion of those allegations is improper.[5] Mot. at 6; *see also Greer v. Ivey*, 2016 U.S. Dist. LEXIS 195773, at *6 (M.D. Fla. July 18, 2016) (finding that "Plaintiffs [have] endeavor[ed] to directly defy the [court's] Order" where they "purport[ed] to reassert allegations . . . previously dismissed with prejudice."). For this reason, Count V of the TAC must be dismissed.

due" resulting in the "billing of inaccurate and incorrect amounts"); *compare* SAC ¶ 201 ("misrepresenting to borrowers outstanding loan balances") *with* TAC ¶ 231 ("misrepresenting to borrowers outstanding loan balances").

[5] Recognizing that Plaintiffs relied on "shotgun pleading" by "incorporat[ing] all 146 paragraphs of [the SAC's] allegations" into each count of the SAC, this Court's Order dismissed with prejudice a FDUTPA claim based on "debt collection and the invoicing and application of payments," which is the same conduct the Court did not allow to proceed in Count V of the SAC. Order at 14, 33-34. Accordingly, the Court's prior dismissal order barred Plaintiffs from reasserting a FDUTPA claim based on any of the debt collection, invoicing, or payment application conduct alleged in Counts V and VI of the SAC.

## II. PLAINTIFFS' OPPOSITION FAILS TO ESTABLISH THAT COUNT V ALLEGES CONDUCT THAT IS "TRADE OR COMMERCE."

### A. Count V Alleges Loan Servicing Conduct That Is Not "Trade or Commerce" Within The Meaning of FDUTPA.

OAG's Opposition cannot change the outcome of Ocwen's Motion because Count V merely challenges loan servicing conduct that is not "trade or commerce" under FDUTPA. Ocwen's Motion demonstrated that, although OAG attempts to reframe its previously dismissed loan servicing allegations as being caused by Ocwen's use of REALServicing, OAG's Count V FDUTPA claim is still predicated on ordinary loan collection activity, including payment processing and communicating amounts due to borrowers. Mot. at 6-7; *see also, e.g., Clark v. HSBC Bank USA, Nat'l Ass'n*, 664 F. App'x 810, 813 (11th Cir. 2016) (unpublished opinion) (mortgage servicing includes the processing of payments and "informing [borrowers] of [their mortgage] default[s]"); *Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1349 (S.D. Fla. 2016) (loan servicing activity includes use of "information about the receipt of periodic payments or the amounts of such payments."). This ordinary loan collection activity does not give rise to a FDUTPA claim because it does not involve the "advertising, soliciting, providing, offering, or distributing . . . of any good or service . . .," and instead is merely a function of borrowers' existing mortgage loan agreements. Fla. Stat. § 501.203(8). OAG argues that "the activity alleged in Count V is *appurtenant* to mortgage servicing and does not represent mortgage servicing activities."[6] Opp. at 9 (emphasis in original). This is unpersuasive for several reasons.

---

[6] Separately, OAG argues that any actions "beyond 'merely obtain[ing] an interest in a mortgage note from a third party lender'" are not loan servicing activities. Opp. at 13. Not only is OAG's argument thus inherently inconsistent, it is also nonsensical. Moreover, federal courts, including this one, have consistently held that actions other than simply acquiring an interest in a mortgage note constitute loan servicing activities that are outside of "trade or commerce" within the meaning of FDUTPA. *See, e.g., Bank of Am., N.A. v. Zaskey*, 2016 WL 2897410, at *9, 11 (S.D. Fla. May 18, 2016) (holding that plaintiff's claims that Green Tree "acknowledge[ed] receipt of a non-existent loan modification application, acknowledge[ed] approval of a non-exist short sale offer

