UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-CV-80495-MARRA-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU,

    Plaintiff,

v.

OCWEN FINANCIAL CORPORATION,
OCWEN MORTGAGE SERVICING, INC.,
OCWEN LOAN SERVICING, LLC; and
PHH MORTGAGE CORPORATION,

    Defendants.
_____/

Case No. 9:17-CV-80496-MARRA-MATTHEWMAN

OFFICE OF THE ATTORNEY GENERAL,
THE STATE OF FLORIDA,
Department of Legal Affairs,

and

OFFICE OF FINANCIAL REGULATION,
THE STATE OF FLORIDA,
Division of Consumer Finance,

    Plaintiffs,

v.

OCWEN FINANCIAL CORPORATION, *et al.*,

    Defendants.
_____/

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

    This Cause is before the Court upon Defendants' Motion to Dismiss Count V of Plaintiffs'

Third Amended Complaint ("TAC") [DE 562]. Plaintiffs Florida the Florida Attorney General

and the Florida Office of Financial Regulation filed a Response in Opposition [DE 574]. Defendants filed a Reply in Support [DE 582]. The Court has carefully considered the matter and is fully advised in the premises.

I. BACKGROUND

Plaintiffs, the Florida Attorney General and the Florida Office of Financial Regulation, ("Florida Plaintiffs")[1] filed a Third Amended Complaint after the Court's Order [DE 477] granted in part and denied in part Defendants' Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc., Ocwen Loan Servicing, LLC, and PHH Mortgage Corporation ("Ocwen" or "Defendants") Motion to Dismiss Second Amended Complaint.

In pertinent part, the Court's Order dismissed Count VI of the Florida Plaintiff's Second Amended Complaint ("SAC") with prejudice. [DE 477 at 31-34]. Count VI alleged violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") [17-cv-80496 DE 88 at ¶¶ 206-222]. Specifically, Count VI alleged that Defendants engaged in unfair trade practices by: a) failing to send accurate periodic statements with the current amount due; b) failing to explain how borrowers' future payments will be applied; c) failing to account to borrowers all account activity; d) retaining a partial payment in a suspense or unapplied funds account without disclosing the total amount of funds; e) failing to treat funds as a periodic payment; and f) failing to credit borrowers' full periodic payments as of the date of receipt. [*Id.* at ¶¶ 212-18].

The Order stated that the conduct alleged in the SAC's Count VI was limited to debt collection and the invoicing or application of payments, which fell outside of FDUTPA's meaning of "trade or commerce," as there was no "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property." [DE

---

[1] The Consumer Financial Protection Bureau is also a Plaintiff in the case. The Bureau's operative complaint is a separate filing from the Florida Plaintiffs' TAC. [DE 481].

477 at 34] (quoting Fla. Stat. § 501.203(8))]. The Court dismissed the count with prejudice because granting leave to amend on these debt collection allegations would be futile.

In Florida Plaintiffs' TAC, Count V, brought solely by the Office of the Attorney General ("OAG"), alleges that Defendants violated FDUTPA by relying on REALServicing as its system of record and for failing to address known deficiencies in REALServicing. The use of REALServicing "resulted in miscalculation of payments due by borrowers and miscommunications about terms and payments due by borrowers, including errors related to the terms of the loans including interest rates, balloon payments, whether a loan had an adjustable rate, and maturity dates . . . ." [DE 506 at ¶ 229]. Florida Plaintiffs allege "[t]hese miscalculations led to misinformation and miscommunications about monthly payments due from borrowers, payoff amounts and reinstatement amounts . . . as well as errors related to escrow accounts. . . ." [*Id.*].

Defendants filed the instant Motion to Dismiss Count V of the Florida Plaintiffs' TAC claiming that Count V makes the same allegations as did Count VI of the SAC, which the Court dismissed with prejudice. [DE 562 at 2]. Defendants argue Florida Plaintiffs have repackaged the same conduct and urge the Court to dismiss Count V's FDUTPA claim. [*Id.*].

II. LEGAL STANDARD

In reviewing a Motion to Dismiss, the Court is to "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

"Dismissal 'with prejudice' means 'in a way that finally disposes of a party's claim and bars *any* future action on that claim.'" *B&D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, No. 16-62364-CIV, 2017 WL 8751740, at *1 (S.D. Fla. Mar. 17, 2017) (citing *With Prejudice*, Black's Law Dictionary (10th ed. 2014)) (emphasis in original). "A dismissal with prejudice operates as a judgment on the merits unless the court specifies otherwise." *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1470 (11th Cir. 1986).

III. DISCUSSION

### A. Whether Count V reasserts claims this Court dismissed with prejudice

Defendants contend that Count V of the TAC essentially makes the same allegations from the SAC that this Court dismissed.

