**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:17-CV-80495 and CASE NO. 9:17-CV-80496**
**MARRA-MATTHEWMAN**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

OCWEN FINANCIAL CORPORATION, OCWEN MORTGAGE SERVICING, INC., OCWEN LOAN SERVICING, LLC; and PHH MORTGAGE CORPORATION,

Defendants.

---

OFFICE OF THE ATTORNEY GENERAL, THE STATE OF FLORIDA, Department of Legal Affairs,
and
OFFICE OF FINANCIAL REGULATION, THE STATE OF FLORIDA, Division of Consumer Finance,

Plaintiffs,

v.

OCWEN FINANCIAL CORPORATION, OCWEN MORTGAGE SERVICING, INC., OCWEN LOAN SERVICING, LLC; and PHH MORTGAGE CORPORATION,

Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' ADDITIONAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT**

**OCWEN'S RESPONSE TO PLAINTIFFS' ADDITIONAL FACTS**

Defendants Ocwen Financial Corporation ("OFC"), Ocwen Mortgage Servicing, Inc. ("OMS"), Ocwen Loan Servicing, LLC ("OLS"), and PHH Mortgage Corporation ("PHH"), collectively "Ocwen" or "Defendants," submit this response to Plaintiffs Consumer Financial Protection Bureau's ("CFPB" or "the Bureau"), Office of the Attorney General, State of Florida, Department of Legal Affairs' ("OAG"), and Office of Financial Regulation, State of Florida, Division of Consumer Finance's ("OFR," and together with OAG, "Florida") Response to Defendants' Statement of Material Facts and Additional Facts In Support of Their Opposition to Defendants' Motion for Summary Judgment (ECF No. 680, "Pls. RSOF") and exhibits attached thereto ("Pls. Opp. Ex."). Specifically, Defendants respond to "Plaintiffs' Additional Facts" at Paragraphs 244-308 of Plaintiffs' RSOF. Defendants do not respond to the headings in Plaintiffs' RSOF as none asserts facts.[1]

244. Disputed. The cited evidence states that the State Mortgage Regulators commenced an examination of Ocwen, Litton, and Homeward in late 2010 for conduct spanning various time periods, the latest ending on October 24, 2011. Ocwen SMF Ex. 11, at 3-4.

245. Undisputed.

246. Undisputed that the NMS Complaint alleged 18 various forms of misconduct by Ocwen relating to servicing activities, the last of which included the conduct stated in Plaintiffs' paragraph 246.

247. Undisputed.

248. Undisputed, but misleading and incomplete. Undisputed that the Consent Judgment states that it remained "in full force and effect for three years from the date it is entered ('the Term')." Ocwen SMF Ex. 2, NMS C.J. ¶ 15. However, the provision further states that "the Court shall retain jurisdiction for purposes of enforcing or remedying any outstanding

[1] For the purposes of this response, Defendants' responses to Plaintiffs' Statements of Facts ("SOF") (ECF No. 675) are referred to as "Ocwen RSF," and any exhibits attached by Ocwen in support are referred to as "Ocwen RSF Ex." Counterstatements of Fact submitted in support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment are referred to as "Ocwen CSF."

Ocwen's motion for summary judgment (ECF No. 634) is referred to as "Ocwen MSJ." Ocwen's Statement of Material Facts (ECF No. 635) and accompanying exhibits (ECF Nos. 635, 639-641), which were filed in support of Ocwen's MSJ, are referred to as "Ocwen SMF" and "Ocwen SMF Ex." respectively.

violation*s* that are identified in the final Monitor Report and that have occurred but not been cured during the Term." *Id*.

249. Partially disputed as incomplete. The "Work Plan" set forth additional duties for the Monitor and specifically outlined the manner in which he was to carry out his compliance responsibilities. *See* Ocwen SMF Ex. 6, NMS C.J. Ex. D ¶ 6.

