UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:17-CV-80495
MARRA-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION
BUREAU,

       Plaintiff,

  v.

OCWEN FINANCIAL CORPORATION,
OCWEN MORTGAGE SERVICING, INC.,
OCWEN LOAN SERVICING, LLC; and
PHH MORTGAGE CORPORATION,

       Defendants.

**DEFENDANTS' CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF
MOTION TO SEAL SUMMARY JUDGMENT AND DAUBERT MOTION MATERIALS
AND SUMMARY JUDGMENT OPPOSITION MATERIALS**

Defendants Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc., Ocwen Loan Servicing, LLC, and PHH Mortgage Corporation (collectively, "Ocwen" or "Defendants") hereby submit this Consolidated Reply in support of their Amended Motion to Seal Summary Judgment and *Daubert* Motion Materials (DE 726) and their Motion to Seal Summary Judgment Opposition Materials (DE 737) (collectively, "Motions to Seal"). In the Motions to Seal, Ocwen showed that a very small number of exhibits in the re-submitted summary judgment motion materials should be sealed pursuant to Local Rule 5.4. Ocwen demonstrated that a small number of the 300-plus summary judgment exhibits contain confidential, privileged, or competitively sensitive information, and should be filed under seal, either in whole or in part. Specifically, those documents should be sealed because they contain confidential and privileged, self-critical analysis and information, or sensitive business or proprietary information belonging to Ocwen, or a third party. All of the documents at issue are confidential under the Stipulated Protective Order [DE 51] entered in this case. Plaintiff Consumer Financial Protection Bureau ("CFPB" or "Plaintiff") never challenged these confidentiality designations pursuant to the Court-ordered process in the Stipulated Protective Order. Instead, the CFPB attached the vast majority of documents at issue to its summary judgment submissions, and now opposes Ocwen's Motions to Seal that confidential material.[1]

The CFPB raises three arguments in its Opposition to Defendants' Amended Motion to Seal Summary Judgment and *Daubert* Motion Materials [DE 744] and its Opposition to Defendants' Motion to Seal Summary Judgment Opposition Materials [DE 757]. First, the CFPB claims that the self-critical analysis or self-evaluative privilege does not protect the documents at issue. However, none of the authority that the CFPB cites supports its position. All of the cases the CFPB relies on concern the more severe remedy of preventing production of documents in discovery. Ocwen is not seeking to block production of the documents at issue. Instead, Ocwen has argued that the reasoning behind the self-evaluative privilege can and should apply here to keep the documents out of the public domain at this point in the case. The CFPB

---

[1] Ocwen's Motions to Seal also seek to redact borrowers' personally identifiable information ("PII") that appears in various exhibits. *See* DE 726 at 7-8; DE 737 at 4-5. Ocwen specifically moved to redact individual borrowers' names, addresses, loan numbers and/or financial account numbers to protect PII from public disclosure, pursuant to Local Rule 5.4(b) and Rule 5.2 of the Federal Rules of Civil Procedure. The CFPB consents to this portion of the relief that Ocwen seeks, therefore PII is not addressed in this Consolidated Reply.

has had full use of the documents at issue, and thus not only are the cases cited by the CFPB inapplicable to the facts here, the underlying concerns expressed by the courts in those same cases also do not apply.  Second, the CFPB argues that the Court cannot seal confidential and sensitive business documents because Ocwen has not demonstrated competitive harm would result.  This argument lacks merit.  Ocwen has demonstrated that competitive harm would result from public disclosure of these documents, either because they are expressly subject to confidentiality agreements, or because the documents reveal internal business and compliance processes in effect today that Ocwen's competitors could use to their advantage.  Third, the CFPB claims that some of the documents Ocwen seeks to seal contain information that is in the public record.  This argument, too, fails because the CFPB cherry picks quotes and information from the public record, and ignores that there is far more confidential or competitively sensitive content in the documents that Ocwen seeks to seal than is present in publicly filed documents.  Moreover, if the CFPB is correct that "much of the at-issue information is already in the public record," as the CFPB contends (DE at 744 at 1), then the CFPB should have cited those publicly filed exhibits in support of its summary judgment arguments as a less onerous alternative to using Ocwen's confidential material, which requires sealing.

For these reasons, and those in Ocwen's Motions to Seal, the Court should seal the limited number of documents to avoid harm to Ocwen or any third party.  Ocwen requests that these materials remain sealed until the Court's decision on the parties' cross motions for summary judgment, or until a trial in the matter.

