**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:17-CV-80495-MARRA-MATTHEWMAN**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

OCWEN FINANCIAL CORPORATION, OCWEN MORTGAGE SERVICING, INC., and OCWEN LOAN SERVICING, LLC,

Defendants.

**OCWEN'S RESPONSE TO PLAINTIFF'S BRIEF PURSUANT TO THIS COURT'S JULY 27, 2022 ORDER (ECF 806) IN FURTHER SUPPORT OF OCWEN'S MOTION FOR SUMMARY JUDGMENT (ECF 730)**

# TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. The Record Indisputably Shows That the NMS Covers Counts I-II and V-VI. .......... 2

II. The Record Indisputably Shows the NMS Covers Counts III-IV, VII (Hazard Insurance), and VIII-IX. .......... 4

III. The Record Indisputably Shows That the NMS Covers the Escrow Analysis Claim. .......... 6

A. The CFPB's Escrow Analysis Claim *Does* Overlap with the NMS Servicing Standards and Metrics .......... 7

B. The CFPB's Misrepresentation of Expert Testimony Is Irrelevant .......... 10

CONCLUSION .......... 11

## INTRODUCTION

The CFPB used its Post-Remand Brief (ECF 807) to revive arguments this Court already rejected. The CFPB argues most of its claims (Counts I-VI, VIII-IX, and part of Count VII regarding timely payment of insurance) do not overlap with NMS Servicing Standards and Metrics because the Monitor did not test the accuracy of information in Ocwen's systems and the CFPB's current claims are based on the accuracy of Ocwen's records. *See* CFPB Post-Remand Br. at 7-9. But the CFPB admits it already made this argument, CFPB Post-Remand Br. at 7 n.20, and the Court ***rejected it***. *See* ECF 764 at 17-22, 25-27 ("Order"). The Bureau has nothing further to add.

The CFPB focuses the rest of its brief on a portion of Count VII concerning timely annual escrow evaluations ("Escrow Analysis Claim"), and argues that these evaluations were not "specifically assess[ed]" by an NMS Servicing Standard or Metric. CFPB Post-Remand Br. at 2-7 (citing SAC ¶¶ 251(a), 252(a)). But this Court already rejected this same argument when it concluded that Count VII's escrow analysis claim was covered and therefore precluded by the NMS. *See* Order at 20-22, 27; *see also id.* at 6 & n.4. The CFPB added only one detail to the arguments it made previously—a citation to and misrepresentation of testimony by an Ocwen expert. The Court should not change its prior view on the overlap in claims based on this testimony. The terms of the NMS Consent Judgment, Servicing Standards, and enforcement terms are clear, and a fair reading of the expert's testimony shows he was not opining on the settlement terms or their overlap with the CFPB's complaint.

On appeal, the Eleventh Circuit agreed with this Court that the CFPB could "sue Ocwen for alleged violations that occurred between January 2014 and February 26, 2017 ***only*** if they aren't covered by the consent judgment's servicing standard, monitoring, and enforcement regime." *CFPB v. Ocwen Fin. Corp.*, No. 21-11314, at 13-14 (11th Cir. Apr. 6, 2022) ("Opinion") (emphasis in original). This Court already conducted a "careful review" of the overlap between the NMS and the CFPB's claims in granting Ocwen summary judgment. In doing so, this Court identified those counts that did not overlap and those time periods within each overlapping count that would not be covered, denied Ocwen summary judgment as to those claims and time periods, and ruled that the settlement's detailed Servicing Standards, monitoring, and enforcement regime covered the rest. Order at 6, 21-22, 26-27.

The Court need not reconsider its prior ruling. The Eleventh Circuit's opinion does not require it, nor would it be consistent with the Eleventh Circuit's intent or direction. As Ocwen explained in its Post-Remand Brief (ECF 808 at 1-6), because the Order shows that this Court already conducted a claim-by-claim analysis in reaching its prior conclusion, the only action necessary post-remand is for the Court to revise its original Order to specifically identify the provisions it relied on in its determination that each of the CFPB's claims is covered by the NMS. However, if the Court were inclined to re-review the record, as Ocwen showed in its Post Remand Brief (at 6-11) and further explains here, the NMS's Servicing Standards, monitoring, and enforcement regime indisputably cover each category of conduct alleged in the Operative Complaint.