First, mortgage servicing activities for purposes of FDUTPA are not, as OAG suggests, limited solely to the servicer's direct and literal attempts to collect a debt on a mortgage. This Court has already held that the allegations of using incorrect data to service loans, failing to make escrow disbursements for insurance, failing to prepare accurate or complete periodic statements, and failing to treat funds as periodic payments, for example, are all merely loan servicing activities that fall outside of the meaning of "trade or commerce." Order at 33-34; SAC ¶¶ 200, 212-218. Likewise, the TAC's Count V allegations about Ocwen's "miscalculation of payments due by borrowers" and "miscommunications about terms and payments due by borrowers" (TAC ¶ 229) equally describe loan servicing activity. *See* Mot. at 7-9; *see also Economakis v. Butler & Hosch, P.A.*, 2014 WL 820623, at *2 (M.D. Fla. Mar. 3, 2014) (letters to borrowers regarding their debts that fraudulently miscommunicated that certain amounts were due were not "trade or commerce"). The fact that Count V alleges it was Ocwen's "business decision to rely on REALServicing" to service loans that caused miscommunications and injury to borrowers (TAC ¶¶ 229-231) does not change that Count V describes loan servicing activity that is not "trade or commerce" because no goods or services are offered to borrowers—the loan is simply serviced as a result of the standing mortgage agreement. Indeed, OAG's previously dismissed FDUTPA claim already alleged (at length) that Ocwen's improper servicing conduct was caused by its use of REALServicing, and that claim was rejected by the Court. *See* Mot. at 9 n.11 (detailing the extensive SAC paragraphs alleging purported REALServicing deficiencies).

The Opposition's reliance on a single case, *Alhassid v. Bank of Am.*, 60 F. Supp. 3d 1302 (S.D. Fla. 2014), to argue that the debt collection activity asserted in the TAC is "appurtenant" to

---

on the property no longer owned by the Zaskeys, and threaten[ed] to file an unwarranted foreclosure action against the Zaskeys," amounted to "debt collection activity not actionable under FDUTPA."); *see also* Mot. at 7-9.

loan servicing is misplaced. *See* Opp. at 9-10. In *Alhassid*, plaintiffs claimed that Nationstar improperly billed them for "*specific services*," including property preservation services, property inspections, and appraisals, which were offered separately from those authorized by each plaintiff's mortgage agreement, and which "Nationstar never performed." *Alhassid,* 60 F. Supp. 3d at 1324 (emphasis in original). The court found that these allegations described activities "appurtenant to the pursuit of Nationstar's mortgage servicing rights" because they reflected "the separate offer or provision of services within the meaning of FDUTPA," and were not part of the "loan collection activities" Nationstar had authority to perform under the mortgage agreement. *Id.* at 1323-1324. The activity alleged in *Alhassid* is not analogous to the activity alleged in Count V because Ocwen's loan collection activities provided under customers' existing mortgage agreements are *not separate* products or services that Ocwen advertises, offers, solicits, provides, or distributes to borrowers.[7] Moreover, Ocwen's use of a loan servicing system of record to service loans is both necessary and inseparable from its debt collection activities. *See, e.g.,* TAC ¶ 27 ("Servicers utilize software, known as a system of record, to input and maintain loan and borrower information"); TAC ¶ 43 ("Servicers use systems of record to service loans and automate servicing functions."). *See also* Comptroller's Handbook: Residential Real Estate Lending, OCC 25 (June 2015), available at http://www.lexissecuritiesmosaic.com/gateway/OCC/Bulletin/comptrollers-handbook_pub-ch-a-rre.pdf ("Once a mortgage loan has been closed, funded, and settled, its

[7] Even if the conduct alleged in *Alhassid* was akin to the conduct alleged in Count V (and it is not), OAG's statement that "[i]nformation generated by REALServicing's deficiencies and Ocwen's delivery of mis-information created by REALServicing is appurtenant to mortgage servicing, but does not consist of mere mortgage servicing," would still have no merit. Opp. at 11. This Court already rejected OAG's putative FDUTPA claim based on allegations that Ocwen communicated incorrect information (SAC ¶ 201) created by REALServicing (SAC ¶ 202), holding that the claim was "based upon debt collection activity of mortgage loans or loan modification agreements" which "is not 'trade or commerce.'" Order at 33.

information is placed in a loan servicing system to facilitate future supervision of the loan, including the collection and recording of the customer's payments."). Further, OAG cites no authority – because there is none – for the proposition that using a particular loan servicing system, whether proprietary or otherwise, for performing loan servicing functions is somehow *not* loan servicing. As Ocwen's Motion showed, because "loan collection activities, even if . . . improper" do not give rise to a FDUTPA claim, OAG does not bring its Count V allegations within the scope of "trade or commerce" merely by alleging that Ocwen chose to service loans with a loan servicing system that was flawed. Mot. at 8 (citing Order at 32). Ocwen's use of a loan servicing system is not conduct that can be separated from its debt collection activities, and so Ocwen's use of REALServicing is not "trade or commerce."