Florida Plaintiffs respond that Count V does not improperly replead dismissed claims, but rather is a refined argument about "how Ocwen's decisions to maintain, rely on, and deliver information created by REALServicing are activities that fall within trade or commerce." [DE 574 at 5].

However, Defendants highlight the overlap between Count V of the TAC and Count VI of the SAC. For example, Count VI of the SAC alleged:

> 212. In the course of servicing Federally Related Mortgage Loans, since February 27, 2014, the Ocwen Defendants have regularly **sent borrowers inaccurate periodic statements**.
>
> 213. In the course of servicing Federally Related Mortgage Loans, since February 27, 2014, the Ocwen Defendants have **failed to accurately detail on periodic statements** the current amounts due by borrowers.
>
> 214. In the course of servicing Federally Related Mortgage Loans, since February 27, 2014, the Ocwen Defendants have **failed to explain how borrowers' future payments will be applied**.
>
> 215. In the course of servicing Federally Related Mortgage Loans, since February 27, 2014, the Ocwen Defendants have **failed to account to borrowers all account activity since the prior periodic statement**.

4

[17-cv-80496 DE 88 at ¶¶ 212-15] (emphasis added).  Count V of the TAC similarly alleges:

> 229.  The Ocwen Defendants' reliance on REALServicing, and its **failure to implement an adequate framework to address known deficiencies** in REALServicing resulted in **miscalculation of payments due by borrowers** and **miscommunications about terms and payments due by borrowers**, including errors related to the terms of the loans including interest rates, balloon payments, whether a loan had an adjustable rate, and maturity dates as set forth in Paragraphs 110, 117-118, and 137-143, for example.  **These miscalculations led to misinformation and miscommunications about monthly payments due from borrowers, payoff amounts and reinstatement amounts** as set forth in paragraphs 110, 114, 137-138, 142-145, for example, as well as errors related to escrow accounts, as set forth in paragraphs 136-137, for example.

[DE 506 at 229] (emphasis added).

Defendants cite to *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319 (S.D. Fla. 2014), which dealt with a jurisdictional dispute.  The court there cautioned against "artful pleading" to avoid preemption and remarked "[t]he 'nature of a pleading' is determined by its 'substance, not its label.'"  *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1329 (S.D. Fla. 2014).  Florida Plaintiffs respond that *Helman* is inapplicable as it pertained to whether the case belonged in bankruptcy court, and there is no such jurisdictional question at play here.

Defendants also invoke *Korman v. Iglesias* where the Report and Recommendation rejected a plaintiff's attempt to "merely repackage[] her copyright infringement claim under a different name and a different statute, and that in doing so, failed to assert additional facts avoiding preemption by the Copyright Act."  *Korman v. Iglesias*, No. 18-21028-CV, 2018 WL 4410226, at *4 (S.D. Fla. June 28, 2018), *report and recommendation adopted*, No. 18-21028-CV, 2018 WL 4409973 (S.D. Fla. Aug. 7, 2018), *aff'd,* 778 F. App'x 680 (11th Cir. 2019), *cert. denied,* 140 S. Ct. 560, 205 L. Ed. 2d 358 (2019).  Plaintiffs argue reliance on *Korman* is misplaced as there is no preemption issue here.

The Court is unconvinced that Count V of the TAC is materially different from what Florida Plaintiffs alleged in Count VI of the SAC, but the Court does not find the cases cited by Defendants to be dispositive. The Court therefore will independently assess whether the conduct alleged in Count V is actionable under FDUTPA.

### B. Whether Ocwen's use of REALServicing is actionable under FDUTPA

#### 1. FDUTPA elements

"A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1323 (S.D. Fla. 2014). Florida Statute § 501.203(8) further provides:

> "Trade or commerce" means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

Fla. Stat. § 501.203(8).

#### 2. Conduct alleged

To the extent that Count V of the TAC differs from Count VI of the SAC, Florida Plaintiffs argue Count V attempts to hold Ocwen liable for knowingly maintaining and relying on REALServicing to its own benefit and to the detriment of its consumers. [DE 574 at 8-9]. Plaintiffs argue Ocwen put a system of record into the stream of commerce that negatively affected consumers and therefore goes beyond the simple collection of debts. [*Id.*].

Ocwen responds that for several reasons Florida Plaintiffs' invoking the use of REALServicing software system does not make Count V actionable. [DE 582 at 6; DE 562 at 10]. First, Ocwen contends that the allegations pertaining to REALServicing are not significantly

different from what was alleged previously given that the SAC also heavily referenced the software system and this Court still dismissed it. [DE 562 at 8-9; DE 582 at 6]. Second, Ocwen argues the focus on REALServicing does not expand the scope of activity in which Ocwen engaged so as to now fall under "trade or commerce." [DE 582 at 9 -10]. Third, Ocwen defends the use of a loan servicing system of record as necessary and inseparable from its debt collection activities. [*Id.* at 7].