250. Partially disputed as incomplete. *See* Ocwen SMF ¶¶ 10-35. Disputed because, after the settlement was approved, the Monitor added an additional Metric (#34) to assess Ocwen's compliance with the Standards relating to servicing transfers. Ocwen Response to Pls. Additional Facts ("RAF") Ex. 1, *United States v. Bank of Am. Corp.*, No. 12-0361, ECF No. 158 at 8 (D.D.C. May 14, 2014). Further disputed as incomplete because the Monitor's metric testing identified a "Potential Violation," and the Consent Judgment outlined a process under which Ocwen would exercise its "Right to Cure" and further detailed the steps Plaintiffs could take to enforce Ocwen's obligations and to seek remedies for an uncured Potential Violation under the Consent Judgment. *See* Ocwen SMF Ex. 6, NMS C.J. Ex. D ¶¶ E.1-E.6, I.1-I.3

251. Undisputed.

252. Undisputed that Plaintiffs' Opp. Ex. 15 contains this excerpted quote.

253. Undisputed.

254. Disputed as misleading and incomplete. Ocwen's 2014 10-K (Pls. SJX 3[2]) and 2015 10-K (Pls. SJX 4) simply stated that, ***generally***, "the CFPB has supervision, examination and enforcement authority over consumer financial products and services offered by certain non-depository institutions and large insured depository institutions." Pls. SJX 3 at 9; Pls. SJX 4 at 8.

255. Undisputed that Ocwen's 2016 and 2017 10-Ks contain the excerpted quotes.

256. Undisputed that Ocwen SMF Ex. 2, Consent Judgment, ¶ 17 contains this quote.

257. Undisputed, but irrelevant. *See* Ocwen MSJ at 10; Ocwen MSJ Reply at 3-5.

258. Undisputed, but irrelevant. *See* Ocwen MSJ at 10; Ocwen MSJ Reply at 3-5.

259. Undisputed, but irrelevant. *See* Ocwen MSJ at 10; Ocwen MSJ Reply at 3-5.

260. Undisputed, but irrelevant. *See* Ocwen MSJ at 10; Ocwen MSJ Reply at 3-5.

261. Undisputed, but irrelevant. *See* Ocwen MSJ at 10; Ocwen MSJ Reply at 3-5.

262. Undisputed, but irrelevant. *See* Ocwen MSJ at 10; Ocwen MSJ Reply at 3-5.

---

[2] Exhibits submitted with Plaintiffs' Motion for Partial Summary Judgment (ECF No. 630) are referred to as "Pls. SJX")

263. Undisputed, but irrelevant. *See* Ocwen MSJ at 10; Ocwen MSJ Reply at 3-5.

264. Undisputed, but irrelevant. *See* Ocwen MSJ at 10; Ocwen MSJ Reply at 3-5.

265. Disputed. The Consent Judgment states that it "***shall*** be enforced in accordance with the authorities provided in the Enforcement Terms." Ocwen SMF Ex. 2, NMS C.J. ¶ 6. Those Enforcement Terms provided that Ocwen would not be subject to any judicial or administrative enforcement action arising out of its future conduct concerning the subject matter of the Servicing Standards and Metrics unless: (1) any servicing violations exceeded certain agreed-upon "Threshold Error Rates" as measured by the NMS Monitor; (2) Ocwen had the opportunity to cure any errors; and (3) Ocwen had failed to cure them. *See* Ocwen SMF ¶¶ 9-10. Only if those preconditions were met could Plaintiffs bring an action in the federal court that had entered the Consent Judgment and, at most, seek non-monetary remedies and a civil penalty of $1 million for the first violation. Ocwen SMF ¶¶ 9, 24-35.