**I.    The Self-Critical Analysis Or Self-Evaluative Privilege Supports Sealing Ocwen's Documents.**

Ocwen demonstrated in its Motions to Seal that 13 documents, or portions thereof, in the parties' summary judgment materials contain confidential information and discussions regarding corrective actions Ocwen has taken in response to regulatory exams or reviews.[2]  Specifically,

---

[2] Ocwen originally moved to seal a total of 19 documents: 16 documents based on the self-critical analysis privilege, and 3 documents that contained sensitive business information (addressed in Section II, *infra*).  Ocwen carefully compared the information it sought to seal with the information the CFPB identified as publicly available.  In doing so, Ocwen determined that information in 4 of the 19 documents was publicly available and thus should not be maintained under seal.  Ocwen therefore withdraws its motion to seal as to: (1) SMF 55B (Plaintiff's Fifth Set of Requests for Production to Defendants, Ex. B data dictionary); (2) SMF Ex. 58 (excerpt

Ocwen seeks to seal its confidential response to the CFPB's PARR letter (SJX 57); information about numerous Corrective Action Plans, or "CAPs" (SJX 43, SJX 53, SJX 54, SJX 81, SJX 93, SJX 128, RSF Ex. 5, and Pl. Opp. Exs. 6, 22, and 28); portions of privileged communications with a Florida State regulator (SJX 178); and an Ocwen Remediation Report created in response to the CFPB's civil investigative demand (SJX 131). *See* DE 726 at 2-6; DE 737 at 2-3. Each of these documents is protected by the self-critical analysis, or self-evaluative privilege, which has been recognized as a qualified privilege that protects retrospective analyses of past conduct, practices and occurrences, and the resulting consequence, for the purpose of candid self-evaluation. *Reichhold Chems. v. Textron*, 157 F.R.D. 522, 524 & 527 (N.D. Fla. 1994). The self-critical analysis privilege should be recognized to encourage and protect from disclosure a company's candid assessment of its "compliance with regulatory and legal requirements without creating evidence that may be used against them by their opponents in future litigation." *Id*. at 524.

    The Eleventh Circuit has not yet addressed the self-critical analysis privilege. However, in addition to the Northern District of Florida in *Reichhold,* "a number of federal courts have recognized that self-critical analyses are generally privileged." *In re Block Island Fishing, Inc.*, 323 F. Supp. 3d 158, 160 (D. Mass. 2018) (applying the self-evaluative privilege and granting protective order) (citing *Tice v. Am. Airlines, Inc.*, 192 F.R.D. 270, 272 (N.D. Ill. 2000) and *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985)). *See also Scott v. City of Peoria*, 280 F.R.D. 419, 423 (C.D. Ill. 2011) ("There can be no doubt that [the self-critical analysis] privilege exists . . . .") (citing *Coates*, 756 F.2d at 551); *English v. Wash. Metro Area Transit Auth*., 323 F.R.D. 1, 14 (D.D.C. 2017) (applying the self-evaluative privilege to portions of an investigatory report because they "contain[ed] [defendant's] substantive analysis and conclusions, which epitomize the type of information protected by the self-evaluative privilege"). In its Motions to Seal, Ocwen argued that the rationale for protecting such information from disclosure should apply here, because the substantive analysis and conclusions in the documents at issue are precisely of the type that courts often protect from disclosure. And, in this case, competing concerns that would normally weigh against recognizing the privilege do

---

from Expert Report of John Searson on behalf of the CFPB); (3) Searson Ex. 1 (same document as SMF Ex. 58); and (4) Pl. Opp. Ex. 26 (Memory Aid).

not apply here given that Ocwen is not seeking to prevent *any* disclosure of the documents at all, it is seeking only to have the documents remain out of the public domain until trial.

The CFPB argues that the self-critical analysis should not apply to Ocwen's documents, citing cases that have refused to recognize the privilege. Importantly, every case that the CFPB cites for this argument is distinguishable, because those cases declined to apply the privilege to shield documents from discovery – a far more drastic remedy than Ocwen seeks here.[3] Ocwen recognized in its opening motions that courts in this district disfavor allowing any party to rely on the privilege as a basis for withholding production because of concerns that it will hinder fair and open discovery, and Ocwen did not rely on the privilege to withhold the documents from production during discovery at all.