The Court should reaffirm the holding in its original Order, spell out the metrics and standards that overlap each count as requested by the Eleventh Circuit in the event that detail is needed for later appellate review, and (again) grant Ocwen summary judgment on all of the CFPB's claims because they are precluded by the res judicata effect of the NMS.

## <u>ARGUMENT</u>

As the Court already held, and Ocwen demonstrated again in its Post-Remand Brief, the NMS's Servicing Standards and Metrics contain a comprehensive set of requirements that fully cover the conduct underlying Counts I-IX of the SAC. The CFPB's Post-Remand Brief does not address or acknowledge the vast majority of those overlapping Servicing Standards or Metrics. Instead, the CFPB re-raises the same arguments the Court previously rejected, and argues (again) for a narrow interpretation of the NMS that has been rejected by both this Court and the Eleventh Circuit. For the reasons below and in Ocwen's Post-Remand Brief, the Court should reject those arguments again and grant Ocwen summary judgment on Counts I-IX because they are precluded by the NMS. *See* Order at 17-27.

### I. The Record Indisputably Shows That the NMS Covers Counts I-II and V-VI.

The CFPB acknowledges that there are Standards and Metrics that appear to overlap with Counts I-II and V-VI, but argues that the NMS was not intended to cover the conduct in those counts because the NMS did not test the "accuracy of the information in Ocwen's system of record." CFPB Post-Remand Br. at 7-8; *see also* CFPB Opp. at 6-7 (ECF 740). But the Court already rejected this precise argument because it concluded the plain terms of the NMS "'require[] . . . an independent third party [to] periodically review those parts of the [system of

record] that pertain to account information for accuracy and completeness,'" and Ocwen had provided the results of the independent reviews to the Monitor. Order at 18 (addressing CFPB Opp. at 6-7). In so ruling, the Court cited NMS language which expressly required that Ocwen's "***systems to record*** account information shall be periodically reviewed for ***accuracy and completeness*** by an independent reviewer." *Id.* (citing App. Ex. 4, NMS C.J. Ex. A, ¶ I.B.9) (emphasis added). Further, as this Court found, the Monitor "reported in December 2014 that 'Servicer [Ocwen] has provided for my review its two most recent independent service auditor's reports of its system of record and will provide future independent service auditor's reports of its system of record until the Judgment sunsets,'" and "also charged McGladrey (independent auditor) with additional supplemental work . . . to assess the reliability of [Ocwen's] system of record." *Id.* (citing App. Ex. 9, RAF Ex. 2 at 20; App. Ex. 10 RAF Ex. 3, at OCW-039-0244950). Thus, this Court held that it was "apparent that [system of record] accuracy issues were specifically addressed in the . . . Servicing Standards and were part of the servicing activity routinely reviewed by the NMS Monitor." *Id.*

The CFPB's brief also falls well short of offering any other evidence or argument to persuade the Court that there are no overlapping Standards and Metrics for Counts I-II and V-VI. In fact, the CFPB only attempts to refute one Servicing Standard (I.B.5) and a handful of Metrics (2.A.-2.C, 3.A, 5.F, 6.A, and 33) in arguing that there is no overlap with Counts I-II and V-VI. But Ocwen has long identified that Servicing Standards I.B.1-3 and I.B.8-10 also overlap with these counts, and the Bureau has not and cannot argue that they do not. The Bureau also argues that Metrics 2.A-2.C, 3.A, and 5.F do not overlap, but Ocwen never claimed they did. *Compare* CFPB Post-Remand Br. at 7-8, *with* Ocwen Post-Remand Br. at 7-8 & Attach. A. Instead, Ocwen has repeatedly shown that Counts I-II and V-VI overlap with Servicing Standards I.B.1-3, I.B.5, I.B.8-10, and were tested by Metrics 4.B, 6, and 33. Ocwen Post-Remand Br. at 7-8 & Attach. A; *see also* App. Ex. 1, Ocwen MSJ at 6-7 & App. Ex. 2, Ocwen SMF ¶¶ 37-38, 40 (showing NMS overlap with Counts I-II and V-VI); App. Ex. 6, Ocwen Reply at 4-7 (same). The Bureau does not and cannot refute the overlap.