Importantly, Ocwen does not, as OAG argues, ask this Court to "categorically hold" that a mortgage servicer has absolute immunity from liability pursuant to FDUTPA, "excepting two narrow circumstances." Opp. at 9, 12. Instead, Ocwen asks the Court to look at the allegations of *this complaint* and find – consistent with its own prior holding, the extensive body of caselaw, and the statutory language of FDUTPA – that allegations about generating and providing borrowers with inaccurate and incomplete information as part of servicing loans cannot form the basis of a FDUTPA claim. On the contrary, if the Court were to accept OAG's characterization, it would lead to absurd results. Every plaintiff could simply allege a series of loan servicing failures and claim they were caused by inadequate loan servicing processes or platforms. Such an interpretation would render the "trade or commerce" requirement of FDUTPA meaningless.

### B. The Opposition's Varied Classifications of its Count V Claim Do Not Change That the Count V Allegations Are Not "Trade or Commerce."

OAG's Opposition disingenuously asserts that "bad servicing conduct is not challenged through Count V."[8] Opp. at 8. Instead, OAG argues, Count V is only challenging Ocwen's: "delivery of services to consumers based upon information created and processed through [REALServicing]" (Opp. at 4), "decision to create and use a substandard system of record" (Opp. at 4-5), "plac[ement] [of] REALServicing into the stream of commerce" (Opp. at 8), or "use, maintenance of, and delivery of information to consumers created by REALServicing" (Opp. at 10), depending on the place in the Opposition.[9] OAG's classifications of its Count V claim are further convoluted by Plaintiffs' Renewed Motion for Consolidation for Pre-Trial and Trial (DE 570), in which Plaintiffs characterize Count V as alleging that "Defendants miscalculated and misinformed borrowers about payments due, principal balances, loan terms, interest rates, maturity dates, payoff amounts, reinstatement amounts, as well as other errors related to escrow accounts and insurance amounts due, all of which resulted in harm to borrowers including overcharges, undercharges, and negative credit reporting, among other impacts"—ordinary loan servicing activity and without even mentioning REALServicing. DE 570, at 3 n.12. This Court should not

---

[8] OAG's classification of its Count V claim asks the Court to ignore that Plaintiffs' *entire lawsuit* is concerned with loan servicing misconduct. *See* TAC ¶ 1 ("This is a civil action filed . . . against the Ocwen Defendants for misconduct occurring since February 27, 2014, relating to their servicing of single-family residential mortgages.").

[9] Despite OAG's attempts to convince the Court that its Count V allegations are not about loan servicing, OAG's own classifications of the challenged conduct cannot mask the fact that they are loan servicing activity that cannot support a FDUTPA claim. *E.g., compare* Ocwen's "delivery of information to consumers" (Opp. at 10) *with Mesa v. Boston Portfolio Advisors, Inc.*, 2015 WL 4380759, at *4 (S.D. Fla. July 16, 2015) (failure to provide borrower with information about alleged debt does not provide basis for a FDUTPA claim); *compare* Ocwen's "delivery of services to consumers" including its "collection of inaccurate payments" (Opp. at 4, 6 n.5) *with Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362, 1374 (S.D. Fla. 2017) (attempting to "collect [loan] amounts exceeding what was owed" is not trade or commerce under FDUTPA).