"Several courts have held that debt collection activities are not 'trade or commerce' for FDUTPA purposes." *Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1321 (S.D. Fla. 2012) (citing *State v. Shapiro & Fishman, LLP,* 59 So.3d 353, 355–57 (Fla. 4th DCA 2011); *Law Office of David J. Stern, P.A. v. State,* 83 So.3d 847, 849–50 (Fla. 4th DCA 2011); *Kelly v. Palmer, Reifler & Assocs., P.A.,* 681 F.Supp.2d 1356, 1371–77 (S.D. Fla. 2010); *Trent v. Mortgage Electronic Registration Sys., Inc.,* 618 F.Supp.2d 1356, 1365 n. 12 (M.D. Fla. 2007)).

As explained in this Court's previous Order, FDUTPA claims have been dismissed where "none of Defendants' loan modification activities fall within the purview of trade or commerce," and "[a]s with mortgage enforcement generally, a loan servicer's handling of a loss mitigation application—obligatory and reactive in nature—does not involve the loan servicer 'advertising, soliciting, providing, offering, or distributing' anything to borrowers." *Rodriguez v. Ocwen Fin. Corp.*, 2017 WL 3593972, at *6 (S.D. Fla. Aug. 21, 2017) (quoting Fla. Stat. § 501.203(8)).

This Court recognized, however, that FDUTPA does encompass conduct that is related to debt collection such as: force-placement of insurance where none was required, charging excessive amounts for force-placed insurance, billing for specific services that were unauthorized or never performed, or double-billing. *See Bank of Am., N.A. v. Zaskey*, No. 9:15-CV-81325, 2016 WL 2897410, at *11 (S.D. Fla. May 18, 2016); *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp.

7

2d 1218, 1224 (S.D. Fla. 2013); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1324 (S.D. Fla. 2014); *MSPA Claims 1, LLC v. Halifax Health, Inc*, 295 F. Supp. 3d 1335, 1341 (M.D. Fla. 2018), *reconsideration denied*, 2018 WL 3458298 (M.D. Fla. July 18, 2018).

Plaintiffs try to place Count V's allegations regarding Ocwen's business decision to rely on REALServicing in the line of cases—*Zaskey*, *Alhassid*, and *Martorella*—that held that activities appurtenant to mortgage servicing may fall under FDUTPA. [DE 574 at 9-10]. Those holdings, however, are distinguishable.

In *Martorella*, this Court denied a motion to dismiss where "the transactions at issue fall comfortably within the definition of trade or commerce because it is alleged [plaintiff] was the 'purchaser' of insurance that Defendants 'provided, offered, or distributed.'" *Martorella*, 931 F. Supp. 2d at 1224 (citing *Hughes Supply, Inc. v. Cont'l Recovery Servs. Corp.,* 2007 WL 2120318, *2 (M.D. Fla. July 23, 2007)). There, the Court was considering allegations of "Defendants' provision of insurance (a product) to [plaintiff] for which [plaintiff] paid excessive premiums and Defendants received kickbacks in the form of commissions." *Id.*

Florida Plaintiffs' Count V allegations revolve around Ocwen's decision to use a certain loan servicing platform and system of record. [DE 506 at ¶¶ 225-36]. *Martorella*'s holding regarding imposing force-placement of insurance where none was required is not applicable to Count V's allegations. Rather, those allegations are pled in Count VI of the TAC, which is going forward in this case. For example, Count VI alleges:

> 240. Since February 27, 2014, the Ocwen Defendants have engaged in unfair acts that are likely to cause substantial injury to consumers and the substantial injury is not reasonably avoidable by consumer and is not outweighed by countervailing benefit to the consumers. These unfair acts include, among others,
> a. The **imposition of force-placed insurance in excessive amounts** of coverage as alleged in Paragraphs 169-171; and
> b. The **imposition of force-placed insurance where the borrower had insurance** as alleged in Paragraphs 167-168.

8

[*Id.* at ¶ 240] (emphasis added).