266. Disputed, misleading, and incomplete. *See* Ocwen SMF ¶ 42. Servicing Standards Section I.B: "Requirements for Accuracy and Verification of Borrower's Account Information," required that Ocwen "provide to borrowers . . . adequate information on monthly billing or ***other account statements*** to show in clear and conspicuous language . . . ***current escrow balance*** . . . and reasons for any payment changes . . . ." Ocwen SMF Ex. 3, NMS C.J. Ex. A ¶ I.B.5. Similarly, Metric No. 33 tested "billing statement accuracy," which necessarily included a review of the escrow balance. Ocwen SMF Ex. 6, NMS C.J. Ex. D at D1-21. Additionally, Metric No. 4.B tested whether payments "posted ***timely*** . . . and ***accurately***" including whether "payments posted to principal interest and escrow before fees and expenses." *Id.* at D1-7.

267. Disputed, misleading, and incomplete. Bryar [redacted] Pls. Opp. Ex. 12, Bryar Dep. at 210:7-10.

268. Disputed because misleading and incomplete. Plaintiffs intentionally omitted a relevant sentence located ***in the middle*** of the text quoted in paragraph 268 in which the Monitor plainly stated that the Servicing Standards ***did*** provide for the testing of Ocwen's system of record data ("SOR"). Specifically, the Monitor stated: "***The Settlement requires that an independent third party periodically review those parts of the SOR that pertain to account information for accuracy and completenes***s." Ocwen SMF Ex. 25 at 6 (citing NMS C.J. Ex. A,

I.B.9) (emphasis added); *see also id.* Ocwen SMF Ex. 3, NMS C.J. Ex. A ¶ I.B.9 (mandating that an independent third party test Ocwen's SOR data for accuracy and completeness). This in fact happened. The Monitor reported in December 2014 that "[Ocwen] has provided for my review its two most recent independent service auditor's reports of its system of record and will provide future independent service auditor's reports of its system of record until the Judgment sunsets." Ocwen RAF Ex. 2, *United States v. Bank of Am. Corp.*, No. 12-0361, ECF No. 194 at 19 (D.D.C. Dec. 16, 2014) (discussing Ocwen). Further, he stated in his December 16, 2014 Continued Oversight Report: "I . . . charged [an independent third party] with additional supplemental work . . . to assess reliability of the systems of record." Ocwen's RAF Ex. 3, *Continued Oversight*, A Report from the Monitor of the NMS (Dec. 16, 2014) (OCW-039-0244935 at OCW-039-0244950).

269. Partially disputed because misleading and incomplete. Undisputed that Ocwen SMF Ex. 25 contains this excerpted quote, but disputed because misleading and incomplete, as the NMS Servicing Standards ***did*** provide for the testing of Ocwen's SOR for accuracy and completeness. *See* Ocwen RAF ¶ 268.

270. Undisputed, but irrelevant. *See* Ocwen MSJ Reply at 3-5.

271. Undisputed, but irrelevant. *See* Ocwen RAF ¶ 270.

272. Undisputed, but irrelevant. *See* Ocwen RAF ¶ 270.

273. Undisputed, but irrelevant. *See* Ocwen RAF ¶ 270.

274. Undisputed, but irrelevant. *See* Ocwen RAF ¶ 270.

275. Undisputed, but irrelevant. *See* Ocwen RAF ¶ 270.

276. Undisputed, but irrelevant. *See* Ocwen RAF ¶ 270.

277. Undisputed, but irrelevant. *See* Ocwen RAF ¶ 270.

278. Undisputed, but irrelevant. *See* Ocwen RAF ¶ 270.

279. Disputed that the "memory aid" referenced in paragraph 279 concerns allegations supporting Counts II, V, VI. *See* Pls. Opp. Ex. 22. The CFPB's 30(b)(6) witness testified that this memory aid concerned Count I, which is consistent with the face of the document. Ocwen RAF Ex. 4, 30(b)(6) Deposition of Richa Dasgupta at 22:14-23:15 (June 25, 2019). Further disputed that this memory aid or the documents or testimony cited therein are competent evidence of any violation of the applicable statutes. *See* Ocwen MSJ at 18-22; Ocwen MSJ Reply at 20.