Instead, Ocwen argues that the rationale underlying the privilege – encouraging self-critical analysis while protecting the companies' privacy interests – applies here. Ocwen requests that the Court protect from public view a limited number of documents applying the rationale of *Reichhold*, and other courts that have held that privacy interests support sealing self-critical analysis, even in instances where that information was not protected from discovery. *See Scanlon v. Lawson,* No. 16-cv-4465, 2020 U.S. Dist. LEXIS 40489, at *3-4 (D.N.J. Mar. 9, 2020); *Durkin v. Wabash Nat'l*, No. 10-cv-2013, 2013 U.S. Dist. LEXIS 44462, at *5-6 (D.N.J. Mar. 28, 2013). The CFPB, as Ocwen's regulator, and in discovery in this action, has had full access to all of the documents at issue, and thus the concern weighing against the privilege is not at issue here. In fact, the Court's general disfavor of applying the self-evaluative privilege to prevent discovery is precisely why Ocwen produced this material, albeit designated as confidential under the Stipulated Protective Order.

---

[3] *See Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1232–33 (S.D. Fla. 2018) (considering self-evaluative privilege in discovery dispute); *Jaber v. NCL (Bahamas) Ltd.*, No. 14-20158-CIV, 2014 WL 12629670, at *5 (S.D. Fla. Oct. 24, 2014) (same); *Bonnell v. Carnival Corp.*, No. 13-cv-22265, 2014 WL 10979823, at *5 (S.D. Fla. Jan. 31, 2014) (same); *Hill v. Celebrity Cruises, Inc.*, No. 09-23815-CIV, 2010 WL 5419006, at *2 (S.D. Fla. Dec. 23, 2010) (same); *Berner v. Carnival Corp.*, No. 08-22569-CIV, 2009 WL 982621, at *1 (S.D. Fla. Apr. 10, 2009) (same); *In re Air Crash Near Cali, Colombia on Dec. 20, 1995*, 959 F. Supp. 1529, 1533 (S.D. Fla. 1997) (same); *In re Sahlen & Assocs., Inc.*, No. 89-cv-6308, 1990 WL 284508, at *1 (S.D. Fla. Nov. 5, 1990) (same); *Cherenfant v. Nationwide Credit, Inc.*, No. CIV-03-60655, 2004 WL 5313965, at *4-5 (S.D. Fla. May 10, 2004).

The CFPB's other arguments opposing sealing self-evaluative privileged documents fail, as they, too, are based on preventing documents from discovery, rather than sealing certain documents from the public record. The CFPB argues (DE 744 at 8; DE 757 at 7) that the self-evaluative privilege does not apply when, "like here, information is requested by the government." The authority the CFPB cites is misplaced, as it pertains to a motion to quash a federal agency's subpoena to produce documents. *See In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (citing *FTC v. TRW, Inc.*, 628 F.2d 207, 210 (D.C. Cir. 1980)). Again, this is not a discovery dispute with the CFPB, which has had the documents at issue for years. Instead the Court must weigh the general public interest in court proceedings against Ocwen's demonstrated interest in keeping self-critical analysis confidential until trial. In Ocwen's view, the balance should weigh in favor of keeping the materials confidential at this juncture, particularly given that Ocwen is not seeking to seal information at trial.

The CFPB also incorrectly claims the documents cannot be sealed because Ocwen has waived the self-evaluative privilege. Contrary to the CFPB's argument, Ocwen's self-evaluative privilege was not waived because the documents were produced to the CFPB. *See Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004) (upholding lower court's decision to keep documents sealed pursuant to a protective order and rejecting plaintiff's claims that the documents should have been unsealed because "[plaintiff] already had access to the documents covered by the protective order"). Indeed, the Stipulated Protective Order specifically covered Ocwen's confidential investigative information that the CFPB possessed prior to the filing of this action. *See* DE 51 at § 11.5.

Finally, the CFPB's argument that the 13 documents cannot be sealed because the documents contain objective facts and not subjective evaluations is false. The CFPB's chart of selective excerpts from the at-issue documents (DE 744, Exhibit 2) does not support this argument. Instead, the CFPB quotes some statements of fact while pointedly ignoring that the documents at issue also contain Ocwen internal analysis and assessments, audit conclusions, internal investigations, and corrective action plans. A full review of the documents at issue show that they concern compliance reviews, planned or proposed remediation measures, and various investigations and analyses, not simply objective facts. *See also infra* Section III (refuting CFPB's argument that the information Ocwen seeks to seal is in the public record).

Each of the documents discussed above, and in its Motions to Seal (DE 726 at 2-6; DE 737 at 2-4) concerns Ocwen assessing compliance with and detailing business changes necessary in response to regulatory exams, or its own compliance analysis. Allowing businesses to candidly evaluate their compliance in confidence promotes and fosters compliance with regulatory and legal requirements. Because Ocwen's interest in keeping self-critical analysis confidential outweighs the public interest in viewing these documents prior to trial, the Court should grant Ocwen's Motions to Seal.