Nothing in the Eleventh Circuit's opinion alters the Court's original determination that Counts I-II and V-VI are precluded by res judicata, and the CFPB has provided no basis for the Court to revisit its decision.

## II. The Record Indisputably Shows the NMS Covers Counts III-IV, VII (Hazard Insurance), and VIII-IX.

The CFPB's Post-Remand Brief does not address or contest ***any*** of the Servicing Standards or Metrics that Ocwen claimed overlap with Counts III-IV, VIII-IX, or the portion of Count VII alleging the CFPB's Hazard Insurance Claim. *Compare* CFPB Post-Remand Br. at 8-9, *with* Ocwen Post-Remand Br. at 7-10 & Attach. A; *see also* App. Ex. 1, Ocwen MSJ at 6-7 & App. Ex. 2, SMF ¶¶ 39-41, 43-44; App. Ex. 6, Ocwen Reply at 7-8. Instead, the CFPB argues that Ocwen failed to demonstrate the Servicing Standards and Metrics covered these Counts because "Ocwen does not contend" that the CFPB's purported "specific loan-level and transactional-level evidence was, or could have been, reviewed by the Monitor or any third party assessing the accuracy of Ocwen's system of record." CFPB Post-Remand Br. at 9. As this Court already held, and the Eleventh Circuit affirmed, whether or not the Monitor reviewed the precise "evidence" the CFPB asserts supports its claims is not the question for res judicata under *Norfolk Southern*, nor was it the intent of the NMS. *See* Opinion at 11-14; Order at 20-22, 25-27. Rather, the CFPB could "sue Ocwen for alleged violations that occurred between January 2014 and February 26, 2017 ***only*** if they aren't covered by the consent judgment's servicing standard, monitoring, and enforcement regime." Opinion at 13-14 (emphasis in original); *see also* Order at 25-27.

As Ocwen's Post-Remand Brief showed, the NMS Servicing Standards, monitoring, and enforcement regime indisputably cover the conduct alleged in the CFPB's Operative Complaint, including the conduct underlying Counts III-IV, VII (Hazard Insurance Claim), and VIII-IX. Order at 17-19, 26-27; Ocwen Post-Remand Br. at 6-11 & Attach. A. Further, as this Court held, even assuming *arguendo* that the Metrics did not measure all possible non-compliance with the Servicing Standards, this did not matter because the CFPB had "agreed to test compliance with the Servicing Standards under [certain] Metrics agreed upon under the [NMS]." Order at 21. Thus, even if the Metrics were "insufficient" to "test[] Ocwen's compliance with the Servicing Standards," that "simply points to a limitation in the negotiated settlement between the parties," and did "not defeat an overlap of claims or causes of action." *Id.* at 20-21.

Indeed, had the NMS parties intended that Ocwen's Servicing Standard compliance be assessed by reviewing ***every*** loan or transaction potentially implicating each Servicing Standard, those requirements would have been negotiated into the settlement terms, and almost certainly would have required significant concessions from the CFPB to Ocwen given the enormous