give weight to OAG's inconsistent and facially inaccurate characterizations of its challenge in Count V because they only underscore that OAG is attempting to artfully reframe the same loan servicing allegations that this Court has already held are not "trade or commerce." *See Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1329 (S.D. Fla. Dec. 17, 2014) (refusing to rely on "plaintiff's characterizations" and "[a]rtful pleading") (citing *Roberts v. United States*, 242 F.3d 1065, 1068 (Fed. Cir. 2001) ("The 'nature of a pleading' is determined by its 'substance, not its label.'")). Moreover, any distinctions OAG attempts to make through its varied classifications of its Count V claim are illusory, because there is no authority for the idea that, for example, a "decision to create" a loan servicing platform to service loans (Opp. at 4) somehow transforms all of the resulting loan servicing activity into "trade or commerce."[10] As Ocwen showed in its Motion, however OAG attempts to reframe its challenge, the claims in Count V fall squarely outside of the scope of "trade or commerce" because they still implicate mere mortgage loan servicing and collection. Mot. at 9-10.

## CONCLUSION

For the reasons set forth herein and in their Motion, Defendants respectfully request that the Court dismiss Count V of the Third Amended Complaint with prejudice.

Dated: January 24, 2020

Respectfully submitted,

*/s/ Andrew S. Wein*
Andrew Stuart Wein
Bridget Ann Berry
**GREENBERG TRAURIG, P.A.**

---

[10] Nor is the Opposition's argument that Count V is a challenge to Ocwen's "decision to create" REALServicing (Opp. at 4) and place REALServicing "into the stream of commerce" (Opp. at 8) supported by the TAC. Indeed, no allegations in the TAC (let alone Count V) state that consumers were injured by Ocwen's invention or sale of the REALServicing platform. Instead, the TAC and Count V allege that borrowers were injured by Ocwen's servicing of loans. *See, e.g.*, TAC ¶¶ 138-141, 153, 163.

777 South Flagler Drive, Suite 300 East
West Palm Beach, FL 33401
Tel.: 561.650.7900
weina@gtlaw.com
berryb@gtlaw.com

Catalina E. Azuero (Fla. Bar No.: 821411)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
cazuero@goodwinlaw.com

Laura A. Stoll (*pro hac vice*)
**GOODWIN PROCTER LLP**
601 S. Figueroa Street
Los Angeles, CA 90017
Tel.: 213.426.2500
lstoll@goodwinlaw.com

Thomas M. Hefferon (*pro hac vice*)
Sabrina M. Rose-Smith (*pro hac vice*)
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
Tel.: 202.346.4000
thefferon@goodwinlaw.com
srosesmith@goodwinlaw.com

*Attorneys for Defendants Ocwen Financial Corp., Ocwen Mortgage Servicing, Inc., Ocwen Loan Servicing, LLC, and PHH Mortgage Corporation*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on January 24, 2020 via ECF on all counsel or parties of record listed below:

Jennifer Hayes Pinder
Email: Jennifer.Pinder@myfloridalegal.com

Sasha Funk Granai
Email: Sasha.Granai@myfloridalegal.com

Victoria Butler
Email: Victoria.Butler@myfloridalegal.com

Scott R. Fransen
Email: Scott.Fransen@flofr.com

Miriam S. Wilkinson
Email: Miriam.Wilkinson@flofr.com

Anthony Cammarata
Email: Anthony.Cammarata@flofr.com

Jean Healey
Email: jean.healey@cfpb.gov

Atur Desai
E-mail: atur.desai@cfpb.gov

Tianna Baez
E-mail: tianna.baez@cfpb.gov

Amanda Roberson
E-mail: amanda.roberson@cfpb.gov

Stephanie Brenowitz
E-mail: stephanie.brenowitz@cfpb.gov

Erin Mary Kelly
E-mail: erin.kelly@cfpb.gov

James Savage
E-mail: james.savage@cfpb.gov

Greg Nodler

E-mail: greg.nodler@cfpb.gov

Michael Posner
E-mail: michael.posner@cfpb.gov

Jack Douglas Wilson
E-mail: doug.wilson@cfpb.gov

Shirley T. Chiu
E-mail: shirley.chiu@cfpb.gov

Blaine Winship
E-mail: blaine.winship@myfloridalegal.com

Joaquin Alvarez
E-Mail: Joaquin.alvarez@flofr.com

/s/ *Andrew S. Wein*
Andrew S. Wein