Florida Plaintiffs' reliance on *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302 (S.D. Fla. 2014) is similarly misplaced. There, the court determined that "Nationstar stood in relation to Plaintiffs as a loan servicer in pursuit of its legal debt collection remedies. If all the SAC alleged were loan collection activities, even if those activities were improper, FDUTPA would not apply." *Alhassid*, 60 F. Supp. 3d at 1323. Notably, "Plaintiffs specifically allege, first, that Nationstar **assessed and sought to collect fees outside the scope of its legal entitlement**, and more importantly, **billed Plaintiffs for *specific services*** which were unauthorized and which Nationstar never performed." *Id.* at 1324 (emphasis added). The court took into consideration that the allegations included charges for "property preservation," "property inspections," and "property appraisals," and "property inspection." *Id.* Therefore, the court was able to analogize it to the force-placed insurance in *Martorella* because, "[w]hile appurtenant to the pursuit of Nationstar's mortgage servicing rights, those activities can be construed as the separate offer or provision of services within the meaning of FDUTPA." *Id.*

Here, the thrust of Count V, in contrast to Count VI, is that "Ocwen Defendants made the business decision to use and maintain use of REALServicing as their system of record." [DE 506 at ¶ 228]. The Court finds the conduct alleged in Count V is not analogous to *Alhassid* because Count V's allegations about Ocwen's loan collection activities—"miscalculation of payments due by borrowers and miscommunications about terms and payments due by borrowers, including errors related to the terms of the loans including interest rates, balloon payments, whether a loan had an adjustable rate, and maturity dates"—were administered pursuant to the customers' existing mortgage agreements. [*Id.* at ¶ 229]. The court in *Alhassid* carefully couched its holding that the claim against the loan servicer was only actionable under FDUTPA because it included allegations

9

that defendants charged for specific services outside of the scope of legal entitlement. *Alhassid*, 60 F. Supp. 3d at 1324. Here, Count V's allegations, unlike Count VI's, do not mention separate products or services that Ocwen advertised, solicited, offered, provided or distributed to borrowers, which would fall within the definition of "trade or commerce."

Furthermore, Florida Plaintiffs cite no precedent that supports the proposition that the system of record a mortgage servicer uses, even if proprietary, converts the underlying activity to actionable FDUTPA conduct. Florida Plaintiffs instead argue Count V is not precluded by *Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284 (S.D. Fla. May 6, 2013) and other cases, which categorically held that mortgage servicing activity falls outside of trade or commerce. They assert Count V departs from those cases because: 1) Ocwen introduced an additional service that goes beyond the mere collection of debt when it subjected borrowers to its flawed, proprietary system of record, REALServicing; and 2) by introducing REALServicing into its business practice, Ocwen went beyond "merely obtain[ing] an interest in a mortgage note from a third party lender." *Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284, at *5 (S.D. Fla. May 6, 2013)

Defendants respond that there is no precedent for the idea that the decision to create and utilize a loan servicing platform to service mortgage loans subsequently transforms all resulting loan servicing activity into the statutory definition of trade or commerce. Defendants insist that Count V's allegations pertain to "ordinary loan collection activity." [DE 582 at 5]. In support of that, Defendants point to the Eleventh Circuit's description of the role of a mortgage servicer as "the party responsible for receiving payments on the mortgage, informing [customer] of her default, arranging her foreclosure solutions, and taking her loan modification application into consideration." *Clark v. HSBC Bank USA, Nat'l Ass'n*, 664 F. App'x 810, 813 (11th Cir. 2016) (analyzing a Regulation X claim). Defendants also emphasize that loan servicing activity has long

10

included "'information about the receipt of periodic payments or the amounts of such payments.'" *Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1349 (S.D. Fla. 2016) (citation omitted) (analyzing a RESPA claim).

Accordingly, Florida Plaintiffs' reliance on the "stream of commerce" phrase is misplaced. [DE 574 at 2, 4, 5, 8, 9, 13]. FDUTPA and the successive caselaw make clear that the inquiry is whether the conduct alleged is "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. . . ." Fla. Stat. § 501.203(8). "'An attempt to collect a debt by exercising one's legal remedies does not constitute 'advertising, soliciting, providing, offering, or distributing' as those terms are used in Fla. Stat. § 501.203(8),' even where the plaintiff alleges the defendants attempted to collect amounts exceeding what was owed." *Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362, 1374 (S.D. Fla. 2017) (quoting *Acosta v. James A. Gustino, P.A.*, 2012 WL 4052245, at *1 (M.D. Fla. Sept. 13, 2012)) (discussing medical debt collection under FDUTPA).

Because Count V of the TAC pertains to loan collection activity but does not allege conduct such as charging for an actual product as in *Martorella* or for specific services which were unauthorized as in *Alhassid*, the Court concludes Count V as pled is not actionable under FDUTPA.

IV. CONCLUSION

Based upon the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Partial

11

Motion to Dismiss [DE 562] is **GRANTED.**  Count V is **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of April, 2020.

 

KENNETH A. MARRA
United States District Judge