280. Partially disputed. Undisputed that the "memory aid" referenced in paragraph 280, which was provided at the CFPB's 30(b)(6) deposition, contains information related to the CFPB's allegations that Ocwen used inaccurate information relating to amounts owed by and received from borrowers in Counts I, II, IV, V and VI of the Amended Complaint. *See* Pls. Opp. Ex. 23. Disputed that this memory aid or the documents or testimony cited therein are competent evidence of any violation of the applicable statutes. *See* Ocwen RAF ¶ 279.

281. Partially disputed. Undisputed that the "memory aid" referenced in paragraph 281, which was provided at the CFPB's 30(b)(6) deposition, contains information related to the CFPB's loan verification allegations. *See* Pls. Opp. Ex. 24. Disputed that this memory aid or the documents or testimony cited therein are competent evidence of any violation of the applicable statutes. *See* Ocwen RAF ¶ 279.

282. Partially disputed. Undisputed that the "memory aid" referenced in paragraph 282, which was provided at the CFPB's 30(b)(6) deposition, contains information related to the CFPB's allegation that Ocwen used inaccurate and incomplete information relating to adjustable rate mortgages and amounts due thereunder. *See* Pls. Opp. Ex. 25. Disputed that this memory aid purports to be related to Counts IV, V, VI of the Amended Complaint. *Id.* Further disputed that this memory aid or the documents or testimony cited therein are competent evidence of any violation of the applicable statutes. *See* Ocwen RAF ¶ 279.

283. Partially disputed. Undisputed that the "memory aid" referenced in paragraph 283, which was provided at the CFPB's 30(b)(6) deposition, contains information related to the CFPB's allegation that Ocwen sent deceptive foreclosure-related letters and unlawfully initiated foreclosures. *See* Pls. Opp. Ex. 26. Disputed that this memory aid or the documents or testimony cited are competent evidence of any violation of the applicable statutes. *See* Ocwen RAF ¶ 279.

284. Partially disputed. Undisputed that the "memory aid" referenced in paragraph 284, which was provided at the CFPB's 30(b)(6) deposition, contains information related to the CFPB's allegation concerning Ocwen's policies and procedures relating to its foreclosure counsel. *See* Pls. Opp. Ex. 27. Disputed that this memory aid or the documents or testimony cited therein are competent evidence of any violation of the applicable statutes. *See* Ocwen RAF ¶ 279.

285. Partially disputed. Undisputed that the "memory aid" referenced in paragraph 285, which was provided at the CFPB's 30(b)(6) deposition, contains information related to the CFPB's allegation concerning Ocwen's policies and procedures relating to handling consumer complaints. *See* Pls. Opp. Ex. 28. Disputed that this memory aid or the documents or testimony cited therein are competent evidence of any violation of the applicable statutes. *See* Ocwen RAF ¶ 279.

286. Partially disputed. Undisputed that the "memory aid" referenced in paragraph 286, which was provided at the CFPB's 30(b)(6) deposition, contains information related to the CFPB's allegation concerning Ocwen's policies and procedures relating to outbound mortgage servicing transfers. *See* Pls. Opp. Ex. 29. Disputed that this memory aid or the documents or testimony cited therein are competent evidence of any violation of the applicable statutes. *See* Ocwen RAF ¶ 279.

287. Partially disputed. Undisputed that the "memory aid" referenced in paragraph 287, which was provided at the CFPB's 30(b)(6) deposition, contains information related to the CFPB's allegation that that Defendants acted as a common enterprise. *See* Pls. Opp. Ex. 30. Disputed that this memory aid or the documents or testimony cited therein are competent evidence of a common enterprise or any violation of the statutes at issue in the Amended Complaint. *See* Ocwen RAF ¶ 279.