**II.     Public Filing Of Sensitive Business Information Would Cause Competitive Harm.**

Ocwen also demonstrated in its Motion to Seal that two documents should be sealed, in whole or in part, because they contain either Ocwen's or third party Altisource Solutions' confidential and sensitive business or proprietary information. *See* DE 726 at 6-7. The CFPB argues in response that these document cannot be sealed because Ocwen has not substantiated the harm that would result from public disclosure. This argument fails because Ocwen has shown that competitive harm would result from disclosure of these documents, which reveal, among other things, Ocwen's business processes and compliance review processes.

Ocwen seeks to seal SJX 134, the Issue Tracking Convergence spreadsheet, an Ocwen internal report from its Business, Risk, and Controls, or "BRC" access database. *See* Exhibit 1, Declaration of Jenna D. Evans In Support of Defendants' Motions to Seal Summary Judgment and *Daubert* Motion Materials and Summary Judgment Opposition Materials ("Evans Decl.") at ¶ 5. The Issue Tracking is a document extracted from the BRC database that Ocwen created and implemented to allow Ocwen personnel to log various concerns about loan servicing so that they could be investigated. *Id.* Ocwen personnel could access the document to log issues, and Ocwen's Risk and Compliance groups would review the concerns or issues that were logged and conduct investigations into those issues in order to assess the legitimacy and, if applicable, impact of such concerns. *Id.*

The CFPB argues that SJX 134 cannot be sensitive business information because it is a list of past servicing errors, and the information is outdated. DE 744 at 13-15. This is not so. The Issue Tracking Convergence spreadsheet is large chart that compiles over 2,800 issues that were identified, investigated, analyzed to determine whether they were risk or compliance issues, and resolved, with comments detailing the company's process throughout. *See* Evans Decl. ¶¶ 5-6. If the Issue Tracking Convergence spreadsheet was publicly filed, Ocwen's competitors could

use the document and cause harm to Ocwen, including a loss of business. *Id.* at ¶ 8. Disclosing this volume of information, with various internal compliance issues, over the course of several years, without the benefit of context, could cause competitive harm to Ocwen. *Id.*

In addition, contrary to the CFPB's assertion, the Issue Tracking Convergence spreadsheet is not simply a list of past issues and a note indicating when it was resolved. SJX 134 demonstrates Ocwen's internal process for investigating and resolving issues, including: (1) the steps Ocwen takes to address and resolve issues; (2) detailed description of issues identified and reviewed; and (3) the action plan for how those issues were resolved, with detailed comments. *Id.* at ¶ 9. The Issue Tracking Convergence spreadsheet can be searched and filtered by any one of Ocwen's of business units and sub-business units. *Id.* Ocwen's internal investigation practices and the processes that Ocwen uses to track and resolve those issues revealed by SJX 134 could also cause harm to Ocwen's business, as it gives competitors access those processes. *Id.*

Although the Issue Tracking Convergence spreadsheet documents issues investigated in 2009-2015, it is not "outdated," as the CFPB argues. Public disclosure of this document would also reveal some current Ocwen's business practices, and, as noted above, Ocwen's issue resolution processes. *See* Evans Decl. at ¶ 10. The Issue Tracking Convergence spreadsheet reveals some business processes for servicing loans that are still followed today. *See id.* For example, Ocwen's Cashiering business practices, including how certain correspondence is to be handled, or fraud reporting issues, are apparent from SJX 134. *Id.* There are many ongoing Ocwen business practices and concerns that are revealed by this document. *Id.*

The CFPB's Opposition argument also fails with respect to SJX 117, a Technology Products Letter, between Ocwen and Altisource Solutions, a third-party. The Technology Products Letter expressly states that Ocwen and Altisource "agree that neither party will disclose this Technology Products Letter or the contents hereof," except as necessary to comply with law or legal process, and other exceptions including governmental reporting or business reporting to parent companies, affiliates or auditors. *See* Evans Decl. ¶ 12. SJX 117 also refers to an August 10, 2009 Technology Products Services Agreement, between Ocwen and Altisource Solutions. *Id.* Section 12 of that Agreement contains a confidentiality provision that prevents Ocwen from disclosing Altisource's confidential information, including technical or business information or data. *Id.* at ¶ 13. SJX 117 contains Altisource Solutions' confidential information and should be

7

sealed, or Altisource could be harmed. *See id.* at ¶¶ 14.[4] Ocwen's Motion to Seal SJX 134 and SJX 117 should therefore be granted.