burden testing and review of such evidence would have imposed. *See* Order at 5-6, 25 (describing (1) the over $2 billion in principal reduction loan modifications and monetary relief, and (2) the comprehensive monitoring and enforcement regime that Ocwen agreed to ***in exchange*** for the CFPB's agreement that "Ocwen would not be subject to future administrative or judicial enforcement actions for conduct covered by the NMS Servicing Standards and occurring during the term of the Judgment" unless NMS preconditions were met). The Eleventh Circuit reinforced this Court's view when it determined that the NMS did not permit "the CFPB [to] freely elect when to proceed through the strictures of the settlement agreement and when to go straight to court," because "Ocwen couldn't possibly have intended to get so little security" in exchange for the "costly three-year compliance-and-enforcement-regime." Opinion at 11-12. At bottom, the CFPB's argument here continues to ignore all of the ways in which the NMS Servicing Standards and Metrics were structured to evaluate and test the very same conduct at issue in the Operative Complaint, and again asks this Court to ignore that overlap and let it bring suit now because it no longer likes the deal it negotiated then. As this Court and the Eleventh Circuit have both already held, it cannot do so. Order at 21-22, 25-27; Opinion at 11-14.

Finally, the CFPB argues (at 9) that Ocwen's failure to "self-disclose" any of the purported "evidence" underlying the CFPB's claims somehow indicates that Ocwen believed the NMS was not intended to cover Counts I-IX, but the Court should reject that argument because it is irrelevant to the res judicata analysis and unsupported by the evidence. *See supra* at 4-5; Opinion at 13-14; Order at 25-27. First, the CFPB has no evidence that Ocwen's alleged failure to self-report alleged noncompliance was the result of Ocwen having determined that the NMS was not intended to cover the alleged conduct. Second, as Ocwen demonstrated at summary judgment, the CFPB's purported evidence of misconduct is insufficient to prove its claims in this matter at all, much less show a "significant pattern or practice of noncompliance with a material aspect of an NMS Servicing Standard." *See, e.g.,* App. Ex. 1, Ocwen MSJ at 11-30; App. Ex. 6, Ocwen Reply at 10-29; Ocwen Opp. to CFPB's MPSJ at 10-33 (ECF 739). Third, as this Court held before, even if the CFPB did have evidence to prove a violation, the CFPB's current allegations regarding misconduct are "without regard" to the tolerances that were agreed to in the NMS (*i.e.,* the "Threshold Error Rates"). Order at 25-26. The CFPB may well have some evidence of errors, but the NMS Threshold Error Rates fully expected there would be some errors. *See id.* And as this Court already held, even if the CFPB could show the purported

conduct underlying its claims exceeded Threshold Error Rates or rose to a "significant pattern or practice of compliance" that Ocwen should have disclosed (and the CFPB cannot), the NMS "already established the means by which Ocwen's noncompliance with federal law would be measured and redressed." *Id.* at 26. Under the terms of the NMS and *Norfolk Southern*, that is through the NMS's enforcement terms and an action brought in the District of Columbia. *Id.* at 25-26; Opinion at 13-14.

## III. The Record Indisputably Shows That the NMS Covers the Escrow Analysis Claim.

Count VII's Escrow Analysis Claim is also barred in its entirety by the NMS. Order at 17-22, 26-27; Ocwen Post-Remand Br. at 8 & Attach. 2 at 2. The CFPB asks this Court to reconsider its prior decision at least as to the portion of Count VII that alleges "that Ocwen failed to timely conduct annual escrow analyses," which it defines as its "Escrow Analysis Claim." CFPB Post-Remand Br. at 2-7 (citing SAC ¶¶ 251(a), 252(a)).[1] The CFPB argues (at 2-7) that it should be allowed to pursue this claim in this separate action because: (1) the NMS Servicing Standards and Metrics did not assess whether Ocwen performed a "timely" escrow analysis estimating "future" escrow amounts; and (2) Ocwen's expert did not identify an NMS Metric that related to escrow. Both of these arguments should be rejected.