288. Partially disputed. Undisputed that the "memory aid" referenced in paragraph 288, which was provided at the CFPB's 30(b)(6) deposition, contains information related to the CFPB's escrow and insurance-related allegations. *See* Pls. Opp. Ex. 31. Disputed that this memory aid or the documents or testimony cited therein are competent evidence of any violation of the applicable statutes. *See* Ocwen RAF ¶ 279.

289. Partially disputed. Undisputed that the "memory aid" referenced in paragraph 288, which was provided at the CFPB's 30(b)(6) deposition, contains information related to the CFPB's allegations concerning Ocwen's system of record. *See* Pls. Opp. Ex. 32. Disputed that this memory aid or the documents or testimony cited therein are competent evidence of any violation of the applicable statute. *See* Ocwen RAF ¶ 279.

290. Disputed because the statement excerpted quotes are incomplete and out of context, and therefore misleading. Judge Matthewman's order stated that Plaintiffs "shall identify approximately how many loans fall into each 'bucket', to the extent they are reasonably

able to do so, ***as further discussed at the hearing***." ECF No. 396 at ¶ 3 (emphasis added). At the hearing, Judge Matthewman stated that where the Plaintiffs allege a violation, Defendants have the "absolute right" to "get to the bottom of what their evidence is to support that allegation." Ocwen SMF ¶ 76. The Court then agreed that Plaintiffs should "identify the loans that belong in these buckets and the evidence [Plaintiffs] have that supports why [Plaintiffs] said that those loans had" violations. *Id.* In response, the CFPB represented that it needed Ocwen's data to provide each error as to each loan: "[T]he data, the actual loan-level data, is what the Bureau needs to complete these [loan] analyses in order to, with precision, provide the defendants with [what] I think what they're asking for in terms of . . . each precise error that the Bureau says existed in these files." *Id.* ¶ 75.

291. Undisputed.

292. Disputed because the term "foreclosure-related costs" is vague and undefined. Further disputed because Ocwen's servicing data produced in response to Request No. 22 of the CFPB's Fifth Set of Requests for Production ("RFP 22 Data") identifies all expenses charged to each loan and the default status of the loan at the time the fee was charged, and the data produced in response to Request No. 10 of the CFPB's Fifth Set of Requests for Production ("RFP 10 Data") identifies all foreclosure sale dates. *See* Ocwen SMF Ex. 55; Ocwen RSF Exs. 17 & 20. Accordingly, costs that were charged to loans during the time period for which data was requested when the loans were in foreclosure status are all identifiable in the data produced. In any event, the servicing data Ocwen produced would necessarily not reflect foreclosure costs as to every borrower that allegedly experienced a delayed escrow analysis as the CFPB's damages expert has admitted that many borrowers experienced zero monetary loss from foreclosure. RAF Ex. 5, Deposition of Daniel McFadden at 131:21-132:8 (Feb. 4, 2020).

293. Undisputed.

294. Undisputed.

295. Undisputed.

296. Disputed because misleading and incomplete. The document referenced in paragraph 296 contains the excerpted quote, but disputed and misleading because the cited document goes on to state that "chances of errors in amounts and even duplicate payments are possible," indicating that the alleged "incorrect surplus amounts" referenced included ***overpayments*** to the borrower. *See* Pls. Opp. Ex. 35 at OCWFL000016965 at -65-67. Further

disputed that the cited evidence shows that Ocwen refunded an "incorrect surplus amount[]" to any particular borrower identified as at-issue by Plaintiffs. *See id.*

297. Disputed and misleading. Ocwen testified that it "identif[ied] some instances . . . where there was a difference between the [escrow] surplus that was generated and the surplus that was disbursed on the check" at some unspecified time "[d]uring the relevant time period of January 2014 to the present day." Pls. SJX 38 at 269:3-20. Ocwen did not testify that any such instances persisted throughout the entire time period of January 2014 through the present day. *See also* Ocwen RAF ¶ 296.