### III. The Information Ocwen Seeks To Seal Is Not In The Public Record.

In its Opposition, the CFPB also claims that Ocwen seeks to seal information in several (but not all) of the documents that is in the public record.[5] This argument lacks merit. First, the CFPB selectively quotes and mischaracterizes the documents that Ocwen seeks to seal, in its Oppositions and in its chart (DE 744, Exhibit 2) that purports to show information already in the public record. For instance, the CFPB argues the Court should not seal specific CAPs because there is general information on those CAPs in testimony, briefs, and other documents, but the public information the CFPB points to does not contain the ***detailed and specific information*** about CAPs that Ocwen moves to seal. Importantly, the CFPB also ignores that several of the documents Ocwen seeks to seal are large compilations of multiple servicing compliance issues, remediation issues, or issues from CAPs, all contained in one, large document. For example, SJX 134, the Issue Tracking Convergence spreadsheet, contains over 2,800 items in a centralized report. The CFPB identified seven of the same items mentioned elsewhere in public documents, but the fact that 7 of 2,800 items are mentioned elsewhere does not undermine Ocwen's justification for sealing the document. SJX 134, as well as SJX 131 (Ocwen's Remediation Report), and SJX 128 (Ocwen's Escrow Action Plan) all contain sensitive business and/or self-critical analysis of a multitude of issues, in one large compilation. Disclosing those documents would harm Ocwen and reveal its self-evaluative information for thousands of issues, as well as its internal processes and compliance functions. Ocwen has attached to this Consolidated Reply as Exhibit 2 a chart addressing the CFPB's document-specific arguments, and in nearly every case, the information Ocwen seeks to seal is not in the public record.

Finally, the vast majority of the confidential documents that Ocwen seeks to seal are ones that ***the CFPB*** opted to include in its summary judgment materials. If, as the CFPB contends, the same information is in the public record (which Ocwen disputes), then the CFPB should cite to those publicly filed documents in support of its summary judgment arguments, rather than

---

[4] SJX 134 and SJX 117 should also be sealed because they are not in the public record. *See infra* Section III.
[5] The CFPB does not argue in its Oppositions that either SJX 43 or SJX 57 contains information that is in the public record. These documents therefore should remain confidential.

Ocwen's confidential, sensitive and protected information, which would obviate the need for sealing most of the at-issue documents. If the CFPB cannot do so, that is only further proof that the information is not, in fact, already publicly available.

## CONCLUSION

For the reasons stated above and in Ocwen's Motions to Seal, Owen respectfully requests that confidential documents and information be maintained under seal until the Court's decision on the parties' cross motions for summary judgment, or until a trial in the matter.

Dated: December 31, 2020

Respectfully submitted,

*/s/ Catalina E. Azuero*
Bridget Ann Berry (Fla. Bar No. 515639)
Andrew Stuart Wein (Fla. Bar No. 1005238)
**GREENBERG TRAURIG, P.A.**
777 South Flagler Drive, FL 33401
Tel.: 561.650.7900
berryb@gtlaw.com
weina@gtlaw.com

Thomas M. Hefferon (*pro hac vice*)
Sabrina M. Rose-Smith (*pro hac vice*)
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
Tel.: 202.346.4000
thefferon@goodwinlaw.com
srosesmith@goodwinlaw.com

Laura A. Stoll (*pro hac vice*)
**GOODWIN PROCTER LLP**
601 S. Figueroa Street
Los Angeles, CA  90017
Tel.:  213.426.2500
lstoll@goodwinlaw.com

Catalina E. Azuero (Florida Bar No. 821411)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA  02210
Tel.:  617.570.1000
cazuero@goodwinlaw.com

***Attorneys for Defendants***

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on December 31, 2020 via ECF on all counsel or parties of record listed below:

Jean Healey
Email: jean.healey@cfpb.gov

Atur Desai
E-mail: atur.desai@cfpb.gov

Tianna Baez
E-mail: tianna.baez@cfpb.gov

Amanda Roberson
E-mail: amanda.roberson@cfpb.gov

Stephanie Brenowitz
E-mail: stephanie.brenowitz@cfpb.gov

Erin Mary Kelly
E-mail: erin.kelly@cfpb.gov

James Savage
E-mail: james.savage@cfpb.gov

Greg Nodler
E-mail: greg.nodler@cfpb.gov

Michael Posner
E-mail: michael.posner@cfpb.gov

Jack Douglas Wilson
E-mail: doug.wilson@cfpb.gov

Shirley T. Chiu
E-mail: shirley.chiu@cfpb.gov

Lawrence DeMille-Wagman
Email: Lawrence.wagman@cfpb.gov

/s/ *Catalina E. Azuero*
Catalina E. Azuero