First, as the Court's "careful review" of the summary judgment record concluded, and Ocwen's Post-Remand Brief indisputably shows, the CFPB's Escrow Analysis Claim ***does*** overlap with the NMS Servicing Standard, monitoring, and enforcement regime. Order at 17-22, 26-27; Ocwen Post-Remand Br. at 1-6, 8. Moreover, even if the NMS Metrics were "insufficient" to "test[] Ocwen's compliance with the Servicing Standards," this Court determined that "simply points to a limitation in the negotiated settlement between the parties,"

---

[1] As explained above (at 4), the CFPB does not contest that the NMS Servicing Standards covered the other portion of Count VII, which alleges that Ocwen purportedly failed to timely pay hazard insurance (Hazard Insurance Claim). *See* SAC ¶ 250. Rather, the CFPB separately argues that the Hazard Insurance Claim was not covered by the NMS because Ocwen did not prove the Monitor reviewed the specific loan- or transaction-level evidence the CFPB now alleges supports its claims. CFPB Post-Remand Br. at 8-9. This argument fails for the reasons stated above. *Supra* at 4-6. Moreover, as Ocwen demonstrated again in its Post-Remand Brief, the Hazard Insurance Claim was plainly covered by NMS Servicing Standard VII.A.1, which for borrowers with "escrowed accounts" with hazard insurance, required Ocwen to "advance payments for the homeowner's existing policy." App. Ex. 4, NMS C.J. Ex. A, ¶ VII.A.1. This standard was tested, for example, under Metric 4.B, which measured "[p]ayments posted timely . . . and accurately," including whether "payments posted to principal interest and escrow before fees and expenses." App. Ex. 5, NMS C.J. Ex. D at D1-7.

and did "not defeat an overlap of claims or causes of action." Order at 20-21.

Second, the Court should reject the CFPB's attempt to rely on Ocwen's expert to show the NMS did not cover the Escrow Analysis Claim because the CFPB misrepresents both the question posed and the response from the expert, as well as the scope of the expert's designation and opinions in the matter. Further, the Court should disregard this argument because the testimony of a third-party individual who was not a party to the NMS is irrelevant since the NMS settlement agreement speaks for itself.

### A. The CFPB's Escrow Analysis Claim *Does* Overlap with the NMS Servicing Standards and Metrics.

The CFPB argues, again, that Count VII's Escrow Analysis Claim is "outside the purview of the NMS" because the NMS's Servicing Standards and Metrics did not assess whether Ocwen performed a "timely annual escrow analysis" estimating "future" escrow amounts. CFPB Post-Remand Br. at 2-7. This argument has already been considered and rejected by this Court, and should be rejected again here.

As this Court held, the NMS Servicing Standards ***do overlap*** with Count VII's Escrow Analysis Claim. Order at 6, 17-21, 26-27; Ocwen Post-Remand Br. at 1-6, 8 & Attach. A at 2. Specifically, Servicing Standard I.B.1 required Ocwen to "maintain procedures to ensure accuracy and ***timely updating of borrower's account information.***" App. Ex. 4, NMS C.J. Ex. A, ¶ I.B.1 (emphasis added); Order at 6 & n.4 (citing Servicing Standards I.B.1, I.B.5, and I.B.9, and noting that "Ocwen . . . agreed to maintain accurate records and timely update borrowers' account information to ensure accuracy and completeness as required by the Servicing Standards"). The CFPB's Post-Remand Brief tellingly ignores this Servicing Standard, likely because it was plainly intended to require procedures for timely updating of all borrower account information, including procedures for "timely updating" borrowers' escrow amounts due (which can only be accurately determined by completing an annual escrow analyses). Ocwen Post-Remand Br. at 8 & Attach. A at 2; *see also* Order at 6 n.4, 17-22, 26-27.

The CFPB's narrow reading of the Servicing Standards and Metrics also asks the Court to ignore the fact that "timely" and "accurate" escrow analyses were a ***necessary precondition*** for compliance with multiple Servicing Standards that were monitored and tested by the NMS.[2] *See,*

[2] The CFPB's Post-Remand Brief does, however, concede that each escrow analysis accounting uses "current balances, such as the current escrow balance" that were explicitly assessed and tested under Servicing Standard I.B.5 and Metric 33. *See* CFPB Post-Remand Br. at 3.