298. Partially disputed. Undisputed that the document referenced in paragraph 298 contains the excerpted quote. Disputed that the cited evidence shows that Ocwen placed duplicate insurance for any particular borrower identified as at-issue by Plaintiffs. *See* Pls. SJX 74; Pls. Opp. Ex. 46. Further disputed that the attributed quote in paragraph 298 referring to some unspecified provision of RESPA accurately states any requirements under RESPA, or is an admission or evidence that Ocwen in any way violated those requirements.

299. Partially disputed. Ocwen testified that its leadership "agree[d] in general" with its third-party consultant's (Navigant) suggested "areas for improvement" in its complaint processes, but that there was "some debate on the degree to which" improvement was necessary. Pls. SJX 39 at 23:4-11. Also disputed and misleading to the extent paragraph 299 suggests Navigant undertook a systemic analysis of Ocwen's complaint processes. *See* Pls. Opp. Ex. 5.

300. Partially disputed. Undisputed that Ocwen testified that individuals responding to consumer complaints did not cross-reference its risk convergence database or a "master list of issues or risks." Pls. SJX 39 at 15-17. Disputed that such a policy or procedure is necessary for compliance with Regulation X. *See* Ocwen MSJ at 36; Ocwen Reply at 28-29.

301. Partially disputed. Undisputed that [redacted] Pls. Opp. Ex. 6, at 221:13-224:22. Disputed that the cited evidence supports [redacted]. *See id.* Further disputed that such a policy or procedure is necessary for compliance with Regulation X. *See* Ocwen RAF ¶ 300.

302. Disputed. *See* Ocwen SMF ¶ 218.

303. Partially disputed. Disputed that Ocwen's third party consultant (Navigant) identified "deficiencies" in Ocwen's outbound transfer processes. Navigant found that

"[o]verall, Ocwen is investing 'significant' resources and effort to ensure compliance with rules and CFPB Advisory Guidelines," and identified "areas . . . for control and/or procedural enhancements." Pls. Opp. Ex. 7. Undisputed that Ocwen made certain changes following Navigant's assessment.

304. Partially disputed. Ocwen's former Vice President of Compliance testified that he "did not know" whether Ocwen had policies and procedures relating to the sale of mortgage servicing rights, and that in March 2015, he proposed certain written policies and procedures for outbound transfers. Pls. Opp. Ex. 8 at 246:17-252:8. *See also* Ocwen SMF ¶ 218.

305. Partially disputed. Undisputed that Ocwen did not inform new servicers of "all" information concerning a loan in the course of an outbound transfer, but disputed that such a policy or procedure is necessary for compliance with Regulation X. *See* Ocwen RAF ¶ 300. Further disputed that Ocwen did not disclose to new servicers whether Ocwen "identified that it was using inaccurate loan data." As Ocwen testified, Ocwen provided transaction and comment histories concerning the loan from which this information could be determined. *See* Pls. SJX 34 at 136:8-25.

306. Disputed. The cited testimony does not support the statement in paragraph 306. Further, as Ocwen testified, it was Ocwen's expectation that in the event foreclosure attorneys failed to comply with its policies and procedures, those firms would be "coach[ed]" and that Ocwen would "reduce their referrals" if necessary. Pls. Opp. Ex. 9 at 315:16-24.

307. Partially disputed. Undisputed that the referenced reports did track certain instances where "attorney proceeded while the file was on hold," but disputed that the reports were "created" to track such instances or that the reports identify whether there was a violation of Ocwen policies or procedures. *See id.* at 40:12-23; Pls. Opp. Ex. 11. Rather, Ocwen testified that the referenced reports are used to track activity relevant to Ocwen's decision whether to rescind a foreclosure sale. *See* Pls. Opp. Ex. 10 at 29:3-14. These reports track instances of "additional activity" that occurs at the same time as a foreclosure milestone—for example, as Ocwen testified, this report would reflect if a "loss mitigation application is received on the same day that a court enters a judgment." *Id.* at 29:3-14, 35:15-36:3.