*e.g.*, App. Ex. 4, NMS C.J. Ex. A, ¶ I.B.5; App. Ex. 5, NMS C.J. Ex. D at D1-7, D1-21 (Metrics 4.B, 33). Indeed, the escrow amount due included in ***every*** billing statement is the product of the annual escrow analysis, and Servicing Standard I.B.5 required "each monthly billing or other account statements to show in clear and conspicuous language . . . current escrow balance[] ***and reasons for any payment changes***, including an . . . ***escrow account adjustment***." App. Ex. 4, NMS C.J. Ex. A, ¶ I.B.5 (emphasis added). Metric 33 tested Ocwen's compliance with this Servicing Standard (and others) by ***specifically testing billing statement accuracy***, which necessarily included assessment of Ocwen's timely review of escrow balances because, as the CFPB must admit (CFPB Post-Remand Br. at 3), billing statements must include information derived from that timely analysis and must be accurate. App. Ex. 5, NMS C.J. Ex. D at D1-21 (ECF 731-7).[3] And Metric 4.B specifically measured whether "[p]ayments posted timely . . . and accurately," including whether "payments posted to principal interest and escrow before fees and expenses." *Id.* at D1-7 (emphasis added).

The purported harm the CFPB alleges resulted from untimely escrow analyses was a reason for, and was covered by, the NMS Servicing Standards, which further shows that the Escrow Analysis Claim must be precluded. The CFPB—through its damages expert, Daniel McFadden—claims that Ocwen's purported failure to conduct timely escrow analyses resulted in a shortage, surplus, or deficiency in borrower escrow accounts that was then not accurately conveyed to the borrower or reflected in borrower accounts. *See* App. Ex. 1, Ocwen MSJ at 21-24 & App. Ex. 2, SMF ¶¶ 179-94 (citing McFadden Report & testimony). But under the NMS, any purported inaccuracy or resulting harm pertaining to "borrowers' account information"—including escrow (*see* Servicing Standard I.B.5)—was to be remedied under Servicing Standard I.B.8, which required Ocwen to "take appropriate action to promptly remediate any inaccuracies in borrowers' account information, including . . . correcting the account information [and] providing cash refunds or account credits." App. Ex. 4, NMS C.J. Ex. A, ¶ I.B.8. McFadden also claims Ocwen's purported failures to conduct timely escrow analyses resulted in increased

[3] The CFPB again argues (at 6) that Metric 33 only tested for accuracy of statements as compared to the system of record, but as explained above (at 2-3), the Court already rejected this argument, holding that it was "apparent that [system of record] accuracy issues were specifically addressed in the . . . Servicing Standards and were part of the servicing activity routinely reviewed by the NMS Monitor." Order at 17-18; *see also* App. Ex. 4, NMS C.J. Ex A, ¶ I.B.9; Order at 6 & n.4.

foreclosures, *see* App. Ex. 1, Ocwen MSJ at 22-23 & App. Ex. 2, SMF ¶¶ 179-90, and the NMS explicitly stated that increased foreclosures were a driving force behind the NMS settlement and the resulting Servicing Standards and Metrics. *See, e.g.*, App. Ex. 3, NMS C.J. ¶ 4 (mandating payments to certain "borrowers whose homes were sold in a foreclosure sale"); Ocwen SMF Ex. 1, NMS Compl. ¶¶ 2, 23 (alleging Ocwen's purported misconduct resulted in foreclosures); App. Ex. 4, NMS C.J. Ex. A, ¶¶ I.A, II, IV (Servicing Standards concerning loss mitigation and foreclosure practices, communications, policies, and procedures). Thus, even if the CFPB could show that shortage- or foreclosure-related harm occurred as a result of untimely escrow analyses (and it cannot for the reasons stated in Ocwen's summary judgment briefing – *e.g.*, App. Ex. 1, Ocwen MSJ at 21-24), the purported misconduct and any alleged failure to remedy that harm clearly was covered by the NMS. *See* Order at 5-6, 20-22, 25-27. And as a result, it was required to be enforced by the CFPB under the NMS's dispute resolution and enforcement terms. *Id.*