308. Partially disputed. Undisputed that the CFPB sent a letter dated August 16, 2019, transmitting its Fourth Supplemental Answer to Defendants' Interrogatory No. 1. *See* Pls. Opp. Ex. 4. Disputed that the August 16, 2019 letter constituted a supplemented loan bucketing

30(b)(6) deposition memory aid, or that the CFPB otherwise indicated that it was revising any of its memory aids. *See id.*; *see also* Pls. Opp. at 24-25, n.148. Further disputed because on November 22, 2019, the CFPB again amended its response to Defendants' Interrogatory No. 1. Thus, Plaintiffs' attempt to dispute certain of those loan totals based on the prior, superseded amendment accompanying the August 16, 2019 letter (Pls. Opp. Ex. 4) is misplaced because Ocwen's SMF cited to the numbers of at-issue loans in the CFPB's ***subsequently amended*** Fifth Amended Answer to Defendants' Interrogatory No. 1. *See* Ocwen SMF ¶¶ 82, 83, 88, 91, 110, 111. Plaintiffs' responses to those statements of fact (¶¶ 82, 83, 88, 91, 110, 111) are, therefore, incorrect because they ignore their own amendments and updates to the lists of loans at issue.

Dated: September 4, 2020

Respectfully submitted,
*/s/ Catalina E. Azuero*

Bridget Ann Berry (Fla. Bar. No. 515639)
Andrew Stuart Wein (Fla. Bar. No. 1005238)
**GREENBERG TRAURIG, P.A.**
777 South Flagler Drive, FL 33401
Tel.: 561.650.7900
berryb@gtlaw.com
weina@gtlaw.com

Thomas M. Hefferon (*pro hac vice*)
Sabrina M. Rose-Smith (*pro hac vice*)
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
Tel.: 202.346.4000
thefferon@goodwinlaw.com
srosesmith@goodwinlaw.com

Laura A. Stoll (*pro hac vice*)
**GOODWIN PROCTER LLP**
601 S. Figueroa Street
Los Angeles, CA 90017
Tel.: 213.426.2500
lstoll@goodwinlaw.com

Catalina E. Azuero (Florida Bar No. 821411)
**GOODWIN PROCTER LLP**
100 Northern Avenue

Boston, MA 02210
Tel.: 617.570.1000
cazuero@goodwinlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on September 4, 2020 via ECF on all counsel or parties of record listed below:

Jennifer Hayes Pinder
Email: Jennifer.Pinder@myfloridalegal.com

Sasha Funk Granai
Email: Sasha.Granai@myfloridalegal.com

Victoria Butler
Email: Victoria.Butler@myfloridalegal.com

Scott R. Fransen
Email: Scott.Fransen@flofr.com

Miriam S. Wilkinson
Email: Miriam.Wilkinson@flofr.com

Anthony Cammarata
Email: Anthony.Cammarata@flofr.com

Jean Healey
Email: jean.healey@cfpb.gov

Atur Desai
E-mail: atur.desai@cfpb.gov

Tianna Baez
E-mail: tianna.baez@cfpb.gov

Amanda Roberson
E-mail: amanda.roberson@cfpb.gov

Stephanie Brenowitz
E-mail: stephanie.brenowitz@cfpb.gov

Erin Mary Kelly
E-mail: erin.kelly@cfpb.gov

James Savage
E-mail: james.savage@cfpb.gov

Greg Nodler
E-mail: greg.nodler@cfpb.gov

Michael Posner
E-mail: michael.posner@cfpb.gov

Jack Douglas Wilson
E-mail: doug.wilson@cfpb.gov

Shirley T. Chiu
E-mail: shirley.chiu@cfpb.gov

Blaine Winship
E-mail: blaine.winship@myfloridalegal com

Joaquin Alvarez
E-Mail: Joaquin.alvarez@flofr.com

/s/ Catalina Azuero
Catalina E. Azuero