Finally, as this Court held, even if the specific metrics the parties agreed the Monitor would apply to assess Ocwen's conduct did not ***perfectly*** cover the CFPB's Escrow Analysis Claim, that would not mean that the CFPB is now free to assert that claim. Order at 20-21, 25-26; *see also* App. Ex. 6, Ocwen Reply at 5-6, 8. Rather, the Court need only determine, as it did before, whether the alleged conduct is "covered by the Servicing Standard, monitoring and enforcement regime" of the NMS Consent Judgment. Opinion at 13-14; Order at 20-21, 27. As explained above and in Ocwen's Post-Remand Brief, they do. The Standards and Metrics described above were clearly designed to detect and uncover escrow account inaccuracies and harm to borrowers caused by Ocwen's escrow handling practices. Thus, even if the Metrics were "insufficient" to "test[] Ocwen's compliance with the Servicing Standards," that "simply points to a limitation in the negotiated settlement between the parties," and did "not defeat an overlap of claims or causes of action." *Id.* at 20-21.

The parties agreed that certain defined metrics would be analyzed to assess Ocwen's covered conduct, and the CFPB cannot now sue Ocwen outside the NMS agreement on the ground that additional metrics or different standards would or could identify defects in Ocwen's covered conduct that the existing metrics did not. To the contrary, such an interpretation would render the NMS agreement's mandatory enforcement terms meaningless, robbing Ocwen of the agreement's entire value. *See* Order at 20-21; Opinion at 11-12. Simply put, the parties negotiated and agreed on (1) how Ocwen had to conduct itself and (2) what measurements would

be taken to assess its conduct. Order at 4-11, 16-27. And as this Court recognized, the CFPB itself has ***conceded*** that there was facial overlap between the Servicing Standards and the allegations underlying its claims. *Id.* at 17.[4] Even if the CFPB now believes that the agreed metrics were insufficient to assess Ocwen's covered conduct, the CFPB can neither rewrite nor ignore the agreement it signed and to which Ocwen fully adhered. Order at 20-21, 25-27; *see also* Opinion at 11-14.

**B. The CFPB's Misrepresentation of Expert Testimony Is Irrelevant.**

Perhaps acknowledging the frailty of its previously rejected arguments against overlap with Count VII, the CFPB asks the Court to go beyond the text of the NMS and look to the testimony of a third-party witness (Ocwen's expert, Marcel Bryar) because the CFPB claims his testimony "confirms that the NMS was not intended to cover annual escrow analysis requirements." CFPB Post-Remand Br. at 4. The Court should reject this misdirection for two reasons.

First, the CFPB's assertion is inaccurate. The Post-Remand Brief misrepresents and omits relevant portions of Bryar's testimony in an effort to slant it in its favor. *See* CFPB Post-Remand Br. at 4. A review of the entirety of Bryar's testimony reveals that he ***did not*** agree nor confirm that "the NMS was not intended to cover" Count VII's Escrow Analysis Claim. The CFPB claims that when asked if there was "an applicable NMS Servicing Standard that related to escrow analysis," Bryar testified that he "[did not] think there's a metric related to escrow in the NMS." CFPB Post-Remand Br. at 4 (citing Bryar Dep. at 209:22-210:10). But this misrepresents the actual questions posed to Bryar. He was asked: "Is there an NMS standard ***that is informing your opinion*** as to what the generally accepted servicing standards [for escrow analyses] are?" He responded: "Not that I can think of." Response Ex. 1, Bryar Dep. at 189:16-22 (ECF 742-12)

[4] On appeal, the CFPB disputed that it "conceded" that the allegations underlying Counts I-IX "are 'matters covered by the Servicing Standards.'" CFPB App. Br. at 31 n.5. In fact, CFPB's opposition to Ocwen's summary judgment motion never disputed that the Servicing Standards overlap with the allegations in the amended complaint. *See* CFPB Opp. at 6-7. CFPB's statement of undisputed facts did "dispute" that the Servicing Standards encompassed the allegations underlying its claims, but like the CFPB's Post-Remand Brief, did so without any meaningful argument or specifically addressing each overlapping Servicing Standard. *See* ECF 742, ¶¶ 36-44; *supra* at 2, 4, 7-8 (noting that the CFPB ***still*** has not addressed nearly all of the Servicing Standards that overlap with its claims). Under this Court's rules, such conclusory responses do not create a triable fact. *See* S.D. Fla. L.R. 56.1(b)(1)(B) (requiring any dispute to be supported with "specific, pinpoint references to . . . record materials").

(emphasis added). Later, he was asked if there was an NMS standard that informed his opinion that "Ocwen collected escrow shortages in accordance with servicing standards." He responded: "I can't recall whether the servicing standards in the NMS cover escrow. I don't think there's a metric related to escrow in the NMS." *Id.* at 209:22-210:10. But, the Bureau's selective quote of Bryar's response omits his immediate follow up, just three lines later (at 210:13), where he testified "I'm just telling you that I don't recall" whether an NMS standard related to escrow analysis existed in the NMS. *Id.* at 209:22-210:13. Bryar then went on to explain the basis for his opinion that Ocwen collected escrow shortages in accordance with industry-accepted servicing standards, none of which involved any analysis of the NMS or its terms. *Id.* at 210:14-22. This, of course, is because (1) Bryar did not base his opinion on Ocwen's compliance with the NMS Servicing Standards, (2) he was not designated by Ocwen as an expert on the NMS Servicing Standards or Metrics themselves, and (3) he was not designated to opine on whether the NMS Servicing Standards or Metrics covered the Escrow Analysis Claim. *See* Response Ex. 2, Ocwen SMF Ex. 21 (ECF 731-20), Bryar Report ¶¶ 153-59 (opining that Ocwen performed escrow analyses in accordance with generally accepted industry standards for servicing mortgage loans); Response Ex. 1, Bryar Dep. at 189:8-192:4, 203:14-205:6, 206:7-210:4 (testifying that his "opinion is that Ocwen acted reasonably in accordance with generally accepted servicing standards" when handling escrow analyses).

Second, any testimony concerning the content or intent of the NMS Consent Judgment is irrelevant because the Court already held that the NMS Servicing Standards, Metrics, and related reports speak for themselves. *See* Order at 17-22, 26-27. The only relevant question is whether the Standards and Metrics overlap with the counts in the Operative Complaint, not whether an expert who was not a party to the NMS agreement and not designated to opine on its substance or overlap with this matter can remember whether there is a Standard related to escrow.

Because it remains evident from the face of the NMS Consent Judgment that its Servicing Standards, monitoring, and enforcement regime cover the CFPB's Escrow Analysis Claim (Count VII), summary judgment should be granted to Ocwen.

**CONCLUSION**

For each and all of these reasons, and the reasons stated in Ocwen's Post-Remand Brief (ECF 808), the Court should reaffirm the holding in its original Order, and grant Ocwen

summary judgment on all the CFPB's claims (Counts I-IX) because they are precluded by res judicata as applied in *Norfolk Southern*.

Dated: September 22, 2022

Respectfully submitted,

*/s/ Catalina E. Azuero*

Bridget Ann Berry
Andrew Stuart Wein
**GREENBERG TRAURIG, P.A.**
777 South Flagler Drive, FL 33401
Tel.: 561.650.7900
berryb@gtlaw.com
weina@gtlaw.com

Thomas M. Hefferon (*pro hac vice*)
Sabrina M. Rose-Smith (*pro hac vice*)
Matthew L. Riffee (*pro hac vice*)
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
Tel.: 202.346.4000
thefferon@goodwinlaw.com
srosesmith@goodwinlaw.com
mriffee@goodwinlaw.com

Laura A. Stoll (*pro hac vice*)
**GOODWIN PROCTER LLP**
601 S. Figueroa Street
Los Angeles, CA 90017
Tel.: 213.426.2500
lstoll@goodwinlaw.com

Catalina E. Azuero (Florida Bar No. 821411)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
cazuero@goodwinlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on September 22, 2022 via ECF on all counsel or parties of record.

/s/ *Catalina E. Azuero*
CATALINA E. AZUERO